Nos. 21-1220, 1221, 1225, 1236, & 1258

# United States Court of Appeals
# For the District of Columbia Circuit

---

LUCAS WALL, LEONARDO McDONNELL, MICHAEL SEKLECKI
(on behalf of himself and his minor child M.S.), MICHAEL FARIS,
CHARITY ANDERSON, ANGELA BYRD, MICHAEL CLARK,
URI MARCUS, LARRY JAMES BONIN JR., ANTHONY EADES,
KLEANTHIS ANDREADAKIS, THERESA MULLINS, & AARON ABADI,
*Petitioners*

v.

TRANSPORTATION SECURITY ADMINISTRATION,
*Respondent*

---

Petition for Review of TSA Security Directives & Emergency Amendment

---

**APPENDIX VOLUME 1**

---

LUCAS WALL *et al.*
Petitioners *Pro Se*
3601 Cosmos Way
The Villages, FL 32163
202-351-1735
Lucas.Wall@yahoo.com

# *WALL v.* TRANSPORTATION SECURITY ADMINISTRATION

## APPENDIX – TABLE OF CONTENTS

A. Federal Transportation Mask Mandate       1

B. Other Government Documents                49

C. Petitioner Lucas Wall's Exhibits         155

D. Petitioner Leonardo McDonnell's Exhibit  237

E. Petitioners Michael Seklecki & M.S.' Exhibits  239

F. Petitioner Michael Faris' Exhibits       323

G. Petitioner Uri Marcus' Exhibits          463

H. Petitioner Anthony Eades' Exhibits       591

I.  Petitioner Kleanthis Andreadakis' Exhibits  663

J.  Petitioner Aaron Abadi's Exhibits       791

K. Mask Studies & Articles                  845

L. Miscellaneous Exhibits                   1,113

# A

# FEDERAL TRANSPORTATION MASK MANDATE

whitehouse.gov

# Executive Order on Promoting COVID-19 Safety in Domestic and International Travel | The White House

11-14 minutes

---

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1.  Policy.**  Science-based public health measures are critical to preventing the spread of coronavirus disease 2019 (COVID-19) by travelers within the United States and those who enter the country from abroad.  The Centers for Disease Control and Prevention (CDC), the Surgeon General, and the National Institutes of Health have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19.  Accordingly, to save lives and allow all Americans, including the millions of people employed in the transportation industry, to travel and work safely, it is the policy of my Administration to implement these public health measures consistent with CDC guidelines on public modes of transportation and at ports of entry to the United States.

**Sec. 2.  Immediate Action to Require Mask-Wearing on Certain Domestic Modes of Transportation.**

(a)  Mask Requirement.  The Secretary of Labor, the Secretary of Health and Human Services (HHS), the Secretary of Transportation (including through the Administrator of the Federal Aviation Administration (FAA)), the Secretary of Homeland Security (including through the Administrator of the Transportation Security Administration (TSA) and the Commandant of the United States Coast Guard), and the heads of any other executive departments and agencies (agencies) that have relevant regulatory authority (heads of agencies) shall immediately take action, to the extent appropriate and consistent with applicable law, to require masks to be worn in compliance with CDC guidelines in or on:

(i)   airports;

(ii)   commercial aircraft;

(iii)  trains;

(iv)   public maritime vessels, including ferries;

(v)    intercity bus services; and

(vi)   all forms of public transportation as defined in section 5302 of title 49, United States Code.

(b)  Consultation.  In implementing this section, the heads of agencies shall consult, as appropriate, with interested parties, including State, local, Tribal, and territorial officials; industry and union representatives from the transportation sector; and consumer representatives.

(c)  Exceptions.  The heads of agencies may make categorical or case-by-case exceptions to policies developed under this section, consistent with applicable law, to the extent that doing so is necessary or required by law.  If the heads of agencies do make exceptions, they shall require alternative and appropriate safeguards, and shall document all exceptions in writing.

(d)  Preemption.  To the extent permitted by applicable law, the heads of agencies shall ensure that any action taken to implement this section does not preempt State, local, Tribal, and territorial laws or rules imposing public health measures that are more protective of public health than those required by the heads of agencies.

(e)  Coordination.  The Coordinator of the COVID-19 Response and Counselor to the President (COVID-19 Response Coordinator) shall coordinate the implementation of this section.  The heads of agencies shall update the COVID-19 Response Coordinator on their progress in implementing this section, including any categorical exceptions established under subsection (c) of this section, within 7 days of the date of this order and regularly thereafter.  The heads of agencies are encouraged to bring to the attention of the COVID-19 Response Coordinator any questions regarding the scope or implementation of this section.

**Sec. 3.  Action to Implement Additional Public Health Measures for Domestic Travel.**

(a)  Recommendations.  The Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including

through the Administrator of the TSA and the Commandant of the Coast Guard), in consultation with the Director of CDC, shall promptly provide to the COVID-19 Response Coordinator recommendations concerning how their respective agencies may impose additional public health measures for domestic travel.

(b)  Consultation.  In implementing this section, the Secretary of Transportation and the Secretary of Homeland Security shall engage with interested parties, including State, local, Tribal, and territorial officials; industry and union representatives from the transportation sector; and consumer representatives.

**Sec. 4.  Support for State, Local, Tribal, and Territorial Authorities.**  The COVID-19 Response Coordinator, in coordination with the Secretary of Transportation and the heads of any other relevant agencies, shall promptly identify and inform agencies of options to incentivize, support, and encourage widespread mask-wearing and physical distancing on public modes of transportation, consistent with CDC guidelines and applicable law.

**Sec. 5.  International Travel.**

(a)  Policy.  It is the policy of my Administration that, to the extent feasible, travelers seeking to enter the United States from a foreign country shall be:

(i)   required to produce proof of a recent negative COVID-19 test prior to entry; and

(ii)  required to comply with other applicable CDC guidelines concerning international travel, including recommended periods of self-quarantine or self-isolation after entry into the United States.

(b)  Air Travel.

(i)    The Secretary of HHS, including through the Director of CDC, and in coordination with the Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including through the Administrator of the TSA), shall, within 14 days of the date of this order, assess the CDC order of January 12, 2021, regarding the requirement of a negative COVID-19 test result for airline passengers traveling into the United States, in light of subsection (a) of this section.  Based on such assessment, the Secretary of HHS and the Secretary of Homeland Security shall take any further appropriate regulatory action, to the extent feasible and consistent with CDC guidelines and applicable law.  Such assessment and regulatory action shall include consideration of:

(A)  the timing and types of COVID-19 tests that should satisfy the negative test requirement, including consideration of additional testing immediately prior to departure;

(B)  the proof of test results that travelers should be required to provide;

(C)  the feasibility of implementing alternative and sufficiently protective public health measures, such as testing, self-quarantine, and self-isolation on arrival, for travelers entering the United States from countries where COVID-19 tests are inaccessible, particularly where such inaccessibility of tests would affect the ability of United States citizens and lawful permanent residents to return to the United States; and

(D)  measures to prevent fraud.

(ii)   The Secretary of HHS, in coordination with the Secretary of Transportation (including through the Administrator of the FAA) and the Secretary of Homeland Security (including through the Administrator of the TSA), shall promptly provide to the President, through the COVID-19 Response Coordinator, a plan for how the Secretary and other Federal Government actors could implement the policy stated in subsection (a) of this section with respect to CDC-recommended periods of self-quarantine or self-isolation after a flight to the United States from a foreign country, as he deems appropriate and consistent with applicable law.  The plan shall identify agencies' tools and mechanisms to assist travelers in complying with such policy.

(iii)  The Secretary of State, in consultation with the Secretary of HHS (including through the Director of CDC), the Secretary of Transportation (including through the Administrator of the FAA), and the Secretary of Homeland Security, shall seek to consult with foreign governments, the World Health Organization, the International Civil Aviation Organization, the International Air Transport Association, and any other relevant stakeholders to establish guidelines for public health measures associated with safe international travel, including on aircraft and at ports of entry. Any such guidelines should address quarantine, testing, COVID-19 vaccination, follow-up testing and symptom-monitoring, air filtration requirements, environmental decontamination standards, and contact tracing.

(c)  Land Travel.  The Secretary of State, in consultation with the Secretary of HHS, the Secretary of Transportation, the Secretary of Homeland Security, and the Director of CDC, shall immediately commence diplomatic outreach to the governments of Canada and Mexico regarding public health protocols for land ports of entry.  Based on this diplomatic engagement, within 14 days of the date of this order, the Secretary of HHS (including through the Director of CDC), the Secretary

of Transportation, and the Secretary of Homeland Security shall submit to the President a plan to implement appropriate public health measures at land ports of entry.  The plan should implement CDC guidelines, consistent with applicable law, and take into account the operational considerations relevant to the different populations who enter the United States by land.

(d)  Sea Travel.  The Secretary of Homeland Security, through the Commandant of the Coast Guard and in consultation with the Secretary of HHS and the Director of CDC, shall, within 14 days of the date of this order, submit to the President a plan to implement appropriate public health measures at sea ports.  The plan should implement CDC guidelines, consistent with applicable law, and take into account operational considerations.

(e)  International Certificates of Vaccination or Prophylaxis.  Consistent with applicable law, the Secretary of State, the Secretary of HHS, and the Secretary of Homeland Security (including through the Administrator of the TSA), in coordination with any relevant international organizations, shall assess the feasibility of linking COVID-19 vaccination to International Certificates of Vaccination or Prophylaxis (ICVP) and producing electronic versions of ICVPs.

(f)  Coordination.  The COVID-19 Response Coordinator, in consultation with the Assistant to the President for National Security Affairs and the Assistant to the President for Domestic Policy, shall coordinate the implementation of this section. The Secretary of State, the Secretary of HHS, the Secretary of Transportation, and the Secretary of Homeland Security shall update the COVID-19 Response Coordinator on their progress in implementing this section within 7 days of the date of this order and regularly thereafter.  The heads of all agencies are encouraged to bring to the attention of the COVID-19 Response Coordinator any questions regarding the scope or implementation of this section.

**Sec. 6.  General Provisions.**  (a)  Nothing in this order shall be construed to impair or otherwise affect:

(i)   the authority granted by law to an executive department or agency, or the head thereof; or

(ii)  the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b)  This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c)  This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

JOSEPH R. BIDEN JR.

THE WHITE HOUSE,
January 21, 2021.

**Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System**

As reflected in numerous determinations by the Executive Branch, including the President's March 13, 2020 determination that the outbreak of Coronavirus Disease 2019 (COVID-19) constitutes a "national emergency" under the National Emergencies Act and the nationwide public health emergency declared by the Secretary of Health and Human Services on January 31, 2020, the COVID-19 pandemic continues to pose a threat to our health and security. On January 15, 2021, the Centers for Disease Control and Prevention (CDC) updated their information to account for several new strains of COVID-19, including variant B.1.1.7 from the United Kingdom, variant B.1.351 from South Africa, and variant B.1.1.28.1 from Brazil. As of January 20, 2021, the United States has experienced more than 24 million confirmed COVID-19 cases and more than 400,000 COVID-19 deaths. The CDC, the Surgeon General, and the National Institutes of Health have concluded that mask-wearing, physical distancing, appropriate ventilation, and timely testing can mitigate the risk of travelers spreading COVID-19. On January 21, 2021, the President issued the *Executive Order on Promoting COVID-19 Safety in Domestic and International Travel*. The purpose of this Executive Order is to save lives and allow all Americans, including the millions of people employed in the transportation industry, to travel and work safely. Further, on January 25, 2021 the President issued a *Proclamation on the Suspension of Entry as Immigrants and Non-Immigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus Disease* whereby he reinstituted travel restriction for individuals traveling to the United States from the United Kingdom, Ireland, the Schengen Area, and instituted restrictions for South Africa.

In the light of these circumstances and direction from the President, and after consultation with public health officials, I, David P. Pekoske, Acting Secretary of Homeland Security, pursuant to the authority vested in me under section 101 of the Aviation and Transportation Security Act (ATSA), as codified at section 114(g) of title 49, United States Code (U.S.C.) do hereby determine that a national emergency exists and am directing the Transportation Security Administration to take actions consistent with the authorities in ATSA as codified at 49 U.S.C. sections 106(m) and 114(f), (g), (l), and (m) to implement the Executive Order to promote safety in and secure the transportation system. This includes supporting the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including

passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system, to the extent appropriate and consistent with applicable law.  I specifically direct the Transportation Security Administration to use its authority to accept the services of, provide services to, or otherwise cooperate with other federal agencies, including through the implementation of countermeasures with appropriate departments, agencies, and instrumentalities of the United States in order to address a threat to transportation, recognizing that such threat may involve passenger and employee safety.


_David P. Pekoske_ 1/27/2021

David P. Pekoske

Acting Secretary

Department of Homeland Security

The rapidly changing nature of the pandemic requires not only that CDC act swiftly, but also deftly to ensure that its actions are commensurate with the threat. This necessarily involves assessing evolving conditions that inform CDC's determinations.

The conditions that existed on September 4, 2020 have only worsened. As of January 21, 2021, there have been over 24,400,000 cases and over 400,000 deaths. Data collected by Princeton University show that eviction filings are occurring; it is therefore expected that large numbers of evictions would be processed if the Order were to expire. [*https://evictionlab.org/eviction-tracking*]. Without this Order, there is every reason to expect that evictions will increase significantly, resulting in further spread of COVID–19. It is imperative to act quickly to protect the public health, and it would be impracticable and contrary to the public interest to delay the issuance and effective date of the Order pending notice-and-comment rulemaking.

Similarly, if this Order qualifies as a rule under the APA, the Office of Information and Regulatory Affairs (OIRA) has determined that it would be a major rule under the Congressional Review Act (CRA). But there would not be a delay in its effective date. The agency has determined that for the same reasons, there would be good cause under the CRA to make the requirements herein effective immediately

If any provision of this Order, or the application of any provision to any persons, entities, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any persons, entities, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

This Order shall be enforced by federal authorities and cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18. However, this Order has no effect on the contractual obligations of renters to pay rent and shall not preclude charging or collecting fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract.

*Criminal Penalties*

Under 18 U.S.C. 3559, 3571; 42 U.S.C. 271; and 42 CFR 70.18, a person violating this Order may be subject to a fine of no more than $100,000 if the violation does not result in a death, or a fine of no more than $250,000 if the

violation results in a death, or as otherwise provided by law. An organization violating this Order may be subject to a fine of no more than $200,000 per event if the violation does not result in a death or $500,000 per event if the violation results in a death or as otherwise provided by law. The U.S. Department of Justice may initiate criminal proceedings as appropriate seeking imposition of these criminal penalties.

*Notice to Cooperating State and Local Officials*

Under 42 U.S.C. 243, the U.S. Department of Health and Human Services is authorized to cooperate with and aid state and local authorities in the enforcement of their quarantine and other health regulations and to accept state and local assistance in the enforcement of Federal quarantine rules and regulations, including in the enforcement of this Order.

*Notice of Available Federal Resources*

While this Order to prevent eviction is effectuated to protect the public health, the states and units of local government are reminded that the Federal Government has deployed unprecedented resources to address the pandemic, including housing assistance.

The Department of Housing and Urban Development (HUD) has informed CDC that all HUD grantees— states, cities, communities, and nonprofits—who received Emergency Solutions Grants (ESG) or Community Development Block Grant (CDBG) funds under the CARES Act may use these funds to provide temporary rental assistance, homelessness prevention, or other aid to individuals who are experiencing financial hardship because of the pandemic and are at risk of being evicted, consistent with applicable laws, regulations, and guidance.

HUD has further informed CDC that: HUD's grantees and partners play a critical role in prioritizing efforts to support this goal. As grantees decide how to deploy CDBG–CV and ESG–CV funds provided by the CARES Act, all communities should assess what resources have already been allocated to prevent evictions and homelessness through temporary rental assistance and homelessness prevention, particularly to the most vulnerable households.

HUD stands at the ready to support American communities take these steps to reduce the spread of COVID–19 and maintain economic prosperity. Where gaps are identified, grantees should coordinate across available Federal, non-Federal, and philanthropic funds to ensure these critical needs are

sufficiently addressed and utilize HUD 's technical assistance to design and implement programs to support a coordinated response to eviction prevention needs. For program support, including technical assistance, please visit *www.hudexchange.info/program-support*. For further information on HUD resources, tools, and guidance available to respond to the COVID–19 pandemic, state and local officials are directed to visit *https://www.hud.gov/coronavirus*. These tools include toolkits for Public Housing Authorities and Housing Choice Voucher landlords related to housing stability and eviction prevention, as well as similar guidance for owners and renters in HUD-assisted multifamily properties.

Similarly, the Department of the Treasury has informed CDC that the funds allocated through the Coronavirus Relief Fund and the Emergency Rental Assistance Program may be used to fund rental assistance programs to prevent eviction. Visit *https://home.treasury.gov/policy-issues/cares/state-and-local-governments* for more information about the Coronavirus Relief Fund and *https://home.treasury.gov/policy-issues/cares/emergency-rental-assistance-program* for more information about the Emergency Rental Assistance Program..

*Effective Date*

This Order is effective on January 31, 2021 and will remain in effect, unless extended, modified, or rescinded, through March 31, 2021.

**Authority**

The authority for this Order is Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2.

Dated: January 29, 2021.

**Sherri Berger**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02243 Filed 1–29–21; 4:15 pm]

**BILLING CODE 4163–18–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Disease Control and Prevention**

**Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs**

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of Agency Order.

**SUMMARY:** The Centers for Disease Control and Prevention (CDC), a component of the U.S. Department of Health and Human Services (HHS), announces an Agency Order requiring persons to wear masks over the mouth and nose when traveling on any conveyance (*e.g.*, airplanes, trains, subways, buses, taxis, ride-shares, ferries, ships, trolleys, and cable cars) into or within the United States. A person must also wear a mask on any conveyance departing from the United States until the conveyance reaches its foreign destination. Additionally, a person must wear a mask while at any transportation hub within the United States (*e.g.*, airport, bus terminal, marina, train station, seaport or other port, subway station, or any other area that provides transportation within the United States). Furthermore, operators of conveyances and transportation hubs must use best efforts to ensure that persons wear masks as required by this Order.

**DATES:** This Order takes effect at 11:59 p.m. Monday February 1, 2021.

**FOR FURTHER INFORMATION CONTACT:** Jennifer Buigut, Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H16–4, Atlanta, GA 30329. Email: *dgmqpolicyoffice@ cdc.gov*.

**SUPPLEMENTARY INFORMATION:** The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Some people without symptoms also spread the virus. In general, the more closely a person interacts with others and the longer that interaction, the higher the risk of COVID–19 spread.

This Order is issued to preserve human life; maintain a safe and operating transportation system; mitigate the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and support response efforts to COVID–19 at the Federal, state, local, territorial, and tribal level.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

This Order will remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

A copy of the Order is provided below and a copy of the signed order can be found at *https://www.cdc.gov/ quarantine/masks/mask-travel-guidance.html*

**CENTERS FOR DISEASE CONTROL AND PREVENTION**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**ORDER UNDER SECTION 361**

**OF THE PUBLIC HEALTH SERVICE ACT (42 U.S.C. 264)**

**AND 42 CODE OF FEDERAL REGULATIONS 70.2, 71.31(b), 71.32(b)**

**REQUIREMENT FOR PERSONS TO WEAR MASKS**

**WHILE ON CONVEYANCES AND AT TRANSPORTATION HUBS**

*SUMMARY:*

Notice and Order; and subject to the limitations under "Applicability," pursuant to 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b):

(1) Persons [1] must wear [2] masks over the mouth and nose when traveling on conveyances into and within the United States. Persons must also wear masks at transportation hubs as defined in this Order.

(2) A conveyance operator transporting persons into and within the United States [3] must require all persons onboard to wear masks for the duration of travel.

(3) A conveyance operators operating a conveyance arriving at or departing from a U.S. port of entry must require all persons on board to wear masks for the duration of travel as a condition of controlled free pratique.[4]

(4) Conveyance operators must use best efforts to ensure that any person on the conveyance wears a mask when boarding, disembarking, and for the duration of travel. Best efforts include:

• Boarding only those persons who wear masks;

• instructing persons that Federal law requires wearing a mask on the conveyance and failure to comply constitutes a violation of Federal law;

• monitoring persons onboard the conveyance for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, disembarking any person who refuses to comply; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance of the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

(5) Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask. Best efforts include:

• Allowing entry only to those persons who wear masks;

• instructing persons that Federal law requires wearing a mask in the transportation hub and failure to comply constitutes a violation of Federal law;

• monitoring persons on the premises of the transportation hub for anyone who is not wearing a mask and seeking compliance from such persons;

• at the earliest opportunity, removing any person who refuses to comply from the premises of the transportation hub; and

• providing persons with prominent and adequate notice to facilitate awareness and compliance with the requirement of this Order to wear a mask; best practices may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or

---

[1] As used in this Order, "persons" includes travelers (*i.e.*, passengers and crew), conveyance operators, and any workers or service providers in the transportation hub.

[2] To "wear a mask" means to wear a mask over the nose and mouth.

[3] This includes international, interstate, or intrastate waterways, subject to the jurisdiction of the United States.

[4] As a condition of this controlled free pratique to commence or continue operations in the United States, conveyance operators must additionally require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons on the conveyance (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. This precaution must be followed regardless of scheduled itinerary.

email; posted signage in multiple languages with illustrations; printing the requirement on transit tickets; or other methods as appropriate.

*DEFINITIONS:*

*Controlled free pratique* shall have the same definition as under 42 CFR 71.1, meaning "permission for a carrier to enter a U.S. port, disembark, and begin operation under certain stipulated conditions."

*Conveyance* shall have the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle,[5] vessel . . . or other means of transport, including military." Included in the definition of "conveyance" is the term "carrier" which under 42 CFR 71.1 has the same definition as conveyance under 42 CFR 70.1.

*Conveyance operator* means an individual operating a conveyance and an individual or organization causing or authorizing the operation of a conveyance.

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[6]

*Interstate traffic* shall have the same definition as under 42 CFR 70.1, meaning

"(1):

(i) The movement of any conveyance or the transportation of persons or property, including any portion of such movement or transportation that is entirely within a state or possession—

(ii) From a point of origin in any state or possession to a point of destination in any other state or possession; or

(iii) Between a point of origin and a point of destination in the same state or possession but through any other state, possession, or contiguous foreign country.

(2) Interstate traffic does not include the following:

(i) The movement of any conveyance which is solely for the purpose of unloading persons or property transported from a foreign country or loading persons or property for transportation to a foreign country.

(ii) The movement of any conveyance which is solely for the purpose of effecting its repair, reconstruction, rehabilitation, or storage."

*Intrastate traffic* means the movement of any conveyance or the transportation or movement of persons occurring solely within the boundaries of a state or territory, or on tribal land.

*Possession* shall have the same definition as under 42 CFR 70.1 and 71.1, meaning a "U.S. territory."

*State* shall have the same definition as under 42 CFR 70.1, meaning "any of the 50 states, plus the District of Columbia."

*Territory* shall have the same definition as "U.S. territory" under 42 CFR 70.1 and 71.1, meaning "any territory (also known as possessions) of the United States, including American Samoa, Guam, the [Commonwealth of the] Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands."

*Transportation hub* means any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

*Transportation hub operator* means an individual operating a transportation hub and an individual or organization causing or authorizing the operation of a transportation hub.

*U.S. port* shall have the same definition as under 42 CFR 71.1, meaning any "seaport, airport, or border crossing point under the control of the United States."

*STATEMENT OF INTENT:*

This Order shall be interpreted and implemented in a manner as to achieve the following objectives:
• Preservation of human life;
• Maintaining a safe and secure operating transportation system;
• Mitigating the further introduction, transmission, and spread of COVID–19 into the United States and from one state or territory into any other state or territory; and
• Supporting response efforts to COVID–19 at the Federal, state, local, territorial, and tribal levels.

*APPLICABILITY:*

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe that (1) requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Such

requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In addition, the requirement to wear a mask shall not apply under the following circumstances:
• While eating, drinking, or taking medication, for brief periods;
• While communicating with a person who is hearing impaired when the ability to see the mouth is essential for communication;
• If, on an aircraft, wearing of oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation;
• If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance;[7] or
• When necessary to temporarily remove the mask to verify one's identity such as during Transportation Security Administration screening or when asked to do so by the ticket or gate agent or any law enforcement official.

This Order exempts the following categories of persons:[8]
• A child under the age of 2 years;
• A person with a disability who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 *et seq.*).[9]

---

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Operators of conveyances or transportation hubs may impose requirements, or conditions for carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the operator, as well as require evidence that the person does not have COVID–19 such as a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19. CDC definitions for SARS–CoV–2 viral test and documentation of recovery are available in the Frequently Asked Questions at: *https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.* Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub. Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask

Continued

---

[5] This includes rideshares meaning arrangements where passengers travel in a privately owned road vehicle driven by its owner in connection with a fee or service.

[6] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N–95 respirators fulfill the requirements of this Order. CDC guidance for attributes of acceptable masks in the context of this Order is available at: *https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.*

• A person for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

This Order exempts the following categories of conveyances, including persons on board such conveyances:

• Private conveyances operated solely for personal, non-commercial use;

• Commercial motor vehicles or trucks as these terms are defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle or truck;

• Conveyances operated or chartered by the U.S. military services provided that such conveyance operators observe Department of Defense precautions to prevent the transmission of COVID–19 that are equivalent to those in this Order.

This Order applies to persons on conveyances and at transportation hubs directly operated by U.S. state, local, territorial, or tribal government authorities, as well as the operators themselves. U.S. state, local, territorial, or tribal government authorities directly operating conveyances and transportation hubs may be subject to additional federal authorities or actions, and are encouraged to implement additional measures enforcing the provisions of this Order regarding persons traveling onboard conveyances and at transportation hubs operated by these government entities.

To the extent permitted by law, and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel),[10] Federal agencies are required to implement additional measures enforcing the provisions of this Order.

*BACKGROUND:*

There is currently a pandemic of respiratory disease (coronavirus disease 2019 or "COVID–19") caused by a novel coronavirus (SARS–CoV–2). As of January 27, 2021, there have been 99,638,507 confirmed cases of COVID–19 globally, resulting in more than 2,141,000 deaths. As of January 27, 2021, there have been over 25,000,000 cases identified in the United States and over 415,000 deaths due to the disease. New SARS–CoV–2 variants have emerged in recent weeks, including at

for reasons related to the disability. CDC will issue additional guidance regarding persons who cannot wear a mask under this exemption. *https:// www.cdc.gov/quarantine/masks/mask-travel-guidance.html*.

[10] *https://www.whitehouse.gov/briefing-room/ presidential-actions/2021/01/21/executive-order-promoting-covid-19-safety-in-domestic-and-international-travel/*.

least one with evidence of increased transmissibility.[11]

The virus that causes COVID–19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet) mainly through respiratory droplets produced when an infected person coughs, sneezes, or talks. These droplets can land in the mouths, eyes, or noses of people who are nearby and possibly be inhaled into the lungs. Infected people without symptoms (asymptomatic) and those in whom symptoms have not yet developed (pre-symptomatic) can also spread the virus. In general, the more closely an infected person interacts with others and the longer those interactions, the higher the risk of COVID–19 spread. COVID–19 may be transmitted by touching surfaces or objects that have the virus on them and then touching one's own or another person's eyes, nose, or mouth.

Masks help prevent people who have COVID–19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others.[12] Masks are primarily intended to reduce the emission of virus-laden droplets, *i.e.,* they act as source control by blocking exhaled virus.[13] This is especially relevant for asymptomatic or pre-symptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions.[14][15] Masks also provide personal protection to the wearer by reducing inhalation of these droplets, *i.e.,* they reduce wearers' exposure through filtration.[16] The community benefit of wearing masks for SARS–CoV–2 control is due to the combination of these effects; individual prevention benefit increases with increasing

[11] *https://www.cdc.gov/coronavirus/2019-ncov/ more/science-and-research/scientific-brief-emerging-variants.html*.

[12] *https://www.cdc.gov/coronavirus/2019-ncov/ more/masking-science-sars-cov2.html*.

[13] Leung NHL, Chu DKW, Shiu EYC, et al. Respiratory virus shedding in exhaled breath and efficacy of face masks. *Nature Medicine*. 2020;26(5):676–680.*https://dx.doi.org/10.1038/ s41591-020-0843-2*.

[14] Moghadas SM, Fitzpatrick MC, Sah P, et al. The implications of silent transmission for the control of COVID–19 outbreaks. *Proc Natl Acad Sci U S A*. 2020;117(30):17513–17515.10.1073/ pnas.2008373117. *https://www.ncbi.nlm.nih.gov/ pubmed/32632012*.

[15] Johansson MA, Quandelacy TM, Kada S, et al. SARS–CoV–2 Transmission From People Without COVID–19 Symptoms. Johansson MA, et al. JAMA Netw Open. 2021 Jan 4;4(1):e2035057. doi: 10.1001/ jamanetworkopen.2020.35057.

[16] Ueki H, Furusawa Y, Iwatsuki-Horimoto K, et al. Effectiveness of Face Masks in Preventing Airborne Transmission of SARS–CoV–2. *mSphere*. 2020;5(5).10.1128/mSphere.00637–20. *https:// www.ncbi.nlm.nih.gov/pubmed/33087517*.

numbers of people using masks consistently and correctly.

Appropriately worn masks reduce the spread of COVID–19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID–19. Seven studies have confirmed the benefit of universal masking in community level analyses: in a unified hospital system,[17] a German city,[18] a U.S. State,[19] a panel of 15 U.S. States and Washington, DC,[20][21] as well as both Canada[22] and the United States[23] nationally. Each analysis demonstrated that, following directives from organizational and political leadership for universal masking, new infections fell significantly. Two of these studies[24][25] and an additional analysis of data from 200 countries that included localities within the United States[26] also demonstrated reductions in

[17] Wang X, Ferro EG, Zhou G, Hashimoto D, Bhatt DL. Association Between Universal Masking in a Health Care System and SARS–CoV–2 Positivity Among Health Care Workers. *JAMA*. 2020.10.1001/ jama.2020.12897. *https://www.ncbi.nlm.nih.gov/ pubmed/32663246*.

[18] Mitze T., Kosfeld R., Rode J., Wälde K. *Face Masks Considerably Reduce COVID–19 Cases in Germany: A Synthetic Control Method Approach.* IZA—Institute of Labor Economics (Germany);2020.ISSN: 2365–9793, DP No. 13319. *http://ftp.iza.org/dp13319.pdf*.

[19] Gallaway MS, Rigler J, Robinson S, et al. Trends in COVID–19 Incidence After Implementation of Mitigation Measures—Arizona, January 22-August 7, 2020. *MMWR Morb Mortal Wkly Rep.* 2020;69(40):1460–1463.10.15585/ mmwr.mm6940e3. *https://www.ncbi.nlm.nih.gov/ pubmed/33031366*.

[20] Lyu W, Wehby GL. Community Use Of Face Masks And COVID–19: Evidence From A Natural Experiment Of State Mandates In The US. *Health Aff (Millwood)*. 2020;39(8):1419–1425.10.1377/ hlthaff.2020.00818. *https://www.ncbi.nlm.nih.gov/ pubmed/32543923*.

[21] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https:// www.goldmansachs.com/insights/pages/face-masks-and-gdp.html*. Accessed January 20, 2021.

[22] Karaivanov A., Lu SE, Shigeoka H., Chen C., Pamplona S. *Face Masks, Public Policies and Slowing the Spread of Covid–19: Evidence from Canada* National Bureau of Economic Research 2020. Working Paper 27891. *http://www.nber.org/ papers/w27891*.

[23] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/ j.jeconom.2020.09.003. Epub 2020 Oct 17.

[24] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https:// www.goldmansachs.com/insights/pages/face-masks-and-gdp.html*. Accessed January 20, 2021.

[25] Chernozhukov V, Kasahara H, Schrimpf P. Causal Impact of Masks, Policies, Behavior on Early Covid–19 Pandemic in the U.S. J Econom. 2021 Jan;220(1):23–62. doi: 10.1016/ j.jeconom.2020.09.003. Epub 2020 Oct 17.

[26] Leffler CT, Ing EB, Lykins JD, Hogan MC, McKeown CA, Grzybowski A. Association of country-wide coronavirus mortality with demographics, testing, lockdowns, and public wearing of masks. Am J Trop Med Hyg. 2020 Dec;103(6):2400–2411. doi: 10.4269/ajtmh.20–1015. Epub 2020 Oct 26.

mortality. An economic analysis using U.S. data found that, given these effects, increasing universal masking by 15% could prevent the need for lockdowns and reduce associated losses of up to $1 trillion or about 5% of gross domestic product.[27]

Wearing a mask especially helps protect those at increased risk of severe illness from COVID–19[28] and workers who frequently come into close contact with other people (*e.g.,* at transportation hubs). Masks are most likely to reduce the spread of COVID–19 when they are widely used by people in public settings. Using masks along with other preventive measures, including social distancing, frequent handwashing, and cleaning and disinfecting frequently touched surfaces, is one of the most effective strategies available for reducing COVID–19 transmission.

Traveling on multi-person conveyances increases a person's risk of getting and spreading COVID–19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces. Air travel often requires spending time in security lines and crowded airport terminals. Social distancing may be difficult if not impossible on flights. People may not be able to distance themselves by the recommended 6 feet from individuals seated nearby or those standing in or passing through the aircraft's aisles. Travel by bus, train, vessel, and other conveyances used for international, interstate, or intrastate transportation pose similar challenges.

Intrastate transmission of the virus has led to—and continues to lead to—interstate and international spread of the virus, particularly on public conveyances and in travel hubs, where passengers who may themselves be traveling only within their state or territory commonly interact with others traveling between states or territories or internationally. Some states, territories, Tribes, and local public health authorities have imposed mask-wearing requirements within their jurisdictional boundaries to protect public health.[29]

Any state or territory without sufficient mask-wearing requirements for transportation systems within its jurisdiction has not taken adequate measures to prevent the spread of COVID–19 from such state or territory to any other state or territory. That determination is based on, *inter alia,* the rapid and continuing transmission of the virus across all states and territories and across most of the world. Furthermore, given how interconnected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wearing masks.

Therefore, I have determined that the mask-wearing requirements in this Order are reasonably necessary to prevent the further introduction, transmission, or spread of COVID–19 into the United States and among the states and territories. Individuals traveling into or departing from the United States, traveling interstate, or traveling entirely intrastate, conveyance operators that transport such individuals, and transportation hub operators that facilitate such transportation, must comply with the mask-wearing requirements set forth in this Order.

America's transportation systems are essential. Not only are they essential for public health, they are also essential for America's economy and other bedrocks of American life. Those transportation systems carry life-saving medical supplies and medical providers into and across the nation to our hospitals, nursing homes, and physicians' offices. Trains, planes, ships, and automobiles bring food and other essentials to our communities and to our homes. Buses bring America's children and teachers to school. Buses, trains, and subways, bring America's workforce to their jobs.

Requiring masks on our transportation systems will protect Americans and provide confidence that we can once again travel safely even during this pandemic. Therefore, requiring masks will help us control this pandemic and aid in re-opening America's economy.

The United States and countries around the world are currently embarking on efforts to vaccinate their populations, starting with healthcare personnel and other essential workers at increased risk of exposure to SARS–

CoV–2 and people at increased risk for severe illness from the virus. While vaccines are highly effective at preventing severe or symptomatic COVID–19, at this time there is limited information on how much the available COVID–19 vaccines may reduce transmission in the general population and how long protection lasts.[30] Therefore, this mask requirement, as well as CDC recommendations to prevent spread of COVID–19,[31] additionally apply to vaccinated persons. Similarly, CDC recommends that people who have recovered from COVID–19 continue to take precautions to protect themselves and others, including wearing masks;[32] therefore, this mask requirement also applies to people who have recovered from COVID–19.

*ACTION:*

Until further notice, under 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), and 71.32(b), unless excluded or exempted as set forth in this Order, a person must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States. A person must also wear a mask at any transportation hub that provides transportation within the United States.

Conveyance operators traveling into or within the United States may transport only persons wearing masks and must use best efforts to ensure that masks are worn when embarking, disembarking, and throughout the duration of travel. Operators of transportation hubs must use best efforts to ensure that any person entering or on the premises of the transportation hub wears a mask.

As a condition of receiving controlled free pratique under 42 CFR 71.31(b) to enter a U.S. port, disembark passengers, and begin operations at any U.S. port of entry, conveyances arriving into the United States must require persons to wear masks while boarding, disembarking, and for the duration of travel. Conveyance operators must also require all persons to wear masks while boarding and for the duration of their travel on board conveyances departing from the United States until the conveyance arrives at the foreign destination, if at any time any of the persons onboard (passengers, crew, or conveyance operators) will return to the United States while this Order remains in effect. These travel conditions are

---

[27] Hatzius J, Struyven D, Rosenberg I. Face Masks and GDP. *Goldman Sachs Research https:// www.goldmansachs.com/insights/pages/face-masks-and-gdp.html.* Accessed January 20, 2021.

[28] *https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/index.html.*

[29] Based on internet sources, 37 states plus DC and Puerto Rico mandate the wearing of masks in public. Among the jurisdictions that have imposed mask mandates, variations in requirements exist. For example, exemptions for children range in cutoff age from 2 to 12, but masks are generally required in indoor public spaces such as restaurants and stores, on public transit and ride-hailing services, and outdoors when unable to maintain 6

feet of distance from others. *See https:// www.aarp.org/health/healthy-living/info-2020/ states-mask-mandates-coronavirus.html* (accessed January 28, 2021).

[30] *https://www.cdc.gov/vaccines/covid-19/info-by-product/clinical-considerations.html.*

[31] *https://www.cdc.gov/coronavirus/2019-ncov/ prevent-getting-sick/prevention.html.*

[32] *https://www.cdc.gov/coronavirus/2019-ncov/ hcp/duration-isolation.html.*

necessary to mitigate the harm of further introduction of COVID–19 into the United States.

Requiring a properly worn mask is a reasonable and necessary measure to prevent the introduction, transmission and spread of COVID–19 into the United States and among the states and territories under 42 U.S.C. 264(a) and 42 CFR 71.32(b). Among other benefits, masks help prevent dispersal of an infected person's respiratory droplets that carry the virus. That precaution helps prevent droplets from landing in the eye, mouth, or nose or possibly being inhaled into the lungs of an uninfected person, or from landing on a surface or object that an uninfected person may then touch and then touch his or her own or another's eyes, nose, or mouth. Masks also provide some protection to the wearer by helping reduce inhalation of respiratory droplets.

This Order shall not apply within any state, locality, territory, or area under the jurisdiction of a Tribe, where the controlling governmental authority: (1) Requires a person to wear a mask on conveyances; (2) requires a person to wear a mask at transportation hubs; and (3) requires conveyances to transport only persons wearing masks. Those requirements must provide the same level of public health protection as—or greater protection than—the requirements listed herein.

In accordance with 42 U.S.C. 264(e), state, local, territorial, and tribal authorities may impose additional requirements that provide greater public health protection and are more restrictive than the requirements in this Order. Consistent with other federal, state, or local legal requirements, this Order does not preclude operators of conveyances or transportation hubs from imposing additional requirements, or conditions for carriage, that provide greater public health protection and are more restrictive than the requirements in this Order (*e.g.,* requiring a negative result from a SARS–CoV–2 viral test or documentation of recovery from COVID–19 or imposing requirements for social distancing or other recommended protective measures).

This Order is not a rule within the meaning of the Administrative Procedure Act ("APA") but rather is an emergency action taken under the existing authority of 42 U.S.C. 264(a) and 42 CFR 70.2, 71.31(b), 71.32(b). In the event that a court determines this Order qualifies as a rule under the APA, notice and comment and a delay in effective date are not required because there is good cause to dispense with prior public notice and comment and

the opportunity to comment on this Order and the delay in effective date. Considering the public health emergency caused by COVID–19, it would be impracticable and contrary to the public's health, and by extension the public's interest, to delay the issuance and effective date of this Order. Similarly, the Office of Information and Regulatory Affairs has determined that if this Order were a rule, it would be a major rule under the Congressional Review Act, but there would not be a delay in its effective date as the agency has determined that there would be good cause to make the requirements herein effective immediately under the APA.

This order is also an economically significant regulatory action under Executive Order 12866 and has therefore been reviewed by the Office of Information and Regulatory Affairs of the Office of Management and Budget. The agency is proceeding without the complete analysis required by Executive Order 12866 under the emergency provisions of 6(a)(3)(D) of that Order.

If any provision of this Order, or the application of any provision to any carriers, conveyances, persons, or circumstances, shall be held invalid, the remainder of the provisions, or the application of such provisions to any carriers, conveyances, persons, or circumstances other than those to which it is held invalid, shall remain valid and in effect.

To address the COVID–19 public health threat to transportation security, this Order shall be enforced by the Transportation Security Administration under appropriate statutory and regulatory authorities including the provisions of 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR part 1503, 1540.105, 1542.303, 1544.305 and 1546.105.

This Order shall be further enforced by other federal authorities and may be enforced by cooperating state and local authorities through the provisions of 18 U.S.C. 3559, 3571; 42 U.S.C. 243, 268, 271; and 42 CFR 70.18 and 71.2.[33]

*EFFECTIVE DATE:*

This Order shall enter into effect on February 1, 2021, at 11:59 p.m. and will

[33] While this Order may be enforced and CDC reserves the right to enforce through criminal penalties, CDC does not intend to rely primarily on these criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance as well as support from other federal agencies in implementing additional civil measures enforcing the provisions of this Order, to the extent permitted by law and consistent with President Biden's Executive Order of January 21, 2021 (Promoting COVID–19 Safety in Domestic and International Travel).

remain in effect unless modified or rescinded based on specific public health or other considerations, or until the Secretary of Health and Human Services rescinds the determination under section 319 of the Public Health Service Act (42 U.S.C. 247d) that a public health emergency exists.

Dated: February 1, 2021.

**Sherri Berger,**

*Acting Chief of Staff, Centers for Disease Control and Prevention.*

[FR Doc. 2021–02340 Filed 2–1–21; 4:15 pm]

**BILLING CODE 4163–18–P**

---

**DEPARTMENT OF THE INTERIOR**

**Geological Survey**

**[GX20EG31DW50100; OMB Control Number 1028-New]**

**Agency Information Collection Activities; Hydrography Addressing tool**

**AGENCY:** U.S. Geological Survey, Interior.

**ACTION:** Notice of Information Collection; request for comment.

**SUMMARY:** In accordance with the Paperwork Reduction Act of 1995, we, the U.S. Geological Survey (USGS) are proposing a new information collection.

**DATES:** Interested persons are invited to submit comments on or before April 5, 2021.

**ADDRESSES:** Send your comments on this information collection request (ICR) by mail to U.S. Geological Survey, Information Collections Officer, 12201 Sunrise Valley Drive MS 159, Reston, VA 20192; or by email to *gs-info_collections@usgs.gov.* Please reference OMB Control Number 1028–xxxx in the subject line of your comments.

**FOR FURTHER INFORMATION CONTACT:** To request additional information about this ICR, contact Michael Tinker by email at *mdtinker@usgs.gov* or by telephone at 303–202–4476.

**SUPPLEMENTARY INFORMATION:** In accordance with the Paperwork Reduction Act of 1995, we provide the general public and other Federal agencies with an opportunity to comment on new, proposed, revised, and continuing collections of information. This helps us assess the impact of our information collection requirements and minimize the public's reporting burden. It also helps the public understand our information collection requirements and provide the requested data in the desired format.

We are soliciting comments on the proposed ICR that is described below.

tsa.gov

# TSA to implement Executive Order regarding face masks at airport security checkpoints and throughout the transportation network

5-6 minutes

---

(Español | Simplified Chinese | Traditional Chinese)

**UPDATE**: Regarding the civil penalty fine structure for individuals who violate the Security Directive, TSA will recommend a fine ranging from $250 for the first offense up to $1,500 for repeat offenders. Based on substantial aggravating or mitigating factors, TSA may seek a sanction amount that falls outside these ranges. TSA has provided transportation system operators specific guidance on how to report violations so that TSA may issue penalties to those who refuse to wear a face mask.

WASHINGTON – The Transportation Security Administration (TSA) will implement provisions of President Biden's Executive Order on Promoting COVID-19 Safety in Domestic and International Travel by requiring travelers to wear face masks when they are in airports, bus and rail stations, as well as while on passenger aircraft, public transportation, passenger railroads, and over-the-road buses operating on scheduled fixed-routes. TSA's action will also support the Centers for Disease Control and Prevention (CDC) Emergency Order requiring that individuals wear masks on conveyances and at stations, ports, or similar transportation hubs.

Starting on February 2, 2021, TSA will require individuals to wear a mask at TSA airport screening checkpoints and throughout the commercial and public transportation systems. This requirement will remain effective until May 11, 2021.

"TSA will fully comply with the President's Executive Orders, CDC guidance and the DHS National Emergency determination to ensure healthy and secure travel across all transportation sectors. This will help prevent further spread of COVID-19 and encourage a unified government response," said Darby LaJoye, Senior Official Performing the Duties of the TSA Administrator. "As we continue to experience impacts from this pandemic, we are committed to this measure as the right thing to do for the TSA workforce, for our industry stakeholders and for passengers."

The federal face mask requirement extends to the nation's domestic network of airports; passengers and crewmembers flying aboard airplanes operated by domestic and foreign air carriers with inbound flights to U.S. ports of entry; and surface transportation modes, such as passenger rail, bus systems, and over-the-road bus companies. Passengers without a mask may be denied entry, boarding, or continued transport. Failure to comply with the mask requirement can result in civil penalties.

Whether beginning the security screening process at the airport Travel Document Checker (TDC) or submitting checked baggage for screening, all passengers who appear to be over the age of 2 must properly wear a face mask throughout the security screening process. The officer at the TDC will request that travelers temporarily lower the mask to verify their identity. Those who approach the TDC without a mask will be asked to wear or obtain one to proceed. Passengers who refuse to wear a

mask will not be permitted to enter the secure area of the airport, which includes the terminal and gate area. Depending on the circumstance, those who refuse to wear a mask may be subject to a civil penalty for attempting to circumvent screening requirements, interfering with screening personnel, or a combination of those offenses.

According to the CDC Order, face masks should cover the nose and mouth and fit snugly against the sides without gaps. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. While medical masks and N-95 respirators fulfill CDC and TSA's requirements, face shields and/or goggles are not an acceptable substitute for the use of a mask; however, they may be used in addition to an acceptable mask.

In developing implementing guidance, TSA collaborated with stakeholders in identifying certain exemptions to the face mask requirement. Exemptions include travelers under the age of 2 years old, those with a disability who cannot wear a mask, or cannot safely wear a mask because of the disability as defined by the Americans with Disabilities Act, and those for whom a mask would create a risk to workplace health, safety, or job duty as determined by relevant workplace safety guidelines or federal regulations. Visit TSA.gov for more information about face mask requirements.

TSA Cares is a helpline that provides airline passengers with disabilities, medical conditions and other special circumstances additional assistance during the airport security screening process. Call them at (855) 787-2227 about 72 hours prior to traveling with any questions about screening policies, procedures and what to expect at the security checkpoint.

All commuters and airline travelers, including persons considering international travel, should first check the CDC website prior to taking their trip.

Throughout the pandemic, TSA has closely coordinated COVID-19 safeguards with industry stakeholders, federal partners, and local law enforcement. This coordination will continue for swift and consistent implementation of this requirement across the transportation network.

###

UNITED STATES OF AMERICA
DEPARTMENT OF TRANSPORTATION
OFFICE OF THE SECRETARY
WASHINGTON, D.C.

---

NOTICE OF ENFORCEMENT POLICY:
ACCOMMODATION BY CARRIERS OF PERSONS WITH DISABILITIES
WHO ARE UNABLE TO WEAR OR SAFELY WEAR MASKS WHILE ON
COMMERCIAL AIRCRAFT

---

The Office of Aviation Consumer Protection (OACP), a unit within the Office of the General Counsel of the U.S. Department of Transportation (DOT or the Department), is issuing this Notice of Enforcement Policy to remind U.S. and foreign air carriers of their legal obligation to accommodate the needs of passengers with disabilities when developing procedures to implement the Federal mandate on the use of masks to mitigate the public health risks associated with the Coronavirus Disease 2019 (COVID-19).  OACP will exercise its prosecutorial discretion and provide airlines 45 days from the date of this notice to be in compliance with their obligation under the Air Carrier Access Act (ACAA)[1] and the Department's implementing regulation in 14 CFR Part 382 (Part 382) to provide reasonable accommodations to persons with disabilities who are unable to wear or safely wear masks, so long as the airlines demonstrate that they began the process of compliance as soon as this notice was issued.

To carry out the Executive Order on Promoting COVID-19 Safety in Domestic and International Travel (Executive Order),[2] the Centers for Disease Control and Prevention (CDC) issued an order on January 29, 2021 (CDC Order)[3] that, among other things, requires U.S. and foreign air carriers to use their best efforts to ensure that persons on flights to, within, or from[4] the United States wear a mask for the duration of travel, including when boarding and disembarking aircraft. The CDC Order exempts certain categories of persons from the mask-wearing mandate, including a person with a disability who cannot wear a mask, or who cannot safely wear a mask

---

[1] The ACAA, signed into law in 1986, prohibits discrimination by airlines against individuals with disabilities in commercial air transportation.  The Americans with Disabilities Act, signed into law after the ACAA in 1990, prohibits discrimination against individuals with disabilities in employment, state or local government, public accommodations, commercial facilities, telecommunications, and transportation other than by commercial airlines.

[2] Exec. Order No. 13998, 86 FR 7205 (Jan. 26, 2021).

[3] Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2, 71.31(b), 71.32(b): Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs (CDC Order), *available at* https://www.cdc.gov/quarantine/pdf/Mask-Order-CDC_GMTF_01-29-21-p.pdf.

[4] CDC Order specifies that "[c]onveyance operators must also require all persons to wear masks on board conveyances departing from the United States and for the duration of their travel until the conveyance arrives at the foreign destination if at any time any of the persons onboard (passengers or conveyance operators) will return to the United States while this Order remains in effect." CDC Order at 9.

---

because of the disability.[5]  However, it allows airlines to impose requirements or conditions for carriage on the categories of persons exempted from the mask mandate, whether the person is a child under the age of two, a person for whom wearing a mask would create a risk to workplace safety, health, or job duty, or a person with a disability who is unable to wear or safely wear a mask because of the disability.  Additionally, on January 31, 2021, the Transportation Security Administration (TSA) issued a Security Directive (SD) to aircraft operators on face mask requirements to implement the Executive Order and to support enforcement of the CDC Order mandating masks.[6]  The Department supports actions by the airline industry to have procedures in place requiring passengers to wear masks in accordance with the CDC Order, CDC guidance, and TSA SD.  At the same time, the ACAA and Part 382, which are enforced by OACP, require airlines to make reasonable accommodations, based on individualized assessments, for passengers with disabilities who are unable to wear or safely wear a mask due to their disability. This Notice sets forth the enforcement policy that OACP will apply in determining, on a prospective basis, whether airlines are complying with the requirements of the ACAA and Part 382 when implementing procedures requiring mask-wearing by passengers.

<u>Background</u>

SARS-CoV-2, the virus that causes COVID-19, spreads most often when an infected person coughs, sneezes, or talks, and droplets from the infected individual's mouth or nose are spread through the air and come in contact with people nearby.[7]  Persons with COVID-19 infection may have symptoms of fever, cough, or shortness of breath,[8] or they may be asymptomatic[9] or pre-symptomatic[10] but still able to spread the virus.[11]  CDC has made clear that appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19.[12]

---

[5] CDC Order at 4 and 5 (noting that this is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to disability).

[6] TSA Security Directive 1544-21-02: Security Measures – Face Mask Requirements (January 31, 2021).

[7] *See* Ctrs. for Disease Control & Prevention, *How COVID Spreads*, CDC.gov (last updated Oct. 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html; Ctrs. for Disease Control & Prevention, *Considerations for Wearing Masks*, CDC.gov (last updated Dec. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.

[8] Ctrs. for Disease Control & Prevention, *Symptoms of Coronavirus*, CDC.gov (last updated Dec. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

[9] An asymptomatic case is an individual infected with SARS-CoV-2, who does not exhibit symptoms during the course of infection.   Ctrs. for Disease Control & Prevention, *COVID-19 Pandemic Planning Scenarios*, CDC.gov (last updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

[10] A pre-symptomatic case of COVID-19 is an individual infected with SARS-CoV-2, who has not exhibited symptoms at the time of testing, but who later exhibits symptoms during the course of the infection.  *COVID-19 Pandemic Planning Scenarios*, *supra* note 8.

[11] *See How COVID Spreads* and *Considerations for Wearing Masks*, *supra* note 6.

[12] CDC Order at 6.

As of January 27, 2021, there have been over 99 million confirmed cases of COVID-19 globally and over 25 million confirmed cases of COVID-19 in the United States, with over 2 million deaths globally and over 400,000 deaths in the United States due to the disease.[13]  To slow the spread of COVID-19, on January 21, 2021, President Biden issued Executive Order 13998, which directs the heads of certain Federal agencies to take immediate actions to require mask-wearing in domestic and international transportation.  The Executive Order further provides that the heads of agencies may make categorical or case-by-case exceptions to policies developed under the order, consistent with applicable law, to the extent that doing so is necessary or required by law.

Pursuant to the Executive Order, on January 29, 2021, CDC issued an order directing conveyance operators, which includes airlines, to use best efforts to ensure that any person on the conveyance, such as an aircraft, wears a mask when boarding, disembarking, and for the duration of travel.  Recognizing that there are specific instances when wearing a mask may not be feasible, the CDC Order exempts several categories of persons from the mask mandate, including "a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.)."  The Americans with Disabilities Act (ADA) defines a person with a disability to include a person who has a physical or mental impairment that substantially limits one or more major life activities.[14]  To ensure that only qualified persons under the exemptions would be able to travel without a mask, the CDC Order permits operators of transportation conveyances, such as airlines, to impose requirements, or conditions for carriage, on persons requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the operator.  The CDC Order also permits operators to require protective measures, such as a negative result from a SARS-CoV-2 viral test or documentation of recovery from COVID-19 or seating or otherwise situating the individual in a less crowded section of the conveyance, e.g., aircraft.[15]

In response to COVID-19, U.S. and foreign air carriers generally have implemented policies requiring passengers to wear masks onboard aircraft even before the issuance of the Executive Order and the CDC Order.  Some carriers have adopted policies that expressly allow "no exceptions" to the mask requirement other than for children under the age of two.[16] OACP has

---

[13] *Id.* at 5.

[14] 42 U.S.C. 12102(4).  OACP notes that the definition of a person with a disability under the ADA is almost identical to the definition of a person with a disability under the Department's ACAA regulation.   See also CDC Order at 4 and 5.

[15] CDC Order at 4. CDC definitions for SARS-CoV-2 viral test and documentation of recovery are available in the Frequently Asked Questions at https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.

[16] It would be a violation of the ACAA to have an exemption for children under 2 on the basis that children that age cannot wear or safely wear a mask and not to have an exemption for the limited number of individuals with disabilities who similarly cannot wear or safely wear a mask when there is no evidence that these individuals with disabilities would pose a greater health risk to others.  *See* Ctrs. for Disease Control & Prevention, *Information for Pediatric Healthcare Providers*, CDC.gov (last updated Dec. 30, 2020), https://www.cdc.gov/coronavirus/2019-

3

received complaints from persons who assert they have a disability that precludes their wearing a mask, and who contend that they were denied transport by an airline under a "no exceptions allowed" mask policy.

The CDC and other medical authorities recognize that individuals with certain medical conditions may have trouble breathing or other difficulties such as being unable to remove the mask without assistance if required to wear a mask that fits closely over the nose and mouth.[17] The CDC Order provides that a mask is not required in circumstances where an individual is "unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to wear the mask without assistance."[18] The Order notes that individuals may remove masks "who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask".[19] Also, individuals with acute illness may remove the mask if it "interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask."[20] CDC will issue additional guidance regarding persons who cannot wear a mask on the basis of disability.[21] Individuals who have a physical or mental impairment that substantially limits one or more major life activities are individuals with a disability for purposes of the ACAA and Part 382.[22]

<u>Legal Authority</u>

The ACAA prohibits U.S. and foreign air carriers from denying air transportation to or otherwise discriminating in the provision of air transportation against a person with a disability by reason of the disability.[23] When a policy or practice adopted by a carrier has the effect of denying service to or otherwise discriminating against passengers because of their disabilities, the Department's disability regulations in Part 382 require the airline to modify the policy or practice as necessary to provide nondiscriminatory service to the passengers with disabilities, provided that the modifications would not constitute an undue burden or fundamentally alter the airline's program.[24]

Part 382 allows an airline to refuse to provide air transportation to an individual whom the airline determines presents a disability-related safety risk, provided that the airline can demonstrate that

---

ncov/hcp/pediatric-hcp.html (stating that "[r]ecent evidence suggests that compared to adults, children likely have similar viral loads in their nasopharynx, similar secondary infections rates, and can spread the virus to others").

[17] Considerations for Wearing Masks, *supra* note 6.

[18] CDC Order at 4.

[19] CDC Order at 4 (footnote 7).

[20] CDC Order at 4 (footnote 7).

[21] CDC Order at 5 (footnote 9).

[22] 49 U.S.C. 41705(a); 14 CFR 382.3.

[23] 49 U.S.C. 41705(a); 14 CFR 382.11.

[24] 14 CFR 382.13.

4

the individual would pose a "direct threat" to the health or safety of others onboard the aircraft, and that a less restrictive option is not feasible.[25]  To support a determination that an individual poses such a direct threat, the airline must make "an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence," in order to ascertain "(i) [t]he nature, duration, and severity of the risk; (ii) [t]he probability that the potential harm to the health and safety of others will actually occur; and (iii) [w]hether reasonable modifications of policies, practices, or procedures will mitigate the risk."[26]  If the airline has adequately determined, based on such an individualized assessment, that the passenger does pose a direct threat to the health or safety of others because of a disability-related condition, the airline "must select the least restrictive response from the point of view of the passenger, consistent with protecting the health and safety of others," and must, for example, "not refuse transportation to the passenger if [the airline] can protect the health and safety of others by means short of a refusal" to provide transportation.[27]  Furthermore, the Department's regulations permit the airline to impose reasonable conditions, restrictions, or requirements on a passenger who has a "medical condition" that may cause the passenger to pose a risk to the health and safety of others.[28]

<div align="center">Enforcement Policy</div>

The authority to pursue or not to pursue enforcement action against airlines with respect to air travel consumer protection and civil rights requirements, including compliance with the ACAA, lies with OACP.[29]

In accordance with the CDC Order, as conveyance operators, airlines are required to implement face mask policies that treat passengers presumptively as potential carriers of the SARS-CoV-2 virus and, therefore, as presenting a potential threat to the health and safety of other passengers and the crew.[30]  Notably, however, the CDC Order exempts from the mask mandate a person with a disability who cannot wear a mask, or who cannot safely wear a mask because of the

---

[25] 14 CFR 382.19(c)(1), (2).

[26] *Id.*

[27] 14 CFR 382.19(c)(2).

[28] 14 CFR 382.21(a)(3).  The rule recognizes that a passenger with a communicable disease or infection, such as infection with the SARS-CoV-2 virus or other "medical condition," may pose a direct threat to the health and safety of others onboard an aircraft, and the airline may be justified in refusing to transport the passenger or in requiring protective measures to mitigate the risk, consistent with the directives of public health authorities.  14 CFR 382.21(a)–(b).

[29] 49 U.S.C. 41705(c), 46301. The CDC Order requiring aircraft operators to mandate mask use will be enforced by the Transportation Security Administration under its statutory and regulatory authorities, including 49 U.S.C. 106, 114, 44902, 44903, and 46301; and 49 CFR 1542.303, 1544.305, and 1546.105.

[30]  CDC Order at 5 ("The virus that causes COVID-19 spreads very easily and sustainably between people who are in close contact with one another (within about 6 feet)."); *id.* at 7 ("Traveling on public conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods, and exposing them to frequently touched surfaces.").

<div align="center">5</div>

disability.  The Department also requires reasonable accommodations for persons with disabilities who are unable to wear masks or are unable to wear them safely.[31]

Airlines have expressed concerns to OACP that a significant number of passengers may claim medical exemption from the mask requirements without an apparent credible basis.  The CDC Order permits airlines to impose requirements or conditions for carriage on a person requesting an exemption, including requiring a person seeking an exemption to request an accommodation in advance, submit to medical consultation by a third party, provide medical documentation by a licensed medical provider, and/or provide other information as determined by the airline.[32] Similarly, under the Department's disability regulation in 14 CFR Part 382, airlines may impose conditions, restrictions, or requirements on a passenger asserting that a medical condition prevents the passenger from wearing a face mask, because the passenger may pose a direct threat to the health or safety of others, as any passenger is a potential carrier of the SARS-CoV-2 virus.[33]  In short, both the CDC Order and Part 382 permit airlines to require passengers to consult with the airline's medical expert and/or to provide medical evaluation documentation from the passenger's doctor sufficient to satisfy the airline that the passenger does, indeed, have a recognized medical condition precluding the wearing or safe wearing of a mask.

Airlines have also represented to OACP that, given the number of passengers making such claims, it is not practicable for airlines to make the required individualized assessment of appropriate mitigation measures at the airport on the day of the flight.  Under the Department's disability regulation in Part 382, airlines must conduct an individualized assessment of the potential ways to mitigate the risk to others of allowing passengers with disabilities to fly without a mask.[34]  However, Part 382, like the CDC Order, permits airlines to require passengers with disabilities who are unable to wear masks to request an accommodation in advance. Airlines may also require such passengers to check in early and to agree to undergo the required individualized assessment a reasonable period in advance of the scheduled flight, provided that the process is completed on the day of travel.

In addition, airlines may impose protective measures to reduce or prevent the risk to other passengers.  For example, airlines may require protective measures, such as a negative result from a SARS-CoV-2 test,[35] taken at the passenger's own expense, during the days immediately

---

[31] 14 CFR 382.13.

[32] *Id.*

[33] 14 CFR 382.21(a)(3).

[34] 14 CFR 382.19(c)(1).

[35] On January 12, 2021, CDC issued an order requiring any passenger flying into the United States from a foreign country to provide, before boarding the flight, proof of a negative pre-departure test result for SARS-CoV-2, the virus that causes COVID-19, or documentation of recovery from COVID-19 after a previous SARS-CoV-2 infection. This order became effective on January 26, 2021.  Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations 70.2, 71.31(b): Requirement for Negative Pre-Departure COVID-19 Test Result or Documentation of Recovery From COVID-19 for All Airlines or Other Aircraft Passengers Arriving into the United States from Any Foreign Country, *available at* https://www.cdc.gov/quarantine/pdf/global-airline-testing-order_2021-01-2_R3-signed-encrypted-p.pdf.

prior to the scheduled flight.[36]  Further, the airline may arrange for additional, appropriate mitigation measures, including arranging for the passenger to sit in a less crowded section of the plane, to take a flight at times when airports are less crowded, and/or scheduling the passenger on a less crowded flight.

To ensure travelers are aware of the face mask requirements, airlines should use their best efforts to make this information easily available.  The Department requires airlines provide information on request, to individuals with disabilities, about any service-related or other limitations on the airline's ability to accommodate passengers with a disability.[37]  Also, CDC and TSA require airlines to provide passengers with prominent and adequate notice to facilitate awareness and compliance with the requirement that masks must be worn, subject to certain limited exemptions, to mitigate the spread of COVID-19 during air travel.[38]  Airlines' obligation to provide information on the face mask requirements includes updating airlines' face mask policies on their websites to ensure accuracy and consistency with the ACAA, CDC Order and TSA SD.[39]

In recognition of the CDC Order, as well as airlines' efforts to minimize the potential for transmission of the virus onboard aircraft by implementing policies requiring passengers to wear masks onboard aircraft even before the issuance of the CDC Order, OACP  will exercise its prosecutorial discretion and provide airlines an opportunity to follow the steps described herein to become compliant before taking further action.[40]  Airlines are expected to review their face mask policies immediately and to revise them as necessary to comply with the ACAA and Department's disability regulation in Part 382.  OACP will refrain from taking enforcement action against an airline for a period of up to 45 days from the date of this notice, so long as the airline demonstrates that it began the process of compliance as soon as this notice was issued. This timeframe should provide airlines with adequate time to review and revise their mask procedures as needed to comply with the law.[41]

---

[36] A positive test result for SARS-CoV-2, the virus that causes COVID-19, is a valid reason for an airline to deny transport to any individual, including an individual with a disability.  CDC recommends isolation to separate people infected with SARS-CoV-2 from people who are not infected.  *See* Ctrs. for Disease Control & Prevention, *Isolate if You are Sick*, CDC.gov (last updated Jan. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/isolation.html.

[37] 14 CFR 382.41.

[38] CDC Order at 1; TSA SD at 2.

[39] *See* 14 CFR 399.79 (b)(2) (defining an airline's practice as "deceptive" to consumers within the meaning of section 41712 if it is likely to mislead a consumer, acting reasonably under the circumstances, with respect to a material matter).

[40] Every day, we are learning more about how COVID-19 spreads and affects people and communities.  OACP will continue to follow the data and information provided by public health authorities, such as CDC, on actions necessary to limit the spread or impact of SARS-CoV-2 and will make changes to this notice as necessary to be consistent with current medical knowledge and the best available objective evidence.

[41] This document is a temporary notice of enforcement discretion.  Regulated entities may rely on this notice as a safeguard from Departmental enforcement as described herein. To the extent that this notice includes guidance on how regulated entities may comply with existing regulations, it does not have the force and effect of law and is not meant to bind the regulated entities in any way.

7

Questions regarding this Notice may be addressed to the Office of Aviation Consumer Protection (C-70), 1200 New Jersey Avenue, S.E., Washington, D.C. 20590.

By:

Blane A. Workie
**Assistant General Counsel for**
**Office of Aviation Consumer Protection**

Dated:  February 5, 2021

*An electronic version of this document is available at http://www.dot.gov/airconsumer*

8



**Transportation
Security
Administration**

U.S. Department of Homeland Security
Transportation Security Administration
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

| | |
|---|---|
| NUMBER | SD 1542-21-01**D** |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | **March 19, 2022** |
| EXPIRATION DATE | **April 18, 2022** |
| CANCELS AND SUPERSEDES | SD 1542-21-01**C** |
| APPLICABILITY | Airport operators regulated under 49 CFR 1542.103 and airlines that have exclusive area agreements under 49 CFR 1542.111 |
| AUTHORITY | 49 U.S.C. 114 and 44903; 49 CFR 1542.303 |
| LOCATION | Airports within the United States |

PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in and on airports, on commercial aircraft, and in various modes of surface transportation.[1]  On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed[2] requiring the Transportation Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive Order and enforce the related Order[3] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. sections 114 and 44903.  Consistent with these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to mitigate

---

[1] 86 FR 7205 (published Jan. 26, 2021).

[2] Acting Secretary David P. Pekoske, Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System (Jan. 27, 2021), *available at* https://www.dhs.gov/publication/determination-national-emergency-requiring-actions-protect-safety-americans-using-and (accessed Feb. 22, 2021).  The Acting Secretary's determination directs TSA to take actions consistent with its statutory authorities "to implement the Executive Order to promote safety in and secure the transportation system."  In particular, the determination directs TSA to support "the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system."

[3] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations (CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Stations, Ports, or Similar Transportation Hubs (January 29, 2021)

the spread of COVID-19 during air travel.  TSA developed these requirements in consultation with the Federal Aviation Administration and CDC.  The requirements in this directive apply to all individuals, including those already vaccinated.

DEFINITIONS

For the purposes of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[4]

ACTIONS REQUIRED

Except at locations under the control of an aircraft operator, foreign air carrier, or a federal government agency or their contractors, the airport operator must apply the following measures:

A. The airport operator must make best efforts to provide individuals with prominent and adequate notice of the mask requirements to facilitate awareness and compliance.[5]  This notice must also inform individuals of the following:

  1. Federal law requires wearing a mask at all times in and on the airport and failure to comply may result in removal and denial of re-entry.

  2. Refusing to wear a mask in or on the airport is a violation of federal law; individuals may be subject to penalties under federal law.

B. The airport operator must require that individuals in or on the airport wear a mask, except as described in Sections D., E., and F.

  1. If individuals are not wearing masks, ask them to put a mask on.

  2. If individuals refuse to wear a mask in or on the airport, escort them from the airport.

C. The airport operator must ensure direct employees, authorized representatives, tenants, and vendors wear a mask at all times in or on the airport, except as described in Sections D., E., and F.

---

[4] A properly worn mask completely covers the nose and mouth of the wearer.  A mask should be secured to the head, including with ties or ear loops.  A mask should fit snugly but comfortably against the side of the face.  Masks do not include face shields.  Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures.  Medical masks and N-95 respirators fulfill the requirements of this SD.  CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.
[5] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; or other methods as appropriate.

D. The requirement to wear a mask does not apply under the following circumstances:

1. When necessary to temporarily remove the mask for identity verification purposes.

2. While eating, drinking, or taking oral medications for brief periods.[6]  Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3. While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4. If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[7]

E. The following conveyances are exempted from this SD:

1. Persons in private conveyances operated solely for personal, non-commercial use.

2. A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F. This SD exempts the following categories of persons from wearing masks:[8]

1. Children under the age of 2.

---

[6] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes.  *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask.  Persons who are vomiting should remove the mask until vomiting ceases.  Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Airport operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the airport operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at:  https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.   Airport operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport.  Airport operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

2. People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[9]

3. People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G.  If an individual refuses to comply with mask requirements, follow incident reporting procedures in accordance with the Airport Security Program and provide the following information, if available:

1. Date and airport code;

2. Individual's full name and contact information;

3. Name and contact information for any direct airport employees or authorized representatives involved in the incident; and

4. The circumstances related to the refusal to comply.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or <u>more</u> protective of public health than those required in this SD, if that provision is not incompatible with this SD.

ACKNOWLEDGMENT OF RECEIPT

The airport operator must immediately provide written confirmation of receipt of this SD to the Federal Security Director (FSD).

DISSEMINATION REQUIRED

The airport operator must immediately pass the information and measures set forth in this SD to any personnel having responsibilities in implementing the provisions of this directive. The airport operator may share this SD with anyone subject to the provisions of this directive to include but not limited to: federal, state, and local government personnel; direct airport employees or authorized representatives; vendors; tenants; exclusive area agreement holders; contractors; transport personnel; taxi drivers; law enforcement; etc.

---

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology. It is not meant to cover persons for whom mask-wearing may only be difficult. The CDC issued additional guidance on disability exemptions on March 23, 2021, which is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

APPROVAL OF ALTERNATIVE MEASURES

The operator must immediately notify the FSD whenever any action required by this SD or a TSA-approved alternative measure cannot be carried out.  In accordance with 49 CFR 1542.303(d), the airport operator may submit proposed alternative measures and the basis for submitting those measures in writing to the Assistant Administrator for Policy, Plans, and Engagement through the FSD.

Thomas L. Bush
Acting Executive Assistant Administrator
Operations Support



**Transportation
Security
Administration**

U.S. Department of Homeland Security
Transportation Security Administration
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

| | |
|---|---|
| NUMBER | SD 1544-21-02**D** |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | **March 19, 2022** |
| EXPIRATION DATE | **April 18, 2022** |
| CANCELS AND SUPERSEDES | SD 1544-21-02**C** |
| APPLICABILITY | Aircraft operators regulated under 49 CFR 1544.101 |
| AUTHORITY | 49 U.S.C. 114, 44902, and 44903; 49 CFR 1544.305 |
| LOCATION(S) | All Locations |

PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in and on airports, on commercial aircraft, and in various modes of surface transportation.[1]  On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed[2] requiring the Transportation Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive Order and enforce the related Order[3] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. sections 114, 44902, and 44903.  Consistent with these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to mitigate the spread of COVID-19 during air travel.  The requirements in this SD must be applied to all persons onboard a commercial aircraft operated by a U.S. aircraft operator, including

---

[1] 86 FR 7205 (published Jan. 26, 2021).

[2] Acting Secretary David P. Pekoske, Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System (Jan. 27, 2021), *available at* https://www.dhs.gov/publication/determination-national-emergency-requiring-actions-protect-safety-americans-using-and (accessed Feb. 22, 2021).  The Acting Secretary's determination directs TSA to take actions consistent with its statutory authorities "to implement the Executive Order to promote safety in and secure the transportation system."  In particular, the determination directs TSA to support "the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system."

[3] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations (CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Stations, Ports, or Similar Transportation Hubs (January 29, 2021)

passengers and crewmembers, including those already vaccinated.  TSA developed these requirements in consultation with the Federal Aviation Administration and CDC.

DEFINITIONS

For the purposes of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[4]

ACTIONS REQUIRED

A. The aircraft operator must provide passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. [5]  At a minimum, this notice must inform passengers, at or before check-in and as a pre-flight announcement, of the following:

   1. Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning.

   2. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

   3. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation, masks should be removed to accommodate oxygen masks.

B. The aircraft operator must not board any person who is not wearing a mask, except as described in Sections D., E., and F.

C. The aircraft operator must ensure that direct employees and authorized representatives wear a mask at all times while on an aircraft or in an airport location under the control of the aircraft operator, except as described in Sections D., E., and F.

D. The requirement to wear a mask does not apply under the following circumstances:

   1. When necessary to temporarily remove the mask for identity verification purposes.

---

[4] A properly worn mask completely covers the nose and mouth of the wearer.  A mask should be secured to the head, including with ties or ear loops.  A mask should fit snugly but comfortably against the side of the face.  Masks do not include face shields.  Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures.  Medical masks and N-95 respirators fulfill the requirements of this SD.  CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.
[5] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on boarding passes; or other methods as appropriate.

2. While eating, drinking, or taking oral medications for brief periods.[6] Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3. While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation.

5. If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance, or otherwise unable to remove the mask without assistance.[7]

E. The following conveyances are exempted from this SD:

1. Persons in private conveyances operated solely for personal, non-commercial use.

2. A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F. This SD exempts the following categories of persons from wearing masks:[8]

1. Children under the age of 2.

2. People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[9]

---

[6] The CDC has stated that brief periods of close contact without a face mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[8] Aircraft operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the aircraft operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at: https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html. Aircraft operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport. Aircraft operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to

3. People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G.  If a passenger refuses to comply with an instruction given by a crew member with respect to wearing a mask, the aircraft operator must:

1. Make best efforts to disembark the person who refuses to comply as soon as practicable; and

2. Follow incident reporting procedures in accordance with its TSA-approved standard security program and provide the following information, if available:

   a. Date and flight number;

   b. Passenger's full name and contact information;

   c. Passenger's seat number on the flight;

   d. Name and contact information for any crew members involved in the incident; and

   e. The circumstances related to the refusal to comply.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or more protective of public health than those required in this SD, if that provision is not incompatible with this SD.

ACKNOWLEDGMENT OF RECEIPT

The aircraft operator must immediately provide written confirmation of receipt of this SD to its Principal Security Inspector (PSI) or International Industry Representative (IIR), as appropriate.

DISSEMINATION REQUIRED

The aircraft operator must immediately pass the information and measures set forth in this SD to any personnel having responsibilities in implementing the provisions of this directive. The aircraft operator may share this SD with anyone subject to the provisions of this directive to include but not limited to: federal, state, and local government personnel; authorized representatives; catering personnel; vendors; airline club staff; contractors; etc.

---

remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology. It is not meant to cover persons for whom mask-wearing may only be difficult. The CDC issued additional guidance on disability exemptions on March 23, 2021, which is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

APPROVAL OF ALTERNATIVE MEASURES

In accordance with 49 CFR 1544.305(d), the aircraft operator must immediately notify its PSI or IIR, as appropriate, if unable to implement any of the measures in this SD, or in any TSA-approved alternative measure.  The aircraft operator may submit proposed alternative measures and the basis for submitting those measures to its PSI or IIR.


Thomas L. Bush
Acting Executive Assistant Administrator
Operations Support



**Transportation
Security
Administration**

U.S. Department of Homeland Security
Transportation Security Administration
6595 Springfield Center Drive
Springfield, Virginia 20598

## SECURITY DIRECTIVE

| | |
|---|---|
| NUMBER | SD 1582/84-21-01**D** |
| SUBJECT | Security Measures – Mask Requirements |
| EFFECTIVE DATE | **March 19, 2022** |
| EXPIRATION DATE | **April 18, 2022** |
| CANCELS AND SUPERSEDES | SD 1582/84-21-01**C** |
| APPLICABILITY | Each owner/operator identified in 49 CFR 1582.1(a); each owner/operator identified in 49 CFR 1584.1 that provides fixed-route service as defined in 49 CFR 1500.3 |
| AUTHORITY | 49 U.S.C. 114 |
| LOCATION | United States |

### PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in and on airports, on commercial aircraft, and in various modes of surface transportation.[1]  On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed[2] requiring the Transportation Security Administration (TSA) to issue this Security Directive (SD) to implement the Executive Order and enforce the related Order[3] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. section 114.  Consistent with these mandates and TSA's authority, TSA is issuing this SD requiring masks to be worn to mitigate the spread of COVID-19.  The requirements in this SD must be applied to all persons in or on one of the

---

[1] 86 FR 7205 (published Jan. 26, 2021).

[2] Acting Secretary David P. Pekoske, Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System (Jan. 27, 2021), *available at* https://www.dhs.gov/publication/determination-national-emergency-requiring-actions-protect-safety-americans-using-and (accessed Feb. 22, 2021).  The Acting Secretary's determination directs TSA to take actions consistent with its statutory authorities "to implement the Executive Order to promote safety in and secure the transportation system."  In particular, the determination directs TSA to support "the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system."

[3] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 Code of Federal Regulations §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Stations, Ports, or Similar Transportation Hubs (January 29, 2021).

conveyances or a transportation facility used by one of the modes identified above, including those already vaccinated. TSA developed these requirements in consultation with the Department of Transportation (including the Federal Railroad Administration, the Federal Transit Administration, and the Federal Motor Carrier Safety Administration) and the CDC.

DEFINITIONS

For the purpose of this SD, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[4]

*Transportation hub/facility* means any airport, bus terminal, marina, seaport or other port, subway stations, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States.

ACTIONS REQUIRED

A. Owner/Operators must notify passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance.[5] At a minimum, this notice must inform passengers, at the time tickets are purchased or when otherwise booking transportation *and* at the time the conveyance departs its location after boarding passengers, of the following:

   1. Federal law requires wearing a mask while on the conveyance and failure to comply may result in denial of boarding or removal.

   2. Refusing to wear a mask is a violation of federal law; passengers may be subject to penalties under federal law.

B. Owner/Operators must require that individuals wear a mask, except as described in Sections D., E., or F., as follows:

   1. Any persons in a public transportation, passenger railroad, or bus conveyance covered by this SD.

---

[4] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this SD. CDC guidance for attributes of acceptable masks in the context of this SD is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.
[5] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on tickets; or other methods as appropriate.

    2. Any person in public areas of transportation hubs/facilities controlled by the owner/operator (such as for purposes of purchasing tickets, waiting areas, and platforms for boarding and disembarking) for the duration of travel, boarding, and disembarking.

C. Owner/Operators must ensure that direct employees and contractor employees wear a mask at all times when in conveyances or in or around transportation facilities under their control, except as described in Sections D., E., or F.

D. The requirement to wear a mask does not apply under the following circumstances:

    1. When necessary to temporarily remove the mask for identity verification purposes.

    2. While eating, drinking, or taking oral medications for brief periods[6]. Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

    3. While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

    4. If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[7]

E. The following conveyances are exempted from wearing masks:

    1. Persons in private conveyances operated solely for personal, non-commercial use.

    2. A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

---

[6] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes. *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html
[7] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask. Persons who are vomiting should remove the mask until vomiting ceases. Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

F.  This SD exempts the following categories of persons from wearing masks:[8]

    1.  Children under the age of 2.

    2.  People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[9]

    3.  People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G.  Owner/Operators must establish procedures to manage situations with persons who refuse to comply with the requirement to wear a mask.  At a minimum, these procedures must ensure that if an individual refuses to comply with an instruction given by the owner/operator with respect to wearing a mask, the owner/operator must:

    1.  Deny boarding;

    2.  Make best efforts to disembark the individual as soon as practicable; or

    3.  Make best efforts to remove the individual from the transportation hub/facility.

H.  If an individual's refusal to comply with the mask requirement constitutes a significant security concern, the owner/operator must report the incident to the Transportation Security Operations Center (TSOC) at 1-866-615-5150 or 1-703-563-3240 in accordance with 49 CFR 1570.203.

---

[8] Owner/Operators may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the owner/operator, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at:  https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.  Owners/Operators may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or transportation hub/facility Owners/Operators may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[9] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology.  It is not meant to cover persons for whom mask-wearing may only be difficult.  The CDC issued additional guidance on disability exemptions on March 23, 2021, which is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

PREEMPTION

The requirements in this SD do not preempt any State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or more protective of public health than those required in this SD, if that provision is not incompatible with this SD.

PROCEDURES FOR SECURITY DIRECTIVES

A. The owner/operator must immediately provide written confirmation of receipt of this SD via email to TSA at TSA-Surface@tsa.dhs.gov.

B. The owner/operator must immediately disseminate the information and measures in this SD to corporate senior management, security management representatives, and any personnel having responsibilities in implementing the provisions in this directive. The owner/operator may widely share this SD with anyone subject to the provisions of this directive to include, but not limited to, federal, state, and local government personnel; direct owner/operator employees; tenants; contractors; transport personnel; taxi drivers; law enforcement; etc.

C. All individuals responsible for implementing this SD must be briefed by the owner/operator. If the owner/operator is unable to implement the measures in this SD, the owner/operator must submit proposed alternative measures and the basis for submitting the alternative measures to TSA for approval.

D. The owner/operator may comment on this SD by submitting data, views, or arguments in writing to TSA via email at TSA-Surface@tsa.dhs.gov . TSA may amend the SD based on comments received. Submission of a comment does not delay the effective date of the SD.

APPROVAL OF ALTERNATIVE MEASURES

The owner/operator must immediately notify TSA via email at TSA-Surface@tsa.dhs.gov if unable to implement any of the measures in this SD. The owner/operator may submit proposed alternative measures and a justification for adopting those measures to the email addresses above.


Thomas L. Bush
Acting Executive Assistant Administrator
Operations Support



**Transportation
Security
Administration**

U.S. Department of Homeland Security
Transportation Security Administration
6595 Springfield Center Drive
Springfield, Virginia 20598

**EMERGENCY AMENDMENT**

NUMBER                          EA 1546-21-01**D**

SUBJECT                         Security Measures – Mask Requirements

EFFECTIVE DATE                  **March 19, 2022**

EXPIRATION DATE                 **April 18, 2022**

CANCELS AND SUPERSEDES          EA 1546-21-01**C**

APPLICABILITY                   Foreign air carriers regulated under 49 CFR 1546.101(a) and (b)

AUTHORITY                       49 U.S.C. 114, 44902, and 44903; 49 CFR 1546.105(d)

LOCATION(S)                     All flights to, from, or within the United States

PURPOSE AND GENERAL INFORMATION

Due to the ongoing COVID-19 pandemic and to reduce the spread of the virus, the President issued an Executive Order, *Promoting COVID-19 Safety in Domestic and International Travel*, on January 21, 2021, requiring masks to be worn in and on airports, on commercial aircraft, and in various modes of surface transportation.[1]  On January 27, 2021, the Acting Secretary of Homeland Security determined a national emergency existed[2] requiring the Transportation Security Administration (TSA) to issue this Emergency Amendment (EA) to implement the Executive Order and enforce the related Order[3] issued by the Centers for Disease Control and Prevention (CDC), pursuant to the authority of 49 U.S.C. sections 114, 44902, and 44903.  Consistent with these mandates and the TSA's authority, TSA is issuing this EA requiring masks to be worn to mitigate the spread of COVID-19 during air travel.  The requirements in this EA must be applied to all persons onboard a commercial aircraft operated by a foreign air carrier,

---

[1] 86 FR 7205 (published Jan. 26, 2021).

[2] Acting Secretary David P. Pekoske, Determination of a National Emergency Requiring Actions to Protect the Safety of Americans Using and Employed by the Transportation System (Jan. 27, 2021), *available at* https://www.dhs.gov/publication/determination-national-emergency-requiring-actions-protect-safety-americans-using-and (accessed Feb. 22, 2021).  The Acting Secretary's determination directs TSA to take actions consistent with its statutory authorities "to implement the Executive Order to promote safety in and secure the transportation system."  In particular, the determination directs TSA to support "the CDC in the enforcement of any orders or other requirements necessary to protect the transportation system, including passengers and employees, from COVID-19 and to mitigate the spread of COVID-19 through the transportation system."

[3] *See* Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 Code of Federal Regulations (CFR) §§ 70.2, 71.31(B), 71.32(B); Requirement for Persons to Wear Masks While on Conveyances and at Stations, Ports, or Similar Transportation Hubs (January 29, 2021)

including passengers and crewmembers, and those already vaccinated. TSA developed these requirements in consultation with the Federal Aviation Administration and CDC.

DEFINITIONS

For the purposes of this EA, the following definitions apply:

*Conveyance* has the same definition as under 42 CFR 70.1, meaning "an aircraft, train, road vehicle, vessel…or other means of transport, including military."

*Mask* means a material covering the nose and mouth of the wearer, excluding face shields.[4]

ACTIONS REQUIRED

A. The foreign air carrier must provide passengers with prominent and adequate notice of the mask requirements to facilitate awareness and compliance. [5] At a minimum, this notice must inform passengers, at or before check-in and as a pre-flight announcement, of the following:

  1. Federal law requires each person to wear a mask at all times throughout the flight, including during boarding and deplaning.

  2. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

  3. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation, masks should be removed to accommodate oxygen masks.

B. The foreign air carrier must not board any person who is not wearing a mask, except as described in Sections D., E., and F.

C. The foreign air carrier must ensure that direct employees and authorized representatives wear a mask at all times while on an aircraft or in a U.S.[6] airport location under the control of the foreign air carrier, except as described in Sections D., E., and F.

D. The requirement to wear a mask does not apply under the following circumstances:

  1. When necessary to temporarily remove the mask for identity verification purposes.

---

[4] A properly worn mask completely covers the nose and mouth of the wearer. A mask should be secured to the head, including with ties or ear loops. A mask should fit snugly but comfortably against the side of the face. Masks do not include face shields. Masks can be either manufactured or homemade and should be a solid piece of material without slits, exhalation valves, or punctures. Medical masks and N-95 respirators fulfill the requirements of this EA. CDC guidance for attributes of acceptable masks in the context of this EA is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

[5] Notice may include, if feasible, advance notifications on digital platforms, such as on apps, websites, or email; posted signage in multiple languages with illustrations; printing the requirement on boarding passes; or other methods as appropriate.

[6] Including U.S. territories: American Samoa, Guam, the Northern Mariana Islands, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands.

2. While eating, drinking, or taking oral medications for brief periods.[7]  Prolonged periods of mask removal are not permitted for eating or drinking; the mask must be worn between bites and sips.

3. While communicating with a person who is deaf or hard of hearing, when the ability to see the mouth is essential for communication.

4. If wearing oxygen masks is needed because of loss of cabin pressure or other event affecting aircraft ventilation.

5. If unconscious (for reasons other than sleeping), incapacitated, unable to be awakened, or otherwise unable to remove the mask without assistance.[8]

E. The following conveyances are exempted from this EA:

1. Persons in private conveyances operated solely for personal, non-commercial use.

2. A driver, when operating a commercial motor vehicle as this term is defined in 49 CFR 390.5, if the driver is the sole occupant of the vehicle.

F. This EA exempts the following categories of persons from wearing masks:[9]

1. Children under the age of 2.

2. People with disabilities who cannot wear a mask, or cannot safely wear a mask, because of the disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.).[10]

---

[7] The CDC has stated that brief periods of close contact without a mask should not exceed 15 minutes.  *See* https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

[8] Persons who are experiencing difficulty breathing or shortness of breath or are feeling winded may remove the mask temporarily until able to resume normal breathing with the mask.  Persons who are vomiting should remove the mask until vomiting ceases.  Persons with acute illness may remove the mask if it interferes with necessary medical care such as supplemental oxygen administered via an oxygen mask.

[9] Foreign air carriers may impose requirements, or conditions of carriage, on persons requesting an exemption from the requirement to wear a mask, including medical consultation by a third party, medical documentation by a licensed medical provider, and/or other information as determined by the foreign air carrier, as well as require evidence that the person does not have COVID-19 such as a negative result from a SAR-CoV-2 viral test or documentation of recovery from COVID-19. CDC definitions for SAR-CoV-2 viral test and documentation of recovery are available in Frequently Asked Questions at:  https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html.  Foreign air carriers may also impose additional protective measures that improve the ability of a person eligible for exemption to maintain social distance (separation from others by 6 feet), such as scheduling travel at less crowded times or on less crowded conveyances, or seating or otherwise situating the individual in a less crowded section of the conveyance or airport.  Foreign air carriers may further require that persons seeking exemption from the requirement to wear a mask request an accommodation in advance.

[10] This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability; who, e.g., do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devises/technology.  It is not meant to cover persons for whom mask-wearing may

3.  People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations.

G.  If a passenger refuses to comply with an instruction given by a crew member with respect to wearing a mask, the foreign air carrier must:

1.  Make best efforts to disembark the person who refuses to comply as soon as practicable; and

2.  Follow incident reporting procedures in accordance with its TSA-accepted security program or any applicable EAs and provide the following information, if available:

    a.  Date and flight number;

    b.  Passenger's full name and contact information;

    c.  Passenger's seat number on the flight;

    d.  Name and contact information for any crew members involved in the incident; and

    e.  The circumstances related to the refusal to comply.

<u>PREEMPTION</u>

The requirements in this EA do not preempt any host government, State, local, Tribal, or territorial rule, regulation, order, or standard necessary to eliminate or reduce a local safety hazard, which includes public health measures that are the same or <u>more</u> protective of public health than those required in this EA, if that provision is not incompatible with this EA.

<u>ACKNOWLEDGMENT OF RECEIPT</u>

The foreign air carrier must immediately provide written confirmation of receipt of this EA to its International Industry Representative (IIR).

<u>DISSEMINATION REQUIRED</u>

The foreign air carrier must immediately pass the information and measures set forth in this EA to any personnel having responsibilities in implementing the provisions of this directive.  The foreign air carrier may share this EA with anyone subject to the provisions of this directive to include but not limited to:  host government, federal, state, and local government personnel; authorized representatives; catering personnel; vendors; airline club staff; contractors; etc.

---

only be difficult.  The CDC issued additional guidance on disability exemptions on March 23, 2021, which is available at https://www.cdc.gov/quarantine/masks/mask-travel-guidance.html.

APPROVAL OF ALTERNATIVE MEASURES

The foreign air carrier must immediately notify its IIR if unable to implement any of the measures in this EA, or in any TSA-approved alternative measure.  In accordance with 49 CFR 1546.105, the foreign air carrier may submit proposed alternative measures and the basis for submitting those measures to its IIR.

Thomas L. Bush
Acting Executive Assistant Administrator
Operations Support

tsa.gov

# Coronavirus (COVID-19) FAQ | Transportation Security Administration

7-9 minutes

---

**I live in a state that does not require face masks, yet I keep seeing signs and news reports that indicate face masks are required in mass transit, commercial air travel and other public transportation modes. Is the federal government requirement still in place?**

Beginning February 2, TSA required individuals to wear a mask when indoors throughout the commercial and public transportation systems. This requirement, following the President's executive order and the CDC emergency order, remains in effect until April 18, 2022. DHS published a national emergency determination and TSA published  security directives and an emergency amendment that requires all operators and passengers to wear face masks on all modes of public transportation, in air, on bus and on rail. All of these orders and directives reflect the importance of this measure to help prevent the spread of COVID-19.

**Should I wear a mask to the TSA checkpoint?**

Yes, you are required to wear a face mask throughout your travel experience. You will be asked to adjust your mask for ID verification or if it alarms the security screening equipment. If you don't have a face mask a TSA officer will offer one to you, if supplies allow.

**Why is TSA requiring passengers to wear masks?**

President Biden signed an Executive Order to "Promote COVID-19 Safety in Domestic and International Travel" on January 21, 2021. Following the Executive Order, the Centers for Disease Control and Prevention (CDC), as the lead federal agency, issued guidance on Jan. 29 requiring travelers and the general public to wear masks when utilizing public modes of transportation when they are in airports, bus and rail stations, as well as while on passenger aircraft, commuter trains, buses, vessels, or other forms of public transportation. DHS then issued a "Determination of National Emergency" instructing TSA to take all appropriate actions to implement the President's Executive Order. Starting on February 2, 2021, TSA requires everyone within the domestic transportation network to wear a face mask.

**What will TSA do if a passenger is not wearing a mask during screening?**

Passengers without a mask may be denied entry, boarding, or continued transport. Failure to comply with the mask requirement can result in civil penalties.

Within the nation's airports, at the TSA checkpoint, those who approach the Travel Document Checker (TDC) podium without a mask will be asked to wear or obtain one to proceed. Passengers who refuse to wear a mask will not be permitted to enter the secure area of the airport, which includes the terminal and gate area. Depending on the circumstance, refusal to wear a mask may

result in an individual being subject to a civil penalty for attempting to circumvent screening requirements, interfering with screening personnel, or a combination of those offenses.

**Is the checkpoint within airports considered to be federal space?**

The TSA checkpoint is designated space in which federal employees conduct their assigned job. As such, it is essential that federal employees have the benefit of a healthy, safe and secure work area and a face mask requirement seeks to ensure their safety. The face mask requirement extends to the entire transportation system. Travelers and the general public must wear masks when utilizing public modes of transportation when they are in airports, bus and rail stations, as well as while on passenger aircraft, commuter trains, buses, vessels, or other forms of public transportation.

**How is TSA requiring or enforcing masks on aircraft, buses, and in railroad stations and trains?**

As the federal agency responsible for securing the nation's transportation system, TSA is requiring that all airport operators, aircraft operators, foreign air carriers and surface transportation owners and operators ensure that all workers and passengers wear face masks indoors to prevent further spread of COVID-19 and facilitate healthy and secure travel. Stakeholders throughout the transportation network implemented face mask requirements. This federal requirement reinforces those efforts and passengers without a mask may be denied entry, boarding, or continued transport. Failure to comply with the mask requirement can result in civil penalties.

**How is TSA addressing travelers who cannot safely wear a mask because of a disability?**

TSA has made provisions for those that cannot safely wear a mask. Travelers under the age of 2 years old, those with a disability who cannot wear a mask, or cannot safely wear a mask for reasons related to a disability as defined by the Americans with Disabilities Act, and those for whom a mask would create a risk to workplace health, safety, or job duty as determined by relevant workplace safety guidelines or federal regulations are exempt from the face mask requirement.

**Can I request that TSA officers use new gloves and swabs during screening?**

Yes. TSA always requires that frontline personnel wear nitrile gloves when conducting screening duties, and travelers may request new gloves be used during the screening process. TSA has also directed officers to change explosive detection swabs after each use.

**My driver's license has expired and I can't get it renewed during the pandemic. Will I still be able to fly?**

Yes. If your driver's license or state-issued ID expired on or after March 1, 2020, and you are unable to renew at your state driver's license agency, you may still use it as acceptable identification at the checkpoint. TSA will accept expired driver's licenses or state-issued IDs for 1 year after expiration.

**Can I still enroll in or renew my TSA PreCheck® membership during the pandemic?**

Yes, you can still enroll in TSA PreCheck® or renew your existing membership to enjoy a security screening experience with the most convenience and least amount of physical contact. Applying for TSA PreCheck® is quick and easy. Enrolling involves completing a short, 5-minute online application and a 10-minute fingerprinting appointment at one of our 400+ enrollment centers. Most applicants receive their Known Traveler Number within a week.  Renewing is even easier and most members

can renew entirely online. Visit tsa.gov/precheck to learn more.

**Are TSA PreCheck® lanes still available during the pandemic?**

Yes, TSA PreCheck® lanes are still open. Use the MyTSA app or click here to find availability. If a dedicated lane is not available at your departure airport, just show your boarding pass with the TSA PreCheck® indicator to receive expedited screening in a standard lane.

**Where can I find the numbers of passengers screened by TSA?**

The daily checkpoint travel numbers for 2019 and 2020 national passenger volume numbers are available here. This webpage is updated daily by 9 a.m. Eastern time. The statistics are current as of the time posted. Because this data is considered preliminary, it may be adjusted later and will differ from the final screening statistics that are available on the TSA FOIA Electronic Reading Room.

**Is TSA conducting temperature checks at security checkpoints?**

TSA has not conducted and is not conducting temperature checks on air travelers. The federal government's interagency position and guidance on temperature checks is available in the Runway to Recovery, page 21, and was jointly developed by the U.S. Departments of Transportation, Homeland Security and Health and Human Services.

# B

## OTHER GOVERNMENT DOCUMENTS

# *New Horizons*



Information for the
Air Traveler with
a Disability





U.S. Department of Transportation

Rev. Feb. 2004

## *INTRODUCTION*

For years, access to the nation's air travel system for persons with disabilities was an area of substantial dissatisfaction, with both passengers and the airline industry recognizing the need for major improvement. In 1986 Congress passed the Air Carrier Access Act, requiring the Department of Transportation (DOT) to develop new regulations which ensure that persons with disabilities will be treated without discrimination in a way consistent with the safe carriage of all passengers. These regulations were published in March 1990 and have been amended several times since then.

The DOT regulations, referred to here as the Air Carrier Access rules, represent a major stride forward in improving air travel for persons with disabilities. The rules clearly explain the responsibilities of the traveler, the carriers, the airport operators, and contractors, who collectively make up the system which moves over one million passengers per day.

The Air Carrier Access Act was amended effective April 5, 2000, to cover foreign air carriers. The rules that implement the ACAA will be amended to reflect that change.

The Air Carrier Access rules are designed to minimize the special problems that travelers with disabilities face as they negotiate their way through the nation's complex air travel system from origin to destination. This is achieved:

- By recognizing that the physical barriers encountered by passengers with disabilities can frequently be overcome by employing simple changes in layout and technology.

- By adopting the principle that many difficulties confronting passengers with hearing or vision impairments will be relieved if they are provided access to the same information that is available to all other passengers.

- Through training of all air travel personnel who come in day-to-day contact with persons with disabilities, to understand their needs and how they can be accommodated quickly, safely, and with dignity.

This guide is designed to offer travelers with disabilities a brief but authoritative source of information about the Air Carrier Access rules: the accommodations, facilities, and services that are now required to be available. It also describes features required by other regulations designed to make air travel more accessible.

The guide is structured in much the same sequence as a passenger would plan for a trip: the circumstances he or she must consider prior to traveling, what will be encountered at the airport, and what to expect in the transitions from airport to airplane, on the plane, and then airplane to airport.

# ✦ *Planning Your Trip*

## The New Traveling Environment

THE AIR CARRIER ACCESS RULES SWEEP aside many restrictions that formerly discriminated against passengers with disabilities:

- A carrier may not refuse transportation to a passenger solely on the basis of a disability.

- Air carriers may not limit the number of individuals with disabilities on a particular flight.

- All trip information that is made available to other passengers also must be made available to passengers with disabilities.

- Carriers must provide passage to an individual who has a disability that may affect his or her appearance or involuntary behavior, even if this disability may offend, annoy, or be an inconvenience to crew-members or other passengers.

There are a few exceptions:

- The carrier may refuse transportation if the individual with a disability would endanger the health or safety of other passengers, or transporting the person would be a violation of FAA safety rules.

- The carrier may refuse transportation if there are no lifts, boarding chairs or other devices available which can be adapted to enplane the passenger. Airline personnel are not required to carry a mobility-impaired person on or off the aircraft by hand, i.e. to directly pick up the passenger's body in the arms of one or more airline staffers and carry the individual up or down stairs. Lifts or similar devices are currently required for nearly all flights on aircraft with 19 or more seats at airports with 10,000 or more annual enplanements.

- There are special rules about persons with certain disabilities or communicable diseases. These rules are covered in the chapter entitled "At the Airport."

- The carrier may refuse transportation if it is unable to seat the passenger without violating the FAA Exit Row Seating rules. See the chapter "On the Plane."

There are new procedures for resolving disputes:

- All carriers are now required to have a Complaints Resolution Official (CRO) immediately available (even if by phone) to resolve disagreements which may arise between the carrier and passengers with disabilities.

- Travelers who disagree with a carrier's actions toward them can pursue the issue with the carrier's CRO on the spot.

- A carrier that refuses transportation to any person based on a disability must provide a written statement to that person within 10 calendar days, stating the basis for the refusal. The statement must include, where applicable, the basis for the carrier's opinion that transporting the person could be harmful to the safety of the flight.

- If the passenger is still not satisfied, he or she may pursue DOT enforcement action.

## Getting Advance Information About the Aircraft

Travelers with disabilities must be provided information upon request concerning facilities and services available to them. When feasible this information will pertain to the specific aircraft scheduled for a specific flight. Such information includes:

- Any limitations concerning the ability of the aircraft to accommodate an individual with a disability (the carrier shall provide this information to any passenger who states that he or she uses a wheelchair for boarding,

1

even if the passenger does not explicitly request the information);

- The location of seats (if any) with movable aisle armrests and any seats which the carrier does not make available to an individual with a disability (e.g., exit rows);

- Any limitations on the availability of storage facilities in the cabin or in the cargo bay for mobility aids or other equipment commonly used by an individual with a disability;

- Whether the aircraft has an accessible lavatory.

Normally, advance information about the aircraft will be requested by phone.  Any carrier that provides telephone service for the purpose of making reservations or offering general information must provide comparable services for hearing-impaired individuals, utilizing telecommunications devices for the deaf (TDDs), or text telephones (TTs).  The TTs shall be available during the same hours that the general public has access to regular phone service.  The response time to answer calls on the TT line shall also be equivalent to the response time available to the general public.  Charges for the call, if any, shall be the same as charges made to the general public.

## When Advance Notice Can Be Required

Airlines may not require passengers with disabilities to provide advance notice of their intent to travel or of their disability except as provided below.  Nonetheless, letting the airline know in advance how they can help you will generally result in a smoother trip.

Carriers may require up to 48 hours advance notice and one hour advance check-in from a person with a disability who wishes to receive any of the following services:

- Transportation for an electric wheelchair on an aircraft with fewer than 60 seats;

- Provision by the carrier of hazardous materials packaging for the battery of a wheelchair or other assistive device;

- Accommodations for 10 or more passengers with disabilities who travel as a group;

- Provision of an on-board wheelchair on an aircraft that does not have an accessible lavatory for persons who can use an inaccessible lavatory but need an on-board chair to do so.

An airline that uses a"block seating" approach to provide special seating for passengers with disabilities is free to require 24 hours advance notice for such accommodations.  See the "Seating" section later in this booklet.

Carriers are not required to provide the following services or equipment, but should they choose to provide them, they may require 48 hours advance notice and a one hour advance check-in:

- Medical oxygen for use on board the aircraft;

- Carriage of an incubator;

- Hook-up for a respirator to the aircraft's electrical supply;

- Accommodations for a passenger who must travel on a stretcher.

Carriers may impose reasonable, non-discriminatory charges for these optional services.

Where a service is required by the rule, the airline must ensure that it is provided if appropriate notice has been given and the service requested is available on that particular flight.  If a passenger does not meet advance notice or check-in requirements, carriers must make a reasonable effort to accommodate the requested service, providing this does not delay the flight.

If a passenger with a disability provides the required notice but is required to fly on another carrier (for example, if the flight is cancelled), the original carrier must, to the maximum extent feasible, provide assistance to the second carrier in furnishing the accommodation requested by the individual.

It must be recognized that even when a passenger has requested information in advance on the accessibility features of the scheduled aircraft,

2

carriers sometimes have to substitute a different aircraft at the last minute for safety, mechanical or other reasons. The substitute aircraft may not be as fully accessible—a condition that may prevail until the retirement of the last of the aircraft that were in service before the implementation of the Air Carrier Access rules.

## When Attendants Can Be Required

Carriers may require the following individuals to be accompanied by an attendant:

- A person traveling on a stretcher or in an incubator (for flights where such service is offered);

- A person who, because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from carrier personnel;

- A person with a mobility impairment so severe that the individual is unable to assist in his or her own evacuation from the aircraft;

- A person who has both severe hearing and severe vision impairments which prevent him or her from receiving and acting on necessary instructions from carrier personnel when evacuating the aircraft during an emergency.

The carrier and the passenger may disagree about the applicability of one of these criteria. In such cases, the airline can require the passenger to travel with an attendant, contrary to the passenger's assurances that he or she can travel alone. However, the carrier cannot charge for the transportation of the attendant.

The airline can choose an attendant in a number of ways. It could designate an off-duty employee who happened to be traveling on the same flight to act as the attendant. The carrier or the passenger with a disability could seek a volunteer from among other passengers on the flight to act as the attendant. The carrier could provide a free ticket to an attendant of the passenger's choice for that flight segment. In the end, however, a carrier is not required to find or furnish an attendant.

The attendant would not be required to provide personal service to the passenger with a disability other than to provide assistance in the event of an emergency evacuation. This is in contrast to the case of the passenger that usually travels accompanied by a personal attendant, who would provide the passenger whatever service he or she requests.

If there is not a seat available on the flight for an attendant, and as a result a person with a disability holding a confirmed reservation is denied travel on the flight, the passenger with a disability is eligible for denied boarding compensation.

For purposes of determining whether a seat is available for an attendant, the attendant shall be deemed to have checked in at the same time as the person with the disability.

3

## ✈ *At The Airport*

### Airport Accessibility

UNTIL A FEW YEARS AGO, ONLY THOSE AIRPORT facilities designed, constructed, or renovated by or for a recipient of federal funds had to comply with federal accessibility standards. Even at federally-assisted airports, not all facilities and activities were required to be accessible. Examples are privately-owned ground transportation and concessions selling goods or services to the public. As a result of the Air Carrier Access rules, and the Americans with Disabilities Act of 1990 (ADA) and implementing regulations, these privately-owned facilities must also be made accessible.

In general, airports under construction or being refurbished must comply with the ADA Accessibility Guidelines (ADAAG) and other regulations governing accessibility in accordance with a timetable established in the ADA. The ADAAGs can be found at http://www.access-board.gov/adaag/html/adaag.htm. Note in particular section 10.4, "Airports." Thus, while there are still many changes to be made, the accessibility of most airports is improving. With few exceptions, the following services should be available in all air carrier terminals within the next few years:

- Accessible parking near the terminal;

- Signs indicating accessible parking and the easiest access from those spaces to the terminal;

- Accessible medical aid facilities and travelers aid stations;

- Accessible restrooms;

- Accessible drinking fountains;

- Accessible ticketing systems at primary fare collection areas;

- Amplified telephones and text telephones (TTs) for use by persons with hearing and speech impairments (there must be at least one TT in each terminal in a clearly marked accessible location);

- Accessible baggage check-in and retrieval areas;

- Jet bridges and mobile lounges that are accessible (at airports that have such facilities);

- Level entry boarding ramps, lifts or other means of assisting an individual with a disability on and off an aircraft;

- Information systems using visual words, letters or symbols with lighting and color coding, and systems for providing information orally;

- Signs indicating the location of specific facilities and services.

### Moving Through the Airport

To make travel easier for an individual with a disability, major airports will be required to make the following services accessible under new rules being put into effect in the next several years:

- Shuttle vehicles, owned or operated by airports, transporting people between parking lots and terminal buildings;

- People movers and moving walkways within and between terminals and gates.

All carrier facilities must currently include one accessible route from an airport entrance to ticket counters, boarding locations and baggage handling areas. These routes must minimize any extra distance that wheelchair users must travel compared to other passengers to reach these facilities. Outbound and inbound baggage facilities must provide efficient baggage handling for individuals with a disability, and these facilities must be designed and operated so as to be accessible. There must be appropriate signs to indicate the location of accessible services.

4

Carriers cannot restrict the movements of persons with disabilities in terminals or require them to remain in a holding area or other location while awaiting transportation and other assistance.

Curbside baggage check-in (available only for domestic flights) may be helpful to passengers with a disability.

## Passenger Information

Carriers must ensure that individuals with disabilities, including those with vision and hearing impairments, have timely access to the same information provided to other passengers,including (but not limited to) information on:

- ticketing;
- scheduled departure times and gates;
- change of gate assignments;
- status of flight delays;
- schedule changes;
- flight check-in;
- checking and claiming of luggage.

This information must be made available upon request.  A crew member is not required to interrupt his or her immediate safety duties to supply such information.

A copy of the Air Carrier Access rules must be made available by carriers for inspection upon request at each airport.

As previously noted, any carrier that provides telephone service for the purpose of making reservations or offering general information shall also provide TT service.  This service for people with speech and hearing impairments must be available during the same hours that the general public has access to regular phone service, with equivalent response times and charges.

## Security Screening

An individual with a disability must undergo the same security screening as any other member of the traveling public.

If an individual with a disability is able to pass through the security system without activating it, the person shall not be subject to special screening procedures.  Security personnel are free to examine an assistive device that they believe is capable of concealing a weapon or other prohibited item.  If an individual with a disability is not able to pass through the system without activating it, the person will be subject to further screening in the same manner as any other passenger activating the system.

Security screening personnel at some airports may employ a hand-held device that will allow them to complete the screening without having to physically search the individual.  If this method is still unable to clear the individual and a physical search becomes necessary, then at the passenger's request, the search must be done in private.

If the passenger requests a private screening in a timely manner, the carrier must provide it in time for the passenger to board the aircraft.  Such private screenings will not be required, however, to a greater extent or for any different reason than for other passengers.  However, they may take more time.

## Medical Certificates

A medical certificate is a written statement from the passenger's physician saying that the passenger is capable of completing the flight safely without requiring extraordinary medical care.

A disability is not sufficient grounds for a carrier to request a medical certificate.  Carriers shall not require passengers to present a medical certificate unless the person:

- Is on a stretcher or in an incubator (where such service is offered);
- Needs medical oxygen during flight (where such service is offered);
- Has a medical condition which causes the carrier to have reasonable doubt that the individual can complete the flight safely, without requiring extraordinary medical assistance during the flight; or

5

- ==Has a communicable disease or infection that has been determined by federal public health authorities to be generally transmittable during flight.==

If the medical certificate is necessitated by a communicable disease (see next section), it must say that the disease or infection will not be communicable to other persons during the normal course of flight, or it shall state any conditions or precautions that would have to be observed to prevent transmission of the disease or infection to others.

Carriers cannot mandate separate treatment for an individual with a disability except for reasons of safety or to prevent the spread of a communicable disease or infection.

## Communicable Diseases

As part of their responsibility to their passengers, air carriers try to prevent the spread of infection or a communicable disease on board an aircraft. ==If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may:==

- Refuse to provide transportation to the person;

- Require the person to provide a medical certificate stating that the disease at its current stage would not be transmittable during the normal course of flight, or describing measures which would prevent transmission during flight;

- ==Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask).==

If the individual has a contagious disease but presents a medical certificate describing conditions or precautions that would prevent the transmission of the disease during the flight, the carrier shall provide transportation unless it is not feasible to act upon the conditions set forth in the certificate to prevent transmission of the disease.

6

# What Airline Employees, Airline Contractors, and Air Travelers with Disabilities Need to Know About Access to Air Travel for Persons with Disabilities

*A Guide to the Air Carrier Access Act (ACAA) and*
*its implementing regulations, 14 CFR Part 382 (Part 382)*

# Chapter 1:  Understanding How to Use this Manual

    **A.  Introduction**
    **B.  Background**
    **C.  Keyword Definitions**

**A.  Introduction**

*Purpose of the Manual*

This manual is a guide to the Air Carrier Access Act (ACAA) and its implementing regulations, 14 CFR part 382 (part 382).  It is designed to serve as a brief but authoritative source of information about the services, facilities, and accommodations required by the ACAA and the provisions of part 382.  The manual does not expand air carriers' legal obligations or establish new requirements under the law.   It contains suggested practices and procedures for carriers to use on a voluntary basis to implement Part 382.

The primary purpose of the manual is to help you, employees/contractors of air carriers and employees/contractors of indirect air carriers that provide services or facilities to passengers with disabilities, to assist those passengers in accordance with the law. Knowing your legal responsibilities will help ensure consistent compliance with the law and protect the civil rights of air travelers with disabilities when providing services, facilities, and accommodations to them.

Throughout the manual, rather than talking about air carriers' or indirect air carriers' employees/contractors such as yourself in the third person, the word "you" is used.  In most instances, the word "you" refers to personnel who deal directly with the traveling

public.  Moreover, the obligations and responsibilities under the law as set forth in the

manual must be read within the context of each specific employee's duties on the job.

A second purpose of this manual is to offer air travelers with disabilities information

about their rights under the ACAA and the provisions of part 382.  Accordingly, in

addition to the other useful information in this manual, Appendix I contains a list of "Tips

for Air Travelers with Disabilities" to help ensure a smooth and comfortable trip.  In

addition, Appendix III provides a list of "Frequently Asked Questions" and answers and

Appendix IV contains a list of "Recent DOT Enforcement Orders Related to the ACAA."

These DOT enforcement orders are useful because they provide examples in which DOT

has interpreted some of the provisions of the ACAA and part 382 under particular

circumstances.

**B.  Background**

*U.S. Air Carriers*

In 1986, Congress passed the ACAA, which prohibits discrimination by U.S. air carriers

against qualified individuals with disabilities.  49 U.S.C. 41705.  In 1990, the Department

of Transportation (DOT) issued part 382, the regulations defining the rights of passengers

with disabilities and the obligations of U.S. air carriers under the ACAA.  Since then,

these regulations have been amended a number of times.  DOT has also issued guidance

to air carriers on the ACAA and part 382 in a variety of ways:  preambles to regulatory

amendments, industry letters, correspondence with individual carriers or complainants,

enforcement actions, website postings, and informal conversations with the public and air

carriers.

Wall v. TSA                                                                          Appendix

_Foreign Air Carriers_

On April 5, 2000, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"; Pub. L. 106-181) amended the ACAA to cover foreign air carriers. Although a final rule modifying part 382 to cover foreign air carriers has not yet been issued, in May 2000 DOT's Office of the Assistant General Counsel for Aviation Enforcement and Proceedings (Enforcement Office) issued a notice informing the public of its intent to use the provisions of part 382 as guidance in investigating any complaints of non-compliance with the ACAA by foreign carriers. In addition, in July 2003 DOT amended part 382 by adding a new section, 382.70, that requires both U.S. carriers and foreign carriers to record and report to DOT on written disability-related complaints that they receive. At the present time, section 382.70 is the only provision of part 382 that specifically states that it applies to foreign carriers. Finally, a notice of proposed rulemaking (NPRM) proposing to extend the other provisions of part 382 to foreign carriers was published on November 4, 2004. Therefore, while the majority of this manual does not expressly apply to foreign carriers, they should look to this document and part 382 in satisfying their general nondiscrimination obligations under AIR-21 and DOT's May 2000 guidance.

_Development of Technical Assistance Manual_

In 2000, Congress required DOT to create a technical assistance manual to provide guidance to individuals and entities with rights or responsibilities under the ACAA. This manual responds to that mandate. In creating this manual, DOT held meetings with representatives from the disability community, air carriers, and organizations that contract with air carriers to provide disability-related services. Those who attended the

meetings made suggestions for this manual.  All of these suggestions have been
thoroughly considered by DOT and incorporated where appropriate.


_ACCESS_

A step-by-step process for resolving issues involving passengers with disabilities appears
later in this manual.  Whether the issue is a matter of law, customer service, or both, the
ACCESS checklist will be useful in identifying the needs of passengers with disabilities
and determining what accommodations the air carriers are required to provide as a matter
of law.  _See_ Chapter 6, section B.


**_How to use this Manual_**

This manual is structured in the same sequence as the steps a passenger would encounter
on a trip, _i.e._, requirements concerning

- planning a flight,

- the airport experience,

- enplaning, deplaning, and making connections,

- services during a flight, and

- responding to disability-related complaints.

This manual contains the following tools to assist you in quickly and easily finding the
answer to your questions:

- A Table of Contents at the beginning of the manual;

- An Alphabetical Index at the back of the manual; and

- A part 382 Index listing the citations to part 382 at the back of the manual.

Wall v. TSA                                                                                    Appendix

Also, the following appendices appear at the end of the manual:

- Appendix I:  "Tips for Air Travelers with Disabilities" as they relate to the most commonly-used accommodations, facilities, and services that carriers are required to make available to such passengers;

- Appendix II:  a list of concerns applicable mainly to air carrier management, as opposed to frontline customer service personnel;

- Appendix III:  a list of "Frequently Asked Questions" and answers;

- Appendix IV:  a list of "Recent DOT Enforcement Orders Related to the ACAA";

- Appendix V:  the full text of part 382; and

- Appendix VI:  the DOT document "Guidance Concerning Service Animals in Air Transportation."

***Themes of this Manual***

*Legal Requirements and Customer Service*

This manual highlights the difference between actions you must take according to the law as stated in part 382 and actions that you may choose to take in an effort to provide superior customer service to passengers with disabilities. Legal requirements are generally designated by the words, "must" or "shall" in the manual. Words such as "should" or "may" indicate accommodations that part 382 does not require but that DOT recommends and that you may decide to provide as a matter of good customer service.

*Safety*

**Indirect Air Carrier:**

A company not directly involved in the operation of an aircraft that sells air transportation services to the general public, such as tour and charter operators.  [Sec. 382.5]

**Individual with a Disability:**

Any individual who:

- has a physical or mental impairment that, on a permanent or temporary basis,

- substantially limits one or more major life activities,

- has a record of such an impairment, or

- is regarded as having such an impairment. [Sec. 382.5]

**Qualified Individual with a Disability:**

An individual with a disability who:

- accompanies or meets a traveler using airport facilities;

- seeks information about schedules, fares, or policies;

- attempts to use facilities or services offered to the general public by an air carrier;

- has a ticket, or makes a good faith attempt to buy a valid ticket for a flight;

- arrives with a valid ticket for the flight; and

- meets reasonable, nondiscriminatory requirements applicable to all passengers.

[Sec. 382.5]

Wall v. TSA                                                                                      Appendix

# Chapter 2:  Learning the Basics about the Law

# Protecting Air Travelers with Disabilities

- **What does the Air Carrier Access Act (ACAA) say?** The ACAA prohibits U.S. and foreign air carriers from discriminating against an air traveler with a disability on the basis of such disability (49 U.S.C. 41705).

- **What is 14 CFR Part 382 (part 382)?**  Part 382 is a detailed set of rules that define air carriers' responsibilities under the ACAA and ensures that individuals with disabilities will be treated without discrimination consistent with the safe carriage of all passengers.

- **Who has to follow part 382?**  The following organizations and individuals must comply with part 382: (1) air carriers and their employees (*e.g.*, ticket and gate agents, flight attendants, baggage handlers, pilots, etc.); (2) authorized agents of an air carrier (*e.g.*, travel agents); (3) organizations and their employees that have business arrangements with air carriers to provide disability-related services (*e.g.*, wheelchair service, baggage handling, etc.); and (4)  indirect air carriers and their employees (*e.g.*, tour operators) that provide facilities, services, or other accommodations to passengers with disabilities.

- **Who is protected by part 382?** Part 382 protects three categories of individuals with disabilities: (1) individuals who have a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities; (2) individuals who

have a record of such impairment; and (3) individuals who are regarded as having such an impairment, whether they have the impairment or not.

- **What is a physical or mental impairment?**

   **Physical impairments** include (1) physiological disorders or conditions; (2) cosmetic disfigurements; or (3) anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory including speech organs, cardiovascular, reproductive, digestive, genitourinary, hemic and lymphatic, skin, and endocrine.

   Examples of physical impairments include orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, HIV disease, drug addition, and alcoholism.

   **Mental impairments** include mental or psychological disorders, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

   Physical characteristics such as the color of one's eyes, hair, or skin, baldness, and left-handedness do not constitute physical impairments. Similarly, neither age nor obesity alone constitutes a physical impairment. Disadvantages due to cultural or economic factors are not covered by part 382. Moreover, the definition of "physical or mental impairment" does not include personality traits such as poor judgment or a quick temper, where these are not symptoms of a mental or psychological disorder.

- **What is a substantial limitation on major life activities?** ==To qualify as a "disability" under part 382 a condition or disease must substantially limit a major life activity.  Major life activities include, but are not limited to,== activities such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, ==breathing,== learning, and working.

- **When does an impairment "substantially limit" a major life activity?**  There is no absolute standard for determining when an impairment is a substantial limitation.  Some impairments obviously limit the ability of an individual to engage in a major life activity.

  *Example 1*:  *A person who is deaf is substantially limited in the major life activity of hearing.*

  *Example 2*:  *A person with traumatic brain injury may be substantially limited in the major life activities of:  (a) caring for himself or herself; and (b) working, because of memory deficiency, confusion, contextual difficulties, and the inability to reason appropriately.*

  *Example 3*:  *An individual who is paraplegic may be substantially limited in the major life activity of walking.*

- **Are temporary mental or physical impairments covered by part 382?**  Yes.

  *Example*:  *While on a skiing trip, Jane breaks her leg and is placed in a cast that keeps her from bending her leg and walking without the use of crutches.  Jane will eventually recover the full use of her leg, but in the meantime she is substantially limited in the major life*

Wall v. TSA                                                                    Appendix

*__Example 2__*:  *Karen, an individual born with a prominent facial disfigurement, has been refused transportation on the grounds that her presence has upset several passengers who have complained to gate agents about her appearance.  Karen's physical disfigurement becomes substantially limiting only as a result of the attitudes of others and she is protected by the provisions of part 382.  Refusing to provide transportation to Karen would violate section 382.31 because you must not refuse to provide transportation to a qualified individual with a disability, such as Karen, solely because her appearance may offend or annoy other passengers.  As in the example above, and regardless whether the decision to refuse transportation was correct, you must provide Karen with a written explanation of the specific basis for the refusal within 10 calendar days of the incident.*

- **How do I determine whether a person is an individual with a disability?**

  Provide an opportunity for the passenger to self-identify by asking how you can best assist him or her.

- **How do I assist a passenger with a disability?**  Ask the passenger how you can best assist him or her.  A passenger with a disability has the most information about his or her abilities, limitations, level of familiarity with the airport and airline, and needs in connection with traveling by air.

- **May I ask an individual what his or her disability is?**  Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38.  Generally, you may not make inquiries about an individual's disability or the nature or

Wall v. TSA                                                                                      Appendix

==severity of the disabili==ty.  However, you may ask questions about an individual's ability to perform specific air travel-related functions, such as enplaning, deplaning, walking through the airport, etc.

==*Example 1*==*:  You may not ask a person, "What is your disability?"*  *You may not ask, "Do you have diabetes?"*

*Example 2*:  *You may ask, "Can you walk from the gate area to your aircraft seat?"  You may ask, "Are you able to transfer from the aisle chair over a fixed aisle seat armrest?" You may ask, "Can you walk from this gate to your connecting gate?"  You may ask (by writing a note if necessary), "Do you need me to notify you if I make any announcements over the public address speaker?"*

*Example 3*:  *Susan asks for a bulkhead seat because the condition of her leg necessitates her need for greater legroom. You may ask, "Are you unable to bend your leg or is your leg fused or immobilized?"  [Sec. 382.38]*

- **What are some of the requirements of part 382 that you should be aware of?**  Following are some of the principal requirements of part 382.  It is important to note that the requirements of part 382 listed below are not meant to be exhaustive.  Rather, it is a list of requirements governing situations that you are likely to encounter on a regular basis.

- You must not discriminate against qualified individuals with a disability. [Sec. 382.7(a)(1)] You must not *require* a passenger with a disability to accept special services (including, but not limited to, pre-boarding) not requested by the passenger. [Sec. 382.7(a)(2)] Instead, you may *ask* a passenger with a disability if he or she would like a particular service, facility, or other accommodation. In addition, you must not exclude a qualified individual with a disability from or deny the individual the benefit of any air transportation or related services that are available to other passengers. [Sec. 382.7(a)(3)] For example, if you choose to provide ground transportation and overnight accommodations to passengers because of a flight cancellation, you must ensure that the ground transportation to the hotel, and the hotel itself, are accessible to a passenger with a disability.

- You must not refuse transportation to a passenger solely on the basis of a disability. [Sec. 382.31(a)]

- You must provide transportation to an individual with a disability who has an impairment that affects his or her appearance or results in involuntary behavior except under limited circumstances specified below. You must provide transportation to such individuals with disabilities even if the disability may offend, annoy, or inconvenience crewmembers or other passengers. [Sec. 382.31(b)] However, if the person's disability results in involuntary behavior that would or might be inimical to the safety of the flight, then the person may properly be refused transportation. [Sec. 382.31(d)]

- You shall not limit the number of individuals with disabilities on a particular flight. [Sec. 382.31(c)]

22

- <mark>If transportation of a passenger with a disability would endanger the safety of the aircraft or the health or safety of its passengers or violate an FAA safety regulation, you may refuse transportation to the individual with a disability.  [Sec. 382.31(d)]</mark>

- <mark>You shall not require a passenger with a disability to travel with an attendant or to present a medical certificate, *except* in very limited circumstances.  [Secs. 382.35(a) and 382.53(a)]</mark>

- You shall not exclude a passenger with a disability from any seat in an exit or other row solely on the basis of his or her disability except to comply with FAA safety rules.  FAA safety rules establish criteria that must be met in order for a passenger to occupy a seat in the emergency exit rows.  [14 CFR 121.585]  If a passenger with a disability meets these FAA criteria, he or she must be allowed to sit in an emergency exit row.  As with any other passenger, you must look at the individual passenger with a disability and reasonably assess whether he or she meets FAA criteria for exit-row seating.  [Sec. 382.37(a)]

- You must provide timely enplaning, deplaning, and connecting assistance to passengers with disabilities requesting such assistance.  As part of this duty, you must provide equipment (*e.g.*, wheelchairs, electric carts, and aisle chairs) and personnel (*e.g.*, individuals to propel wheelchairs and aisle chairs and individuals to assist passengers with disabilities in carrying and stowing their baggage).  [Secs. 382.39(a)(1) and 382.39(b)(5)]

- You must allow a passenger with a disability to stow his or her cane or other assistive device inside the cabin of the aircraft close to his or her seat if it fits, consistent with FAA safety rules on carry-on items.  [Sec. 382.41(c)]

# Chapter 3:  Assisting Air Travelers with Disabilities

# Planning a Trip

A.  **Advance Notice**
B.  **Information about the Aircraft**
C.  **Mobility Aids and Assistive Devices**
D.  **Service Animals**
E.  **Accommodations for Air Travelers  who are Deaf, Hard of Hearing, or Deaf-Blind**
F.  **Communicable Diseases**
G.  **Medical Certificates:  When are They Allowed?**
H.  **Your Obligation to Provide Services and Equipment**
I.  **Attendants**

## A.    Advance Notice

You cannot require passengers with disabilities to provide advance notice of their intention to travel or of their disability except as provided below.  [Sec. 382.33(a)]

*Advance Notice Only for Particular Services and Equipment*

You may require up to 48 hours' advance notice and one hour's advance check-in from a passenger with a disability who wishes to receive the following services:

- Transportation for a battery-powered wheelchair on an aircraft with fewer than 60 seats;

- Provision by the carrier of hazardous materials packaging for the battery of a wheelchair or other assistive device;

- Accommodations for 10 or more passengers with disabilities who travel as a group; and

Wall v. TSA                                                                                                      Appendix

- Provision of an on-board wheelchair on an aircraft that does not have an accessible lavatory for passengers with disabilities who can use an inaccessible lavatory but need an on-board chair to do so.  [Secs. 382.33(b)(5)-(8)]

**_Example_**_:  While making his reservation, a passenger with a disability gave the reservation agent 48 hours' advance notice that he would need an aisle chair to access the lavatory on his upcoming flight.  The flight is on an aircraft with more than 60 seats and it does not have an accessible lavatory.  During the call, the passenger is made aware of the fact that the lavatory is inaccessible, but explains that he can use an inaccessible lavatory as long as he has access to a carrier-provided aisle chair.  Because the passenger has complied with the advance notice requirement here, normally this information would have been entered into the passenger's reservation record (otherwise known as the passenger name record (PNR)) by the carrier and the request for an aisle chair would have been handled through that notification process.  You are a new gate agent for your carrier and when this passenger approaches you at the gate more than an hour before the scheduled departure time of the flight and asks about the aisle chair, you are not sure how to reply.  What should you do?_

_To begin, as a matter of good customer service, you should tell the passenger that you are not sure but you will find out for him.  You should ask a colleague and, if necessary, contact a CRO.  When you ask your colleague, you are told that all aircraft with more than 60 seats in your carrier's fleet maintain an in-cabin aisle chair.  Once you receive this information you should assure the passenger that an aisle chair is available so he can use the inaccessible lavatory on the aircraft._

Wall v. TSA                                                                                              Appendix

*Advance Notice for Optional Services and Equipment*

Although carriers are not required to provide the following services or equipment, if they choose to provide them, you may require 48 hours' advance notice and one hour's advance check-in for:

- Medical oxygen for use on board the aircraft;

- Carriage of an incubator;

- Hook-up for a respirator to the aircraft's electrical power supply; and

- Accommodation for a passenger who must travel on a stretcher.  [Secs. 382.33(b)(1)-(4)]

If appropriate advance notice has been given and the requested service is available on that particular flight, you must ensure that the service or equipment is provided.

*Make a Reasonable Effort to Accommodate, Even Without Advance Notice*

In addition, even if a passenger with a disability does *not* meet the advance notice or check-in requirement, you must make a reasonable effort to furnish the requested service or equipment, provided that making such accommodation would not delay the flight. [Secs. 382.33(c) and (e)]

**_Example 1_**: *Mr. Thomas uses a battery-powered wheelchair.  He travels frequently between Washington, DC, and New York for business.  One day, he finds out that he has an important business meeting in New York and must travel up to New York that afternoon.  He has no time to provide advance notice regarding the transportation of his battery-powered wheelchair and arrives at the gate 45 minutes before his flight is*

Wall v. TSA                                                                                    Appendix

*scheduled to depart.  The aircraft for the flight has fewer than 60 passenger seats.  What should you do?*

*Carriers may require 48 hours' advance notice and one-hour advance check-in for transportation of a battery-powered wheelchair on a flight scheduled to be made on an aircraft with fewer than 60 seats.  Carriers may require the same advance notice for provision of hazardous materials packaging for a battery.  However, airline personnel are required to make reasonable efforts to accommodate a passenger who fails to provide the requisite notice to the extent it would not delay the flight.  Therefore, you must make a reasonable effort to accommodate Mr. Thomas as long as it would not delay the flight.*

*Mr. Thomas is a frequent traveler on this particular route and he knows that usually it is feasible to load, store, secure, and unload his battery-powered wheelchair and spillable battery in an upright position [Sec. 382.41(g)(2)] or detach, "box", and store the spillable battery [Sec. 382.41(g)(3)] within about 20-25 minutes.  If this is the case, you must accommodate Mr. Thomas, his battery-powered wheelchair, and the spillable battery even though Mr. Thomas did not provide advance notice, since doing so would not delay the flight.*

***Example 2****:  Ms. Webster must travel with medical oxygen and shows up at the airport without providing advance notice of her need for medical oxygen.  As a policy, your carrier does not provide medical oxygen on any flights.  What should you do?*

Wall v. TSA                                                                                                           Appendix

*To begin, you should confirm that your carrier does not provide the optional service of medical oxygen for use on board a flight. If no medical oxygen service is available on your carrier, you should explain this to Ms. Webster and tell her that the carrier cannot accommodate her.*

*As a matter of customer service, you may direct Ms. Webster to another carrier that does provide medical oxygen service in that market. The passenger should be aware, however, that the provision of medical oxygen involves coordination with the passenger's physician to determine the flow rate and the amount of oxygen needed and arranging for the delivery of the oxygen by the carrier to the point of origin of the passenger's trip. Therefore, normally, it is not possible to accommodate a passenger who needs medical oxygen on a flight unless the advance notice is provided because the accommodation cannot be made without delaying the flight.*

*If Aircraft is Substituted, Make an Effort to Accommodate*

Even if a passenger with a disability provides advance notice, sometimes weather or mechanical problems require cancellation of the flight altogether or the substitution of another aircraft. Under these circumstances, you must, to the maximum extent feasible, assist in providing the accommodation originally requested by the passenger with a disability. [Sec. 382.33(f)]

## B.    Information about the Aircraft

You should be familiar with and be able to provide information about aircraft accessibility for passengers with a disability when they request this information. [Secs.

*Requests for Seat Assignments by a Passenger Accompanied by a Service Animal*

For a disabled passenger traveling with a service animal, you must provide, as the passenger with a disability requests, either a bulkhead seat or a seat other than a bulkhead seat.  [Sec. 382.38(a)(3)]

If carriers provide special information concerning the transportation of animals outside the continental United States to any passengers, you must provide such information to all passengers with a disability traveling with a service animal on the flights.  [Sec. 382.55(a)(3)]

## E.     Accommodations for Air Travelers who are Deaf, Hard of Hearing, or Deaf-Blind

If your carrier makes available a telephone reservation and information service to the public, you must make available a text telephone (TTY) to permit individuals who are deaf or hard of hearing to make reservations and obtain information.  The TTY must be available during the same hours as the telephone service for the general public and the same wait time and surcharges must apply to the TTY as the telephone service for the general public.  [Secs. 382.47(a) and (b)]

## F.     Communicable Diseases

*Passengers with a Communicable Disease Are Permitted on Flight*

Except as described below, you must not (i) refuse transportation to; (ii) require provision of a medical certificate from; or (iii) impose any condition, restriction, or requirement not

imposed on other passengers on, a passenger with a communicable disease or infection. [Sec. 382.51(a)]

*If Direct Threat to Health or Safety of Others, Limitations May be Imposed*

Only if a passenger with a communicable disease or infection poses a *direct threat* to the health or safety of others, can you take any of the actions listed above. [Sec. 382.51(b)(1)] A *direct threat* means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services.

If you are faced with particular circumstances where you are required to make a determination as to whether a passenger with a communicable disease or infection poses a direct threat to the health or safety of others, you must make an individualized assessment based on a reasonable judgment, ***relying on current medical knowledge or the best available objective evidence.*** If the presentation of a medical certificate would alleviate concerns over the passenger's condition, or reasonable modification of policies, practices, or procedures would lessen the risk to other passengers, then you should consider this in making such an individualized assessment. You should also confer with appropriate medical personnel and a CRO when making this assessment.

*If the Passenger Poses a Direct Threat to the Health and Safety of Others*

If, in your estimation, a passenger with a communicable disease or infection poses a direct threat to the health or safety of other passengers, you may (i) refuse to provide transportation to that person; (ii) require that person to provide a medical certificate

Wall v. TSA                                                                      Appendix

stating that the disease at its current stage would not be transmittable during the normal course of a flight or, if applicable, describing measures that would prevent transmission during the flight [Sec. 382.53(c)]; or (iii) impose on that passenger a special condition or restriction (*e.g*., wearing a mask).  You must **choose the least restrictive** of the three options set forth above that would accomplish the objective.  [Sec. 382.51(b)(4)]

At all times, as a matter of good customer service, you should treat the passenger with courtesy and respect.

## G.     Medical Certificates:  When are they Allowed?

A medical certificate is a written statement from the passenger's physician saying that the passenger is capable of completing the flight safely without requiring extraordinary medical assistance during the flight.  Except under the circumstances described below, you must not require medical certification of a passenger with a disability as a condition for providing transportation.

You may require a medical certificate only if the passenger with a disability is an individual who

- is traveling on a stretcher or in an incubator (where such service is offered);

- needs medical oxygen during the flight (where such service is offered); or

- has a medical condition that causes the carrier to have reasonable doubt that the passenger can complete the flight safely without requiring extraordinary medical assistance during the flight.  [Sec. 382.53 (a) and (b)]

*Medical Certificate and a Passenger with a Communicable Disease or Infection*

In addition, if you determine that a passenger with a communicable disease or infection poses a direct threat to the health or safety risk of others, you may require a medical certificate from the passenger.  [Sec. 382.53(c)(1)]  The medical certificate must be dated within 10 days of the flight date.  [Sec. 382.53(c)(2)]

In the event that you determine the need for a medical certificate, you should indicate to the passenger with a disability the reason for the request.  You should base your request on the reasons set forth under the law and outlined above.

At all times, you should treat the passenger from whom you are requesting a medical certificate with courtesy and respect.

**_Example_**: *A passenger arrives at the gate with her six year old daughter.  The girl's face and arms are covered with red lesions, resembling chicken pox.  What should you do?*

*Generally, you must not refuse travel to, require a medical certificate from, or impose special conditions on a passenger with a communicable disease or infection.  However, if a passenger appears to have a communicable disease or infection that poses a direct threat to the health or safety of other passengers, you may be required to make a determination about the best course of action based on the seriousness of the health risk and the ease of disease transmittal.  For a communicable disease or infection to pose a direct threat, the condition must both be readily transmitted under conditions of flight and have serious health consequences (e.g., SARS).  Medical conditions that are easily*

Wall v. TSA                                                                                              Appendix

*transmitted in aircraft cabins but have limited health consequences (e.g., a common cold) as well as conditions that are difficult to transmit in aircraft cabins but have serious health consequences (e.g., AIDS) do not pose a direct threat to the health or safety of passengers.*

*The first thing you should do is interview the passenger and her mother to obtain basic information about the girl's condition. This exchange should be done discreetly and in a courteous and respectful manner. If you still have a question about the nature of the child's condition that will impact decisions about transportation, you should contact a CRO and explain the situation.*

*Here, the mother tells you and the CRO that the child has chicken pox but is no longer contagious. The CRO would likely consult with appropriate medical personnel to verify whether the child could be contagious based on the mother's statement.*

*If there is a reasonable basis for believing that the passenger poses a direct threat to the health or safety of others, you must choose the least restrictive alternative among the following options: (i) refusing transportation to the individual; (ii) requiring a medical certificate; or (iii) imposing a special condition or limitation on the individual. If the medical support people indicate that there is a chance that the child is no longer contagious but only if a certain number of days have passed since the outbreak of the lesions, you could request a medical certificate before you permit the child to travel.*

Wall v. TSA                                                                                      Appendix

*Having discussed the situation with the passenger and her mother and consulted the CRO and the medical support personnel, the request for a medical certificate appears to be reasonable under the circumstances and the least restrictive of the three options.*

*Keep in mind that section 382.53(c)(2) specifies that the medical certificate be from the child's physician and state that the child's chicken pox would not be communicable to other passengers on the flight. The medical certificate must also include any conditions or precautions that would have to be observed to prevent the transmission of the chicken pox to other passengers and be dated within ten days of the date of the flight. If the medical certificate is incomplete or if the passenger is attempting to travel before the date specified in the medical certificate or without implementing the conditions outlined to prevent transmission, the child would not be permitted to fly.*

## H.     Your Obligation to Provide Services and Equipment

When assistance getting on or off a plane, making flight connections, or receiving transportation between gates is requested by a passenger with a disability, or offered by carrier personnel and accepted by the passenger, you must provide it.  [Sec. 382.39(a)]  More specifically, you must provide, as needed, the following:

- services personnel

- ground wheelchairs

- boarding wheelchairs

- ramps or mechanical lifts.  [Sec. 382.39(a)(1)]

Aircraft with more than 60 passenger seats having an accessible lavatory must be equipped with an operable on-board wheelchair.  [Sec. 382.21(a)(4)]  On-board

It may not be apparent whether a person is an individual with a disability.  You should provide an opportunity for a passenger to self-identify as an individual with a disability by asking if the person needs assistance and, if so, how best you can assist with those needs.  Keep in mind that you cannot require an individual with a disability to accept special services, including pre-boarding.

### *Some Examples of Physical Impairments [Sec. 382.5(a)(1)]:*

- Orthopedic impairment;

- Deafness (profound hearing loss);

- Hard of hearing (mild to profound hearing loss);

- Vision impairment and blindness;

- Speech disorder;

- Cerebral palsy;

- Epilepsy;

- Muscular dystrophy;

- Multiple sclerosis;

- Cancer;

- Heart disease; and

- Diabetes.

### *Some Examples of Mental or Psychological Impairments [Sec. 382.5(a)(2)]:*

- Mental retardation;

- Depression;

- Anxiety disorders;

- Specific learning disabilities; and

Wall v. TSA                                                                              Appendix

- Brain injury.

Below is a list of general tips to consider when interacting with people with disabilities followed by tips relating to interacting with individuals with one or more of the five basic types of disabilities. These tips are aimed at ensuring that services, facilities, and other accommodations are provided to passengers with disabilities in a respectful and helpful manner.

Some of the tips relate to specific legal requirements, but most of them set forth suggestions for interacting in a way that would constitute good customer service and demonstrate a sensitivity to the issues concerning passengers with disabilities. The following tips should be read and employed with the above qualification in mind.

# APPENDIX II

# Airline Management-Related Issues

# Airline Management-Related Issues

Appendix II highlights provisions of the ACAA and the accompanying regulations outlining specific responsibilities of management of carriers, *i.e.*, requirements to be implemented by management employees as opposed to personnel who deal with the traveling public, including passengers with a disability.  In places, these are overlapping responsibilities and cross-references will be made to specific sections of this manual.

**Discrimination is Prohibited**

Management of carriers are required to ensure that the carrier (either directly or indirectly through its contractual, licensing, or other arrangements for provision of air transportation) does not discriminate against qualified individuals with a disability by reason of such disability.  [Sec. 382.7(a)(1)]  In addition, management of carriers should be aware that they are responsible for compliance with the ACAA and part 382 not only by their *own* employees, but also by employees of any company or entity performing functions on behalf of the carrier.

More specifically, carriers cannot require a passenger with a disability to accept special services, *e.g.*, pre-boarding, not requested by the passenger.  [Sec. 382.7(a)(2)]  Carriers cannot exclude a qualified individual with a disability from or deny that individual the benefit of air transportation or related services that are available to other individuals, even if there are separate or different services available for passengers with a disability, except as provided by the ACAA and part 382.  [Sec. 382.7(a)(3)]  Carriers cannot take actions adverse to passengers with a disability if they assert their rights under the ACAA and part 382.  [Sec. 382.7(a)(4)]

Carriers cannot limit the number of passengers with a disability on a given flight.  [Sec. 382.31(c)]   Carriers must modify policies, practices, and facilities as necessary to ensure nondiscrimination consistent with the standards of Section 504 of the Rehabilitation Act, as amended.  Carriers are not required to make modifications that would constitute an undue burden or would fundamentally alter their program.  [Sec. 382.7(c)]

### *Refusal of Transportation*

Carriers cannot refuse transportation to a qualified individual with a disability solely because the person's disability results in appearance or involuntary behavior that may offend, annoy, or inconvenience others.  [Sec. 382.31(b)]  Carriers must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability unless it is expressly permitted by the ACAA and part 382.  [Sec. 382.31(a)]

### *Safety Considerations*

The ACAA does not require air carriers to disregard applicable FAA safety regulations.  [Sec. 382.3(d)]

Carriers may refuse to provide transportation to *any* passenger on the basis of safety and if carriage would violate FAA regulations.  However, when carriers exercise this authority, they must not discriminate against a passenger with a disability on the basis of disability.  [Sec. 382.31(d)]

**Written Explanation for Refusal of Transportation**

When a carrier refuses to provide transportation to a passenger on a basis relating to disability, the carrier must specify in writing to the passenger the basis for the determination within 10 days of the refusal of transportation.  [Sec. 382.31(e)]  In the situation where refusal of transportation is based on safety concerns, the written notice must include the carrier's reasonable and specific basis for its opinion that transporting the passenger would be inimical to the safety of the flight.

**No Charge for Accommodating Passengers with a Disability**

Carriers cannot impose charges for providing facilities, equipment, or services that are required by the ACAA and its accompanying regulations for passengers with a disability.  [Sec. 382.57]

**Indirect Air Carriers**

If an indirect air carrier provides facilities or services for passengers that are covered for other carriers by sections 382.21 through 382.55, the indirect air carrier must do so in a manner consistent with those regulations.  [Sec. 382.7(b)]

**Contractors and Travel Agents**

Carriers must receive assurances from their contractors who provide services, including travel agents (except non-U.S. citizens providing services outside the U.S.), that they will not discriminate on the basis of disability when providing such services and include a clause with that assurance in their contracts.  [Sec. 382.9(a)]  Similarly, their contracts must contain a

*www.fitness.gov* when it has been finalized.

The meeting that is scheduled to be held on May 5, 2015, is open to the public. Every effort will be made to provide reasonable accommodations for persons with disabilities and/or special needs who wish to attend the meeting. Persons with disabilities and/or special needs should call (240) 276–9567 no later than close of business on April 21, 2015, to request accommodations. Members of the public who wish to attend the meeting are asked to pre-register by sending an email to *rsvp.fitness@hhs.gov* or by calling (240) 276–9567. Registration for public attendance must be completed before close of business on April 28, 2015.

Dated: March 20, 2015.

**Shellie Y. Pfohl,**

*Executive Director, Office of the President's Council on Fitness, Sports, and Nutrition, U.S. Department of Health and Human Services.*

[FR Doc. 2015–06999 Filed 3–26–15; 8:45 am]

BILLING CODE 4150–35–P

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Disease Control and Prevention**

**Criteria for Requesting Federal Travel Restrictions for Public Health Purposes, Including for Viral Hemorrhagic Fevers**

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice.

**SUMMARY:** The Centers for Disease Control and Prevention (CDC) in the Department of Health and Human Services (HHS) is publishing this Notice to inform the public of the criteria CDC considers for requesting federal travel restrictions for public health purposes, including for use of the Do Not Board (DNB) list and Public Health Border Lookout records. Individuals with communicable diseases that pose a public health threat to travelers can be placed on this list to restrict them from boarding commercial aircraft arriving into, departing from, or traveling within the United States. This notice further describes the factors that HHS/CDC will consider in evaluating whether to request that an individual who may have been exposed to a hemorrhagic fever virus be placed on the DNB list, which is administered by the Department of Homeland Security (DHS). It also contains information for individuals who have been placed on this list to respond to this decision in writing, if they believe the decision was made in error. This notice is effective immediately.

**DATES:** This notice is effective on March 27, 2015.

**FOR FURTHER INFORMATION CONTACT:** For information regarding this Notice: Ashley A. Marrone, J.D., Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, 1600 Clifton Road NE., MS–E03, Atlanta, GA 30329. For information regarding CDC operations related to this Notice: Travel Restrictions and Intervention Activity, ATTN.: Francisco Alvarado-Ramy, M.D., Division of Global Migration and Quarantine, Centers for Disease Control and Prevention, 1600 Clifton Road NE., MS–C–01, Atlanta, GA 30329. Either may also be reached by telephone 404–498–1600 or email *travelrestrictions@cdc.gov.*

**SUPPLEMENTARY INFORMATION:**

**I. Background**

Individuals with communicable diseases who travel on commercial aircraft can pose a risk for infection to the traveling public. In June 2007, HHS/CDC and DHS developed a public health DNB list, enabling domestic and international public health officials to request that individuals with communicable diseases who meet specific criteria, including having a communicable disease that poses a public health threat to the traveling public, be restricted from boarding commercial aircraft arriving into, departing from, or traveling within the United States.[1] The public health DNB list, administered by DHS and based on HHS/CDC's requests, is intended to supplement state and/or local public health measures to prevent individuals who are infectious, or reasonably believed to have been exposed to a communicable disease and may become infectious, from boarding commercial aircraft. Use of the list is limited to those communicable diseases that would pose a public health threat to travelers should the infected individual be permitted to board a flight. Once an individual is placed on the DNB list, airlines are instructed not to issue a boarding pass to the individual for any commercial domestic flight or for any commercial international flight arriving in or departing from the United States.

An individual is typically removed from the DNB upon receipt by HHS/CDC of the treating physician's or public health authority's statement (or other medical documentation) that the individual is no longer considered infectious, or lapse of the period that the individual is at risk of becoming infectious without development of symptoms.

Individuals included on the DNB list are assigned a Public Health Border Lookout ("Lookout") record that assists in ensuring that an individual placed on the DNB is detected if he or she attempts to enter or depart the United States through a port of entry. When this happens, officials from U.S. Customs and Border Protection (CBP), a component agency of DHS, notify HHS/CDC so that a thorough public health inquiry and evaluation can be conducted and appropriate public health action taken, as needed.

Requests for an individual to be placed on the public health DNB list with an associated Lookout record happen through a number of means, including: State or local public health officials contact the CDC Quarantine Station of jurisdiction, health-care providers make requests by contacting their state or local public health departments, and foreign and U.S. government agencies contact the CDC's Emergency Operations Center (EOC) in Atlanta. HHS/CDC may also request that DHS place an individual on the public health DNB and Lookout lists if HHS/CDC becomes independently aware of an individual who meets the placement criteria.[2]

HHS/CDC has refined the criteria that it initially considered, as published in the Morbidity and Mortality Weekly Report (MMWR) in 2008, and this notice describes the criteria CDC currently considers when making requests to DHS to include an individual on the DNB list and associated Lookout record. If an individual satisfies the first criteria and any of the three other criteria, then he/she may qualify to be placed on the list. Currently, HHS/CDC considers whether:

(1) The individual is known or reasonably believed to be infectious or reasonably believed to have been exposed to a communicable disease and may become infectious with a communicable disease that would be a public health threat should the individual be permitted to board a commercial aircraft or travel in a manner that would expose the public; and

---

[1] CDC. *Federal air travel restrictions for public health purposes—United States, June 2007–May 2008.* MMWR 2008; 57:1009–12. Available at *http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5737a1.htm.*

[2] CDC. Federal air travel restrictions for public health purposes, June 2007–May 2008. MMWR 2008; 57:1009–12. Available at *http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5737a1.htm.*

(2) the individual is not aware of his or her diagnosis, has been advised regarding the diagnosis and is non-compliant with public health requests or has shown potential for non-compliance, or is unable to be located; or

(3) the individual is at risk of traveling on a commercial flight or of traveling internationally by any means; or

(4) the individual's placement on the DNB is necessary to effectively respond to outbreaks of communicable disease or other conditions of public health concern. For example, an individual's placement on the DNB may be considered when necessary to aid in the application of controlled movement [3] or in the execution of a federal, state, or local quarantine, isolation, or conditional release order.

## II. Authority

The DNB list and Lookout record are based on requests made by HHS/CDC regarding public health decisions and actions, and are administered by DHS. Under the Public Health Service Act, the Secretary of HHS is authorized to make and enforce regulations and take other actions necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the United States or between states.[4] Under its delegated authority, the HHS/CDC Division of Global Migration and Quarantine fulfills this responsibility through a variety of activities that may include operating quarantine stations at ports of entry, conducting routine public health screening, and administering quarantine regulations that govern the international and interstate movement of persons, animals, and cargo.[5]

### Authority of DHS

Federal law authorizes CBP, U.S. Immigration and Customs Enforcement (ICE), and U.S. Coast Guard (USCG) officers to assist HHS by enforcing quarantine rules and regulations.[6] In addition, other DHS Components such as the Transportation Security Administration (TSA), relying on their existing authorities, may provide supportive roles to federal screening efforts designed to prevent the introduction and spread of communicable disease.

TSA has the authority to accept the services of, or otherwise cooperate with, other federal agencies including implementing the DNB list.[7] Further, TSA may "develop policies, strategies, and plans for dealing with the threats . . . including coordinating countermeasures with appropriate departments, agencies, and instrumentalities of the United States."[8] Consistent with this authority, TSA may assist another Federal agency in carrying out its authority in order to address a threat to transportation. These threats may involve passenger safety.[9] In administering the DNB list, TSA relies on CDC to make public health findings as the basis for its request. As the medical authority for DHS,[10] the Office of Health Affairs reviews and approves the medical appropriateness of HHS/CDC's request prior to DHS implementing HHS/CDC's request by placing the person on the DNB list.

## III. Operations

Because of the urgency involved in restricting individuals with serious communicable diseases from boarding commercial aircraft, individuals might not be notified prior to their inclusion on the DNB list and associated Lookout record. When an individual is placed on the DNB list with an associated Lookout record, HHS/CDC advises in writing that the individual is temporarily restricted from traveling by commercial air carrier and provides the reasons why HHS/CDC has reached this decision. HHS/CDC interprets "temporarily restricted" to mean that the individual will remain on the lists until no longer considered to be infectious or at risk of becoming infectious. HHS/CDC's notification to the individual also explains that, while the individual is on these lists, travel by commercial aircraft is forbidden and any attempt to enter the United States through any port of entry will be stopped by CBP officials and that the individual will be referred for public health evaluation. If an individual cannot be located, HHS/CDC works with state and local public health officials to contact the individual through family or other contacts. HHS/CDC and DHS take great care to ensure personal medical information is safeguarded.

As part of its notification process HHS/CDC also asks the appropriate state or local health department to notify the individual directly, state the reasons for the placement on the DNB list and associated Lookout record, and provide the medical or public health requirements that must be satisfied to be removed from the lists. The primary consideration for requesting removal from the DNB list and associated Lookout record is CDC's determination that the individual is no longer considered to be infectious or at risk of becoming infectious; however, other factors may be taken into consideration including the individual's return to treatment, if applicable, and following public health recommendations. Once HHS/CDC receives documentation that these medical and other stated requirements have been met, it sends a request to DHS to lift the travel restrictions (both the DNB list and the Lookout record).[11] Once an individual is removed from the DNB list and the associated Lookout record is removed, a second notification letter is sent by HHS/CDC to the individual informing him or her that the public health travel restrictions have been removed and providing further recommendations on an as-needed basis (e.g., advising that the individual continue treatment, if applicable).

HHS/CDC's letter informing individuals that they have been placed on the DNB list and associated Lookout records invites individuals who believe that HHS/CDC's public health decision was made in error to submit a written response to the Director of HHS/CDC's Division of Global Migration and Quarantine and provide any supporting facts or other evidence supporting their belief. These operations and procedures will not change as a result of this Notice.

## IV. Requesting Travel Restrictions for Viral Hemorrhagic Fevers

To date, the DNB list and associated Lookout records have been used primarily with respect to individuals with suspected or confirmed pulmonary tuberculosis (TB), including multidrug-resistant tuberculosis (MDR–TB), and a very small number with measles. However, travel restrictions are also applicable to other suspected or confirmed communicable diseases that could pose a public health threat during travel, including viral hemorrhagic fevers such as Ebola virus disease

---

[3] See http://www.cdc.gov/vhf/ebola/exposure/monitoring-and-movement-of-persons-with-exposure.html.

[4] 42 U.S.C. 264–265. The Secretary has promulgated implementing regulations at 42 CFR parts 70 and 71, administered by the CDC.

[5] See generally U.S. Department of Health and Human Services Centers for Disease Control and Prevention, Public Health Screening at U.S. Ports of Entry: A Guide for Federal Inspectors (July 2007) (describing port of entry health screening procedures); 42 CFR part 70 (interstate quarantine regulations); 42 CFR part 71 (foreign quarantine regulations).

[6] See 42 U.S.C. 97, 268(b).

[7] 49 U.S.C. 106(l), (m), 114(m).

[8] 49 U.S.C. 114(f)(3), (4).

[9] See, e.g., 49 U.S.C. 114(h)(3).

[10] 6 U.S.C. 321e(c)(1).

[11] In addition to contacting CDC, individuals seeking removal from the Public Health DNB may also seek assistance through the redress process established by DHS in 49 CFR 1560.205.

(Ebola). Ebola is a type of viral hemorrhagic fever that is often fatal in humans and nonhuman primates. Ebola can spread through human-to-human transmission, with infection resulting from direct contact (through broken skin or mucous membranes) with the blood, secretions, droplets, or other body fluids of infected people, and indirectly from contact with surfaces or items (such as needles) contaminated with such fluids.

With respect to viral hemorrhagic fevers, placement on the DNB list and associated Lookout record is requested for people known or suspected to have a viral hemorrhagic fever. Placement may also be requested for people without symptoms who have been exposed to a viral hemorrhagic fever, particularly if these individuals intend to travel against public health recommendations. Even though people without symptoms are not infectious, these restrictions are requested because of the possibility that symptoms could develop during travel, particularly long international flights. Exposure is determined through a CDC risk factor assessment using information available from a variety of public health, medical and other official sources. Examples of types of potential exposure to viral hemorrhagic fevers contained within the CDC risk factor assessment include the following. It should be noted that not all of these exposures may result in travel restrictions.

- Having been in a country with widespread Ebola virus transmission within the past 21 days and, although having had no known exposures, is showing symptoms
- Percutaneous (*e.g.,* needle stick) or mucous membrane exposure to blood or body fluids of a person with Ebola while the person was showing symptoms
- Exposure to the blood or body fluids (including but not limited to feces, saliva, sweat, urine, vomit, and semen) of a person with Ebola while the person was showing symptoms without appropriate personal protective equipment (PPE) (see *http://www.cdc.gov/vhf/ebola/hcp/procedures-for-ppe.html*)
- Laboratory processing of blood or body fluids of a person with Ebola while the person was showing symptoms without appropriate PPE or standard biosafety protections
- Direct contact with a dead body without appropriate PPE in a country with widespread Ebola virus transmission (see *http://www.cdc.gov/vhf/ebola/outbreaks/2014-west-africa/distribution-map.html*)
- Having lived in the immediate household and provided direct care to

a person with Ebola while the person was showing symptoms
- In countries with widespread Ebola virus transmission: Direct contact while using appropriate PPE with a person with Ebola while the person was showing symptoms, or with the person's body fluids, or any direct patient care in other healthcare settings
- Close contact in households, healthcare facilities, or community settings with a person with Ebola while the person was showing symptoms
  ○ Close contact is defined as not wearing appropriate PPE within approximately 3 feet (1 meter) of a person with Ebola while the person was showing symptoms
- Having brief direct contact (*e.g.,* shaking hands), while not wearing appropriate PPE, with a person with Ebola while the person was in the early stage of disease
- In countries without widespread Ebola virus transmission: Direct contact while using appropriate PPE with a person with Ebola while the person was showing symptoms
- Traveled on an aircraft with a person with Ebola while the person was showing symptoms

Exposure risk factors, such as those just described, will be considered by HHS/CDC in their totality when determining whether an individual meets the first criteria for placement on the DNB List, as described in Section I of this notice. HHS/CDC would also consider other facts and information it may have to make a decision with respect to the other criteria, as described in Section I of this notice. It should be noted that all facts are considered when applying the criteria. Again, with the exception of the first criteria, not all of the other criteria need to be present for HHS/CDC to make a request to DHS to have an individual placed on DNB and Lookout.

HHS/CDC would also consider these risk factors when assessing an individual who has been in a country where outbreaks of viral hemorrhagic fevers were occurring and refuses to comply with a public health assessment, and otherwise meets the travel restriction criteria. Refusing to comply with a public health risk assessment in this situation could include refusing to provide relevant information that would allow public health officials to assess the exposure risk.

## V. Provisions of This Notice

HHS/CDC will make requests of DHS based on the criteria in this notice effective immediately. Individuals who have had their travel temporarily

restricted as a result of placement on the DNB list and associated Lookout records may submit a written response to the Director, Division of Global Migration and Quarantine, if they believe that HHS/CDC has erred in its public health request to DHS. The response should be addressed to: Director, Division of Global Migration and Quarantine, ATTN: Travel Restriction and Intervention Activity, Centers for Disease Control and Prevention, 1600 Clifton Road, MS E–03, Atlanta, GA 30329. Responses may also be faxed to CDC at (404) 718–2158 or emailed to *travelrestrictions@cdc.gov*.

As part of the response, individuals should include the reference number listed in the notification letter they received and any facts or other evidence indicating why they believe that HHS/CDC's public health request was made in error.

The policy and program operations described above will become effective on March 27, 2015.

Dated: March 24, 2015.

**Sylvia M. Burwell,**

*Secretary.*

[FR Doc. 2015–07118 Filed 3–26–15; 8:45 am]

**BILLING CODE 4163–18–P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Food and Drug Administration

[Docket No. FDA–2011–N–0908]

### Agency Information Collection Activities; Proposed Collection; Comment Request; Guidance for Clinical Trial Sponsors: Establishment and Operation of Clinical Trial Data Monitoring Committees

**AGENCY:** Food and Drug Administration, HHS.

**ACTION:** Notice.

**SUMMARY:** The Food and Drug Administration (FDA) is announcing an opportunity for public comment on the proposed collection of certain information by the Agency. Under the Paperwork Reduction Act of 1995 (the PRA), Federal Agencies are required to publish notice in the **Federal Register** concerning each proposed collection of information, including each proposed extension of an existing collection of information and to allow 60 days for public comment in response to the notice. This notice solicits comments on the collection of information concerning the establishment and operation of clinical trial data monitoring committees.

cdc.gov

# Travel Restrictions | CDC

3 minutes



*Credit: David Snyder*

Disease is just a flight away. To protect America's health, CDC partners with the Department of Homeland Security to prevent the spread of serious contagious diseases during travel. CDC uses a **Do Not Board list** to prevent travelers from boarding commercial airplanes if they are known or suspected to have a contagious disease that poses a threat to the public's health. Sick travelers are also placed on a **Lookout** list so they will be detected if they attempt to enter the United States by land or sea. **These tools can be used for anyone who poses a threat to the public's health.**

Local and state public health officials can request CDC's assistance if a person who poses a public health threat intends to travel. CDC helps ensure these people do not travel while contagious.

**Placing people on the lists**

The criteria for adding people to the **Do Not Board** and **Lookout** lists are

1. Known or believed to be infectious with, or at risk for, a serious contagious disease that poses a public health threat to others during travel; **and** any of the following three:

1. **not** aware of diagnosis or **not** following public health recommendations, **or**

2. Likely to travel on a commercial flight involving the United States or travel internationally by any means; **or**

3. Need to issue travel restriction to respond to a public health outbreak or to help enforce a public

health order.

Criteria number one plus one of the three subsets must be met for a person to be placed on the **Do Not Board** and **Lookout** lists.



*Credit: David Heaberlin*

Once a person is placed on these lists, airlines will not issue a boarding pass to the person for any commercial flight within, arriving to, or departing from the United States.

To date, the Do Not Board and Lookout lists have been used for people with suspected or confirmed infectious tuberculosis (TB), including multidrug-resistant tuberculosis (MDR-TB), and measles. However, travel restrictions can also be used for other suspected or confirmed contagious diseases that could pose a public health threat during travel, including viral hemorrhagic fevers such as Ebola.

Preventing people with contagious diseases from traveling also helps to make sure they get or continue medical treatment, such as for infectious tuberculosis.

**Taking people off the lists**

Once public health authorities confirm a person is no longer contagious, the person is removed from the lists (typically within 24 hours). Also, CDC reviews the records of all persons on the lists every two weeks to determine whether they are eligible for removal.



April 24, 2020


To:   Manufacturers of Face Masks;
      Health Care Personnel;
      Hospital Purchasing Departments and Distributors; and
      Any Other Stakeholders.


On April 18, 2020, in response to concerns relating to insufficient supply and availability of face masks,[1,2] the U.S. Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) authorizing the use of face masks for use by members of the general public, including health care personnel (HCP)[3] in healthcare settings as personal protective equipment (PPE), to cover their noses and mouths, in accordance with Centers for Disease Control and Prevention (CDC) recommendations, to prevent the spread of the virus called severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) during the Coronavirus Disease 2019 (COVID-19) pandemic, pursuant to section 564 of the Federal, Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 360bbb-3).

On February 4, 2020, pursuant to Section 564(b)(1)(C) the Act, the Secretary of the Department of Health and Human Services (HHS) determined that there is a public health emergency that has a significant potential to affect national security or the health and security of United States

---

[1] A face mask is a device, with or without a face shield, that covers the user's nose and mouth and may or may not meet fluid barrier or filtration efficiency levels. It includes cloth face coverings as a subset. It may be for single or multiple uses, and if for multiple uses it may be laundered or cleaned. There are many products marketed in the United States as "face masks" that offer a range of protection against potential health hazards. Face masks are regulated by FDA when they meet the definition of a "device" under section 201(h) of the Act. Generally, face masks fall within this definition when they are intended for a medical purpose. Face masks are regulated under 21 CFR 878.4040 as Class I 510(k)-exempt devices (non-surgical masks).

[2] Surgical masks are not covered within the scope of this authorization. Surgical masks are masks that cover the user's nose and mouth and provide a physical barrier to fluids and particulate materials and are regulated under 21 CFR 878.4040 as class II devices requiring premarket notification. These masks meet certain fluid barrier protection standards and Class I or Class II flammability tests. More information on the distinction is provided in FDA guidance, titled "Enforcement Policy for Face Masks and Respirators During the Coronavirus Disease (COVID-19) Public Health Emergency" available at https://www.fda.gov/media/136449/download.

[3] HCP refers to all paid and unpaid persons serving in healthcare settings who have the potential for direct or indirect exposure to patients or infectious materials, including body substances (e.g., blood, tissue, and specific body fluids); contaminated medical supplies, devices, and equipment; contaminated environmental surfaces; or contaminated air. These HCP include, but are not limited to, emergency medical service personnel, nurses, nursing assistants, physicians, technicians, therapists, phlebotomists, pharmacists, dentists and dental hygienists, students and trainees, contractual staff not employed by the healthcare facility, and persons not directly involved in patient care, but who could be exposed to infectious agents that can be transmitted in the healthcare setting (e.g., clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, and volunteer personnel).

citizens living abroad, and that involves the virus that causes COVID-19.[4] Pursuant to Section 564 of the Act, and on the basis of such determination, the Secretary of HHS then declared on March 24, 2020, that circumstances exist justifying the authorization of emergency use of medical devices, including alternative products used as medical devices, due to shortages during the COVID-19 pandemic, subject to the terms of any authorization issued under that section.[5]

On April 24, 2020 in response to questions and concerns that have been received by FDA since issuance of the April 18, 2020 letter of authorization and having concluded that revising the April 18, 2020 EUA is appropriate to protect the public health or safety under section 564(g)(2)(c) of the Act (21 U.S.C. § 360bbb-3(g)(2)(c)), FDA is reissuing the April 18, 2020 letter in its entirety with amendments[6] incorporated. Specifically, FDA is clarifying through this re-issued letter that facemasks, including cloth face coverings, are authorized to be used by HCP only as source control[7,8] in accordance with CDC recommendations under this EUA.[9] As stated in the April 18 letter, face masks are authorized for use by the general public to cover their noses and mouths, in accordance with CDC recommendations.

Having concluded that the criteria for issuance of this authorization under Section 564(c) of the Act are met, I am authorizing the emergency use of face masks for use in accordance with CDC recommendations, as described in the Scope of Authorization (Section II) and pursuant to the Conditions of Authorization (Section IV) of this letter.

For the most current CDC recommendations on the use of face masks by the general public during COVID-19, please visit CDC's webpage: Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission For the most recent recommendations on use of face masks by HCPs in a healthcare setting, see: Strategies to Optimize the Supply of PPE and Equipment.

## I. Criteria for Issuance of Authorization

I have concluded that the emergency use of face masks in accordance with CDC recommendations as source control as described in the Scope of Authorization (Section II) to

---

[4] U.S. Department of Health and Human Services, Determination of a Public Health Emergency and Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3. 85 FR 7316 (February 7, 2020)

[5] U.S. Department of Health and Human Services, *Declaration that Circumstances Exist Justifying Authorizations Pursuant to Section 564(b) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3*, 85 FR 17335 (March 27, 2020).

[6] The amendments to the April 18, 2020 letter clarify that the eligible facemasks are to be used for source control only, and are not personal protective equipment, meaning they are not a substitute for filtering face piece respirators or for surgical face masks. This reissued EUA does not change any aspects of the April 18, 2020 letter with respect to the use of face masks by the general public.

[7] Source control refers to the use of a facemask or cloth face covering over the mouth and nose to contain that individual's respiratory secretions to help prevent transmission from infected individuals who may or may not have symptoms of COVID-19.

[8] https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html

[9] In addition, health care employers should refer to standards of the Occupational Safety and Health Administration (OSHA) that apply to PPE to protect workers and infectious disease hazards. *See* 29 CFR 1910 subpart I.

help prevent spread of the virus during the COVID-19 pandemic meets the criteria for issuance of an authorization under Section 564(c) of the Act, because I have concluded that:

1. SARS-CoV-2, the virus that causes COVID-19, can cause a serious or life-threatening disease or condition, including severe respiratory illness, to humans infected by this virus;

2. Based on the totality of scientific evidence available to FDA, it is reasonable to believe that the authorized face masks may be effective as source control to help prevent the spread of SARS-CoV-2 by infected individuals who may or may not have symptoms of COVID-19 during the COVID-19 pandemic, and that the known and potential benefits of face masks, when used in accordance with the scope of this authorization (Section II), outweigh the known and potential risks of such product; and

3. There is no adequate, approved, and available alternative to the emergency use of face masks for source control by the general public and for HCPs to help prevent the spread of the virus due to face mask shortages during the COVID-19 pandemic.[10,11]

## II. Scope of Authorization

I have concluded, pursuant to Section 564(d)(1) of the Act, that the scope of this authorization is limited to the use of face masks, including cloth face coverings, as source control for use by members of the general public, as well as HCP in healthcare settings, to cover their noses and mouths, in accordance with CDC recommendations, to help prevent the spread of the SARS-CoV-2 during the COVID-19 pandemic. The facemasks are not intended to be used by HCPs as PPE, meaning they are neither substitutable for respiratory protective devices such as filtering face piece respirators, nor for surgical face masks. This use is consistent with face masks regulated as Class I 510(k)-exempt face masks under 21 CFR 878.4040.

## Authorized Face Masks

Face masks are authorized under this EUA when they are intended for use as source control, by members of the general public as well as HCPs in healthcare settings, to cover their noses and mouths, in accordance with CDC recommendations, to help prevent the spread of SARS-CoV-2 during the COVID-19 pandemic. Authorized face masks must meet the following requirements:

1. The product is labeled accurately to describe the product as a face mask and includes a list of the body contacting materials (which does not include any drugs or biologics);

---

[10] No other criteria of issuance have been prescribed by regulation under Section 564(c)(4) of the Act.

[11] Providing authorization for the introduction into interstate commerce of face masks by manufacturers that do not customarily engage in the manufacture of medical devices helps meet the needs of the healthcare system. In addition, increased availability of face masks helps meet the needs for source control for the general population, reserving FDA-cleared surgical masks and FDA-cleared or -authorized N95 and N95 equivalent Face Filtering Respirators for use by HCP. Providing HCP who are on the forefront of the COVID-19 response with sufficient PPE is necessary in order to help prevent HCP exposure to pathogenic biologic airborne particulates during the COVID-19 pandemic.

2. The product is labeled accurately so that it does not claim to be intended for use as a surgical mask or to provide liquid barrier protection;

3. The product labeling includes recommendations against use in a clinical setting where the infection risk level through inhalation exposure is high;

4. The product is not labeled in such a manner that would misrepresent the product's intended use; for example, the labeling must not state or imply that the product is intended for antimicrobial or antiviral protection or related uses or is for use such as infection prevention or reduction;

5. The product is not labeled as a respiratory protective device, and therefore should not be used for particulate filtration; and

6. The product is not labeled for use in high risk aerosol generating procedures.[12]

Manufacturers of face masks that are used as described above and meet the above requirements (i.e., are within this section (the Scope of Authorization, Section II)) do not need to take any action, other than complying with the Conditions of Authorization (Section IV) to be authorized under this EUA. FDA's posting and public announcement of this EUA at https://www.fda.gov/emergency-preparedness-and-response/mcm-legal-regulatory-and-policy-framework/emergency-use-authorization, serves as face mask manufacturers' notification of authorization.

I have concluded, pursuant to Section 564(d)(2) of the Act, that it is reasonable to believe that the known and potential benefits of face masks as described within this section (the Scope of Authorization, Section II), outweigh the known and potential risks of such products.

I have concluded, pursuant to Section 564(d)(3) of the Act, based on the totality of scientific evidence available to FDA, that it is reasonable to believe that face masks may be effective as described within this section (the Scope of Authorization, Section II) of this letter, pursuant to Section 564(c)(2)(A) of the Act.

FDA has reviewed the scientific information available to FDA, including the information supporting the conclusions described in Section I of this letter, and concludes that face masks (as described in this section, the Scope of Authorization, Section II), meet the criteria set forth in Section 564(c) of the Act concerning safety and potential effectiveness.

The emergency use of face masks must be consistent with, and may not exceed, the terms of this letter, including the Scope of Authorization (Section II) and the Conditions of Authorization (Section IV). Subject to the terms and conditions of this EUA and under the circumstances set forth in the Secretary of HHS's determination under Section 564(b)(1)(C) described above and the Secretary of HHS's corresponding declaration under Section 564(b)(1), face masks, as source control, are authorized for use by members of the general public, as well as HCPs in healthcare settings, to cover their noses and mouths, in accordance with CDC recommendations, to help prevent the spread of SARS-CoV-2 during the COVID-19 pandemic.

---

[12] Examples of aerosol generating procedures in healthcare settings may be found at https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-faq.html

## III. Waiver of Certain FDA Requirements

Pursuant to Section 564(e)(3) of the Act, with respect to the emergency use of a product for which an authorization under this section is issued, FDA may waive or limit, to the extent appropriate given the circumstances of the emergency, requirements regarding good manufacturing practice otherwise applicable to the manufacture, processing, packing, or holding of products subject to regulations under this Act, including such requirements established under sections 520(f)(1). FDA grants that waiver, including the quality system requirements under 21 CFR Part 820 and labeling requirements under the FD&C Act and FDA regulations, including unique device identification requirements in 21 CFR Part 830 and 21 CFR 801.20, except that face masks must include the labeling elements specified in the Conditions of Authorization (Section IV).

## IV. Conditions of Authorization

Pursuant to Section 564(e) of the Act, I am establishing the following conditions to this authorization:

**Manufacturers and Distributors of Authorized Products[13]**

    A.  Manufacturers and Distributors will make face masks available with labeling that includes a description of the product as a face mask, including a list of the body contacting materials (which does not include any drugs or biologics).

    B.  Manufacturers and Distributors of authorized products shall not label the product: 1) as a surgical mask, to provide liquid barrier protection; 2) for use in a clinical setting where the infection risk level through inhalation exposure is high; 3) for antimicrobial or antiviral protection or related uses or uses for infection prevention or reduction or related uses; 4) as a respiratory protective device; or 5) for high risk aerosol-generating procedures.

    C.  Manufacturers must make the required labeling available to each end user or end user facility (each hospital) in hard copy or in an alternative format (e.g., electronic labeling on the manufacturer's website).  Instructions on how to access the labeling if provided in an alternative format must be available to each end user or end user facility.

    D.  Manufacturers and Distributors will include instructions for recommended cleaning and/or disinfection materials and processes, if applicable, for their authorized product(s). Manufacturers must provide these instructions, if applicable, to each end user or end user facility (e.g., each hospital) in hard copy or in an alternative format (e.g., electronic instructions). Instructions on how to access the labeling if provided in an alternative format must be available to each end user or end user facility.

---

[13] The requirements under 21 CFR Part 806 (Reports of Corrections and Removals) and 21 CFR Part 807 (Registration and Listing) do not apply to products authorized under an EUA. As such, compliance with these regulations are not required under this EUA.

E. Manufacturers will have a process in place for reporting adverse events of which they become aware to FDA under 21 CFR Part 803. Adverse events of which the manufacturer becomes aware will be reported to FDA. See FDA's webpage "Medical Device Reporting (MDR): How to Report Medical Device Problems"[14] for reporting requirements and procedures.[15]

F. Manufacturers and distributors will ensure that any records associated with this EUA are maintained until otherwise notified by FDA. Such records will be made available to FDA for inspection upon request.

G. Through a process of inventory control, manufacturers and distributors will maintain records of the entities to which they distribute the face masks and the numbers of each such product they distribute.

H. Manufacturers and distributors are authorized to make available additional information relating to the emergency use of the product that is consistent with, and does not exceed, the terms of this letter of authorization.

**Conditions Related to Advertising and Promotion**

I. All printed matter, including advertising and promotional materials, relating to the use of the authorized face mask shall be consistent with the labeling elements listed in Section II of this EUA, as well as the terms set forth in this EUA and the applicable requirements set forth in the Act and FDA regulations.

J. No printed matter, including advertising or promotional materials, relating to the use of the authorized face mask may represent or suggest that such product is safe or effective for the prevention or treatment of patients during the COVID-19 pandemic.

K. All advertising and promotional descriptive printed matter relating to the use of the product shall clearly and conspicuously state that

- The product has not been FDA cleared or approved

- The product has been authorized by FDA under an EUA for use as source control by the general public as well as by HCP in healthcare settings as to help prevent the spread of infection or illness during the COVID-19 pandemic.

- This product is authorized only for the duration of the declaration that circumstances exist justifying the authorization of the emergency use of medical devices, including alternative products used as medical devices,

---

[14] FDA guidance, titled "Medical Device Reporting (MDR): How to Report Medical Device Problems" is available at https://www.fda.gov/medical-devices/medical-device-safety/medical-device-reporting-mdr-how-report-medical-device-problems.

[15] Also refer to FDA guidance, titled "Postmarketing Adverse Event Reporting for Medical Products and Dietary Supplements During a Pandemic" available at https://www.fda.gov/media/72498/download.

during the COVID-19 outbreak, under section 564(b)(1) of the Act, 21 U.S.C. § 360bbb-3(b)(1) unless the authorization is terminated or revoked sooner.

**V. Duration of Authorization**

This EUA will be effective until the declaration that circumstances exist justifying this authorization is terminated under Section 564(b)(2) of the Act or the EUA is revoked under Section 564(g) of the Act.

Sincerely,

/S/

_____

RADM Denise M. Hinton
Chief Scientist
Food and Drug Administration





# Could the President or Congress Enact a Nationwide Mask Mandate?

August 6, 2020

As Coronavirus Disease 2019 (COVID-19) cases continue to rise in the United States, the Centers for Disease Control and Prevention (CDC) has called on Americans to wear non-medical cloth face masks in public settings and when social distancing measures are difficult to maintain. According to the CDC, the latest available case studies show that face masks—particularly when used universally within a community setting—can slow the spread of COVID-19. In response to the latest case surges, a growing number of states and localities have instituted jurisdiction-wide mandates requiring the use of face masks under specified circumstances. At the same time, mask wearing remains largely voluntary in many states. Recently, Georgia's governor suspended broader mask mandates instituted by at least 15 localities across that state, limiting the requirement instead to certain discrete circumstances (e.g., to workers of certain personal care businesses while providing services to patrons). Amidst these varied approaches, several public officials have begun to call for a federal nationwide mask mandate to stem the tide of COVID-19 cases. This Sidebar provides an overview of the relevant federal authority to issue such a mandate, as well as other legal considerations for Congress. (Federal authority to mandate mask wearing in more limited settings, such as within certain federal properties, is beyond the scope of this piece).

## Executive Branch Authority to Mandate the Wearing of Face Masks

There are no existing federal laws that explicitly address mask wearing for public health purposes, but certain existing authorities could potentially form the basis for such executive action. One such law could be section 361 of the Public Health Service Act (PHSA). That provision, which has been characterized as "broad [and] flexible," grants the Secretary of Health and Human Services—delegated in part to the CDC—the authority to make and enforce regulations necessary "to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession." A broad construction of this authority may permit the CDC to issue regulations mandating the use of masks in circumstances that would prevent the foreign or interstate transmission of COVID-19. CDC's exercise of this authority would nevertheless be restricted by the Constitution and other generally applicable statutory requirements, such as the Administrative Procedure Act or the Religious Freedom Restoration Act of 1993. The latter statute requires courts to grant certain religious exemptions from a generally applicable rule that imposes a substantial burden on a regulated person's religious exercise.

Congressional Research Service

https://crsreports.congress.gov

LSB10530

On the other hand, the structure and language of section 361 may subject it to a narrower construction. Following the broad statement of authority identified above, section 361 provides that "[f]or purposes of carrying and enforcing such regulations," the agency "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." The remaining subsections of section 361 further contemplate the issuance of regulations related to the apprehension, detention, examination, and conditional release of individuals for purposes of preventing the spread of communicable diseases. Given this structure and language, regulations issued pursuant to this authority have primarily been confined to two general types of control measures: (1) quarantine and isolation measures of people and goods (administered by the CDC) and (2) measures that control or treat areas, animals, or articles that are susceptible or subject to contamination or infection (administered by the U.S. Food and Drug Administration (FDA)). This limited construction may be consistent with a canon of statutory interpretation that confines the meaning of a general term (e.g., "other measures" deemed necessary by the agency) to matters comparable to the more specific terms enumerated in the statute. Further complicating the analysis is the evolving political dimension of the mask mandate debate. In assessing an agency's statutory authority, the Supreme Court has cautioned that courts must "be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision of [significant] economic and political magnitude to an administrative agency." In light of these considerations, it is therefore difficult to predict whether courts would conclude that the CDC's authority under section 361 would extend to the nationwide mandating of face masks.

## Congress's Authority to Mandate the Wearing of Face Masks

Congress's authority to act legislatively on this subject derives from its enumerated powers in the Constitution. In this context, the Spending Clause and the Commerce Clause of the Constitution are two potential sources of such authority.

The Spending Clause empowers Congress to tax and spend for the general welfare. Under this authority, Congress may offer federal funds to nonfederal entities and prescribe the terms and conditions under which the funds are accepted and used by recipients. This power is generally expansive, but funding conditions when applied to the states are subject to certain limitations. Applying this authority in the context of a mask mandate, Congress could incentivize states to enact a mask mandate meeting certain federal requirements by imposing it as a condition of receiving certain federal funds. This use of the Spending Clause authority, assuming it falls within the broad parameters of being for the "general welfare," would be permissible so long as (1) Congress provides clear notice of the permissible mask mandate that states must enact; (2) the mandate is related to the purpose of the federal funds; (3) this conditional grant of funds is not otherwise barred by the Constitution; and (4) the amount of federal funds offered is not "so coercive as to pass the point at which pressure turns into compulsion."

The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." This authority empowers Congress to regulate "three broad categories of activities": (1) "channels of interstate commerce," like roads and canals; (2) "persons or things in interstate commerce," and (3) activities that substantially affect interstate commerce. While Congress's authority under the Commerce Clause is expansive, a majority of the Supreme Court in *National Federation of Independent Business (NFIB) v. Sebelius* agreed that there exists a discrete limit to this authority—that Congress cannot compel individuals to engage in commercial activity. According to Chief Justice Roberts, in a portion of the opinion not joined by other justices but largely echoed by the view of the four dissenting justices, the Commerce Clause does not empower Congress "to regulate individuals precisely because they are doing nothing." While it is uncertain whether this conclusion constitutes binding precedent, it suggests that a broad mandate (e.g., one that generally requires individuals to wear masks) may be particularly susceptible to challenge because such a mandate

could be construed as compelling individuals who are "doing nothing" to engage in an activity—mask wearing—that is not even a commercial activity. On the other hand, a federal mandate that requires mask wearing as a condition to engage in existing economic activities, such as employment or patronage of certain businesses, may raise less serious constitutional concerns.

In addition to the limits that inhere in these authorities, Congress's exercise of these authorities is also subject to certain external constraints. In the context of public health regulations, the key constraints are those grounded in federalism and the protection of individual rights. Pursuant to the principles of federalism, the Supreme Court has interpreted the Tenth Amendment to prevent the federal government from commandeering or requiring state officers to carry out federal directives. This principle thus prevents Congress from requiring states or localities to mandate masks. It does not, however, impede Congress from using its Spending Clause authority to incentivize states to do so, as long as the amount offered is not so significant as to effectively coerce, or functionally commandeer, states into enacting the mandate.

In terms of protection of individual rights, there may be a few external constraints on Congress's ability to impose a mask mandate. In a recent order denying a church's request to enjoin, pending appeal, the enforcement of an Executive Order in California that, among other things, restricts public gatherings including at places of worship, Chief Justice Roberts observed that such public health decisions during a pandemic are primarily entrusted to politically accountable officials. The Chief Justice cautioned that those decisions, undertaken "in areas fraught with medical and scientific uncertainties," are subject to only "broad limits" and "should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people." As a consequence, any challenge to a mask mandate may have to overcome general judicial hesitation to invalidate a public health regulation during the midst of a pandemic.

Nevertheless, as more states began to implement mask mandates, some have challenged the mandates as exceeding various provisions of the bill of rights. Challengers have, for instance, argued that the act of mask wearing is an expressive conduct that implicates the First Amendment right to freedom of speech and the right against compelled speech. In a recent case challenging Maryland's face covering requirement, certain veteran plaintiffs argued that face covering is an expressive conduct that conveys a "sign of capture on the battlefield, and subservience to the captor." In rejecting this argument, the court concluded that "especially in the context of COVID-19"—which the court observed is an ongoing public health crisis "more severe than any seen for a hundred years"—"wearing a face covering would be viewed as a means of preventing the spread of COVID-19, not as expressing any message." In general, courts faced with challenges of state COVID-19-related mandates (such as restrictions on gatherings) based on the First Amendment's Free Exercise Clause have also concluded that this constitutional concern is mitigated under *Employment Division, Department of Human Resources of Oregon v. Smith* and its progeny. In *Smith*, the Court held that neutral, generally applicable laws (i.e., ones that do not target specific religious groups)—which would include a general mask mandate—are subject to limited scrutiny under the Constitution.

## Other Legal Consideration for Congress

In considering the choices among available authorities, Congress may wish to consider certain unique enforcement challenges posed by a direct federal mask mandate. In general, enforcing mask mandates has been a challenge even for states, which can leverage their state and local law enforcement apparatus to enforce such mandates (typically through ticketing and fines). This general enforcement apparatus, however, is not available to the federal government, which lacks states' general police power and, as discussed above, cannot commandeer state officers to carry out federal directives, risking enforcement gaps in the context of federal public health regulations. For instance, even though section 361 of the PHSA empowers the CDC to issue quarantine and isolation orders to prevent the spread of communicable

disease, the CDC—as a public health agency—has no law enforcement apparatus to independently enforce such orders. Section 365 directs customs officers (e.g., U.S. Customs and Border Protection (CBP) officers) and U.S. Coast Guard (USCG) officers to aid in the enforcement of quarantine and isolation rules and regulations. In practice, however, under the cooperative Memorandum of Understanding between HHS and the Department of Homeland Security that implements section 365, CBP and USCG's role is limited to providing enforcement support only at ports of entry (i.e., when screening passengers arriving from foreign countries), and primarily when transporting a person to a medical facility. As a result, this authority is historically rarely invoked. The CDC in fact asserted its quarantine authority—which restricts the movement of individuals exposed to a contagious disease—in the context of COVID-19 for the first time in 50 years. In the handful of times the CDC has invoked its isolation authority—which separates an infected individual from those uninfected—it has typically rescinded its federal isolation order after the first 72 hours of detention once a local public health authority has agreed to accept custody of the patient. This landscape means that, depending on the scope of a direct federal mask mandate, there may not be an existing federal mechanism suitable to enforce it.

## Author Information

Wen W. Shen
Legislative Attorney

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.

americanlibrariesmagazine.org

# Are There Exceptions to Face-Mask Requirements? | American Libraries Magazine

*By Mary Minow |*

8-10 minutes



*Our online column Letters of the Law explores the wide range of legal issues that arise in libraries, with the help of a pair of leading authorities: Mary Minow, a librarian who became a lawyer, and Tomas A. Lipinski, a lawyer who became a librarian. Together they have authored four books on the subject, including The Library's Legal Answer Book (ALA Editions, 2003, with a new edition forthcoming in 2021), and led forums at American Library Association (ALA) conferences in collaboration with the Public Library Association (PLA).*

In this edition, Minow addresses legal issues that have arisen around the COVID-19 pandemic, including exceptions to face-mask requirements and *force majeure* clauses in contracts, as well as the legality of taking time off to vote.

**If a library has a policy requiring users to wear face masks, how do patrons with disabilities that directly conflict with mask-wearing use the library?**

As libraries navigate the complicated process of reopening while providing a safe environment within the confines of the law, they would do well to read Theresa Chmara's recommended guidelines, approved by ALA's Intellectual Freedom Committee, for common questions and concerns. (Chmara is general counsel of the Freedom to Read Foundation.)

First, know that there are fake exemption cards circulating on social media, some bearing the seal of the US Department of Justice (DOJ), claiming the holder has a disability that prevents them from wearing a mask. The cards say it's illegal for any business to ask bearers to disclose their condition. These cards are not issued or endorsed by DOJ. Read more about the phenomenon here.

The Centers for Disease Control and Prevention (CDC) states that a person who has trouble breathing or is unconscious, incapacitated, or otherwise unable to remove the face mask without assistance should not wear a face mask or cloth face covering. Other examples may include individuals with respiratory conditions such as asthma, chronic obstructive pulmonary disease, or cystic fibrosis. Additionally, people with post-traumatic stress disorder, severe anxiety, claustrophobia, autism, or cerebral palsy may have difficulty wearing a face mask.

The Americans with Disabilities Act (ADA) does not specifically address face masks, but the Atlanta-based Southeast ADA Center and Burton Blatt Institute at Syracuse University offer a useful fact sheet on the topic. Under the ADA, a library must consider reasonable modifications —changing policies, practices, or procedures—for individuals with disabilities so they can participate in or benefit from library programs and services.

Reasonable modifications to mask requirements may include:

- allowing a person to wear a scarf, loose face covering, or full-face shield

- allowing curbside pickup or no-contact delivery in a timely manner

- offering phone or video appointments

There are three reasons a state or local government agency or private library may not have to provide a reasonable modification under the ADA:

- **Fundamental alteration.** A library may not have to provide a reasonable modification if the modification would change the nature of the service, program, activity, goods, services, or facilities. A fundamental alteration is a change to such a degree that the original program, service, or activity is no longer the same. An example would be a request for home delivery when the library does not already offer that service.

- **Undue burden,** such as a significant difficulty or expense. This could include a request to visit the library before or after its regular hours, as it would place an undue burden on limited staff.

- **Direct threat,** or a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. If an individual with a disability poses a direct threat despite reasonable accommodation, they are not protected by the ADA.



🇺🇸 An official website of the United States government Here's how you know ⌄

ℹ The latest general information on the Coronavirus (COVID-19) is available on Coronavirus.gov. For FAA-specific COVID-19 resources, please visit faa.gov/coronavirus.

United States Department of Transportation



# 2021 Unruly Passenger Data

The FAA investigates unruly-passenger incidents that airline crews report to the agency. The 2021 data below reflects all cases the FAA investigated that cited violations of one or more FAA regulations or federal laws.

## 2021 Year-End Totals









**5,981** Unruly Passenger Reports

**4,290** Mask-related Incidents Reported

**1,116** Investigations Initiated

**350** Enforcement Actions Initiated

In 2021, the FAA proposed $5 million in fines against unruly passengers.



*Unruly passenger rate is 6.9 incidents per 10k flights for the week of December 26, 2021.*

Page last modified: March 01, 2022 10:09:43 AM EST



🇺🇸 An official website of the United States government Here's how you know ⌄

ℹ The latest general information on the Coronavirus (COVID-19) is available on Coronavirus.gov. For FAA-specific COVID-19 resources, please visit faa.gov/coronavirus.

United States Department of Transportation



Federal Aviation
Administration

# Unruly Passengers

The FAA investigates unruly-passenger incidents that airline crews report to the agency. The data below reflects all cases the FAA investigated that cited violations of one or more FAA regulations or federal laws.

**Zero Tolerance for Unruly and Dangerous Behavior Toolkit** — digital products to help promote safe and responsible passenger behavior and bring awareness to the zero tolerance policy. Products include press releases, videos, and graphics.

**Year-to-date numbers current as of March 7, 2022.**


**814** reports of unruly passengers


**535** related to facemasks


**224** investigations initiated


**100** enforcement action cases initiated



_6.2 incidents per 10k flights for week ending January 30, 2022._



Investigations initiated for calendar years 1995–2022
Hover for more details.

# 2021 Unruly Passenger Data

## General notes

- Interfering with the duties of a crewmember violates federal law.

- Federal Aviation Regulations 91.11, 121.580 and 135.120 state that "no person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated."

- The numbers in the table reflect all cases that FAA investigated that cited violations of one or more of the following regulations and/or federal laws: 14 CFR 91.11, 121.580, 135.120, 125.328, 49 U.S.C. 46318 & 46504. Historically, FAA has closed these cases with legal enforcement action (civil penalties), administrative action (warning notices), compliance action (counseling), or no action if there is insufficient evidence of a regulatory violation or violation of federal law. However, under our current *zero-tolerance policy* toward unruly passengers, we are not addressing cases with warning notices or counseling.

- The FAA's database contains only those incidents reported to FAA. Reporting is at the discretion of the crewmember.

- Security violations are excluded. Those cases are handled by the Transportation Security Administration (TSA).

- The repercussions for passengers who engage in unruly behavior can be substantial. They can be fined by the FAA or prosecuted on criminal charges.

- As part of the <u>FAA's Reauthorization Bill</u> (PDF) FAA can propose up to $37,000 per violation for unruly passenger cases. Previously, the maximum civil penalty per violation was $25,000. One incident can result in multiple violations.

Page last modified: March 08, 2022 9:12:46 AM EST



## Recent Floor Activity

### Tuesday, March 15, 2022

Mr. Raphael G. Warnock, from the State of Georgia, called the Senate to order at 10 a.m., the Chaplain offered a prayer, and Mr. Warnock led the Senate in reciting the Pledge of Allegiance to the Flag of the United States of America.

### The Journal

Pursuant to the order of yesterday, the Journal of the proceedings of the Senate was deemed approved to date.

### Certain Procedures Dispensed With

Pursuant to the order of yesterday, the morning hour being deemed expired, and the times for the recognition of the two leaders being reserved.

### Transaction of Morning Business

The following transactions of morning business occurred on today.

### Legislative Business (Tuesday, March 15)

**S. 623 (Sen. Rubio)**: A bill to make daylight saving time permanent, and for other purposes.
-- Senate Committee on Commerce, Science, and Transportation discharged by Unanimous Consent.
-- Measure laid before Senate by unanimous consent.
-- Passed Senate with an amendment by Unanimous Consent.

    **S.Amdt. 5000 (Sen. Rubio)**: In the nature of a substitute.
    --Amendment SA 5000 proposed by Senator Rubio.
    --Amendment SA 5000 agreed to in Senate by Unanimous Consent.

**S.J.Res. 37 (Sen. Paul)**: A joint resolution providing for congressional disapproval under chapter 8 of title 5, United States Code, of the rule submitted by Centers for Disease Control and Prevention relating to "Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs".
-- Senate Committee on Health, Education, Labor, and Pensions discharged, by petition, pursuant to 5 U.S.C. 802(c).
-- Placed on Senate Legislative Calendar under General Orders. Calendar No. 305.
-- Passed Senate without amendment by Yea-Nay Vote. 57 - 40. Record Vote Number: 81

**S.Res. 546 (Sen. Graham)**: A resolution expressing the sense of the Senate condemning the Russian Federation, President Vladimir Putin, members of the Russian Security Council, the Russian Armed Forces, and Russian military commanders for committing atrocities, including alleged war crimes, against the people of Ukraine and others.
-- Submitted in the Senate, considered, and agreed to without amendment and with a preamble by Voice Vote.

### Executive Business (Tuesday, March 15)

**PN752**: Kinan Azmeh, of New York, to be a Member of the National Council on the Arts for a term expiring September 3, 2024
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN754**: Constance Hess Williams, of Pennsylvania, to be a Member of the National Council on the Arts for a term expiring September 3, 2026
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN758**: Christopher Kaui Morgan, of Maryland, to be a Member of the National Council on the Arts for a term expiring September 3, 2024
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN760**: Jake Shimabukuro, of Hawaii, to be a Member of the National Council on the Arts for a term expiring September 3, 2024
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN766**: Rachel Jacobson, of the District of Columbia, to be an Assistant Secretary of the Army
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN1297**: Beth Van Schaack, of California, to be Ambassador at Large for Global Criminal Justice
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN1437**: Shalanda D. Young, of Louisiana, to be Director of the Office of Management and Budget
-- Considered by Senate.
-- Confirmed by the Senate by Yea-Nay Vote. 61 - 36. Record Vote Number: 80

**PN1446**: Kathryn Kahrs Matthew, of South Carolina, to be a Member of the National Council on the Humanities for a term expiring January 26, 2026
-- Considered by Senate.
-- Confirmed by the Senate by Voice Vote.

**PN1601**: Susan Tsui Grundmann, of Virginia, to be a Member of the Federal Labor Relations Authority for a term of five years expiring July 1, 2025
-- Cloture motion withdrawn by unanimous consent in Senate.

## Adjournment

Under the authority of the order of today, at 7:54 p.m., the Presiding Officer (Ms. Hassan in the chair) declared the Senate adjourned, under its order of today, until 10:30 a.m. tomorrow.

117TH CONGRESS
2D SESSION

# S. J. RES. 37

---

# JOINT RESOLUTION

Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the rule submitted by Centers for Disease Control and Prevention relating to "Requirement for Persons To Wear Masks While on Conveyances and at Transportation Hubs".

1   *Resolved by the Senate and House of Representatives*

2   *of the United States of America in Congress assembled,*

3   That Congress disapproves the rule submitted by the Cen-

4   ters for Disease Control and Prevention relating to "Re-

5   quirement for Persons To Wear Masks While on Convey-

6   ances and at Transportation Hubs" (86 Fed. Reg. 8025

7   (February 3, 2021); determined through a letter of opin-

8   ion from the Government Accountability Office dated De-

9   cember 14, 2021, and printed in the Congressional Record

10   on December 15, 2021, on pages S9206–S9208, that the

2

1 order is a rule under the Congressional Review Act), and

2 such rule shall have no force or effect.

Passed the Senate March 15, 2022.

Attest:

*Secretary.*

 Centers for Disease Control and Prevention



## COVID-19

# Use and Care of Masks
Wear a mask with the best fit, protection, and comfort for you

Updated Feb. 25, 2022

> Masks can help protect you and others from COVID-19. Learn more about different types of masks and respirators and how to get the best fit.

## When to Wear a Mask or Respirator

Layered prevention strategies — like staying up to date on vaccines and wearing masks — can help prevent severe illness and reduce the potential for strain on the healthcare system. **Wear a mask with the best fit, protection, and comfort for you.**

### Know the COVID-19 Community Level where you live

COVID-19 Community Levels are a tool to help communities decide what prevention steps to take based on the latest data.


### Low

Wear a mask based on your personal preference, informed by your personal level of risk


### Medium

- If you are immunocompromised or at high risk for severe illness
  – Talk to your healthcare provider about additional precautions, such as wearing masks or respirators indoors in public
- If you live with or have social contact with someone at high risk for severe illness, consider testing yourself for infection before you get together and wearing a mask when indoors with them.


### High

- Wear a well-fitting mask indoors in public, regardless of vaccination status or individual risk (including in K-12 schools and other community settings)
- If you are immunocompromised or at high risk for severe illness
  – Wear a mask or respirator that provides you with greater protection

> Learn more about how COVID-19 Community Levels are measured.

You may choose to wear a mask or respirator that offers greater protection in certain situations, such as when you are with people at higher risk for severe illness, or if you are at higher risk for severe illness.

It is important to wear a mask or respirator when you are sick or caring for someone who is sick with COVID-19. When caring for someone who is sick with COVID-19, a respirator will provide you the best level of protection.



USCA Case #21-1221    Document #1943359    Filed: 04/15/2022    Page 117 of 410



## COVID-19 Community Levels in US by County

|  | Total | Percent | % Change |
|---|---|---|---|
| High | 17 | 0.53% | -1.12% |
| Medium | 146 | 4.53% | -2.7% |
| Low | 3057 | 94.94% | 3.82% |

How are COVID-19 Community Levels calculated?

March 31, 2022

tsa.gov

# Coronavirus | Transportation Security Administration

19-24 minutes          4-15-22

---

TSA has **328** employees with active COVID-19 infections. Those individuals are staying home to help keep the traveling public safe. Since the beginning of the pandemic, <mark>TSA has cumulatively had **22,812** federal employees test positive for COVID-19.</mark> **22,484** employees have recovered, and **36** have unfortunately died after contracting the virus. We have also been notified that two screening contractors have passed away due to the virus.

TSA is committed to notifying the public about airport locations where TSA employees or screening contractors have tested positive for COVID-19. The chart below lists airports with confirmed COVID-19 cases and the last date worked for the most recent screening employee who tested positive. It does not include non-airport TSA employees or contractors who have limited or no interaction with the public. Passengers who believe they may have come in contact with an infected individual within the past 14 days should follow the CDC's recommendations for travel-associated exposure.

*The chart includes TSA employees and screening contractors who may have had direct interaction with the public at an airport location.*

**Airport Total Confirmed Cases TSA Screening Officers Non-Screening Employees Last work date of most recent screening officer confirmed case** ABE - Lehigh Valley International 19 16 3 1/25/22 ABI - Abilene Regional 6 6  2/12/22 ABQ - Albuquerque International Sunport 80 66 14 4/11/22 ABR - Aberdeen Regional 3 3  11/9/21 ABY - Southwest Georgia Regional 7 7  1/12/22 ACK - Nantucket Memorial 2 2  3/15/21 ACT - Waco Regional 13 12 1 2/21/22 ACV - Arcata 1 1  1/18/22 ACY - Atlantic City International 18 14 4 1/9/22 ADQ - Kodiak Airport 5 5  3/12/22 AEX -

**Doc 7300/9**



# Convention on International Civil Aviation

# Convention relative à l'aviation civile internationale

# Convenio sobre Aviación Civil Internacional

# Конвенция о международной гражданской авиации

This document supersedes Doc 7300/8.
Le présent document annule et remplace le Doc 7300/8.
Este documento remplaza el Doc 7300/8.
Настоящий документ заменяет Doc 7300/8.

Ninth Edition – Neuvième édition – Novena edición – Издание девятое — 2006

**International Civil Aviation Organization**
**Organisation de l'aviation civile internationale**
**Organización de Aviación Civil Internacional**
**Международная организация гражданской авиации**

## FOREWORD

This document contains the text of the Convention on International Civil Aviation, signed at Chicago on 7 December 1944 (hereinafter referred to as the "Convention"), in the English, French, Russian and Spanish languages. Each of these texts is equally authentic. The English text is the text adopted and signed at Chicago on 7 December 1944, amended as indicated below. The French and Spanish texts are the texts adopted by and annexed to the Protocol on the Authentic Trilingual Text of the Convention, signed at Buenos Aires on 24 September 1968 (hereinafter referred to as the "Buenos Aires Protocol"), amended as indicated below. The text of the Buenos Aires Protocol is reproduced in this document at pages 45 to 47. This Protocol came into force on 24 October 1968. The Russian text is the text adopted by and annexed to the Protocol on the Authentic Quadrilingual Text of the Convention, signed at Montreal on 30 September 1977 (hereinafter referred to as the "Protocol on the Authentic Quadrilingual Text"), amended as indicated below. This Protocol came into force on 16 September 1999. The text of the Protocol on the Authentic Quadrilingual Text is reproduced in this document at pages 48 to 51.

In the body of the above-mentioned texts of the Convention, in English, French, Russian and Spanish, as presented in this document, are incorporated all the amendments made to the Convention which were in force on 1 January 2006, namely in respect of:

*a)*  Article 3 *bis* (non-use of weapons against civil aircraft in flight);
*b)*  Article 45 (permanent seat of the Organization);
*c)*  Article 48 *a)* (frequency of Assembly Sessions);

*d)*  Article 49 *e)* (powers of Assembly relating to annual budgets);
*e)*  Article 50 *a)* (composition and election of Council);
*f)*  Article 56 (membership of Air Navigation Commission);
*g)*  Article 61 (budget and apportionment of expenses);
*h)*  Article 83 *bis* (transfer of certain functions and duties in cases of lease, charter or interchange of aircraft);

*i)*  Article 93 *bis* (expulsion from the International Civil Aviation Organization or suspension of membership in it); and
*j)*  the final paragraph, adding Russian to the authentic texts of the Convention.

## AVANT-PROPOS

Le présent document comporte le texte de la Convention relative à l'aviation civile internationale, signé à Chicago le 7 décembre 1944 (appelé ci-après la «Convention»), en langues française, anglaise, espagnole et russe. Chacun de ces textes fait également foi. Le texte anglais est celui qui a été adopté et signé à Chicago le 7 décembre 1944, amendé de la manière indiquée ci-dessous. Les textes français et espagnol sont ceux qui ont été adoptés au moyen du Protocole concernant le texte authentique trilingue de la Convention, et qui sont annexés à ce protocole, signé à Buenos Aires le 24 septembre 1968 (appelé ci-après le «Protocole de Buenos Aires»), amendé de la manière indiquée ci-dessous. Le texte du Protocole de Buenos Aires est reproduit dans le présent document aux pages 45 à 47. Ce protocole est entré en vigueur le 24 octobre 1968. Le texte russe est celui qui a été adopté au moyen du Protocole concernant le texte authentique quadrilingue de la Convention, et qui est annexé à ce protocole, signé à Montréal le 30 septembre 1977 (appelé ci-après le «Protocole concernant le texte authentique quadrilingue»), amendé de la manière indiquée ci-dessous. Ce protocole est entré en vigueur le 16 septembre 1999. Le texte du Protocole concernant le texte authentique quadrilingue est reproduit dans le présent document aux pages 48 à 51.

Les textes français, anglais, espagnol et russe précités de la Convention, tels qu'ils figurent dans le présent document, comportent tous les amendements apportés à la Convention qui étaient en vigueur le 1er janvier 2006, et qui concernaient:

*a)*  l'article 3 *bis* (non-utilisation d'armes contre des aéronefs civils en vol);
*b)*  l'article 45 (siège permanent de l'Organisation);
*c)*  l'article 48 *a)* (fréquence des sessions de l'Assemblée);

*d)*  l'article 49 *e)* (pouvoirs de l'Assemblée en matière de budgets annuels);
*e)*  l'article 50 *a)* (composition et élection du Conseil);       '
*f)*  l'article 56 (membres de la Commission de navigation aérienne);
*g)*  l'article 61 (budget et répartition des dépenses);

*h)*  l'article 83 *bis* (transfert de certaines fonctions et obligations en cas de location, d'affrètement ou de banalisation d'aéronefs);
*i)*  l'article 93 *bis* (exclusion d'un État de l'Organisation de l'aviation civile internationale ou suspension de sa qualité de membre de l'Organisation);
*j)*  le dernier paragraphe (ajout du russe aux textes authentiques de la Convention).

(ii)

Attention is invited to the footnotes to the above-mentioned amendments.

Further amendments to the Convention have been adopted but have not been incorporated in this document as they have not yet entered into force, namely in respect of:

*a)* the final paragraph of the Convention, adding Arabic to the authentic texts of the Convention, adopted by the 31st Session of the Assembly; and

*b)* the final paragraph of the Convention, adding Chinese to the authentic texts of the Convention, adopted by the 32nd Session of the Assembly.

On voudra bien se reporter aux notes de bas de page relatives aux amendements précités.

D'autres amendements de la Convention ont été adoptés mais n'ont pas été incorporés au présent document du fait qu'ils ne sont pas encore entrés en vigueur. Il s'agit:

*a)* d'un amendement du dernier paragraphe de la Convention qui ajoute l'arabe aux textes authentiques de la Convention et qui a été adopté par l'Assemblée à sa 31ᵉ session;

*b)* d'un amendement du dernier paragraphe de la Convention qui ajoute le chinois aux textes authentiques de la Convention et qui a été adopté par l'Assemblée à sa 32ᵉ session.

# CONVENTION[1]

## ON INTERNATIONAL CIVIL AVIATION

**Signed at Chicago,
on 7 December 1944**

———————

## PREAMBLE

WHEREAS the future development of international civil aviation can greatly help to create and preserve friendship and understanding among the nations and peoples of the world, yet its abuse can become a threat to the general security; and

WHEREAS it is desirable to avoid friction and to promote that cooperation between nations and peoples upon which the peace of the world depends;

THEREFORE, the undersigned governments having agreed on certain principles and arrangements in order that international civil aviation may be developed in a safe and orderly manner and that international air transport services may be established on the basis of equality of opportunity and operated soundly and economically;

Have accordingly concluded this Convention to that end.

---

# CONVENTION[1]

## RELATIVE À L'AVIATION CIVILE INTERNATIONALE

**Signée à Chicago,
le 7 décembre 1944**

———————

## PRÉAMBULE

CONSIDÉRANT que le développement futur de l'aviation civile internationale peut grandement aider à créer et à préserver entre les nations et les peuples du monde l'amitié et la compréhension, alors que tout abus qui en serait fait peut devenir une menace pour la sécurité générale,

CONSIDÉRANT qu'il est désirable d'éviter toute mésentente entre les nations et les peuples et de promouvoir entre eux la coopération dont dépend la paix du monde,

EN CONSÉQUENCE, les Gouvernements soussignés étant convenus de certains principes et arrangements, afin que l'aviation civile internationale puisse se développer d'une manière sûre et ordonnée et que les services internationaux de transport aérien puissent être établis sur la base de l'égalité des chances et exploités d'une manière saine et économique,

Ont conclu la présente Convention à ces fins.

---

1.  Came into force on 4 April 1947, the thirtieth day after deposit with the Government of the United States of America of the twenty-sixth instrument of ratification thereof or notification of adherence thereto, in accordance with Article 91 b).

1.  Entrée en vigueur le 4 avril 1947, trentième jour après le dépôt auprès du Gouvernement des États-Unis d'Amérique du vingt-sixième instrument de ratification ou notification d'adhésion, conformément à l'article 91 b).

munitions of war or implements of war for the purposes of this Article, giving due consideration, for the purposes of uniformity, to such recommendations as the International Civil Aviation Organization may from time to time make.

*b)* Each contracting State reserves the right, for reasons of public order and safety, to regulate or prohibit the carriage in or above its territory of articles other than those enumerated in paragraph *a)*: provided that no distinction is made in this respect between its national aircraft engaged in international navigation and the aircraft of the other States so engaged; and provided further that no restriction shall be imposed which may interfere with the carriage and use on aircraft of apparatus necessary for the operation or navigation of the aircraft or the safety of the personnel or passengers.

par voie de règlement ce qu'il faut entendre par munitions de guerre ou matériel de guerre aux fins du présent article, en tenant dûment compte, dans un souci d'uniformité, des recommandations que l'Organisation de l'aviation civile internationale pourrait formuler le cas échéant.

*b)* Chaque État contractant se réserve le droit, pour des raisons d'ordre public et de sécurité, de réglementer ou d'interdire le transport, à l'intérieur ou au-dessus de son territoire, d'articles autres que ceux qui sont mentionnés au paragraphe *a)*, à condition qu'il ne soit fait aucune distinction à cet égard entre ses aéronefs nationaux employés à la navigation internationale et les aéronefs des autres États employés aux mêmes fins, et à condition aussi qu'il ne soit imposé aucune restriction pouvant gêner le transport et l'usage, à bord des aéronefs, des appareils nécessaires à l'exploitation ou à la navigation desdits aéronefs, ou à la sécurité du personnel ou des passagers.

### Article 36

*Photographic apparatus*

Each contracting State may prohibit or regulate the use of photographic apparatus in aircraft over its territory.

### Article 36

*Appareils photographiques*

Tout État contractant peut interdire ou réglementer l'usage d'appareils photographiques à bord des aéronefs survolant son territoire.

### CHAPTER VI

### INTERNATIONAL STANDARDS AND RECOMMENDED PRACTICES

### CHAPITRE VI

### NORMES ET PRATIQUES RECOMMANDÉES INTERNATIONALES

### Article 37

*Adoption of international standards and procedures*

Each contracting State undertakes to collaborate in securing the highest practicable degree of uniformity in regulations, standards, procedures, and organization in relation to aircraft, personnel, airways and auxiliary services in all matters in which such uniformity will facilitate and improve air navigation.

To this end the International Civil Aviation Organization shall adopt and amend from time to time, as may be necessary,

### Article 37

*Adoption de normes et procédures internationales*

Chaque État contractant s'engage à prêter son concours pour atteindre le plus haut degré réalisable d'uniformité dans les règlements, les normes, les procédures et l'organisation relatifs aux aéronefs, au personnel, aux voies aériennes et aux services auxiliaires, dans toutes les matières pour lesquelles une telle uniformité facilite et améliore la navigation aérienne.

À cette fin, l'Organisation de l'aviation civile internationale adopte et amende, selon les nécessités, les normes, pratiques

international standards and recommended practices and procedures dealing with:

*a)* Communications systems and air navigation aids, including ground marking;

*b)* Characteristics of airports and landing areas;

*c)* Rules of the air and air traffic control practices;

*d)* Licensing of operating and mechanical personnel;

*e)* Airworthiness of aircraft;

*f)* Registration and identification of aircraft;

*g)* Collection and exchange of meteorological information;

*h)* Log books;

*i)* Aeronautical maps and charts;

*j)* Customs and immigration procedures;

*k)* Aircraft in distress and investigation of accidents;

and such other matters concerned with the safety, regularity, and efficiency of air navigation as may from time to time appear appropriate.

### Article 38

*Departures from international standards and procedures*

Any State which finds it impracticable to comply in all respects with any such international standard or procedure, or to bring its own regulations or practices into full accord with any international standard or procedure after amendment of the latter, or which deems it necessary to adopt regulations or practices differing in any particular respect from those established by an international standard, shall give immediate notification to the International Civil Aviation Organization of the differences between its own practice and that established by the international standard. In the case of amendments to international standards, any State which does not make the appropriate amendments to its own regulations or practices shall give notice to the Council within sixty days of the adoption of the amendment to the international standard, or

recommandées et procédures internationales traitant des sujets suivants:

*a)* systèmes de communications et aides à la navigation aérienne, y compris le balisage au sol;

*b)* caractéristiques des aéroports et des aires d'atterrissage;

*c)* règles de l'air et pratiques de contrôle de la circulation aérienne;

*d)* licences et brevets du personnel technique d'exploitation et d'entretien;

*e)* navigabilité des aéronefs;

*f)* immatriculation et identification des aéronefs;

*g)* collecte et échange de renseignements météorologiques;

*h)* livres de bord;

*i)* cartes et plans aéronautiques;

*j)* formalités de douane et d'immigration;

*k)* aéronefs en détresse et enquêtes sur les accidents;

et, lorsqu'il paraît approprié de le faire, de tout autre sujet intéressant la sécurité, la régularité et l'efficacité de la navigation aérienne.

### Article 38

*Dérogation aux normes et aux procédures internationales*

Tout État qui estime ne pouvoir se conformer en tous points à l'une quelconque de ces normes ou procédures internationales, ou mettre ses propres règlements ou pratiques en complet accord avec une norme ou procédure internationale amendée, ou qui juge nécessaire d'adopter des règles ou des pratiques différant sur un point quelconque de celles qui sont établies par une norme internationale, notifie immédiatement à l'Organisation de l'aviation civile internationale les différences entre ses propres pratiques et celles qui sont établies par la norme internationale. Dans le cas d'amendements à des normes internationales, tout État qui n'apporte pas à ses propres règlements ou pratiques les amendements appropriés en avise le Conseil dans les soixante jours à compter de l'adoption de l'amendement à la norme internationale ou

indicate the action which it proposes to take. In any such case, the Council shall make immediate notification to all other states of the difference which exists between one or more features of an international standard and the corresponding national practice of that State.

indique les mesures qu'il se propose de prendre. En pareil cas, le Conseil notifie immédiatement à tous les autres États la différence existant entre un ou plusieurs points de la norme internationale et la pratique nationale correspondante de l'État en question.

## Article 39

*Endorsement of certificates and licenses*

a) Any aircraft or part thereof with respect to which there exists an international standard of airworthiness or performance, and which failed in any respect to satisfy that standard at the time of its certification, shall have endorsed on or attached to its airworthiness certificate a complete enumeration of the details in respect of which it so failed.

b) Any person holding a license who does not satisfy in full the conditions laid down in the international standard relating to the class of license or certificate which he holds shall have endorsed on or attached to his license a complete enumeration of the particulars in which he does not satisfy such conditions.

## Article 40

*Validity of endorsed certificates and licenses*

No aircraft or personnel having certificates or licenses so endorsed shall participate in international navigation, except with the permission of the State or States whose territory is entered. The registration or use of any such aircraft, or of any certificated aircraft part, in any State other than that in which it was originally certificated shall be at the discretion of the State into which the aircraft or part is imported.

## Article 41

*Recognition of existing standards of airworthiness*

The provisions of this Chapter shall not apply to aircraft and aircraft equipment of types of which the prototype is submitted

## Article 39

*Annotation des certificats et licences*

a) Tout aéronef ou élément d'aéronef au sujet duquel il existe une norme internationale de navigabilité ou de performance et qui n'a pas satisfait sur un point quelconque à cette norme lors de l'établissement de son certificat de navigabilité, doit avoir sous forme d'annotation sur son certificat de navigabilité, ou en annexe à celui-ci, l'énumération complète des détails sur lesquels l'aéronef ou l'élément d'aéronef s'écarte de cette norme.

b) Tout titulaire d'une licence qui ne satisfait pas entièrement aux conditions imposées par la norme internationale relative à la classe de la licence ou du brevet qu'il détient doit avoir sous forme d'annotation sur sa licence, ou en annexe à celle-ci, l'énumération complète des points sur lesquels il ne satisfait pas auxdites conditions.

## Article 40

*Validité des certificats et des licences annotés*

Aucun aéronef ou membre du personnel dont le certificat ou la licence a été ainsi annoté ne peut participer à la navigation internationale si ce n'est avec la permission de l'État ou des États sur le territoire desquels il pénètre. L'immatriculation ou l'emploi d'un tel aéronef ou d'un élément certifié d'aéronef dans un État autre que celui où il a été certifié à l'origine, est laissé à la discrétion de l'État dans lequel cet aéronef ou élément est importé.

## Article 41

*Reconnaissance des normes de navigabilité existantes*

Les dispositions du présent chapitre ne s'appliquent ni aux aéronefs ni au matériel d'aéronefs des types dont le prototype



ICAO

International Standards
and Recommended Practices

# Annex 9 to the Convention on International Civil Aviation

# Facilitation

## Fifteenth Edition, October 2017



This edition incorporates all amendments adopted by the Council prior to 17 June 2017
and supersedes, on 23 February 2018, all previous editions of Annex 9.

For information regarding the applicability of the Standards and Recommended
Practices, see Foreword.

## INTERNATIONAL CIVIL AVIATION ORGANIZATION

Published in separate English, Arabic, Chinese, French, Russian
and Spanish editions by the
INTERNATIONAL CIVIL AVIATION ORGANIZATION
999 Robert-Bourassa Boulevard, Montréal, Quebec, Canada H3C 5H7

For ordering information and for a complete listing of sales agents
and booksellers, please go to the ICAO website at www.icao.int

*First edition 1949*
*Fourteenth edition 2015*
*Fifteenth edition 2017*

**Annex 9 — Facilitation**
Order Number: AN 9
ISBN 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-301-9

© ICAO 2017

All rights reserved. No part of this publication may be reproduced, stored in a
retrieval system or transmitted in any form or by any means, without prior
permission in writing from the International Civil Aviation Organization.

# FOREWORD

### Historical background

Standards and Recommended Practices on Facilitation were first adopted by the Council on 25 March 1949, pursuant to the provisions of Article 37 of the Convention on International Civil Aviation (Chicago, 1944), and designated as Annex 9 to the Convention with the title "Standards and Recommended Practices — Facilitation". They became effective on 1 September 1949. The Standards and Recommended Practices were based on recommendations of the First and Second Sessions of the Facilitation Division, held at Montréal in February 1946 and at Geneva in June 1948. They were expanded and amended comprehensively as a result of subsequent Sessions of the Division, i.e. the Third Session, held at Buenos Aires in December 1951, the Fourth Session, held at Manila in October 1955, the Fifth Session, held at Rome in December 1959, the Sixth Session, held at Mexico City in March-April 1963, the Seventh Session, held at Montréal in May 1968, the Eighth Session, held at Dubrovnik in March 1973, the Ninth Session held at Montréal in April-May 1979, the Tenth Session held at Montréal in September 1988 and the Eleventh Session held in Montréal in April 1995, and the Third Meeting of the Facilitation (FAL) Panel held in Montréal in February 2001. As a result of the Division's and FAL Panel's Recommendations for amendment of Annex 9 and Council's action thereon, the Second Edition of Annex 9 became effective on 1 March 1953, the Third Edition on 1 November 1956, the Fourth Edition on 1 November 1960, the Fifth Edition on 1 April 1964, the Sixth Edition on 1 April 1969, the Seventh Edition on 15 April 1974, the Eighth Edition on 15 July 1980, the Ninth Edition on 15 November 1990, the Tenth Edition on 30 April 1997, the Eleventh Edition on 15 July 2002, the Twelfth Edition on 11 July 2005, the Thirteenth Edition on 18 July 2011 and the Fourteenth Edition on 25 October 2015.

*Fifteenth Edition.*— The present edition incorporates, inter alia, provisions arising from the Ninth Meeting of the FAL Panel held in Montréal in April 2016 on issues such as Machine Readable Travel Documents (MRTDs), the transport of minors by air, passenger data exchange systems and the passenger manifest. This Fifteenth Edition of Annex 9 became effective on 23 October 2017 and is to become applicable on 23 February 2018. This edition also incorporates amendments arising from the Tenth Meeting of the FAL Panel held in Montréal in September 2018 on issues such as unaccompanied minors, the Passenger Data Single Window facility and trafficking in persons. Amendment 27 became effective on 21 October 2019 and is to become applicable on 21 February 2020.

The Standards and Recommended Practices on Facilitation are the outcome of Article 37 of the Convention, which provides, inter alia*,* that the "International Civil Aviation Organization shall adopt and amend from time to time, as may be necessary, international standards and recommended practices and procedures dealing with . . . customs and immigration procedures . . . and such other matters concerned with the safety, regularity and efficiency of air navigation as may from time to time appear appropriate". The policy with respect to the implementation by States of the Standards and Recommended Practices on Facilitation is strengthened by Article 22 of the Convention, which expresses the obligation accepted by each Contracting State "to adopt all practicable measures, through the issuance of special regulations or otherwise, to facilitate and expedite navigation by aircraft between the territories of contracting States, and to prevent unnecessary delays to aircraft, crews, passengers and cargo, especially in the administration of the laws relating to immigration, quarantine, customs and clearance", and by Article 23 of the Convention, which expresses the undertaking of each Contracting State "so far as it may find practicable, to establish customs and immigration procedures affecting international air navigation in accordance with the practices which may be established or recommended from time to time, pursuant to this Convention".[*]

---

[*]     A number of other articles of the Convention have special pertinence to the provisions of the FAL Annex and have been taken into account in its preparation. In particular, persons responsible for the implementation of the provisions of this Annex should be familiar with the following articles in addition to Articles 22 and 23:
Article 10, Landing at customs airport;  Article 11, Applicability of air regulations;
Article 13, Entry and clearance regulations;  Article 14, Prevention of spread of disease;
Article 24, Customs duty;  Article 29, Documents carried in aircraft;
Article 35, Cargo restrictions.

Wall v. TSA                          126                          Appendix

In addition to the Standards and Recommended Practices of Annex 9, the Organization's FAL Programme is based on the FAL Resolutions of the Assembly and B-type recommendations of FAL Division Sessions which are those recommendations which do not suggest amendments to the Annex provisions.

Table A shows the origin of the amendments to the Annex together with a list of the principal subjects involved and the dates on which the Annex and the amendments were adopted by the Council, when they became effective and when they became applicable.

## Applicability

As indicated in Chapter 1, Section B, the Standards and Recommended Practices in this document apply to all categories of aircraft operation except where a particular provision specifically refers to one type of operation without mentioning other types of operations.

The Standards and Recommended Practices on Facilitation inevitably take two forms: first a "negative" form, e.g. that States shall not impose more than certain maximum requirements in the way of paperwork, restrictions of freedom of movement, etc., and second a "positive" form, e.g. that States shall provide certain minimum facilities for passenger convenience, for traffic which is merely passing through, etc. Whenever a question arises under a "negative" provision, it is assumed that States will, wherever possible, relax their requirements below the maximum set forth in the Standards and Recommended Practices. Wherever there is a "positive" provision, it is assumed that States will, wherever possible, furnish more than the minimum set forth in the Standards and Recommended Practices.

## Action by Contracting States

*Notification of differences.* The attention of Contracting States is drawn to the obligation imposed by Article 38 of the Convention by which Contracting States are required to notify the Organization of any differences between their national regulations and practices and the International Standards contained in this Annex and any amendments thereto. Contracting States are invited to extend such notification of any differences from the Recommended Practices contained in this Annex, and any amendments thereto. Further, Contracting States are invited to keep the Organization currently informed of any differences which may subsequently occur, or of the withdrawal of any differences previously notified. A specific request for notification of differences will be sent to Contracting States immediately after the adoption of each Amendment to this Annex.

Attention of States is also drawn to the provision of Annex 15 related to the publication of significant differences between their national regulations and practices and the related ICAO Standards and Recommended Practices through the Aeronautical Information Service, in addition to the obligation of States under Article 38 of the Convention.

*Promulgation of information.* The establishment and withdrawal of and changes to facilities, services and procedures affecting aircraft operations provided in accordance with the Standards and Recommended Practices specified in this Annex should be notified and take effect in accordance with the provisions of Annex 15.

Contracting States should make every effort to publish the FAL information required by Annex 15 (as amplified by the *Aeronautical Information Services Manual* — Doc 8126) and, in particular, ensure that they conform with the requirements as to presentation and contents of such information prescribed by the Fourteenth Edition of Annex 15.

*Use of the text of the Annex in national regulations.* The Council, on 13 April 1948, adopted a resolution inviting the attention of Contracting States to the desirability of using in their own national regulations, as far as practicable, the precise language of those ICAO Standards that are of a regulatory character and also indicating departures from the Standards, including any additional national regulations that were important for the safety or regularity of air navigation. Wherever possible, the provisions of this Annex have been written in such a way as would facilitate incorporation, without major textual changes, into national legislation.

### General information

An Annex is made up of the following component parts, not all of which, however, are necessarily found in every Annex; they have the status indicated:

1.— Material comprising the Annex proper

   a) *Standards* and *Recommended Practices* adopted by the Council under the provisions of the Convention. They are defined, in the case of this Annex, as follows:

   *Standard:* Any specification, the uniform observance of which has been recognized as practicable and as necessary to facilitate and improve some aspect of international air navigation, which has been adopted by the Council pursuant to Article 54 (*l*) of the Convention, and in respect of which non-compliance must be notified by Contracting States to the Council in accordance with Article 38.

   *Recommended Practice:* Any specification, the observance of which has been recognized as generally practicable and as highly desirable to facilitate and improve some aspect of international air navigation, which has been adopted by the Council pursuant to Article 54 (*l*) of the Convention, and to which Contracting States will endeavour to conform in accordance with the Convention.

   b) *Appendices* comprising material grouped separately for convenience but forming part of the Standards and Recommended Practices adopted by the Council.

   c) *Definitions* of terms used in the Standards and Recommended Practices which are not self-explanatory in that they do not have accepted dictionary meanings. A definition does not have an independent status but it is an essential part of each Standard and Recommended Practice in which the term is used, since a change in the meaning of the term would affect the specification.

2.— *Material approved by the Council for publication in association with the Standards and Recommended Practices*

   a) *Forewords* comprising historical and explanatory material based on the action of the Council and including an explanation of the obligations of States with regard to the application of the Standards and Recommended Practices ensuing from the Convention and the Resolution of Adoption.

   b) *Introductions* comprising explanatory material introduced at the beginning of parts, chapters or sections of the Annex to assist in the understanding of the application of the text.

   c) *Notes* included in the text, where appropriate, to give factual information or references bearing on the Standards or Recommended Practices in question, but not constituting part of the Standards or Recommended Practices.

   d) *Attachments* comprising material supplementary to the Standards and Recommended Practices, or included as a guide to their application.

This Annex has been adopted in six languages — English, Arabic, Chinese, French, Russian and Spanish. Each Contracting State is requested to select one of those texts for the purpose of national implementation and for other effects provided for in the Convention, either through direct use or through translation into its own national language, and to notify the Organization accordingly.

The following practice has been adhered to in order to indicate at a glance the status of each statement: *Standards* have been printed in light face roman; *Recommended Practices* have been printed in light face italics, the status being indicated by the words **Recommended Practice**; *Notes* have been printed in light face italics, the status being indicated by the prefix *Note.*

Any reference to a portion of this document which is identified by a number includes all subdivisions of the portion.

Throughout this Annex, the use of the male gender should be understood to include male and female persons.

Wall v. TSA                                    128                                    Appendix

# INTERNATIONAL STANDARDS
# AND RECOMMENDED PRACTICES

# CHAPTER 1.   DEFINITIONS AND GENERAL PRINCIPLES

### A.   Definitions

When the following terms are used in the Standards and Recommended Practices on Facilitation, they have the following meanings, for the purposes of this Annex:

***Accompanying person.*** An adult who is travelling with a minor. This person will not necessarily be the parent or legal guardian of the minor.

*Note.— It is to be noted that this definition might need to be applied in light of any obligation resulting from the application of national regulations on border checks.*

***Admission.*** The permission granted to a person to enter a State by the public authorities of that State in accordance with its national laws.

***Advance Passenger Information (API) System.*** An electronic communications system whereby required data elements are collected and transmitted to border control agencies prior to flight departure or arrival and made available on the primary line at the airport of entry.

***Aircraft equipment.*** Articles, including first-aid and survival equipment and commissary supplies, but not spare parts or stores, for use on board an aircraft during flight.

***Aircraft operator.*** A person, organization or enterprise engaged in or offering to engage in an aircraft operation.

***Aircraft operators' documents.*** Air waybills/consignment notes, passenger tickets and boarding passes, bank and agent settlement plan documents, excess baggage tickets, miscellaneous charges orders (M.C.O.), damage and irregularity reports, baggage and cargo labels, timetables, and weight and balance documents, for use by aircraft operators.

***Airline.*** As provided in Article 96 of the Convention, any air transport enterprise offering or operating a scheduled international air service.

***Authorized agent.*** A person who represents an aircraft operator and who is authorized by or on behalf of such operator to act on formalities connected with the entry and clearance of the operator's aircraft, crew, passengers, cargo, mail, baggage or stores and includes, where national law permits, a third party authorized to handle cargo on the aircraft.

***Authorized Economic Operator.*** AEO is a party involved in the international movement of goods in whatever function that has been approved by or on behalf of a national Customs administration as complying with WCO or equivalent supply chain security standards. AEOs may include manufacturers, importers, exporters, brokers, carriers, consolidators, intermediaries, ports, airports, terminal operators, integrated operators, warehouses, distributors and freight forwarders.

*Note.— The definition is aligned with that found in the World Customs Organization's "SAFE Framework of Standards to Secure and Facilitate Global Trade."*

**Mail.** Dispatches of correspondence and other items tendered by and intended for delivery to postal services in accordance with the rules of the Universal Postal Union (UPU).

**Minor.** A person who has not attained the age of majority as determined under the law applicable to the person.

**Mishandled baggage.** Baggage involuntarily, or inadvertently, separated from passengers or crew.

**Narcotics control.** Measures to control the illicit movement of narcotics and psychotropic substances by air.

**Necessary precautions.** Verifications carried out by adequately trained staff members of the aircraft operator or the company operating on behalf of the aircraft operator, at the point of embarkation, in order to ensure that every person holds a valid travel document and, where applicable, the visa or residence permit required to enter the State of transit and/or receiving State. These verifications are designed to ensure that irregularities (e.g. obvious document alteration) are detected.

**Passenger amenities.** Facilities provided for passengers which are not essential for passenger processing.

**Passenger Data Single Window.** A facility that allows parties involved in passenger transport by air to lodge standardized passenger information (i.e. API, iAPI and/or PNR) through a single data entry point to fulfil all regulatory requirements relating to the entry and/or exit of passengers that may be imposed by various agencies of the Contracting State.

*Note.— The Passenger Data Single Window facility to support API/iAPI transmissions does not necessarily need to be the same facility used to support PNR data exchange.*

**Person with disabilities.** Any person whose mobility is reduced due to a physical incapacity (sensory or locomotor), an intellectual deficiency, age, illness or any other cause of disability when using transport and whose situation needs special attention and the adaptation to the person's needs of the services made available to all passengers.

**Pilot-in-command.** The pilot responsible for the operation and safety of the aircraft during flight time.

**Public authorities.** The agencies or officials of a Contracting State responsible for the application and enforcement of the particular laws and regulations of that State which relate to any aspect of these Standards and Recommended Practices.

**Public health emergency of international concern.** An extraordinary event which is determined, as provided in the *International Health Regulations* (2005) of the World Health Organization: (i) to constitute a public health risk to other States through the international spread of disease and (ii) to potentially require a coordinated international response.

**Public health risk.** A likelihood of an event that may affect adversely the health of human populations, with an emphasis on one which may spread internationally or may present a serious and direct danger.

**Release of goods.** The action by the customs authorities to permit goods undergoing clearance to be placed at the disposal of the persons concerned.

**Relief flights.** Flights operated for humanitarian purposes which carry relief personnel and relief supplies such as food, clothing, shelter, medical and other items during or after an emergency and/or disaster and/or are used to evacuate persons from a place where their life or health is threatened by such emergency and/or disaster to a safe haven in the same State or another State willing to receive such persons.

**Removal of a person.** Action by the public authorities of a State, in accordance with its laws, to direct a person to leave that State.

**Removal order.** A written order served by a State on the operator on whose flight an inadmissible person travelled into that State, directing the operator to remove that person from its territory.

***Risk assessment.*** An assessment by a deporting State of a deportee's suitability for escorted or unescorted removal via commercial air services. The assessment should take into account all pertinent factors, including medical, mental and physical fitness for carriage on a commercial flight, willingness or unwillingness to travel, behavioural patterns and any history of violence.

***Risk management.*** The systematic application of management procedures and practices which provide border inspection agencies with the necessary information to address movements or consignments which represent a risk.

***Security equipment.*** Devices of a specialized nature for use, individually or as part of a system, in the prevention or detection of acts of unlawful interference with civil aviation and its facilities.

***Single Window.*** A facility that allows parties involved in trade and transport to lodge standardized information and documents with a single entry point to fulfil all import, export, and transit-related regulatory requirements. If information is electronic then individual data elements should only be submitted once.

***Spare parts.*** Articles, including engines and propellers, of a repair or replacement nature for incorporation in an aircraft.

***State of Registry.*** The State on whose register the aircraft is entered.

***Stores (Supplies).*** a) Stores (supplies) for consumption; and b) Stores (supplies) to be taken away.

   ***Stores (Supplies) for consumption.*** Goods, whether or not sold, intended for consumption by the passengers and the crew on board aircraft, and goods necessary for the operation and maintenance of aircraft, including fuel and lubricants.

   ***Stores (Supplies) to be taken away.*** Goods for sale to the passengers and the crew of aircraft with a view to being landed.

***Temporary admission.*** The customs procedure under which certain goods can be brought into a customs territory conditionally relieved totally or partially from payment of import duties and taxes; such goods must be imported for a specific purpose and must be intended for re-exportation within a specified period and without having undergone any change except normal depreciation due to the use made of them.

***Through-flight.*** A particular operation of aircraft, identified by the operator by the use throughout of the same symbol, from point of origin via any intermediate points to point of destination.

***Travel document.*** A passport or other official document of identity issued by a State or organization, which may be used by the rightful holder for international travel.

***Unaccompanied baggage.*** Baggage that is transported as cargo and may or may not be carried on the same aircraft with the person to whom it belongs.

***Unaccompanied minor.*** A minor travelling alone or travelling only in the company of another minor.

   *Note.— It is to be noted that this definition might need to be applied in light of any obligation resulting from the application of national regulations on border checks.*

***Unclaimed baggage.*** Baggage that arrives at an airport and is not picked up or claimed by a passenger.

***Unidentified baggage.*** Baggage at an airport, with or without a baggage tag, which is not picked up by or identified with a passenger.

***Unlading.*** The removal of cargo, mail, baggage or stores from an aircraft after a landing.

*Visitor.* Any person who disembarks and enters the territory of a Contracting State other than that in which that person normally resides; remains there lawfully as prescribed by that Contracting State for legitimate non-immigrant purposes, such as touring, recreation, sports, health, family reasons, religious pilgrimages, or business; and does not take up any gainful occupation during his stay in the territory visited.

### B.   General principles

1.1    The Standards and Recommended Practices in this Annex shall apply to all categories of aircraft operation except where a particular provision refers specifically to only one type of operation.

1.2    Contracting States shall take necessary measures to ensure that:

a)    the time required for the accomplishment of border controls in respect of persons and aircraft and for the release/clearance of goods is kept to the minimum;

b)    minimum inconvenience is caused by the application of administrative and control requirements;

c)    exchange of relevant information between Contracting States, operators and airports is fostered and promoted to the greatest extent possible; and

d)    optimal levels of security, and compliance with the law, are attained.

1.3    Contracting States shall use risk management in the application of border control procedures for the release/clearance of goods.

1.4    Contracting States shall develop effective information technology to increase the efficiency and effectiveness of their procedures at airports.

1.5    The provisions of this Annex shall not preclude the application of national legislation with regard to aviation security measures or other necessary controls.

1.6    **Recommended Practice.—** *Contracting States and aircraft operators should exchange information as to the appropriate point(s) of contact(s) to whom border control and customs queries should be directed.*

_____

### G.   Establishment of national facilitation programmes

8.17   Each Contracting State shall establish a national air transport facilitation programme based on the facilitation requirements of the Convention and of Annex 9 thereto.

8.18   Each Contracting State shall ensure that the objective of its national air transport facilitation programme shall be to adopt all practicable measures to facilitate the movement of aircraft, crews, passengers, cargo, mail and stores, by removing unnecessary obstacles and delays.

8.18.1   **Recommended Practice.—** *In establishing a national air transport facilitation programme, States should use the guidance material outlined in Appendix 12 and Doc 10042,* Model National Air Transport Facilitation Programme*.*

8.19   Each Contracting State shall establish a National Air Transport Facilitation Committee, and Airport Facilitation Committees as required, or similar coordinating bodies, for the purpose of coordinating facilitation activities between departments, agencies, and other organizations of the State concerned with, or responsible for, various aspects of international civil aviation as well as with airport and aircraft operators.

8.20   **Recommended Practice.—** *Contracting States should endeavour to establish close coordination, adapted to circumstances, between civil aviation security and facilitation programmes. To this end, certain members of Facilitation Committees should also be members of Security Committees.*

8.21   **Recommended Practice.—** *In establishing and operating National Air Transport and Airport Facilitation Committees, States should use the guidance material outlined in Appendices 11 and 12.*

### H.   Facilitation of the transport of persons with disabilities

#### I.   General

8.22   **Recommended Practice.—** *When travelling, persons with disabilities should be provided with special assistance in order to ensure that they receive services customarily available to the general public. Assistance should be provided in a manner that respects the dignity of the individual.*

*Note.— Attention is drawn to Doc 9984,* Manual on Access to Air Transport by Persons with Disabilities, *developed for the purpose of elaborating on the Standards and Recommended Practices relating to the facilitation of the transport of persons with disabilities, and assisting the civil aviation community in their implementation.*

8.23   **Recommended Practice.—** *Contracting States should cooperate with a view to taking the necessary measures to make accessible to persons with disabilities all the elements of the chain of the person's journey, from arrival at the airport of departure to leaving the airport of destination.*

8.24   **Recommended Practice.—** *Contracting States should take the necessary steps with aircraft, airport and ground handling operators to establish and publish minimum uniform standards of accessibility with respect to transportation services for persons with disabilities, from arrival at the airport of departure to leaving the airport of destination.*

8.25   **Recommended Practice.—** *Contracting States should take the necessary steps with aircraft, airport and ground handling operators and travel agencies to ensure that persons with disabilities are given the information they need, in formats that are accessible to those with cognitive or sensory disabilities, and should take the necessary steps to ensure that airlines, airports and ground handling operators are in a position to give those passengers the assistance necessary for them, depending on their needs, to help them in their travel.*

8.26    **Recommended Practice.—** *Contracting States should take all necessary steps to secure the cooperation of aircraft, airport and ground handling operators in order to establish and coordinate training programmes to ensure that trained personnel are available to assist persons with disabilities.*

## II.    Access to airports

8.27    Contracting States shall take the necessary steps to ensure that airport facilities and services are adapted to the needs of persons with disabilities.

8.28    **Recommended Practice.—** *Contracting States should ensure that lifting systems or any other appropriate devices are made available in order to facilitate the movement of persons with disabilities between the aircraft and the terminal on both arrival and departure as required where telescopic passageways are not used.*

8.29    **Recommended Practice.—** *Measures should be taken to ensure that the hearing- and vision-impaired are able to obtain flight service-related information in accessible formats.*

8.30    **Recommended Practice.—** *Designated points for the pick-up and drop-off of persons with disabilities at a terminal building should be located as close as possible to main entrances and/or exits. To facilitate movement within the airport, access routes should be free of obstacles and be accessible.*

8.31    **Recommended Practice.—** *Where access to public services is limited, every effort should be made to provide accessible and reasonably priced ground transportation services by adapting current and planned public transit systems or by providing special transport services for people with mobility needs.*

8.32    **Recommended Practice.—** *Adequate parking facilities should be provided for people with mobility needs and appropriate measures taken to facilitate their movement between parking areas and the terminal buildings.*

8.33    **Recommended Practice.—** *When assistance is provided to transfer persons with disabilities from one aircraft to another, it should be provided as efficiently as possible, with due regard for connecting flights.*

## III.    Access to air services

8.34    Contracting States shall take the necessary steps to ensure that persons with disabilities have equivalent access to air services.

8.35    **Recommended Practice.—** *Contracting States should introduce provisions by which aircraft coming newly into service or after major refurbishment should conform, where aircraft type, size, and configuration permit, to minimum uniform standards of accessibility with respect to equipment on board aircraft which would include movable armrests, on-board wheelchairs, accessible washrooms and suitable lighting and signs.*

8.36    **Recommended Practice.—** *Disability aids required by persons with disabilities should be carried free of charge in the cabin where space, weight and safety requirements permit or should be carried free of charge and designated as priority baggage.*

8.37    **Recommended Practice.—** *Service animals accompanying persons with disabilities should be carried free of charge in the cabin, on the floor at the person's seat, subject to the application of any relevant national or aircraft operator regulations.*

8.38    Contracting States that restrict the transport of battery-powered devices, including mobility aids containing spillable batteries, shall notify ICAO promptly of such restrictions so that they can be included in Doc 9284, *Technical Instructions for the Safe Transport of Dangerous Goods by Air* and ensure that aircraft operators make such information publicly available and in accordance with Chapter 2, 2.5 of Annex 18.

8.39    **Recommended Practice.—** *In principle, persons with disabilities should be permitted to travel without the requirement for a medical clearance. Aircraft operators should only be permitted to require persons with disabilities to obtain a medical clearance in cases of a medical condition where it is not clear that they are fit to travel and could compromise their safety or well-being or that of other passengers.*

8.40    **Recommended Practice.—** *In principle, persons with disabilities should be permitted to determine whether or not they need an assistant. If the presence of an assistant is required, Contracting States should encourage aircraft operators to offer discounts for the carriage of that assistant. Aircraft operators should require an assistant only when it is clear that the person with a disability is not self-reliant and this could pose a risk to safety or the well-being of such person or that of other passengers.*

8.40.1    **Recommended Practice.—** *Advance notice should strongly be encouraged where assistance or lifting is required.*


### I.    Assistance to aircraft accident victims and their families

8.41    The State of Occurrence of an aircraft accident and adjacent States shall make arrangements to facilitate the entry into their territory on a temporary basis of family members of victims of an aircraft accident.

8.42    The State of Occurrence and adjacent States shall also make arrangements to facilitate the entry into their territory, on a temporary basis, of authorized representatives of the operator whose aircraft has met with the accident, or of the operator's alliance partner, in order to enable them to provide assistance to survivors and their family members, the family members of the deceased victims of the accident and the relevant authorities in these States.

*Note.— Code-sharing and similar alliance agreements sometimes require alliance partners to act as "first responder" on behalf of an affected operator in case the alliance partner can get to the location of the accident quicker than the affected operator.*

8.43    **Recommended Practice.—** *In arranging for the entry of the persons referred to in 8.41, the State of Occurrence and adjacent States should not require any other travel document than a passport, or an emergency travel document issued specifically to such persons, to enable them to travel to these States. In cases where the State of Occurrence of the accident or an adjacent State requires entrance visas for persons referred to in 8.41 and 8.42 above, it should expedite the issuance of such visas.*

8.44    Contracting States shall make arrangements to issue emergency travel documents, if required, to their nationals who have survived the accident.

8.45    Contracting States shall extend all necessary assistance, such as arranging transport and clearing customs, in the repatriation of human remains to their countries of origin, on request by family members of the deceased or the operator whose aircraft met with the accident.

8.46    **Recommended Practice.—** *Contracting States should establish legislation, regulations and/or policies in support of assistance to aircraft accident victims and their families.*

*Note.— Attention is drawn to Doc 9998, ICAO Policy on Assistance to Aircraft Accident Victims and their Families and Doc 9973, Manual on Assistance to Aircraft Accident Victims and their Families.*

un.org

# UN Enable - Promoting the rights of Persons with Disabilities ICAO

22-28 minutes

---

## Response

I wish to refer to your letter dated 30 January 2003, reference DESA/DIS03/2, requesting the views of the International Civil Aviation Organization (ICAO) on proposals for a Comprehensive and Integral International Convention on Protection and Promotion of the Rights and Dignity of Persons with Disabilities.

I would like to inform you that, pursuant to Article 37 of the *Convention on International Civil Aviation*, signed at Chicago on 7 December 1944 (the Chicago Convention), ICAO has adopted, *inter alia,* Annex 9 - *Facilitation* to the Chicago Convention, which contains provisions on facilitation of air transport, namely Standards and Recommended Practices (SARPS), including provisions on facilitation of the transport of passengers requiring special assistance. Attached is a copy of the Foreword of the Annex which explains in paragraph I of the General Information the status of SARPS.

Chapter 1 of Annex 9 defines "Person with disabilities" as "Any person whose mobility is reduced due to a physical incapacity (sensory or locomotor), an intellectual deficiency, age, illness or any other cause of disability when using transport and whose situation needs special attention and the adaptation to the person's needs of the services made available to all passengers."

Chapter 8 of Annex 9 contains two Standards and fifteen Recommended Practices that address accessibility to all elements of the air transport chain by persons with disabilities.

The Standards require that all airport facilities and services are adapted to the needs of persons with disabilities and that persons with disabilities have adequate access to air services:

**Standard 8.27** Contracting States shall take the necessary steps to ensure that airport facilities and services are adapted to the needs of persons with disabilities.

**Standard 8.34** Contracting States shall take the necessary steps to ensure that persons

with disabilities have adequate access to air services.

The Recommended Practices of Annex 9 provide that Contracting States should ensure, *inter alia*, that persons with disabilities, when travelling, be provided with special assistance to ensure they receive services customarily available to the general public; that all elements of a journey, from beginning to end, are made accessible to persons with disabilities; that persons with disabilities-particularly the hearing- and vision-impaired-are given all necessary information, by travel agents, airlines, airports, and ground handling operators, to help them in their travel; that adequate training programmes are established to ensure that trained personnel are available to assist persons with disabilities; that reserved points are located as close as possible to the main entrance of a terminal building, for ease of access for persons with disabilities; that aircraft have movable armrests, on-board wheelchairs, and other similarly user-friendly facilities for persons with disabilities; and that if such a person requires an escort, airlines are encouraged to offer discounts for the carriage of the escort. These Recommended Practices are reproduced at Attachment 2, for information.

Finally, ICAO has prepared guidance material, ICAO Circular 274 -*Access to Air Transport by Persons with Disabilities*, that elaborate on the Annex 9 Standards and Recommended Practices relating to persons with disabilities. The material is intended to assist the civil aviation community in the day-to-day application of these SARPs.

On the basis of the above-mentioned Standards and Recommended Practices, as complemented by guidance material, Contracting States have taken the necessary measures to make the system work satisfactorily. Airlines on a worldwide basis have standardized to a great extent, including by voluntary commitments, their procedures for acceptance and handling of disabled passengers. The International Air Transport Association (IATA) has also played an important role in the standardization and implementation of such procedures. The rights and dignity of persons with disabilities have been fully taken into account in all these efforts.

It should also be noted that, in accordance with the procedures established in Article 90 of the Chicago Convention, Standards and Recommended Practices can be amended without going through formal treaty amendment procedures to keep requirements in line with real needs. This seems to be the most appropriate way of dealing with measures to facilitate the transportation of persons with disabilities, as opposed to the adoption of treaty provisions, including by means of a convention as envisaged in General Assembly resolution 57/229, which would not allow for the required flexibility in this matter.

In closing, I would like to emphasize that, with regard to air transport, the existing system of facilitation of the transport of disabled passengers is deemed adequate, is working properly and can be amended swiftly to meet changing requirements as appropriate.

Accordingly, there would be in our view no requisite to provide for further international legislation in this respect.

Yours sincerely,

R.C. Costa Pereira

[Return to top](#)

---

## ATTACHMENT 1

## FOREWORD

### Historical background

Standards and Recommended Practices on Facilitation were first adopted by the Council on 25 March 1949, pursuant to the provisions of Article 37 of the Convention on International Civil Aviation (Chicago, 1944), and designated as Annex 9 to the Convention with the title "Standards and Recommended Practices - Facilitation". They became effective on 1 September 1949. The Standards and Recommended Practices were based on recommendations of the First and Second Sessions of the Facilitation Division, held at Montreal in February 1946 and at Geneva in June 1948. They were expanded and amended comprehensively as a result of subsequent Sessions of the Division, i.e. the Third Session, held at Buenos Aires in December 1951, the Fourth Session,: held at Manila in October 1955, the Fifth Session, held at Rome-ml December 1959, the Sixth Session, held at Mexico City in March-April 1963, the Seventh Session, held at Montreal in May 1968, the Eighth Session, held at Dubrovnik in March 1973, the Ninth Session held at Montreal ,in April-May 1979 and the Tenth Session held at Montreal in September 1988. As a result of the Division's Recommendations, for amendment of Annex 9 and Council's action thereon, the Second: Edition of Annex 9 became effective on 1 March 1953, the Third Edition, on 1 November 1956, the Fourth Edition on 1 November 1960, the Fifth Edition on 1 April 1964, the Sixth Edition on 1 April 1969, the Seventh Edition on 15 Apri1 1974, the Eighth Edition on 15 July 1980, the Ninth Edition ón 151990 ember 1990 and the Tenth Edition on 30 April 1997.

*Eleventh Edition.*- The present edition incorporates, inter alia, provisions arising from recommendations of the Third Meeting of the Facilitation Panel (FAL.P/3).(Montreal . February 2001) which again resulted in the comprehensive expansion and amendment of Annex 9. This Eleventh Edition of Annex 9 became effective on 15 July 2002 and is to become applicable on 28 November 2002.

The Standards and Recommended-Practices on Facilitation are the outcome of Article 37 of the Convention, which provides, *inter alia*, that the "International Civil Aviation

**Doc 9984**



# Manual on Access to Air Transport by Persons with Disabilities

_____

**Approved by the Secretary General
and published under his authority**

**First Edition — 2013**

**International Civil Aviation Organization**

Published in separate English, Arabic, Chinese, French, Russian
and Spanish editions by the
INTERNATIONAL CIVIL AVIATION ORGANIZATION
999 University Street, Montréal, Quebec, Canada H3C 5H7

For ordering information and for a complete listing of sales agents
and booksellers, please go to the ICAO website at www.icao.int

Doc 9984, *Manual on Access to Air Transport by
Persons with Disabilities*
Order Number: 9984
ISBN 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-193-2

© ICAO 2013

All rights reserved. No part of this publication may be reproduced, stored in a
retrieval system or transmitted in any form or by any means, without prior
permission in writing from the International Civil Aviation Organization.

# FOREWORD

Persons with disabilities make up a significant and growing percentage of the world's population and constitute the world's largest minority. The World Health Organization (WHO) reports that this number is increasing through population growth, medical advances and the ageing process.

Aviation, like all other transport modes, needs to recognise and accommodate this growing passenger segment. Persons with disabilities have the same international rights as other citizens, such as accessibility, and full and effective participation and inclusion in society, including freedom of movement and freedom of choice (United Nations *Convention on the Rights of Persons with Disabilities*, articles 3.c and 3.f). Persons with disabilities should have equivalent access to air travel.

These international rights apply to air travel as to all areas of life. There have been many changes in the provision of accessible facilities and services to persons with disabilities in air transportation worldwide, and this trend requires renewed attention at an international level.

In keeping with the general obligations of States under the *Convention on the Rights of Persons with Disabilities*, to promote universal design, to provide accessible information, and to promote the training of professionals and staff working with persons with disabilities (article 4, paragraph 1, f, h, and i), this manual provides general guidance on services and features needed to meet the needs of persons with disabilities in air transportation. The guidance material in this manual was created by the Facilitation Panel's Working Group on Persons with Disabilities for the purpose of elaborating on the relevant Standards and Recommended Practices in Annex 9 — *Facilitation* and assisting the civil aviation community in their implementation.

This manual should be read in conjunction with other key documents in this field, which provide more detailed guidance, and the legal frameworks which apply to various jurisdictions.

———————————

*(ix)*

# DEFINITIONS

***Person with disabilities***. <mark>Any person whose mobility is reduced due to a physical incapacity</mark> (sensory or locomotor), an intellectual deficiency, age, illness <mark>or any other cause of disability when using transport and whose situation needs special attention and the adaptation to the person's needs of the services made available to all passengers.</mark>

***Aircraft operator***. A person, organization or enterprise engaged in or offering to engage in an aircraft operation. For the purposes of this manual, the term also includes operators operating under code sharing and wet-leasing arrangements.

***Service animals***. Animals, normally being dogs or other animals, specified in national regulations, for the purpose of accompanying persons with disabilities with the objective of providing them with physical or/and emotional support, being under the control of the person with disabilities and provided that their presence on board an aircraft:

    a)   does not endanger the safety of flight operations;

    b)   is not reasonably considered as a threat to other passengers; and

    c)   does not cause health concerns related to hygiene.

Member States should encourage aircraft and airport operators and travel agents to use common definitions for different categories of persons with disabilities. Such entities should follow the standard system of classification and codification developed by the International Air Transport Association (IATA) for this purpose, as amended from time to time.

———————————————

*(xiii)*

# Chapter 1

# GENERAL ISSUES

### ACCESSIBLE AIR TRAVEL

1.1         All procedures forming part of an air travel journey, including reservations, check-in, immigration and customs, security clearances, transfers within airports, embarkation and disembarkation, departure, carriage and arrival should be adapted to the needs of persons with disabilities in order to facilitate the clearance and air transportation of such persons in a dignified manner.

1.2         In some instances, the aircraft operator with whom the passenger enters into a contract of carriage may be a separate entity from the actual aircraft operator. Aircraft operators should ensure, as far as possible, that the services that they provide to persons with disabilities are also provided by the operator that operates their flights.

### CONSULTATIONS WITH ORGANIZATIONS REPRESENTING PERSONS WITH DISABILITIES

1.3         Airport and aircraft operators should consult with organizations that represent persons with disabilities when developing services and training programmes and when designing facilities and equipment to ensure that persons with disabilities have equal access to air transportation. Airport and aircraft operators should consider involving organizations that represent persons with disabilities in evaluating services, training programmes, facilities and equipment.

### SEAMLESS SERVICE

1.4         The service provided at the request of persons with disabilities should be professional and "seamless", that is, with no points at which such persons may be left stranded or without assistance.

1.5         Seamless is a concept that includes a comfortable, safe and uninterrupted journey, with the provision of assistance that is adapted to the needs of each individual person with disabilities.

### NO REFUSAL OF CARRIAGE EXCEPT FOR SAFETY REASONS

1.6         Aircraft operators should not refuse to transport persons with disabilities on the basis of their disabilities except for safety requirements.

*1-1*

**NO CHARGE FOR ASSISTANCE**

1.7        Assistance to meet disability-related needs should be provided without charge to persons with disabilities.


**SERVICE LEVEL TARGETS**

1.8        This manual presents the minimum recommended service level targets that Member States should meet, and urges them to exceed these service level targets wherever possible.

1.8.1      Recommended service level targets should be set for each request for assistance. These should be mutually agreed on by airport and aircraft operators, as well as by all other stakeholders. Organizations representing persons with disabilities should be consulted in the development of these service level targets which should be included in contractual arrangements.


**ALLOCATION OF RESPONSIBILITIES**

1.9        Some States' legislation and regulations assign responsibilities for providing accessible services at airports to airport operators, while others assign them to aircraft operators. Further references in the manual to airport and aircraft operators should be read in that context.

———————————

**International Covenant on Civil and Political Rights**

Adopted and opened for signature, ratification and accession by General Assembly resolution 2200A (XXI) of 16 December 1966, entry into force 23 March 1976, in accordance with Article 49

Preamble

The States Parties to the present Covenant,

Considering that, in accordance with the principles proclaimed in the Charter of the United Nations, recognition of the inherent dignity and of the equal and inalienable rights of all members of the human family is the foundation of freedom, justice and peace in the world,

Recognizing that these rights derive from the inherent dignity of the human person,

Recognizing that, in accordance with the Universal Declaration of Human Rights, the ideal of free human beings enjoying civil and political freedom and freedom from fear and want can only be achieved if conditions are created whereby everyone may enjoy his civil and political rights, as well as his economic, social and cultural rights,

Considering the obligation of States under the Charter of the United Nations to promote universal respect for, and observance of, human rights and freedoms,

Realizing that the individual, having duties to other individuals and to the community to which he belongs, is under a responsibility to strive for the promotion and observance of the rights recognized in the present Covenant,

Agree upon the following articles:

PART I

Article 1

1. All peoples have the right of self-determination. By virtue of that right they freely determine their political status and freely pursue their economic, social and cultural development.

2. All peoples may, for their own ends, freely dispose of their natural wealth and resources without prejudice to any obligations arising out of international economic co-operation, based upon the principle of mutual benefit, and international law. In no case may a people be deprived of its own means of subsistence.

3. The States Parties to the present Covenant, including those having responsibility for the administration of Non-Self-Governing and Trust Territories, shall promote the realization of the right of self-determination, and shall respect that right, in conformity with the provisions of the Charter of the United Nations.

PART II

Article 2

1. Each State Party to the present Covenant undertakes to respect and to ensure to all individuals within its territory and subject to its jurisdiction the rights recognized in the present Covenant, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

2. Where not already provided for by existing legislative or other measures, each State Party to the present Covenant undertakes to take the necessary steps, in accordance with its constitutional processes and with the provisions of the present Covenant, to adopt such laws or other measures as may be necessary to give effect to the rights recognized in the present Covenant.

3. Each State Party to the present Covenant undertakes:

(a) To ensure that any person whose rights or freedoms as herein recognized are violated shall have an effective remedy, notwithstanding that the violation has been committed by persons acting in an official capacity;

(b) To ensure that any person claiming such a remedy shall have his right thereto determined by competent judicial, administrative or legislative authorities, or by any other competent authority provided for by the legal system of the State, and to develop the possibilities of judicial remedy;

(c) To ensure that the competent authorities shall enforce such remedies when granted.

Article 3

The States Parties to the present Covenant undertake to ensure the equal right of men and women to the enjoyment of all civil and political rights set forth in the present Covenant.

Article 4

1 . In time of public emergency which threatens the life of the nation and the existence of which is officially proclaimed, the States Parties to the present Covenant may take measures derogating from their obligations under the present Covenant to the extent strictly required by the exigencies of the situation, provided that such measures are not inconsistent with their other obligations under international law and do not involve discrimination solely on the ground of race, colour, sex, language, religion or social origin.

2. No derogation from articles 6, 7, 8 (paragraphs I and 2), 11, 15, 16 and 18 may be made under this provision.

3. Any State Party to the present Covenant availing itself of the right of derogation shall immediately inform the other States Parties to the present Covenant, through the intermediary of the Secretary-General of the United Nations, of the provisions from which it has derogated and of the reasons by which it was actuated. A further communication shall be made, through the same intermediary, on the date on which it terminates such derogation.

Article 5

1. Nothing in the present Covenant may be interpreted as implying for any State, group or person any right to engage in any activity or perform any act aimed at the destruction of any of the rights and freedoms recognized herein or at their limitation to a greater extent than is provided for in the present Covenant.

2. There shall be no restriction upon or derogation from any of the fundamental human rights recognized or existing in any State Party to the present Covenant pursuant to law, conventions, regulations or custom on the pretext that the present Covenant does not recognize such rights or that it recognizes them to a lesser extent.

PART III

Article 6

1. Every human being has the inherent right to life. This right shall be protected by law. No one shall be arbitrarily deprived of his life.

2. In countries which have not abolished the death penalty, sentence of death may be imposed only for the most serious crimes in accordance with the law in force at the time of the commission of the crime and not contrary to the provisions of the present Covenant and to the Convention on the Prevention and Punishment of the Crime of Genocide. This penalty can only be carried out pursuant to a final judgement rendered by a competent court.

3. When deprivation of life constitutes the crime of genocide, it is understood that nothing in this article shall authorize any State Party to the present Covenant to derogate in any way from any obligation assumed under the provisions of the Convention on the Prevention and Punishment of the Crime of Genocide.

4. Anyone sentenced to death shall have the right to seek pardon or commutation of the sentence. Amnesty, pardon or commutation of the sentence of death may be granted in all cases.

5. Sentence of death shall not be imposed for crimes committed by persons below eighteen years of age and shall not be carried out on pregnant women.

6. Nothing in this article shall be invoked to delay or to prevent the abolition of capital punishment by any State Party to the present Covenant.

Article 7

No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment. In particular, no one shall be subjected without his free consent to medical or scientific experimentation.

Article 8

1. No one shall be held in slavery; slavery and the slave-trade in all their forms shall be prohibited.

2. No one shall be held in servitude.

3.

(a) No one shall be required to perform forced or compulsory labour;

(b) Paragraph 3 (a) shall not be held to preclude, in countries where imprisonment with hard labour may be imposed as a punishment for a crime, the performance of hard labour in pursuance of a sentence to such punishment by a competent court;

(c) For the purpose of this paragraph the term "forced or compulsory labour" shall not include:

(i) Any work or service, not referred to in subparagraph (b), normally required of a person who is under detention in consequence of a lawful order of a court, or of a person during conditional release from such detention;

(ii) Any service of a military character and, in countries where conscientious objection is recognized, any national service required by law of conscientious objectors;

(iii) Any service exacted in cases of emergency or calamity threatening the life or well-being of the community;

(iv) Any work or service which forms part of normal civil obligations.

Article 9

1. Everyone has the right to liberty and security of person. No one shall be subjected to arbitrary arrest or detention. No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law.

2. Anyone who is arrested shall be informed, at the time of arrest, of the reasons for his arrest and shall be promptly informed of any charges against him.

3. Anyone arrested or detained on a criminal charge shall be brought promptly before a judge or other officer authorized by law to exercise judicial power and shall be entitled to trial within a reasonable time or to release. It shall not be the general rule that persons awaiting trial shall be detained in custody, but release may be subject to guarantees to appear for trial, at any other stage of the judicial proceedings, and, should occasion arise, for execution of the judgement.

4. Anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a court, in order that that court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful.

5. Anyone who has been the victim of unlawful arrest or detention shall have an enforceable right to compensation.

Article 10

1. All persons deprived of their liberty shall be treated with humanity and with respect for the inherent dignity of the human person.

2.

(a) Accused persons shall, save in exceptional circumstances, be segregated from convicted persons and shall be subject to separate treatment appropriate to their status as unconvicted persons;

(b) Accused juvenile persons shall be separated from adults and brought as speedily as possible for adjudication.

3. The penitentiary system shall comprise treatment of prisoners the essential aim of which shall be their reformation and social rehabilitation. Juvenile offenders shall be segregated from adults and be accorded treatment appropriate to their age and legal status.

Article 11

No one shall be imprisoned merely on the ground of inability to fulfil a contractual obligation. Article 12

1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement and freedom to choose his residence.

2. Everyone shall be free to leave any country, including his own.

3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law, are necessary to protect national security, public order (ordre public), public health or morals or the rights and freedoms of others, and are consistent with the other rights recognized in the present Covenant.

4. No one shall be arbitrarily deprived of the right to enter his own country.

Article 13

An alien lawfully in the territory of a State Party to the present Covenant may be expelled therefrom only in pursuance of a decision reached in accordance with law and shall, except where compelling reasons of national security otherwise require, be allowed to submit the reasons against his expulsion and to have his case reviewed by, and be represented for the purpose before, the competent authority or a person or persons especially designated by the competent authority.

Article 14

1. All persons shall be equal before the courts and tribunals. In the determination of any criminal charge against him, or of his rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law. The press and the public may be excluded from all or part of a trial for reasons of morals, public order (ordre public) or national security in a democratic society, or when the interest of the private lives of the parties so requires, or to the extent strictly necessary in the opinion of the court in special circumstances where publicity would prejudice the interests of justice; but any judgement rendered in a criminal case or in a suit at law shall be made public except where the interest of juvenile persons otherwise requires or the proceedings concern matrimonial disputes or the guardianship of children.

2. Everyone charged with a criminal offence shall have the right to be presumed innocent until proved guilty according to law.

3. In the determination of any criminal charge against him, everyone shall be entitled to the following minimum guarantees, in full equality: (a) To be informed promptly and in detail in a language which he understands of the nature and cause of the charge against him;

(b) To have adequate time and facilities for the preparation of his defence and to communicate with counsel of his own choosing;

(c) To be tried without undue delay;

(d) To be tried in his presence, and to defend himself in person or through legal assistance of his own choosing; to be informed, if he does not have legal assistance, of this right; and to have legal assistance assigned to him, in any case where the interests of justice so require, and without payment by him in any such case if he does not have sufficient means to pay for it;

(e) To examine, or have examined, the witnesses against him and to obtain the attendance and examination of witnesses on his behalf under the same conditions as witnesses against him;

(f) To have the free assistance of an interpreter if he cannot understand or speak the language used in court;

(g) Not to be compelled to testify against himself or to confess guilt.

4. In the case of juvenile persons, the procedure shall be such as will take account of their age and the desirability of promoting their rehabilitation. 5. Everyone convicted of a crime shall have the right to his conviction and sentence being reviewed by a higher tribunal according to law.

6. When a person has by a final decision been convicted of a criminal offence and when subsequently his conviction has been reversed or he has been pardoned on the ground that a new or newly discovered fact shows conclusively that there has been a miscarriage of justice, the person who has suffered punishment as a result of such conviction shall be compensated according to law, unless it is proved that the non-disclosure of the unknown fact in time is wholly or partly attributable to him.

7. No one shall be liable to be tried or punished again for an offence for which he has already been finally convicted or acquitted in accordance with the law and penal procedure of each country.

Article 15

1 . No one shall be held guilty of any criminal offence on account of any act or omission which did not constitute a criminal offence, under national or international law, at the time when it was committed. Nor shall a heavier penalty be imposed than the one that was applicable at the time when the criminal offence was committed. If, subsequent to the commission of the offence, provision is made by law for the imposition of the lighter penalty, the offender shall benefit thereby.

2. Nothing in this article shall prejudice the trial and punishment of any person for any act or omission which, at the time when it was committed, was criminal according to the general principles of law recognized by the community of nations.


Article 16


Everyone shall have the right to recognition everywhere as a person before the law.


Article 17


1. No one shall be subjected to arbitrary or unlawful interference with his privacy, family, home or correspondence, nor to unlawful attacks on his honour and reputation.


2. Everyone has the right to the protection of the law against such interference or attacks.


Article 18


1. Everyone shall have the right to freedom of thought, conscience and religion. This right shall include freedom to have or to adopt a religion or belief of his choice, and freedom, either individually or in community with others and in public or private, to manifest his religion or belief in worship, observance, practice and teaching.


2. No one shall be subject to coercion which would impair his freedom to have or to adopt a religion or belief of his choice.


3. Freedom to manifest one's religion or beliefs may be subject only to such limitations as are prescribed by law and are necessary to protect public safety, order, health, or morals or the fundamental rights and freedoms of others.

# C

# PETITIONER LUCAS WALL'S EXHIBITS

Privia - MUSTA - Mahmoud H Mustafa MD FACP • 2311 M Street NW, WASHINGTON DC 20037-1495

**WALL, LUCAS (id # ▮▮▮▮, dob: ▮▮▮/1977)**



**Mahmoud H Mustafa MD FACP**
2311 M Street NW Suite 401
WASHINGTON, DC 20037-1495
Phone: 202-331-3338, Fax: (202) 223-9130

Date: 11/15/2021

RE: Lucas Wall, DOB: ▮▮▮/1977, PT ID # ▮▮▮▮

To Whom it May Concern,

Please be advised I am the primary care provider for Mr. Lucas Wall who has a longstanding history of generalized anxiety disorder. As a result he is unable to wear a face covering, thus I am recommending he does not wear a face covering.

Sincerely,



Electronically Signed by: CONNOR BUTZ, PA, PA-C

Privia - MUSTA - Mahmoud H Mustafa MD FACP • 2311 M Street NW, WASHINGTON DC 20037-1495

**WALL, LUCAS (id # ▇▇▇▇▇▇, dob: ▇▇▇▇/1977)**



**Mahmoud H Mustafa MD FACP**
2311 M Street NW Suite 401
WASHINGTON, DC 20037-1495
Phone: 202-331-3338, Fax: (202) 223-9130

Date: 11/16/2021

Dear Lucas Wall,

The following is the most recent summary of your visit on 11/15/2021. If you have any questions, please contact our office.

Sincerely,

Electronically Signed by: MAHMOUD MUSTAFA, MD

# Patient Care Summary for Lucas Wall

## Most Recent Encounter

11/15/2021 Mahmoud Mustafa: 2311 M Street NW, Suite 401, Washington, DC 20037-1495, Ph. tel:+1-202-3313338

## Reason for Visit

follow up - medication

## Assessment and Plan

The following list includes any diagnoses that were discussed at your visit.

▇▇▇▇▇▇▇▇
• clonazepam 1 mg tablet
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
2. Generalized anxiety disorder

Discussion Note: None recorded.

Patient educational handouts: No information available.

## Plan of Care

| Reminders | | Provider |
|---|---|---|
| Appointments | None recorded. | |
| Lab | None recorded. | |
| Referral | None recorded. | |
| Procedures | None recorded. | |
| Surgeries | None recorded. | |
| Imaging | None recorded. | |

## Current Medications

Your medical record indicates you are on the following medicine. If this list is not consistent with the medications you are currently taking, or if you are taking additional over-the-counter medicines, please inform your provider.

| Name | Prescribed Date | Start Date |
|---|---|---|
| ███████████████████████ | | |
| ████████████ | ████████ | |
| clonazepam 1 mg tablet<br>TAKE 1 TABLET BY MOUTH TWICE A DAY | 11/15/2021 | |
| ███████████████████████ | | |
| ██████████ | | |
| ████████████████ | | |
| █████████████ | ████████ | |
| ██████████████████████████████ | ████████ | |
| ████████████ | ████████ | |

## Medications Administered

None recorded.

## Vitals

None recorded.

## Results

| Lab Results |
|---|

None recorded.

## Allergies

Please review your allergy list for accuracy. Contact your provider if this list needs to be updated.

| Code | Code System | Name | Reaction | Severity | Onset |
|---|---|---|---|---|---|
| NKDA | | | | | |

## Problems



| Name | Status | Onset Date | Source |
|------|--------|-----------|--------|
| Generalized Anxiety Disorder | Active | 01/01/2008 | History |

## Procedures

## Vaccine List

Here is a copy of your most up-to-date vaccination list.

**Vaccine Type**

Influenza, injectable, MDCK, preservative free, quadrivalent
10/15/2016

Tdap
12/07/2010

Notes:

## Tobacco Smoking Status

| Tobacco Smoking Status | Never Smoker |
|------------------------|--------------|

## Past Encounters

11/15/2021

██████████ Generalized Anxiety Disorder

Mahmoud Mustafa, MD: 2311 M Street NW, Suite 401, Washington, DC 20037-1495, Ph. 202-331-3338

## Demographics

| Sex: | Male | Ethnicity: | Information not available |
|------|------|-----------|---------------------------|
| DOB: | ████/1977 | Race: | Information not available |
| Preferred language: | English | Marital status: | Never Married |

Contact:    3601 Cosmos Way, The Villages, FL 32163-2818, Ph. tel:+1-202-3511735

Note: Patients are solely responsible for maintaining the privacy and security of all information printed from the Patient Portal.



Log in | Create account    Español 

## Southwest

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

# Thanks for flying with us!

✓ Price    ✓ Payment    ✓ Confirmation

✓ **Your flight is booked!**

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.
**lewnwdc77-airlines@yahoo.com**

## Trip summary

🖶 Print



✈ **Flight**

**CONFIRMATION #**

▇▇▇▇▇▇▇▇

**JUN 2**
## MCO ✈ FLL

**FLIGHT TOTAL**
## $211.99

🚗 **Add a car**              Add a hotel



The perfect stay is moments away

Book now. Pay later!
**From $76.94*/day in Ft. Lauderdale**

*Taxes and fees excl. Terms apply.

**Book now**

DESTINATION/HOTEL NAME:
Fort Lauderdale

CHECK-IN          CHECK-OUT
06/02/2021 📅     06/04/2021 📅

Search ⬈



LIMITED-TIME OFFER
# Earn 65,000 points
to get your "go" on.

$69 annual fee. Offer ends 7/14/21.

**Learn more ›**

- 3,000 anniversary points every year
- 2X points on Southwest® purchases
- 1X points on all other purchases
- Points count toward Companion Pass®

## 6/2 - Ft. Lauderdale

 **Who's coming with me?**
Let your friends and family know you're traveling!

Share on Facebook! ⬈

**JUN 2**
## Orlando, FL *to* Ft. Lauderdale, FL

**Confirmation #** ▇▇▇▇▇

| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| | | | |

| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|

**Lucasedward Wall**
Rapid Rewards® number ›
Add Known Traveler # / Redress # ›
Special Assistance ›

**+ 1,838** PTS     —     Anytime

💲 **Transparency®: Defined**
Low fares. Nothing to hide. ↗

🔄 **Change fees don't fly with us**
Flexibility for your travel plans.

🌅 **Add EarlyBird Check-In®**

## Departing   6/2/21 Wednesday

Anytime     $183.80
*(Passenger x1)*

✈ **DEPARTS**   **10:00** AM   **MCO**
Orlando, FL - MCO

**FLIGHT**
**2204** 📶 + ▣

**SCHEDULED AIRCRAFT**
Boeing 737 MAX8
*Subject to change*

Nonstop

✈ **ARRIVES**   **11:05** AM   **FLL**
Ft. Lauderdale, FL - FLL

**TRAVEL TIME**
1hr 5min

**SUBTOTAL**
**$183.80**

**Taxes & fees**     $28.19

**Flight total**     **$211.99**

**Icon legend**

📶 WiFi available      ▣ Live TV available

**Helpful Information:**

- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account.
- Per CDC Order, face coverings required for everyone 2 and over (through September 13, 2021).

**Book your hotel with us and save up to 15% on your stay.**


The perfect stay is moments away

**DESTINATION/HOTEL NAME:**
Fort Lauderdale

**CHECK-IN**
06/02/2021

**CHECK-OUT**
06/04/2021

| ROOMS | ADULTS | CHILDREN |
|---|---|---|
| 1 | 1 | 0 |

Search ↗

# Rapid Rewards®

Seek adventure, get rewarded.

✔ Unlimited reward seats
✔ No blackout dates
✔ Your points don't expire

| Enroll now, it's free! |

Points don't expire as long as you have flight-earning or partner-earning activity every 24 months. All Rapid Rewards rules and regulations apply.

# Payment summary

| PAYMENT INFORMATION | | | AMOUNT PAID |
|---|---|---|---|
| MasterCard 7555<br>XXXXXXXXXXXX7555<br>Expiration: ▮ | CARD HOLDER<br>Lucas Wall | BILLING ADDRESS<br>435 10th St. NE<br>Washington, DC US 20002 | **$211.99** |

## Total charged

### You're all set for your upcoming trip.



Get ready to enjoy two bags for the price of none*, no fees to change your flight**, and some Southwest® love.

*First and second checked bags. Weight and size limits apply. **Fare difference may apply.

| | |
|---|---|
| SUBTOTAL | **$183.80** |
| TAXES & FEES | **$28.19** |
| **TOTAL DOLLARS** | **$211.99** |

Show price breakdown

# Save up to 30% off

Earn up to 2400 Rapid Rewards® points.



**Book now** ❯

**Before you travel, don't forget:**



Wear personal face coverings    Download mobile boarding passes    Agree to health declaration

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

- • I am completing this form for myself
- • I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name:  _Lucas_

Passenger Middle Initial:  _E._

Passenger Last Name:  _Wall_

Contact Email address:  _LEWNWDC77-AIRLINES@yahoo.com_

Contact Phone number:  _202-351-1735_

Reason for Mask Exception Request:
_Generalized Anxiety Disorder_
_Unable to tolerate wearing a mask_

Is flight already booked?  Yes _✔_  No____

If flight is already booked, please include the following information:

Date(s) of Travel:  _6-2-21_

City Pair:  _MCO-FLL_

Confirmation Number (if flight already booked): _4H4hAN_

Does Passenger possess a WN Employee ID? _no_

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: ___X___

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, and sharing of information.

_____
Passenger Signature or Signature of Passenger Parent or Guardian

_Lucas Wall_
_____
Printed Name of Passenger or Parent or Guardian

Date: _5-31-21_

⭐ It is illegal pursuant to 14 CFR Part 382 to require advance notice of disability accommodation ⭐

I object to having to submit this form

**Southwest**

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REW

# Customers with Disabilities

Notice of Disability

Assistance in the Airport

Security Screening

Wheelchairs & Other Devices

Allergies

Cognitive Disabilities

Deaf or Hard of Hearing

Blind Or Low Vision

Medication

Trained Service Animals

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

**Mask Exemptions**

Your Rights

## Join the Discussion

Share knowledge and learn from travelers just like you.

Community ☑

## Need Help?

We're a click away.

Contact Us

### Exemption to Federal Mask Requirement on Southwest Airlines

Federal law requires each person, 2 years of age and older, to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

**Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.**

Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement.

**Please comply with the following pre-travel steps:**

At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit the following via **Southwest.com>Contact Us>Send a Message.>Email Us: Comment/Question>Disability>Future Travel Assistance**:

1. A fully completed copy of this form executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child; and

2. A signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability.

Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).

If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third party medical provider's affirmation for travel, if required, Southwest will contact you at the phone number or email address provided below to discuss any need to change your travel dates and/or flights and remind you of the need to obtain a qualifying COVID negative viral test.

No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as:

A physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

**Note:** Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

### How May We Help You? Search Customer Service

Enter Keyword(s)                                    **Search**

*Handwritten annotations: "unlikely the 6/09", "you can't add a letter no fee to see doctor", "FALSE", "I/6901", "14 CFR Part 382", "the flight is in 2 days", "I/6901", "I/6901", "# Gov't fully Vaccinated", "I/6901"*


**(https://www.southwest.com/?clk=GNAVHOMELOGO)**

FLIGHT | HOTEL | CAR | VACATIONS     SPECIAL OFFERS     RAPID REWARDS®   🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Comment/Question

Disability - Future Travel Assistance

Do you have a disability-related question about your upcoming travel plans? Please share the details below, and we'll get back with you as soon as possible.

If this is regarding a past travel experience, please select one of the other applicable "Disability" sub categories so that your question or comment is directed to the appropriate personnel.

**\* (REQUIRED) ADD A DESCRIPTION**

> Attached is my Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines form for my June 2 flight from MCO to FLL.
>
> Please note it is illegal under the Air Carrier Access Act regulations (14 CFR § 382) for you to require:
>
> 1.  a disability accommodation request be submitted in advance;
> 2.  a signed letter from my medical physician attesting to my disability that precludes me from wearing a face mask;
> 3.  me to undergo a private medical screening with a third-party medical provider; and
> 4.  require me to provide evidence of a qualifying COVID negative viral test taken within three calendar days preceding my scheduled date of travel.
>
> Your face-mask-exemption policy constitutes illegal discrimination against passengers with disabilities pursuant to the Air Carrier Access Act (49

1385 character(s) remaining.

☐ I do not need a response

🔗 CFR 14-382 ACCA.pdf ✕   🔗 Southwest App for Mask Exemption WALL.pdf ✕
🔗 USC 49-41705 ACCA.pdf ✕

**ADD ATTACHMENT (OPTIONAL)**

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

⌄ **Flight Information**

**(JavaScript:Void(0);)**

**\* (REQUIRED) FLIGHT / EVENT DATE**

| Jun 2, 2021 | 📅 |

**\* (REQUIRED) AIRPORT**

Wall v. TSA                              166                              Appendix

MCO

Orlando, FL - **MCO**

* (REQUIRED) FLIGHT NUMBER

2204

* (REQUIRED) CONFIRMATION NUMBER

4HLAN

Your entry is too short.

* (REQUIRED) ORIGIN CITY

MCO

Orlando, FL - **MCO**

* (REQUIRED) DESTINATION CITY

FLL

Ft. Lauderdale, FL - **FLL**

## Contact Information

* (REQUIRED) FIRST NAME

Lucas

* (REQUIRED) LAST NAME

Wall

* (REQUIRED) EMAIL

lewnwdc77-airlines@yahoo.com

PHONE NUMBER

202-351-1735

Please enter valid Phone Number. Special characters are not accepted

RAPID REWARDS ACCOUNT NUMBER

❯ **Your Address** (Optional)

**(JavaScript:Void(0);)**

Go Back

Submit

Privacy - Terms

Wall v. TSA                    167                    Appendix

Attached is my Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines form for my June 2 flight from MCO to FLL.

Please note it is illegal under the Air Carrier Access Act regulations (14 CFR § 382) for you to require:

1. a disability accommodation request be submitted in advance;
2. a signed letter from my medical physician attesting to my disability that precludes me from wearing a face mask;
3. me to undergo a private medical screening with a third-party medical provider; and
4. require me to provide evidence of a qualifying COVID negative viral test taken within three calendar days preceding my scheduled date of travel.

Your face-mask-exemption policy constitutes illegal discrimination against passengers with disabilities pursuant to the Air Carrier Access Act (49 USC § 41705). The U.S. Code and Code of Federal Regulations provisions are attached for your reference. I refuse to abide by your requests for a physician letter, private medical screening, and negative COVID test since these are illegal. Also, I am fully vaccinated and don't pose a threat to anyone.

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

- I am completing this form for myself.
- I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name: _Lucas_

Passenger Middle Initial: _E._

Passenger Last Name: _Wall_

Contact Email address: _LEWNWDC77-AIRLINES@yahoo.com_

Contact Phone number: _202-354-1735_

Reason for Mask Exception Request:
_Generalized Anxiety Disorder_
_unable to tolerate wearing a mask_

Is flight already booked?  Yes _✓_  No____

If flight is already booked, please include the following information:

Date(s) of Travel: _6-22-21_

City Pair: _HOU-DAL_

Confirmation Number (if flight already booked): ▮

Does Passenger possess a WN Employee ID? _____no_____

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____X_____

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, and sharing of information and that Southwest Airlines may change my travel dates and/or flights should one or more of my originally scheduled flights have a capacity of 75% or more, or another Passenger approved for a mask exemption booked on such flight.

_____
Passenger Signature or Signature of Passenger Parent or Guardian

_____
Printed Name of Passenger or Parent or Guardian

Date: ____5-31-21____

* It is illegal pursuant to 14 CFR Part 382 to require advance notice of disability accommodation *

I object to having to submit this form.


(https://www.southwest.com
/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS      SPECIAL OFFERS      RAPID REWARDS®      🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Comment/Question

Disability - Future Travel Assistance

Do you have a disability-related question about your upcoming travel plans? Please share the details below, and we'll get back with you as soon as possible.

If this is regarding a past travel experience, please select one of the other applicable "Disability" sub categories so that your question or comment is directed to the appropriate personnel.

\* (REQUIRED) ADD A DESCRIPTION

> Attached is my Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines form for my June 22 flight from HOU to DAL.
>
> Please note it is illegal under the Air Carrier Access Act regulations (14 CFR § 382) for you to require:
>
> 1.   a disability accommodation request be submitted in advance;
> 2.   a signed letter from my medical physician attesting to my disability that precludes me from wearing a face mask;
> 3.   me to undergo a private medical screening with a third-party medical provider; and
> 4.   require me to provide evidence of a qualifying COVID negative viral test taken within three calendar days preceding my scheduled date of travel.
>
> Your face-mask-exemption policy constitutes illegal discrimination against passengers with disabilities pursuant to the Air Carrier Access Act (49

1383 character(s) remaining.

☐ I do not need a response

🔗 CFR 14-382 ACCA.pdf ✕   🔗 SW Mask Exemption Form HOU-DAL.pdf ✕
🔗 USC 49-41705 ACCA.pdf ✕

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

⌄ **Flight Information**

(JavaScript:Void(0);)

\* (REQUIRED) FLIGHT / EVENT DATE

Jun 22, 2021                                                                                      📅

\* (REQUIRED) AIRPORT

HOU

Houston (Hobby), TX - **HOU**

Wall v. TSA                                    171                                    Appendix

\* (REQUIRED) FLIGHT NUMBER

32

\* (REQUIRED) CONFIRMATION NUMBER

█████

\* (REQUIRED) ORIGIN CITY

HOU

**Hou**ston (Hobby), TX - **HOU**

\* (REQUIRED) DESTINATION CITY

DAL

**Dal**las (Love Field), TX - **DAL**

## Contact Information

\* (REQUIRED) FIRST NAME

Lucas

\* (REQUIRED) LAST NAME

Wall

\* (REQUIRED) EMAIL

lewnwdc77-airlines@yahoo.com

PHONE NUMBER

2023511735

RAPID REWARDS ACCOUNT NUMBER

❯ **Your Address** (Optional)

(JavaScript:Void(0);)

Go Back

Submit

Privacy - Terms

**Need help?**

**Subscribe**

**Contact Us**

**Wanna receive email from us?**

Customer Service      FAQ      **(https://www.southwest.com**

Attached is my Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines form for my June 2 flight from MCO to FLL.

Please note it is illegal under the Air Carrier Access Act regulations (14 CFR § 382) for you to require:

1. a disability accommodation request be submitted in advance;
2. a signed letter from my medical physician attesting to my disability that precludes me from wearing a face mask;
3. me to undergo a private medical screening with a third-party medical provider; and
4. require me to provide evidence of a qualifying COVID negative viral test taken within three calendar days preceding my scheduled date of travel.

Your face-mask-exemption policy constitutes illegal discrimination against passengers with disabilities pursuant to the Air Carrier Access Act (49 USC § 41705). The U.S. Code and Code of Federal Regulations provisions are attached for your reference. I refuse to abide by your requests for a physician letter, private medical screening, and negative COVID test since these are illegal. Also, I am fully vaccinated and don't pose a threat to anyone.

lucas.travel

## Frequent Flyer to Sue after TSA & Southwest Block Him from Boarding Flight without a Mask at MCO – Quest for 243

7-9 minutes

*Washington, D.C., Man to Challenge Federal Transportation*

*Mask Mandate as Illegal; Will Also Sue Southwest Airlines*



I'm stranded at MCO after TSA and Southwest Airlines refused to let me board my flight maskless

June 2, 2021

By LUCAS WALL

ORLANDO, Florida – A frequent traveler unable to wear a mask was stopped from boarding his Southwest Airlines flight this morning from Orlando to Fort Lauderdale

despite having submitted the required exemption form to the airline two days ago when he booked his ticket.

The Transportation Security Administration would not let Lucas Wall, 44, of Washington, D.C., through its checkpoint. Multiple TSA supervisors consulted with Southwest managers for about an hour before finally telling Wall they would not let him fly. The airline violated the Air Carrier Access Act, a federal law that requires airlines to accommodate passengers with disabilities, Wall contends.


TSA Denies Me Entry to Security Checkpoint at Orlando (MCO) for Refusing to Wear a Mask

Wall, who is fully vaccinated, was also denied transportation when he attempted to board a LYNX transit bus from the airport to downtown Orlando because he didn't have on a mask. The Central Florida Regional Transportation Authority operates the Orlando region's LYNX bus system.

Wall, who suffers from Generalized Anxiety Disorder that causes hyperventilation and panic attacks when he tries to cover his mouth and nose, has drafted a lawsuit against TSA, the Centers for Disease Control & Prevention, President Joseph Biden, LYNX, and others seeking to immediately enjoin enforcement of the Federal Transportation Mask Mandate as illegal and unconstitutional. Research indicates this will be only the second lawsuit in the country challenging TSA's enforcement of the FTMM, and the first in the nation to contest President Biden's executive order requiring masks in the transportation sector as well as CDC's order carrying out the president's wishes.

"I strongly oppose any mask mandate on numerous grounds including that it's a violation of my civil liberties to be ordered to block my nose and mouth, my only two sources of oxygen; face masks have proven to be totally ineffective in reducing COVID-19 infections and deaths (as shown in numerous scientific studies released lately); and researchers have identified dozens of health problems that occur among maskwearers," Wall said. "It's extremely frustrating – especially as a fully vaccinated person – to be denied the ability to travel because of these outrageous mask orders that go against the CDC's May 13 guidelines."

A mask mandate enforced by LYNX violates Florida Executive Order 21-102, signed May 3 by Gov. Ron Desantis, Wall argues. The order prohibits any governmental agency from requiring face coverings. Desantis wrote that "the policy of the State of Florida will favor a presumption of commercial operation and individual liberty with no toleration for unending and unjustified impediments to that liberty."



"A Face Mask Is Mandatory" sign next to the boarding door of a LYNX bus

Florida is one of 10 states that never had a statewide mask mandate. Wall contends the FTMM violates states' rights under the Constitution's 10th Amendment, among numerous other legal arguments.

Wall, a former transportation reporter and editor, has been taking care of his mother in The Villages, Florida, during the last several months of the pandemic. He has eight airline tickets booked for summer travel, which was supposed to start with Wednesday's flight to Fort Lauderdale.

"I can't tolerate wearing a mask," Wall said. "I have never covered my face. Blocking my nose and mouth causes me to instigate a feeling of a panic attack, including hyperventilating and other breathing trouble. The federal government has no legal authority to require I wear a mask while traveling."

He plans to file the suit by the end of this week in the U.S. District Court in Orlando seeking a judge's order to permanently ban enforcement of the requirement that airplane, bus, train, ferry, cruiseship, and other transportation passengers and employees obstruct their breathing. CDC on May 13 changed its COVID-19 guidance to advise fully vaccinated Americans not to wear masks. But it has refused to revoke the Federal Transportation Mask Mandate, which TSA currently plans to enforce at least through Sept. 13.

Wall plans next week to file a separate lawsuit against Southwest Airlines for violating the Air Carrier Access Act in refusing him a mask exemption even though he completed the required form.

Wall v. TSA                          176                          Appendix

Join my new Facebook group [Americans Against Mask Mandates](#).

Donate to my legal fund on GoFundMe at [Help End Federal Transportation Mask Mandate](#).

---

**Video Gallery**

Watch more of today's videos on my YouTube channel:

- [I Arrive at Orlando (MCO) 6-2-21 to Challenge the Federal Transportation Mask Mandate](#)

- [TSA Supervisors Speak with Me after I'm Denied Entry to Security Checkpoint at Orlando (MCO)](#)

- [Waiting at TSA Checkpoint at Orlando (MCO) for Supervisors to Deal with Me Refusing to Wear a Mask](#)

- [Southwest Airlines Employees Haggle with Me over My Request for Mask Exemption at Orlando (MCO)](#)

- [TSA Supervisors, Southwest Managers, & Airport Staff Huddle as I Refuse to Wear a Mask at MCO](#)

- [I Continue Waiting at Orlando (MCO) without a Mask as Numerous TSA & Southwest Agents Discuss Situation](#)

- [Southwest Airlines & TSA Deny Me Boarding at Orlando (MCO) for Not Wearing a Face Mask](#)

- [After Southwest & TSA Deny Me Boarding at Orlando (MCO) for Not Wearing Mask, I Wander the Terminal](#)

- [Orlando LYNX Bus Refuses to Let Me Board Route 11 Due to My Lack of Face Mask](#)

---

**Photo Gallery**

- 

Wall v. TSA                                    177                                    Appendix

**Southwest Airlines Response to your Inquiry (Case #24103856)**

From: Southwest Airlines (no-reply@southwest-communications.com)
To: lewnwdc77-airlines@yahoo.com
Date: Thursday, June 17, 2021

Dear Lucas,

Southwest Airlines has received your application for an exemption to the federal mask mandate. I regret your disappointment with the process and appreciate this opportunity to respond.

The Centers for Disease Control (CDC) has made clear that appropriately worn masks reduce the spread of COVID-19 — particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19. Per Department of Transportation (DOT) regulation (14 CFR §382.21), a Passenger with a communicable disease or infection, such as COVID-19, may pose a direct threat to the health and safety of others onboard an aircraft. Accordingly, the CDC Order obligates Southwest to use best efforts to ensure that Passengers wear masks when boarding, deplaning, and during travel. However, to ensure that only qualified persons are granted exemptions to travel without a mask, and further to their "best efforts" obligations, the CDC Order allows airlines to impose certain requirements or conditions on a person seeking an exemption from the mask requirement. The TSA Security Directive makes clear that "this is a narrow exception" and this exemption "is not meant to cover persons for whom mask-wearing may only be difficult."

To comply with its obligations under the CDC Order, Southwest has implemented approved policies regarding the wearing of masks by Passengers and the circumstances under which they may obtain exemptions from that requirement. The CDC Order authorizes air carriers to require that persons seeking an exemption from the requirement to wear a mask request that accommodation in advance. The CDC Order further authorizes and Southwest also requires that persons seeking an exemption submit a signed letter from the Passenger's physician attesting that the Passenger's disability precludes him/her from wearing a face mask. If an exemption request is approved, Southwest further requires that the Passenger provide evidence of a negative COVID-19 viral test taken no more than three days preceding the Passenger's flight (a viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2). Southwest is fully aware of and is in compliance with all laws and regulations concerning Passengers with disabilities and with federal mask requirements.

We were unable to review your exemption application prior to your June 2 flight as it was not submitted at least seven days before departure as required by Southwest's policies. We understand that you were unable to complete travel on June 2. Regarding your June 22 trip, you did not submit a physician's statement with your completed exemption application form and, accordingly, have not provided the information that is required to properly seek an exemption from the mask mandate. Accordingly, Southwest is unable to approve your request on that basis.

As a courtesy, and without waiving those requirements, we reviewed the incomplete information you did provide and, based on guidance from our third-party medical provider and the information presently

available to Southwest, we regret to inform you that Southwest has determined that you do not qualify for an exemption. We cannot transport you at this time if you are unable to wear a mask. We regret any disappointment this may cause.

If you decide to not complete your scheduled travel under confirmation number 4H4ZJB, we will process a refund of your nonrefundable tickets. Please ensure that you cancel your reservation at least 10 minutes prior to scheduled departure to avoid being impacted by our No-Show policy. You may follow-up on our website and reference Case #24103856 for consideration.

We hope that you will consider all perspectives as you evaluate Southwest Airlines and its best efforts to comply with its obligations under the law and to maximize safety for all of its Passengers. It is our pleasure to be of service to you and all of our Passengers in any way that we can.

Sincerely,
Laura Sorensen
Senior Specialist, Customer Advocacy
Southwest Airlines

The case number for your email is 24103856. This email is being sent from a "no-reply" email address. If needed, you may follow-up with us on our website. Additionally, by law, I'm required to inform you that should you wish to pursue this matter further, you may contact the U.S. Department of Transportation.

## Airconsumer Acknowledgement

From:  airconsumer@dot.gov

To:     lucas.wall@yahoo.com

Date:  Friday, October 15, 2021, 02:14 AM EDT

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

   PERSONAL INFO:
   Passenger - Lucas Wall Lucas.Wall@yahoo.com

   CONTACT INFO:
   435 10TH ST NE WASHINGTON,DC 20002

   Home Phone: 2023511735
   Daytime Phone: 2023511735

   COMPLAINT INFO:
   Airline Code: WN

   Flight Date: 06/02/2021
   Flight Itinerary: MCO-FLL Flight 2204

   Description of Problem/Inquiry/Comment:
   Southwest Airlines violated the ACAA and numerous other laws by refusing to grant me a mask exemption for my June 2, 2021, flight MCO-FLL, stranding me at the Orlando airport. I booked my ticket May 31 and requested an exemption. The airline fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support its false claim that "federal law" requires face coverings.  I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or

she is traveling on a flight." 14 CFR § 382.25.  I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a).  Southwest may not require a medical certificate from disabled passengers who ask for a mask exemption. "[Y]ou must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a).  Southwest may not require disabled passengers needing a mask exemption to undergo a medical screening since they may not ask for a medical certificate. 14 CFR § 382.23(d).  Southwest may not change a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. Southwest also may not change the seat assignment of a mask-exempt passenger. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability...." 14 CFR § 382.87(a).  Southwest may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test. No ACAA provision (nor any other law) permits airlines to require passengers submit a negative virus test. And mandating that only disabled flyers submit a COVID-19 test is illegal discrimination. 14 CFR § 382.11(a)(1) & 49 USC § 41705.  Southwest denied my mask-exemption request at the airport. Southwest must be fined for violating the ACAA. DOT must also enjoin Southwest from continuing to require numerous illegal steps to obtain a mask exemption.


   This is System generated message, and a response to this email will not be delivered.
10/15/2021 02:06:47


**Southwest**
(https://www.southwest.com
/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Complaint

Disability - Policy and Procedures

We're sorry if you had a disappointing experience as a Customer with a disability while traveling with us. Please share your experience below, and our Customer Relations Department will research and respond as soon as possible.

If you are not contacting us as or on behalf of a Customer with a disability, please select ""Airport Experience"" rather than ""Disability"" so we can ensure that your concerns reach the right personnel.

\* (REQUIRED) ADD A DESCRIPTION

> You violated the Air Carrier Access Act and numerous other laws by refusing to grant me a mask exemption for my June 2, 2021, flight MCO-FLL, stranding me at the Orlando airport. I booked my ticket May 31 and requested an exemption. Southwest fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support your false claim that "federal law" requires face coverings.
>
> I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. 14 CFR § 382.25.
>
> I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal in numerous ways including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a).

289 character(s) remaining.

📎 Lucas Documents 6-2.pdf ×

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

🔽 **Flight Information** (Optional)

(JavaScript:Void(0);)

Wall v. TSA                    182                    Appendix

FLIGHT / EVENT DATE

Jun 2, 2021   📅

AIRPORT

MCO

Orlando, FL - **MCO**

FLIGHT NUMBER

2204

CONFIRMATION NUMBER

ORIGIN CITY

MCO

Orlando, FL - MCO

## Contact Information

\* (REQUIRED) FIRST NAME
DESTINATION CITY

Lucas
FLL

Fort Lauderdale, FL - **FLL**
\* (REQUIRED) LAST NAME

Wall

\* (REQUIRED) EMAIL

lewnwdc77-airlines@yahoo.com

PHONE NUMBER

2023511735

RAPID REWARDS ACCOUNT NUMBER

🔽 **Your Address** (Optional)

**(JavaScript:Void(0);)**

COUNTRY

United States   🔽

ADDRESS TYPE

◯ Home   ◯ Business

STREET ADDRESS

STREET ADDRESS 2

Wall v. TSA         183         Appendix

AT2021110015 - (LUCAS WALL) MG2300

From: alex.taday@dot.gov (alex.taday@dot.gov)

To:     lucas.wall@yahoo.com

Cc:     alex.taday@dot.gov

Date:   Friday, November 5, 2021, 02:18 PM EDT

Mr. Wall:

Thank you for writing to us concerning your problem involving disability issues. We were sorry to hear of your dissatisfaction and will investigate your complaint.

We are sending the company a copy of your complaint and asking it to reply to you, with a copy to us. We will review the response and take further action, as appropriate. We will advise you of the disposition of your complaint when our investigation is concluded; however, you should be aware that due to the time necessary for the carrier to conduct its own review of your complaint and get back to you and us, coupled with our need to review your case and the hundreds of others that we receive each year, our response to you will likely take some time.

In addition to ensuring prompt corrective action when a complaint and carrier response indicate that the airline's policies and procedures are not in compliance with the Air Carrier Access Act (ACAA), the Department generally will pursue further enforcement action on the basis of a number of complaints from which it may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. You should be aware that the Department is statutorily limited in the remedies it may pursue for violations of the ACAA. In this regard, the Department may not award monetary damages or pecuniary relief to the injured party. The Department is limited to issuing cease and desist orders proscribing unlawful conduct by carriers in the future and assessing civil penalties payable to the government. The Department may only take such action through a settlement or after a formal hearing before an administrative law judge. Particularly egregious records of repeated violations may warrant the revocation of a carrier's economic authority to operate. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

We have also entered your complaint in our computerized industry monitoring system, and the company will be charged with the complaint in our monthly complaint report. This report is made available to the aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall and disability-related complaint records of individual airlines. We also use this complaint data to track trends or spot areas of concern which we feel may warrant further action in the future. This system also serves as a basis for rulemaking, legislation and research.

A summary of the Department's ACAA rules and general travel tips for air travelers with disabilities are available at www.transportation.gov/individuals/aviation-consumer-protection/traveling-disability. Other useful consumer information for air travelers, including the above referenced complaint report and our pamphlet "Fly-Rights, a Consumer's Guide to Air Travel", can be found on our website at http://www.transportation.gov/airconsumer.

I hope this information is useful. Thank you for taking the time to contact us.

Alexander A. Taday III
Director of Civil Rights Advocacy
Aviation Consumer Protection Division
US Department of Transportation

**Case Number: AT2021110015**
**Consumer Information**

| Inquirer Type | Name | Address | E-mail Address | Office Phone | Home Phone |
|---|---|---|---|---|---|
| AA | LUCAS WALL | 435 10TH ST NE WASHINGTON DC 20002 | LUCAS.WALL@YAHOO.COM | 2023511735 | 2023511735 |

**Complaints Information**

| Complaint Code | Carrier Name | Flight Date | Flight Itinerary |
|---|---|---|---|
| MG2300 | SOUTHWEST AIRLINES | 06/02/2021 | MCO-FLL FLIGHT 2204 |

**Description of Problem/Inquiry**

Wall v. TSA                          184                          Appendix

Southwest Airlines violated the ACAA and numerous other laws by refusing to grant me a mask exemption for my June 2, 2021, flight MCO-FLL, stranding me at the Orlando airport. I booked my ticket May 31 and requested an exemption. The airline fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support its false claim that "federal law" requires face coverings. I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25. I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a). Southwest may not require a medical certificate from disabled passengers who ask for a mask exemption. "[Y]ou must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). Southwest may not require disabled passengers needing a mask exemption to undergo a medical screening since they may not ask for a medical certificate. 14 CFR § 382.23(d). Southwest may not change a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. Southwest also may not change the seat assignment of a mask-exempt passenger. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability...." 14 CFR § 382.87(a). Southwest may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test. No ACAA provision (nor any other law) permits airlines to require passengers submit a negative virus test. And mandating that only disabled flyers submit a COVID-19 test is illegal discrimination. 14 CFR § 382.11(a)(1) & 49 USC § 41705. Southwest denied my mask-exemption request at the airport. Southwest must be fined for violating the ACAA. DOT must also enjoin Southwest from continuing to require numerous illegal steps to obtain a mask exemption.



AT2021110015_1_ES.pdf
4.4MB

Wall v. TSA                              185                              Appendix

 
🔒 Log in | Create account    Español 

**Southwest**

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

# Thanks for flying with us!

✓ Price    ✓ Payment    ✓ Confirmation

⊘ **Your flight is booked!**

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.
**lewnwdc77-airlines@yahoo.com**

## Trip summary

🖨 Print



✈ **Flight**

**CONFIRMATION #**

▮▮▮▮▮▮▮

**JUN 22**
**HOU ✈ DAL**

**FLIGHT TOTAL**
**$141.98**



🚗 **Add a car**        Add a hotel

The perfect stay is moments away

Book now. Pay later!
**From $103.54*/day in Dallas (Love Field)**

*Taxes and fees excl. Terms apply.

**Book now**

DESTINATION/HOTEL NAME:
Dallas

CHECK-IN        CHECK-OUT
06/22/2021 📅    06/24/2021 📅

Search ↗


LIMITED-TIME OFFER
# Earn 65,000 points
to get your "go" on.

$69 annual fee. Offer ends 7/14/21.

**Learn more ❯**

- 3,000 anniversary points every year
- 2X points on Southwest® purchases
- 1X points on all other purchases
- Points count toward Companion Pass®

# 6/22 - Dallas (Love Field)

 **Who's coming with me?**
Let your friends and family know you're traveling!

Share on Facebook! ↗

**JUN 22**
## Houston (Hobby), TX *to* Dallas (Love Field), TX

**Confirmation #** ▮▮▮▮▮

| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| | | | |

Wall v. TSA                186                Appendix

https://www.southwest.com/air/booking/confir...        1        5/31/2021, 12:03 PM



| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| **Lucasedward Wall** | + 1,187 PTS | — | Anytime |
| Rapid Rewards® number ⟩ | | | |
| Add Known Traveler # / Redress # ⟩ | | | |
| Special Assistance ⟩ | | | |

**Transparency®: Defined**
Low fares. Nothing to hide. ↗

**Change fees don't fly with us**
Flexibility for your travel plans.

Add EarlyBird Check-In®

## Departing    6/22/21 Tuesday

Anytime    $118.68
*(Passenger x1)*

**DEPARTS** 1:30 PM    **HOU**
Houston (Hobby), TX - HOU

**FLIGHT**
32 📶 + ▣

**SCHEDULED AIRCRAFT**
Boeing 737-700
*Subject to change*

Nonstop

**ARRIVES** 2:35 PM    **DAL**
Dallas (Love Field), TX - DAL

**TRAVEL TIME**
1hr 5min

**SUBTOTAL**
$118.68

**Taxes & fees**    $23.30

**Flight total**    $141.98

**Icon legend**

📶 WiFi available    ▣ Live TV available

**Helpful Information:**
- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account.
- Per CDC Order, face coverings required for everyone 2 and over (through September 13, 2021).

**Book your hotel with us and save up to 15% on your stay.**



The perfect stay is moments away

DESTINATION/HOTEL NAME:

Dallas

CHECK-IN
06/22/2021

CHECK-OUT
06/24/2021

ROOMS    ADULTS    CHILDREN
1    1    0

Search ↗

# Rapid Rewards®

Seek adventure, get rewarded.

✔ Unlimited reward seats
✔ No blackout dates
✔ Your points don't expire

Enroll now, it's free!

Points don't expire as long as you have flight-earning or partner-earning activity every 24 months. All Rapid Rewards rules and regulations apply.

# Payment summary

| PAYMENT INFORMATION | | | AMOUNT PAID |
|---|---|---|---|
| MasterCard 7555<br>XXXXXXXXXXXX7555<br>Expiration: 4/24 | CARD HOLDER<br>Lucas Wall | BILLING ADDRESS<br>435 10th St. NE<br>Washington, DC US 20002 | **$141.98** |

## Total charged



### You're all set for your upcoming trip.

Get ready to enjoy two bags for the price of none*, no fees to change your flight**, and some Southwest® love.

*First and second checked bags. Weight and size limits apply. **Fare difference may apply.

| | |
|---|---|
| SUBTOTAL | **$118.68** |
| TAXES & FEES | **$23.30** |
| **TOTAL DOLLARS** | **$141.98** |

Show price breakdown

# Save up to 30% off

Earn up to 2400 Rapid Rewards® points.

Book now  ›

**Before you travel, don't forget:**

✔

Wear personal face coverings

Download mobile boarding passes

Agree to health declaration

👤 Log in | Create account    Español 🌐



FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

✅ **Your cancellation was successful**
This flight won't be the same without you!

# Cancellation Confirmation

**Confirmation #** **4H4ZJB**

⊗ **# 32**
**HOU** *to* **DAL**

| DEPART | HOU | | DAL | Duration | |
|--------|-----|-|-----|----------|-|
| **6/22** | **1:30** PM | → | **2:35** PM | **1h 5m** | |
| Tuesday | | | | | Nonstop |

| PASSENGERS | EXTRAS | FARE |
|------------|--------|------|
| **Lucasedward Wall** | — | Anytime |

# Refund information

| INFORMATION | AMOUNT |
|-------------|--------|
| 🔵 **Refund requested** | **$141.98**<br>Refunded to the original form of payment |

[ **View travel funds** ]    [ **Book another flight** ]

**Icon legend**

🔀 Change planes

# Airconsumer Acknowledgement

From: airconsumer@dot.gov (airconsumer@dot.gov)

To:    lucas.wall@yahoo.com

Date:  Friday, October 15, 2021, 02:20 AM EDT

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

   PERSONAL INFO:
   Passenger - Lucas Wall Lucas.Wall@yahoo.com

   CONTACT INFO:
   435 10TH ST NE WASHINGTON,DC 20002

   Home Phone: 2023511735
   Daytime Phone: 2023511735

   COMPLAINT INFO:
   Airline Code: WN

   Flight Date: 06/22/2021
   Flight Itinerary: HOU-DAL  Flight 32

   Description of Problem/Inquiry/Comment:
   Southwest Airlines violated the ACAA and numerous other laws by refusing to grant me a mask exemption for my June 22, 2021, flight HOU-DAL, forcing me to have to cancel my flight. I booked my ticket May 31 and requested an exemption. The airline fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support its false claim that "federal law" requires face coverings.  I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or

she is traveling on a flight." 14 CFR § 382.25.  I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a).  Southwest may not require a medical certificate from disabled passengers who ask for a mask exemption. "[Y]ou must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a).  Southwest may not require disabled passengers needing a mask exemption to undergo a medical screening since they may not ask for a medical certificate. 14 CFR § 382.23(d).  Southwest may not change a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. Southwest also may not change the seat assignment of a mask-exempt passenger. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability...." 14 CFR § 382.87(a).  Southwest may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test. No ACAA provision (nor any other law) permits airlines to require passengers submit a negative virus test. And mandating that only disabled flyers submit a COVID-19 test is illegal discrimination. 14 CFR § 382.11(a)(1) & 49 USC § 41705.  Southwest denied my mask-exemption request by e-mail. Southwest must be fined for violating the ACAA. DOT must also enjoin Southwest from continuing to require numerous illegal steps to obtain a mask exemption.


   This is System generated message, and a response to this email will not be delivered.
10/15/2021 02:13:27



**FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍**

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Complaint

Disability - Policy and Procedures

We're sorry if you had a disappointing experience as a Customer with a disability while traveling with us. Please share your experience below, and our Customer Relations Department will research and respond as soon as possible.

If you are not contacting us as or on behalf of a Customer with a disability, please select ""Airport Experience"" rather than ""Disability"" so we can ensure that your concerns reach the right personnel.

\* (REQUIRED) ADD A DESCRIPTION

You violated the Air Carrier Access Act and numerous other laws by refusing to grant me a mask exemption for my June 22, 2021, flight HOU-DAL, forcing me to have to cancel the flight. I booked my ticket May 31 and requested an exemption. Southwest fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support your false claim that "federal law" requires face coverings.

I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. 14 CFR § 382.25.

I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal in numerous ways including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a).

284 character(s) remaining.

📎 Lucas Documents 6-22.pdf ×

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

🔽 **Flight Information** (Optional)

(JavaScript:Void(0);)

Wall v. TSA                           192                           Appendix

FLIGHT / EVENT DATE

Jun 22, 2021 &#128197;

AIRPORT

HOU

**Hou**ston (Hobby), TX - **HOU**

FLIGHT NUMBER

32

CONFIRMATION NUMBER

ORIGIN CITY

HOU

## Contact Information

Houston (Hobby), TX - **HOU**

* (REQUIRED) FIRST NAME
DESTINATION CITY

Lucas
DAL

* (REQUIRED) LAST NAME
Dallas (Love Field), TX - **DAL**

Wall

* (REQUIRED) EMAIL

lewnwdc77-airlines@yahoo.com

PHONE NUMBER

2023511735

RAPID REWARDS ACCOUNT NUMBER

&#10095; **Your Address** (Optional)

(JavaScript:Void(0);)

| Go Back | | Submit |

Privacy - Terms

**Need help?**     **Subscribe**

**Contact Us**     **Wanna receive email from**

Wall v. TSA                     193                     Appendix

AT2021110018 - (LUCAS WALL) MG2300

From:  alex.taday@dot.gov (alex.taday@dot.gov)

To:      lucas.wall@yahoo.com

Cc:      alex.taday@dot.gov

Date:   Monday, November 8, 2021, 11:29 AM EST

Mr. Wall:

Thank you for writing to us concerning your problem involving disability issues. We were sorry to hear of your dissatisfaction and will investigate your complaint.

We are sending the company a copy of your complaint and asking it to reply to you, with a copy to us. We will review the response and take further action, as appropriate. We will advise you of the disposition of your complaint when our investigation is concluded; however, you should be aware that due to the time necessary for the carrier to conduct its own review of your complaint and get back to you and us, coupled with our need to review your case and the hundreds of others that we receive each year, our response to you will likely take some time.

In addition to ensuring prompt corrective action when a complaint and carrier response indicate that the airline's policies and procedures are not in compliance with the Air Carrier Access Act (ACAA), the Department generally will pursue further enforcement action on the basis of a number of complaints from which it may infer a pattern or practice of discrimination. However, where one or a few complaints describe particularly egregious conduct on the part of a carrier and those complaints are supported by adequate evidence, we will pursue enforcement action as our resources permit. You should be aware that the Department is statutorily limited in the remedies it may pursue for violations of the ACAA. In this regard, the Department may not award monetary damages or pecuniary relief to the injured party. The Department is limited to issuing cease and desist orders proscribing unlawful conduct by carriers in the future and assessing civil penalties payable to the government. The Department may only take such action through a settlement or after a formal hearing before an administrative law judge. Particularly egregious records of repeated violations may warrant the revocation of a carrier's economic authority to operate. To obtain a personal monetary award of damages, a complainant would have to file a private legal action that may be based on private contract rights or on civil rights statutes that provide for a private right of action.

We have also entered your complaint in our computerized industry monitoring system, and the company will be charged with the complaint in our monthly complaint report. This report is made available to the aviation industry, the news media and the general public so that both consumers and air travel companies can compare the overall and disability-related complaint records of individual airlines. We also use this complaint data to track trends or spot areas of concern which we feel may warrant further action in the future. This system also serves as a basis for rulemaking, legislation and research.

A summary of the Department's ACAA rules and general travel tips for air travelers with disabilities are available at www.transportation.gov/individuals/aviation-consumer-protection/traveling-disability. Other useful consumer information for air travelers, including the above referenced complaint report and our pamphlet "Fly-Rights, a Consumer's Guide to Air Travel", can be found on our website at http://www.transportation.gov/airconsumer.

I hope this information is useful. Thank you for taking the time to contact us.

Alexander A. Taday III
Director of Civil Rights Advocacy
Aviation Consumer Protection Division
US Department of Transportation

**Case Number: AT2021110018**
**Consumer Information**

| Inquirer Type | Name | Address | E-mail Address | Office Phone | Home Phone |
|---|---|---|---|---|---|
| AA | LUCAS WALL | 435 10TH ST NE WASHINGTON DC 20002 | LUCAS.WALL@YAHOO.COM | 2023511735 | 2023511735 |

**Complaints Information**

| Complaint Code | Carrier Name | Flight Date | Flight Itinerary |
|---|---|---|---|
| MG2300 | SOUTHWEST AIRLINES | 06/22/2021 | HOU-DAL FLIGHT 32 |

**Description of Problem/Inquiry**

Southwest Airlines violated the ACAA and numerous other laws by refusing to grant me a mask exemption for my June 22, 2021, flight HOU-DAL, forcing me to have to cancel my flight. I booked my ticket May 31 and requested an exemption. The airline fraudulently informed me in an e-mail that "Federal law requires each person to wear a mask at all times in the airport and throughout the flight, including during boarding and deplaning." However, Congress has never passed such a law, nor has DOT or any other agency promulgated a regulation. Southwest cites no provision of the U.S. Code or the Code of Federal Regulations to support its false claim that "federal law" requires face coverings. I can't wear a mask because I suffer from Generalized Anxiety Disorder. Southwest required me to submit an exemption request in advance, which is illegal. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25. I submitted the form May 31 despite it being unlawful to request advance notice. I wrote that Southwest's mask policy is illegal including that airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask mandate. 49 USC § 41705(a). Southwest may not require a medical certificate from disabled passengers who ask for a mask exemption. "[Y]ou must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). Southwest may not require disabled passengers needing a mask exemption to undergo a medical screening since they may not ask for a medical certificate. 14 CFR § 382.23(d). Southwest may not change a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. Southwest also may not change the seat assignment of a mask-exempt passenger. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability...." 14 CFR § 382.87(a). Southwest may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test. No ACAA provision (nor any other law) permits airlines to require passengers submit a negative virus test. And mandating that only disabled flyers submit a COVID-19 test is illegal discrimination. 14 CFR § 382.11(a)(1) & 49 USC § 41705. Southwest denied my mask-exemption request by e-mail. Southwest must be fined for violating the ACAA. DOT must also enjoin Southwest from continuing to require numerous illegal steps to obtain a mask exemption.


AT2021110018_1_ES.pdf
4.4MB


**Southwest** (https://www.southwest.com/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS     SPECIAL OFFERS     RAPID REWARDS®     🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Comment/Question

Disability - Future Travel Assistance

Do you have a disability-related question about your upcoming travel plans? Please share the details below, and we'll get back with you as soon as possible.

If this is regarding a past travel experience, please select one of the other applicable "Disability" sub categories so that your question or comment is directed to the appropriate personnel.

**\* (REQUIRED) ADD A DESCRIPTION**

> I require a mask exemption

2474 character(s) remaining.

☐ I do not need a response

🔗 Southwest Mask Request Lucas.pdf ✕

**ADD ATTACHMENT (OPTIONAL)**

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

🔽 **Flight Information**

**(JavaScript:Void(0);)**

**\* (REQUIRED) FLIGHT / EVENT DATE**

| Oct 18, 2021 | 📅 |
|---|---|

**\* (REQUIRED) AIRPORT**

| MCO |
|---|

Orlando, FL - **MCO**

* (REQUIRED) FLIGHT NUMBER

1910

* (REQUIRED) CONFIRMATION NUMBER

4DPPAQ

* (REQUIRED) ORIGIN CITY

MCO

Orlando, FL - **MCO**

* (REQUIRED) DESTINATION CITY

DCA

Washington (Reagan National), DC - **DCA**

## Contact Information

* (REQUIRED) FIRST NAME

Lucas

* (REQUIRED) LAST NAME

Wall

* (REQUIRED) EMAIL

lewnwdc77-airlines@yahoo.com

PHONE NUMBER

2023511735

RAPID REWARDS ACCOUNT NUMBER

❯ **Your Address** (Optional)

**(JavaScript:Void(0);)**

Go Back

Submit

Privacy - Terms

Wall v. TSA                           197                           Appendix

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

XX • I am completing this form for myself.

   • I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name: _____Lucas_____

Passenger Middle Initial: _____E._____

Passenger Last Name: _____Wall_____

Contact Email address: _____lewnwdc77-airlines@yahoo.com_____

Contact Phone number: _____202-351-1735_____

Reason for Mask Exception Request:

__ I am unable to wear a mask due to my medical conditions._____

_____

_____

Is flight already booked?  Yes__XX__ No____

If flight is already booked, please include the following information:

Date(s) of Travel: _____10-18-21_____

City Pair: _____MCO-DCA_____

Confirmation Number (if flight already booked): ___4DPPAQ_____

Does Passenger possess a WN Employee ID? ___No_____

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____N/A_____


By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, and sharing of information.

___/s/ Lucas Wall_____
Passenger Signature or Signature of Passenger Parent or Guardian

_____Lucas Wall_____
Printed Name of Passenger or Parent or Guardian


Date: ___10-16-21_____



**FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OF**

# Customers with Disabilities

Notice of Disability

Assistance in the Airport        \*1

Security Screening

Wheelchairs & Other Devices        \*2

Allergies        \*3

Cognitive Disabilities

Deaf or Hard of Hearing        \*4

Blind Or Low Vision

Medication        \*5

Trained Service Animals

\*6    \*7

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

Mask Exemptions

Your Rights

## Exemption to Federal Mask Requirement on Southwest Airlines

Federal law requires each person, 2 years of age and older, to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

**Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.**

Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement.

**Please comply with the following pre-travel steps:**

At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit the following via **Southwest.com>Contact Us>Send a Message.>Email Us: Comment/Question>Disability>Future Travel Assistance:**

1. A fully completed copy of this form executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child; and

2. A signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability.

Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).

If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third party medical provider's affirmation for travel, if required, Southwest will contact you at the phone number or email address provided below to discuss any need to change your travel dates and/or flights and remind you of the need to obtain a qualifying COVID negative viral test.

No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as:

A physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

**Note:** Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

\*\*\* = These 7 items are illegal and/or fraudulent misrepresentation of the law -- see attachment

Wall v. TSA                    200                    Appendix

**Lucas Wall**
**Mask Exemption Request to Southwest Airlines**
**Notes on Southwest's Numerous Illegal Policies**
**MCO-DCA Oct. 18, 2021**

1.  It is a fraudulent misrepresentation to state that "federal law" requires airline passengers wear masks. Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. If you believe I am in error, please cite the statue number in the U.S. Code you refer to or the Code of Federal Regulations number.

    You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the Food, Drug, & Cosmetic Act and your other legal obligations is a fraudulent misrepresentation.

2.  Airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

3.  An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4.  An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the coronavirus.

    Demanding a medical certificate also violates intentional law. The United States has ratified the Convention on International Civil Aviation, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5.  An airline may not require disabled passengers needing a mask exemption to undergo a medical screening with your third-party vendor. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, you may also not require a third-party medical consultation. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been

a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

6.  An airline may not change a disabled passenger's travel dates and/or flights. Federal law prohibits banning mask-exempt passengers from flying if a plane is more than a certain percentage full. Your policy that you may change the travel dates of a passenger with a disability if a flight is more than 75% booked is illegal discrimination as this policy does not apply to any nondisabled travelers. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

    You also may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

7.  An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

8.  An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

9.  Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

10. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1). Your mask policy doesn't provide for making an "individualized assessment" of whether

someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

11. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

12. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

13. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

14. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

15. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of an Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III).
   You provide FDA unauthorized or Emergency Use Authorization face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.This constitutes reckless endangerment.

16. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

17. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc. You clearly mislead customers that masks may be forced on passengers without their consent in violation of the Food, Drug, & Cosmetic Act.

DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

18. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

19. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

20. Violation of International Covenant on Civil & Political Rights: You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy ... 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.

**allegiant**

Log in    Trip Total: $114.00

BWI to SRO

# Who Will Be Traveling?

Do you have an Allways Rewards™ profile? **Log in**

Please enter all names exactly as they appear on the traveler's government-issued photo id .

**Traveler 1:** Adult    **Clear Form**

\* Required

First Name \*
Lucas

Middle Name
Middle Name

Last Name \*
Wall

Suffix
Suffix

Gender \*
● Male  ○ Female

Date Of Birth \*
████████████████

Phone Number
US (+1)          202-351-1735

Email Address
████████████

Known Traveler # / Redress #    ADD ○

**Special Assistance**    CANCEL

Allegiant is happy to assist passengers with disabilities.  An Allegiant representative must be notified at the airport to receive disability accommodations.  Please visit our **FAQs** page for more information.

☐ Wheelchair Assistance                      ☐ Deaf/Hard of Hearing (Assistance is required)
☐ Traveling with personal wheelchair/scooter  ☐ Blind/Low Vision (Assistance is required)
☐ Traveling with Portable Oxygen Concentrator (POC)  ☐ Intellectual or Developmental Disability
☐ Service Animal (i.e. trained guide dog)

Other Services Information

Mask exemption

Please note that, for safety reasons, all passengers must be able to sit upright unassisted during taxi, take off and landing, or provide an FAA approved Orthotic Positioning device which enables upright positioning without attachment to the seat. For more information, **visit our FAQs** .





 **Traveler 2: Adult** Clear Form

1Flights
2Bundles
3Travelers
4Seats
5Bags
6Hotels
7Cars
8Payment

First Name * : Leonardo
Middle Name : Middle Name
Last Name * : McDonnell
Suffix : Suffix

Gender * : (●) Male ( ) Female

Date Of Birth * : [redacted] [redacted] [redacted]

Phone Number : US (+1) [redacted]

Email Address : [redacted]m

**Known Traveler # / Redress #** ADD

**Special Assistance** CANCEL

Allegiant is happy to assist passengers with disabilities. An Allegiant representative must be notified at the airport to receive disability accommodations. Please visit our FAQs page for more information.

- ☐ Wheelchair Assistance
- ☐ Traveling with personal wheelchair/scooter
- ☐ Traveling with Portable Oxygen Concentrator (POC)
- ☐ Service Animal (i.e. trained guide dog)
- ☐ Deaf/Hard of Hearing (Assistance is required)
- ☐ Blind/Low Vision (Assistance is required)
- ☐ Intellectual or Developmental Disability

Other Services Information

Mask exemption

Please note that, for safety reasons, all passengers must be able to sit upright unassisted during taxi, take off and landing, or provide an FAA approved Orthotic Positioning device which enables upright positioning without attachment to the seat. For more information, visit our FAQs .

ⓘ Flight alerts will be sent via SMS text messages for delay and cancellation information on select U.S. and Canadian wireless carriers only. Standard text messaging rates may apply. By providing optional mobile or email contact information, passenger(s) agree to receive service related notifications and promotional emails, from which they may immediately unsubscribe.

Log in

## Here's your itinerary.

Thank you for booking your travel with us! A copy of this itinerary confirmation has been sent to

@yahoo.com
.

Below, you'll find all the information you need to know about your travel itinerary. Although you can always access your trip details by visiting **Manage Travel**, we recommend printing a copy for your reference now.

**Have a great trip!**

---

## CUSTOMER INFORMATION

---

## Confirmation: **BGPVGX**

| MANAGE TRIP | Lucas Wall | Tue Oct 12, 2021 |
|---|---|---|

**Save time at check-in!**





Check in starts 24 hours before your flight! Download the FREE Allegiant Mobile App here, to get a digital boarding pass!

## FLIGHT INFORMATION

✈ **Departing: Fri, Oct 29,** 5:54 PM

Baltimore/Washington International Thurgood Marshall Airport (BWI) > Sarasota Bradenton International Airport (SRQ)

| Leonardo McDonnell | Special Services |
| --- | --- |
| | Other service information |

| Lucas Wall | Special Services |
| --- | --- |
| | Other service information |

## RECEIPT & PAYMENT

| Flight | $45.76 |
| --- | --- |
| Airline Fees | $36.00 ⌄ |
| Government Fees | $32.24 ⌄ |

## TOTAL DUE (USD)                                  $114.00

Paid by Lucas Wall with Mastercard You will see these charges in
ending in ****7555.                            your statement:

Charge 1: $114.00

## CONDITIONS

| THINGS TO KNOW BEFORE YOU GO | ⌄ |
|---|---|
| SEAT ASSIGNMENTS | ⌄ |
| BAGS, AIRPORT BAG FEES, AND MORE | ⌄ |
| IMPORTANT NOTICES | ⌄ |

 **Great deals in Sarasota!**
ADD A HOTEL

 Get around in style with a great deal from an Allegiant partner such as Alamo.
ADD A CAR

**Restricted Articles**

**Military Discount**

# Face Covering Policy

Expand All | Collapse All

## Face Covering Policy

### Am I required to wear a face covering?

*1     Yes, ==federal law== requires every person to wear a face covering that covers the nose and mouth at all times while traveling. Face coverings must be made of a solid material, fully cover the mouth and nose, fit snugly against the face, and be secured under the chin. Prohibited coverings include those with exhalation valves, holes (such as lace or mesh), neck gaiters, and bandanas. Face shields may be worn in addition to a face covering, but not as an alternative.

Learn more about the CDC's face covering recommendations here.

### Are Allegiant employees required to wear face coverings?

*1     Yes, ==federal law== requires every person to wear a face covering at all times. However, the law states face coverings can be briefly removed when communicating with a person who is deaf or hard of hearing or when the ability to see the mouth is essential for communication.

### Can I remove my face covering to eat, drink, or take oral medication?

Yes, you may briefly remove your face covering to eat, drink, or take oral medication, but prolonged removal is not permitted. Face coverings must be worn between bites and sips.

### Can I wear a bandana?

No, face coverings must be secured under the chin.

### Can I wear a face mask with a valve?

No, face coverings with exhalation valves are prohibited.

### Can I wear a face shield instead of a face mask?

No, face shields may be worn in addition to a face covering, but not as an alternative.

### Can I wear a neck gaiter?

No, neck gaiters are prohibited.

### Do children have to wear a face covering?

Children under the age of 2 are not required to wear a face covering.

### Do I have to wear a face covering at the airport?

* 1  Yes, federal law requires every person to wear a face covering at all times in airports and on commercial aircraft.

### Does Allegiant provide face coverings?

* 2  Yes, you can use your own face covering, but we also provide complimentary

==health and safety kits upon request that contain a single-use face mask== and two sanitizing wipes. Please be advised that ==federal regulations== require face masks to enter the airport.                    * 1

## What if I choose not to wear a face covering?

* 1 Refusal to wear a face covering is a violation of ==federal law== and can result in denial of boarding, removal from the aircraft and additional penalties.

## What should I do if I have a disability that prevents me from removing a face covering without assistance?

Those with limited mobility who are unable to remove a face covering without assistance are exempt from the requirement. To request face mask exemptions, please email our Disabilities Team at ACAA@allegiantair.com ==at least 10 days prior to the departure== of the first flight on your itinerary. Please
* 3
note, if your exemption is approved, ==a negative COVID test will be required within 3 days of each flight segment.== Details for submission of negative tests
* 4
will be provided upon exemption approval.

## What should I do if I have a medical condition that prevents me from wearing a face covering?

To request face mask exemptions, please email our Disabilities Team at
* 3 ACAA@allegiantair.com ==at least 10 days prior to the departure== of the first flight on your itinerary. Please note, if your exemption is approved, ==a negative COVID test will be required within 3 days of each flight segment.== Details for
* 4
submission of negative tests will be provided upon exemption approval.

**Lucas Wall & Leo McDonnell**
**Mask Exemption Demand to Allegiant Air**
**Notes on Allegiant's Numerous Illegal Policies**
**BWI-SRQ Oct. 29, 2021**

1. You falsely represent that "federal law requires every person to wear a face covering" and that "federal regulations require face masks to enter the airport." But Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. This is a fraudulent misrepresentation of the law. If you believe I am in error, please cite the statue number in the U.S. Code you refer to and/or the Code of Federal Regulations number.

   You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the Food, Drug, & Cosmetic Act and your other legal obligations is also a fraudulent misrepresentation.

2. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

   You provide FDA unauthorized or EUA face masks to passengers without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3. This constitutes reckless endangerment and fraudulent misrepresentation.

   Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

3. An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4. An airline may not require disabled passengers who need a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

   Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

5. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

6. Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

7. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

    Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage *has* an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

8. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

9. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

10. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

11. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

You clearly mislead customers that masks may be forced on passengers without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

12. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

13. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

14. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.
   "[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law… 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.

## Mask-Exemption Demand BGPVGX

From:  Lucas Wall (lucas.wall@yahoo.com)

To:  ACAA@allegiantair.com

Cc:  leo████████████

Date:  Saturday, October 16, 2021, 12:47 PM EDT

Dear Allegiant Air:

We demanded mask exemptions when we booked our tickets Oct. 12, but you have not responded.

We both have medical conditions that make it impossible for us to safely wear a face mask. Please see attached documents.

*Lucas Wall & Leonardo McDonnell

 Lucas & Leo Allegiant Docs.pdf
2.7MB

## Automatic reply: [EXTERNAL] Mask-Exemption Demand BGPVGX

From:  ACAA (acaa@allegiantair.com)

To:     lucas.wall@yahoo.com

Date:  Saturday, October 16, 2021, 12:48 PM EDT

Thank you for contacting Allegiant. This is an auto-reply from the Air Carrier Access Act (ACAA) mailbox and we handle all disability related concerns, comments, questions and complaints, pre and post travel. We also review and approve all service animal requests with the fully completed U.S. Department of Transportation Service Animal Air Transportation Form. We have received your correspondence and will get back to you soon as soon as possible.

To help us expedite your request, please make sure to include your confirmation number and outbound travel date in the email's subject line when corresponding with us.

**Please note, Allegiant no longer accepts new bookings or listings for Emotional Support Animals (ESA) effective January 11, 2021.** Please refer to our website under Travel Info/FAQs for Traveling with Pets as your ESA will only be permitted as a pet in cabin following all normal pet rules and fees. You can add your pet online through the Manage Travel section of our website.

In order to ensure every service animal request is reviewed prior to travel the USDOT form is reviewed and approved **in order of departure date**. You are welcome to send in other documentation to assist with your request, though it is not required. We may request additional information on the animal, via email. Please reply as soon as you are able in order to ensure a timely decision. *And remember to include the confirmation number and departure flight date in the subject line when replying.*

All other inquiries are handled in the order they are received. Please be patient as our response may take up to thirty (30) days for disability related post-travel emails and 5 days for disability related pre-travel emails. **Please allow additional time for pre-travel concerns during holidays and weekends.** If your email is not specifically regarding a disability issue it will be forwarded to

the Allegiant Customer Relations department for review and response.

We have received your inquiry so please do not submit a duplicate request as it may cause delays in responding. If you have new information to provide that wasn't included in your initial inquiry you may send that along and we will combine it with your initial submission.

For non-service animal requests, if your flight is within 48 hours, please call us at 702-505-8888 for immediate assistance. Please note, wait times may be lengthy during peak times (5:00am – 8:00pm PST). The Allegiant call center is open 7 days a week, 24 hours a day.

Thank you for choosing Allegiant. We will be in touch soon.

Sincerely,

The Allegiant ACAA Compliance Team

https://www.allegiantair.com/passengers-special-needs

## Re: Mask-Exemption Demand BGPVGX

From:  Lucas Wall (lucas.wall@yahoo.com)

To:      acaa@allegiantair.com

Cc:      leo█████████████

Date:  Friday, October 22, 2021, 11:41 PM EDT

We wrote you six days ago regarding our mask exemptions and have not received a response.

*Lucas Wall & Leonardo McDonnell

>>>>>>>>>>>.

On Saturday, October 16, 2021, 12:47:16 PM EDT, Lucas Wall <lucas.wall@yahoo.com> wrote:

Dear Allegiant Air:

We demanded mask exemptions when we booked our tickets Oct. 12, but you have not responded.

We both have medical conditions that make it impossible for us to safely wear a face mask. Please see attached documents.

*Lucas Wall & Leonardo McDonnell

Re: Mask-Exemption Demand BGPVGX

From:   Lucas Wall (lucas.wall@yahoo.com)

To:     acaa@allegiantair.com

Cc:     leo_█████████████

Date:   Monday, October 25, 2021, 12:04 AM EDT

We wrote you nine days ago regarding our mask exemptions and have not received a response.

*Lucas Wall & Leonardo McDonnell

>>>>>>>>>>>.

On Friday, October 22, 2021, 11:41:03 PM EDT, Lucas Wall <lucas.wall@yahoo.com> wrote:

We wrote you six days ago regarding our mask exemptions and have not received a response.

*Lucas Wall & Leonardo McDonnell

>>>>>>>>>>>.

On Saturday, October 16, 2021, 12:47:16 PM EDT, Lucas Wall <lucas.wall@yahoo.com> wrote:

Dear Allegiant Air:

We demanded mask exemptions when we booked our tickets Oct. 12, but you have not responded.

We both have medical conditions that make it impossible for us to safely wear a face mask. Please see attached documents.

*Lucas Wall & Leonardo McDonnell

## Wall v. Southwest Airlines, et al.

From:  Brian T. Maye (bmaye@amm-law.com)

To:      lucas.wall@yahoo.com; leo█████████████

Date:  Monday, October 25, 2021, 11:48 AM EDT

Mr. Wall and Mr. McDonnell,

As you know, we represent Allegiant Air in the above-referenced lawsuit, which is pending in the U.S. District Court for the Middle District of Florida.  We understand that you recently purchased tickets for an Allegiant Air flight scheduled to depart from Baltimore/Washington International Thurgood Marshall Airport (BWI) on October 29, 2021. We also understand that you appear to have requested an exemption from the mask mandate related to such scheduled flight. To the extent you have requested an exemption, such request is denied because you have not complied with Allegiant's policy, nor do you meet the exemption requirements.

If you have any questions, please let me know.

Brian

Brian T. Maye

**ADLER MURPHY & McQUILLEN LLP**

20 S. Clark Street, Suite 2500

Chicago, Illinois 60603

Main: (312) 345-0700

Direct: (312) 422-5713

Mobile: (312) 286-5117

Facsimile: (312) 345-9860

www.amm-law.com

The information contained in this electronic mail message is confidential information intended only for the use of the individual or entity named above, and may be protected by the attorney client and/or attorney work product privileges.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver to the intended recipient, you are

## Re: Wall v. Southwest Airlines -- Allegiant Air Mask-Exemption Demands
Wall & McDonnell

From: Lucas Wall (lucas.wall@yahoo.com)

To: bmaye@amm-law.com

Cc: <span style="background:black">███████████████</span>

Date: Monday, October 25, 2021, 08:36 PM EDT

Dear Mr. Maye:

This correspondence replies to your e-mail from this morning concerning the mask exemptions Leo and I requested from Allegiant Air for our upcoming trip.

>>> We understand that you recently purchased tickets for an Allegiant Air flight scheduled to depart from Baltimore/Washington International Thurgood Marshall Airport (BWI) on October 29, 2021. We also understand that you appear to have requested an exemption from the mask mandate related to such scheduled flight. To the extent you have requested an exemption, such request is denied because you have not complied with Allegiant's policy, nor do you meet the exemption requirements. <<<

1. Allegiant failed for 13 days to respond to our mask-exemption demands.

2. You have failed to address the 14 points we raised concerning Allegiant's illegal mask policy.

3. Please provide the name and state license number of the doctor at Allegiant Air who evaluated and denied our mask-exemption demands.

4. Please explain how our medical conditions do not meet the exemption requirements.



Please see attached documentation.

*Lucas Wall

   Lucas & Leo Allegiant Mask.pdf
2.8MB



HOME MAIL NEWS FINANCE SPORTS ENTERTAINMENT LIFE SHOPPING YAHOO PLUS MORE...

Find messages, documents, photos or people [redacted] Home

[redacted]

← Back Archive Move Delete Spam •••

**Allegiant**
www.allegiantair.com

Visit site •••

AllegiantAir.com - Itinerary #BGPVGX Yahoo/Inbox

**Allegiant** <no-reply@t.allegiant.com> Unsubscribe Tue, Oct 26 at 1:41 PM
**To:** LUCAS WALL

**Your booking has been canceled.**
Here is your receipt.

**REAL ID**
Will your current ID fly? The Department of Homeland Security will require Real ID for all airline travel beginning May 3, 2023. Your current driver's license may not be enough to get you through airport security. Click here to find out how to get Real ID compliant identification today.

| Customer Name | Book Date |
| --- | --- |
| LUCAS WALL | 10/11/2021 |

**Your canceled confirmation number is: BGPVGX**

## Flight Details
change/cancel

**Departing Flight Information**

| Date | Flight # |
| --- | --- |
| Fri, Oct 29, 2021 | 2584 |

| Departure Airport | Departs |
| --- | --- |
| Baltimore/Washington International Thurgood Marshall Airport (BWI) | 05:54 PM |

Map

| Arrival Airport | Arrives |
| --- | --- |
| Sarasota Bradenton International Airport (SRQ) | 08:16 PM |

Map

**Passenger Name:** LUCAS WALL

| Seat Assignment | Priority Access | Under-Seat Personal Item | Checked Bags |
| --- | --- | --- | --- |
| Not Assigned | Not Assigned | Free | 0 |

**Overhead Carry-On Bags**
0

**Passenger Name:** LEONARDO MCDONNELL

| Seat Assignment | Priority Access | Under-Seat Personal Item | Checked Bags |
| --- | --- | --- | --- |
| Not Assigned | Not Assigned | Free | 0 |

**Overhead Carry-On Bags**
0

## Receipt and Payment Details

| | |
| --- | --- |
| Airfare | $45.76 USD |
| USA Federal Excise Tax - Air | $3.44 USD |

### How to **Allegiant**

**Boarding Passes**
Starting 24 hours before departure, to print your boarding pass(es) or go paperless by viewing your itinerary on the

**Choose Your Seats**
Save money by purchasing your seat assignment in advance. If you don't purchase a seat assignment, it will be randomly assigned when you check in. to add seats.

**Checking Bags?**
It's easy - to add bags to your itinerary. Checking a bag at the airport costs more than adding to your itinerary now. Checked bags must weigh under 40 lbs. (18 kg). Overweight bag fees apply.

**Carry-On Bag**
Your carry-on bag should be purchased and added to your itinerary prior to departure. Bag fees are higher at the airport. for details.

**American Airlines** 

# Contact American

## How can we help you?

Send us your comment, question or suggestion, or make a request. We'll be in touch as soon as we can.

( • Required)

Topic •

| Disability assistan |

Subject •

| Request disability |

## Contact information



Title

| Select your title |

First name •

| Lucas |

Last name •

| Wall |

Suffix

| Select your suffix |

Country / region •

| United States |

Address •

| 435 10TH ST NE |

Address 2

| |

City •

| WASHINGTON |

State •

| District of Columb |

Postal code •

| 20002 |

AAdvantage® number

Primary phone •          Secondary phone

| +1 | 20235117: |      | Sele | Number |

Primary email •          Confirm primary email
                         •

lewnwdc77-aa@yah          lewnwdc77-aa@yah

# Type of assistance needed

Assistance type •

(Select all that apply.)

☐   Connection assistance for customers with          ☐   Wheelchair
cognitive disability
                                                      ☐   Medical devices
☐   Portable oxygen concentrators (POCs)
                                                      ☑   Other special assistance needs

Describe other special assistance needs •

Mask exemption

Characters remaining: 1486

# Flight information

Is assistance needed related to your flight?

⦿ Yes  ○ No

Confirmation / Record
locator ●

AFGCWJ

| Flight number ● | Flight date ● | From ● | To ● |
|---|---|---|---|
| 2260 | 11/12/2021 | MCO | PHX |

# Your message

Comments

I need a mask exemption for my flight due to my anxiety disorder. I cannot safely wear a mask.

Characters remaining: 1406

Cancel    Submit

Wall v. TSA                    227                    Appendix

https://www.aa.com/contact/forms?topic=#/t...                    3                    11/10/2021, 12:24 PM

## Mask-Exemption Demand for Lucas Wall

From:  Lucas Wall (lucas.wall@yahoo.com)

To:    sac@aa.com

Date:  Wednesday, November 10, 2021, 12:49 PM EST

Dear American Airlines:

I have submitted a mask-exemption demand for my Nov. 12 flight from MCO to PHX via AUS. See attachment. Also attached are my notes on American's numerous illegal mask policies.

Please be advised I am the lead plaintiff in a class-action lawsuit suing seven airlines for discriminating against the disabled by requiring masks be worn even though we suffer from medical conditions and can't safely wear a mask. Wall v. Southwest Airlines, No. 6:21-cv-1008 (M.D. Fla.) Your exemption procedures violate the Air Carrier Access Act and numerous other laws, regulations, and treaties.

Please send me a letter granting my mask exemption. If you do not, I ask you have your lawyer contact me as soon as possible. If my mask-exemption demand is denied, I plan to soon add American as a defendant in the lawsuit.

*Lucas Wall
 202-351-1735

  AA Mask Notes Lucas.pdf
      886.6kB

  Lucas MER1.pdf
      204.4kB

Home   **LOG IN**    English ▾   Search AA.com®   🔍



PLAN TRAVEL   TRAVEL INFORMATION   ADVANTAGE



🏠 Home   ›   Travel updates

# Travel updates



## Health and testing requirements

The U.S. and countries around the world have a range of travel restrictions and testing requirements due to COVID-19. You may not be allowed to travel to certain destinations or may be required to self-quarantine when you arrive.

Travel requirements are updated often, so we recommend checking the latest entry requirements before your trip.

Travel and health restrictions by destination ⧉

When you check-in for your trip you'll be asked to confirm you've been free of COVID-19 symptoms for the past 10 days.

## U.S. entry requirements

Starting November 8, 2021, the U.S. government is changing requirements to enter the U.S. based on citizenship / residence and vaccination status. All travelers 2 and older entering the U.S. must provide a negative COVID-19 test and their contact information within 72 hours of departure. Travelers must also sign an attestation form confirming they meet U.S. entry requirements or will not be allowed to board the plane.

⌄ How U.S. travel requirements apply to you

⌄ Vaccine and testing requirements

⌄ Attestation forms

⌄ Contact tracing

# Face coverings

*1

U.S. <mark>federal law</mark> requires that you wear a face covering at all times while indoors at the airport and on board your flight, regardless of vaccination status. If you refuse to wear one, you may be denied boarding and future travel on American. You may also face penalties under <mark>federal law.</mark> *1

These rules do not apply to children under 2, or if you have a disability that prevents you from wearing a face covering and meet the exemption requirements.

Visit the Centers for Disease Control and Prevention (CDC) website for more information about the mask requirement.

Requirement for face masks on planes and in airports ⧉

You should bring your own face covering to use while traveling. While limited quantities of face coverings may be available at the gate, they will not be available for every customer on every flight.

⌄ Acceptable face coverings

- A mask or 2 layered secured cloth that completely covers your nose and mouth and fits snugly to the sides of your face and under your chin
- Face shields worn with a face covering, but not in place of one

## These are not acceptable as face coverings

- Balaclavas
- Bandanas
- Face covers with exhaust valves or vents
- Face covers made of mesh or lace type fabric
- Gaiters
- Scarves
- Ski masks

CDC recommendations for face coverings ⧉

⌃ During your flight

- Your face covering must be worn and visible at all times, including if you plan to sleep.
- You can briefly lower or remove your face covering while actively eating, drinking or taking oral medication, but it must be worn between bites and sips.
- If oxygen masks drop from an overhead compartment, remove your face covering before placing the oxygen mask over your nose and mouth.

Wall v. TSA                              230                              Appendix

## These may not be used on board

For the safety of everyone on board, some types of recreational / personal protection equipment are not allowed for use on our planes or in flight:

- Face or full-body pods / tents
- Portable electronic air fresheners / purifiers
- Ozone generators

Restricted items »

Mobility and medical devices »

## Exemption for customers with disabilities*

If you may be exempt because you have a disability that prevents you from safely wearing a mask as defined by the Americans with Disabilities Act (42 USC 12101 et. seq) you must contact us at least 72 hours before you plan to travel ∗ 2 and travel with documentation confirming a negative COVID test or recovery. ∗ 3

Please note, making false claims of a disability or a health condition to obtain an exemption from wearing a face covering may result in denial of travel on American for the duration of the U.S. federal mask requirement.

Call Special Assistance: 800-237-7976

*This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability. It is not meant to cover persons for whom mask-wearing may only be difficult.

# Travel flexibility

We're making travel easier by giving you even more flexibility and the freedom to make your own choices when you fly with us.

Here's what you can expect:

- No more change fees for all domestic, short-haul international and select long-haul international flying on Premium Cabin, Premium Economy and Main Cabin fares. Basic Economy fares bought on or after April 1, 2021 are non-refundable and non-changeable.
- Fly standby for free on earlier domestic flights, including Puerto Rico and the U.S. Virgin Islands, to the same destination on the same day.
- If you buy Basic Economy fares you may now buy extras like upgrades, seats, priority boarding and same-day flight changes.
- AAdvantage® elite members may apply their travel benefits on all tickets, including on Basic Economy fares.

## Domestic, short-haul international and select long-haul international flights

Lucas Wall
**Mask Exemption Request to American Airlines**
**Notes on American's Numerous Illegal Policies**
**MCO-AUS Nov. 12, 2021**

1.  You falsely represent that "federal law" requires airline passengers wear face masks. But Congress has never enacted such a law. This is a fraudulent misrepresentation of the law. If you disagree with me, please provide the citation for the U.S. Code as to which statute requires airline passengers don face masks. Or if you believe there is duly promulgated regulation requiring such, please cite the Code of Federal regulations section.

2.  An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

3.  An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

    Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation..." 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705.

4.  An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may ... require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the coronavirus.

    Requiring a medical certificate also violates the Convention on International Civil Aviation. You may not require passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5.  An airline may not refuse transportation solely on the basis of a passenger's disability such as inability to wear a mask. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

6.  Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

7.  Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

   Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

   Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage **has** an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

8.  "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

9.  You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

10. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

11. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

12. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III). You may not provide illegal and/or EUA masks to your passengers without informing them use of the device is optional and they must give informed consent. This constitutes reckless endangerment.

13. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

14. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

    You clearly mislead customers that masks may be forced on passengers without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

15. Fraudulent Misrepresentation: You provide FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

    You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. *See* 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the FDCA and your other legal obligations is a fraudulent misrepresentation.

16. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

17. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

18. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United

States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law… 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.

## FW: American Airlines

From:  SAC (sac@aa.com)

To:       lewnwdc77-airlines@yahoo.com

Hello,

Thank you for choosing American Airlines.

The documentation submitted doesn't meet one or more of our qualifications and won't be approved at this time. As a reminder, this exception is very narrowly defined and is limited to a person with a qualified disability who cannot wear a mask for reasons related to the disability. These letters may also be reviewed by a third party medical advisor.

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,

Lori M.

American Airlines Special Assistance Coordinator



# D

## PETITIONER LEONARDO McDONNELL'S EXHIBIT

Bruce L. Stafford, PhD, LCSW, MA    631 North Hyer Ave. Orlando Fl 32803  407-600-2047

Jan 21, 2021

To Whom It May Concern,

    Due to his mental health issues, Kevin McDonnel finds it very challenging to wear a mask. It gives him a sese of claustrophobia and increases his anxiety.

Sincerely,

Bruce L. Stafford, PhD, LCSW, MA

# E

## PETITIONERS MICHAEL SEKLECKI & M.S. EXHIBITS

Christian Chaban, MD
Carlos Chaban, MD
David Hale, MD
Henry Dumas, MD
Megan N. Prunyi, CPNP
Elizabeth K. Shirley, ARNP

# HUNT CLUB PEDIATRICS
*The Doctors That Care For You...Will Always Be Here For You!*

## Face Covering Exemption form.

Student Name: M██████ S███████

Date of Birth: ██████ /17

School Name:

The Above -name individual cannot medically tolerate a face covering due to the following medical condition : Autistic Spectrum Disorder.  In Some cases, patients with Down Syndrome or other genetics conditions.

If unable to medically tolerate a face covering, is this student able to use a face shield?

YES-                    (NO-)

Estimated duration of exemption Until : further notice

Healthcare provider name : Carlos Chaban,MD

Signature:

Date:

Phone Number:

**Hunt Club Pediatric Assoc.**
425 S. Hunt Club Blvd. Suite 1051
Apopka, Florida 32703
407-786-4080 - Fax 407-786-4667

425 South Hunt Club Blvd. Suite 1051 • Apopka, FL • 407-786-4080
4106 W. Lake Mary Blvd. Suite 110 • Lake Mary, FL • 407-878-6008
www.HuntClubPediatrics.com

Christian Chaban, MD
Carlos Chaban, MD
David Hale, MD
Henry Dumas, MD
Megan N. Prunyi, CPNP
Elizabeth K. Shirley, ARNP

# HUNT CLUB PEDIATRICS

*The Doctors That Care For You...Will Always Be Here For You!*

October 26, 2021

Student Name: M████ S████

Date of Birth: ████17

School Name:

The above named individual can not medically tolerate a face covering due to the following medical condition: Autistic Spectrum Disorder. In some cases, patients with Down Syndrome or other genetic conditions.

If unable to medically tolerate a face covering, is this student able to use a face shield?

YES-                    -NO

Estimated duration of exemption until: 10/26/2022

Health provider name: Carlos Chaban, M.D

Signature:

Date: 10/26/2021

Phone number: 407-786-4080

Hunt Club Pediatric Assoc.
425 S. Hunt Club Blvd. Suite 1051
Apopka, Florida 32703
407-786-4080 - Fax 407-786-4667

**425 South Hunt Club Blvd, Suite 1051 • Apopka, FL • 407-786-4080**
**4106 W. Lake Mary Blvd, Suite 110 • Lake Mary, FL • 407-878-6008**
**www.HuntClubPediatrics.com**

Wall v. TSA                    241                    Appendix



# Face Mask Exemption

This form should only be used by customers requesting an exemption to the Centers for Disease Control (CDC) Order and Transportation Security Administration (TSA) Security Directive requiring masks to be worn during air travel and who meet the following requirements:

- Customers with a disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.) whose disability prevents them from safely wearing a mask.
- The request is being submitted at least 10 days before departure.
- The request includes:
  - Documentation from a licensed medical provider on professional letterhead stating the customer requesting the exemption is a person with a disability who cannot wear a mask, or cannot safely wear a mask, because of that disability as defined by the Americans with Disabilities Act (42 U.S.C. 12101 et seq.)
  - The documentation includes the medical professional's state license number (or, if applicable, medical license information)

A representative from Frontier Airlines will contact the licensed medical provider to validate the document.

Any customer who presents falsified medical documentation will be subject to suspension of their privileges for future travel on Frontier Airlines.

Enter the information for the customer that is requesting the mask exemption.

**Email Address** *

**Frontier Confirmation Code** *

DHHJX

Frontier Airlines

**Passenger First Name** *   **Passenger Middle Name**   **Passenger Last Name** *

| Michael | | Seklecki |

Please note that the Passenger Name entered must match the Reservation.

**Origin Departure Date**

**MM**    **DD**    **YYYY** *

[ 10 ▾ ]  [ 23 ▾ ]  [ 2021 ▾ ]

Please note: failure to provide 10 days' notice will result in denial of the request.

---

**Attach Documentation (PDF preferred and size should be less than 10 MB)** *

[ Browse... ]  No file selected.

---

[ Continue... ]

**Michael Seklecki Sr. & M████ S███████**
**Mask Exemption Request to Frontier Airlines**
**Notes on Frontier's Numerous Illegal Policies**
**MCO-BDL Oct. 23, 2021**

1. An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

2. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, i.e. has tested positive for the coronavirus.

   Requiring a medical certificate also violates the Convention on International Civil Aviation. You may not require passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

3. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

4. Federal law does not permit airlines to mandate that disabled passengers check in earlier than nondisabled passengers. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

5. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

   Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

6.  Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

7.  Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

    Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage **has** an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

8.  "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

9.  You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

10. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

11. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

12. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III). You

may not provide illegal and/or EUA masks to your passengers without informing them use of the device is optional and they must give informed consent. This constitutes reckless endangerment.

13. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

14. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

   You clearly mislead customers that masks may be forced on passengers without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

15. Fraudulent Misrepresentation: You provide FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

   You falsely represent that "federal law" requires airline passengers wear face masks. But Congress has never enacted such a law. This is a fraudulent misrepresentation of the law. You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the FDCA and your other legal obligations is a fraudulent misrepresentation.

16. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

17. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

18. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy ... 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.



**Response**

Thank you for contacting Frontier Airlines.

Your Face Mask Exemption request for travel has been received. We will review your form submission and respond to valid requests within 48 hours.

Please note that incomplete or invalid form submission may delay the approval process.

**Subject**

**Face Mask Exemption**

| Auto-Response By (Administrator) (10/22/2021 07:15 PM) |
|---|
| Thank you for contacting Frontier Airlines.<br><br>Your Face Mask Exemption request for travel has been received. We will review your form submission and respond to valid requests within 48 hours.<br><br>Please note that incomplete or invalid form submission may delay the approval process. |

lucas.travel

# Frontier Refuses to Board 4-Year-Old Autistic Boy at Orlando Who's Suing TSA over Masks – Quest for 243

```
**per court rules, M.S.'s name is redacted
```

6-8 minutes

---

*Florida Family Taking Child to Boston for*

*Specialized Medical Care Stranded at MCO*



Oct. 23, 2021

By LUCAS WALL

ORLANDO, Florida – Frontier Airlines this morning refused to allow a family of four to board a flight from Orlando to Hartford, Connecticut, because their autistic 4-year-old son can't cover his face. This happened despite the fact ███████████ has a doctor's note saying he's exempt from mask mandates, which was [submitted to Frontier in advance of the flight](#) in addition to other paperwork.

The Seklecki family must fly often to New England for ███████ specialized medical

care. Today parents Michael Seklecki Sr. and Samantha Grabowski and their younger son █████, were booked on a Frontier flight to Hartford, were the Michael Sr.'s grandparents were going to pick them up and drive them tomorrow to Massachusetts for █████████ appointment Monday afternoon at Boston Children's Hospital.

Earlier this week, ████████ and Michael Sr. joined a group of 13 flyers from nine other states and the District of Columbia who filed six lawsuits charging the Transportation Security Administration with exceeding its legal authority by continuing to extend the Federal Transportation Mask Mandate. The Sekleckis are among four Florida petitioners in the case before the U.S. Court of Appeals for the 11th Circuit in Atlanta.

The incident – captured on video and posted to YouTube – began shortly before 6 a.m. today when the family approached the boarding gate for Frontier Flight 1206. Michael Sr. told a female Frontier supervisor that he had a doctor's note exempting ████████ from wearing a mask due to Autism Spectrum Disorder.

"If you did not go ahead and provide the documents to Frontier Airlines, unfortunately we cannot go ahead and" allow the exemption, the agent said. Michael Sr. showed her an e-mail from Frontier acknowledging he did send in the physician's note.

Frontier's Orlando station manager, who identified himself as Ken, said he did not receive authorization from the airline's headquarters for the exemption.

"Until that is approved, he can't fly," Ken said. "He has to wear a mask or he can't fly Frontier. The physician's documentation does not override the corporate approval. Until we have it in hand, in our computer and on e-mail, we can't just" approve the mask exemption.

Michael Sr. noted if his son were forced to muzzle himself, he could have a medical emergency during the flight. Ken then said he wouldn't allow the family to board if ████ █ could have an episode in flight, then changed his tune.

"He can board with a mask on," Ken said. "If you don't have the exemption that's required and the [COVID-19] testing that's required, he cannot board without wearing a mask."

Michael Sr. then asked his son, "Can you wear your mask." ████████ shook his head no.

Ken then became rude and condescending, telling Michael Sr.: "Sir, the way you are approaching it is not going to help. … You're asking a child can he wear it. He's going to tell you no."

████████ is heard on the video interjecting, "We're going to grammie's house!"

Ken then goes on to say: "If you, him, anybody … doesn't wear the mask, you will be refused travel. The way you are coming about it is the totally wrong approach because we do not have the approval from corporate. He has to wear it."

Michael Sr. then said to his son, "You need to wear a mask," and ███████ answered, "I don't want that. No."

Ken told the family: "Trust me, we all hate the mask, though we got to wear it. There's no exceptions unless you get that exemption from corporate."

But Frontier's mask policy violates the Air Carrier Access Act, a federal law prohibiting airlines from discriminating against passengers with medical conditions. Frontier and six other airlines are being sued by 13 disabled flyers in the U.S. District Court in Orlando for its unlawful mask rules.

The incident ends with Ken telling his female colleague "Offload, offload," removing the family from the flight. But he then strangely claims "We are not denying your child a flight."

Other disabled Americans suing the airlines and TSA expressed their disgust at Frontier's treatment of ███████

"The satanic actions of Frontier to deny a 4-year-old child access to air travel is absolutely appalling," said Michael Faris of Elizabethtown, Kentucky, who was put on TSA's terrorist watchlist earlier this week after suing the agency. "It's even more demonic and discriminatory that Frontier will be responsible for endangering this child's wellbeing in refusing him his right to use the public airspace as he seeks medical treatment. When do we stop acting as if it's okay for these airlines to interfere with an individuals' right to travel?"

Parents of special-needs children already have a life full of uphill battles, said Tony Eades of Warsaw, Missouri, petitioner in the 8th Circuit case against TSA's mask mandate.

"As a father of two boys (ages 7 and 9) who suffer from Severe Nonverbal Autism, I am extremely outraged that Frontier Airlines will stoop to this low level to prevent a child to fly," he said. "The child is only 4 and he has a developmental disability, for which he needs to go see his specialized doctor hundreds of miles away. How dare Frontier do this to a special-needs child. Autism is not contagious."

Kleanthis Andreadakis of Henrico County, Virginia, described what just occurred today at Orlando International Airport as sickening.

"There are so many things wrong and inaccurate with what Ken said to the Sekleckis," he said. "Making a disabled, autistic toddler who cannot medically wear a face mask follow an illegal company policy that does not conform with federal law is yet another reason why these misunderstood mandates need to be stricken."

Shannon Cila of Louisville, Kentucky, said Frontier should be ashamed of its atrocious behavior.

"The fact they can do this to anybody, but especially disabled travelers, is a massive and

egregious breach of the public trust and outright violation of our civil rights," she said.

Donate to our legal fund on GoFundMe: Help End Federal Transportation Mask Mandate

Join our Facebook group: Americans Against Mask Mandates

View: 223 Studies, Articles, & Videos Describe How Masks Don't Reduce COVID-19 Spread But Harm Human Health

lucas.travel

# Florida Father Suing TSA Appears on Fox News after Frontier Refused to Board 4-Year-Old Autistic Son – Quest for 243

4-5 minutes

*Seklecki Discusses Saturday's Mask Incident*

*at Orlando Airport with Shannon Bream*



Oct. 26, 2021

By LUCAS WALL

BOSTON, Massachusetts – The father of a 4-year-old autistic boy denied boarding Saturday morning by Frontier Airlines at Orlando International Airport appeared on "Fox News at Night" early today to discuss the incident and his lawsuit against the Transportation Security Administration's [Federal Transportation Mask Mandate](#) with anchor Shannon Bream.

Frontier [refused to allow the family of four to board a flight](#) from Orlando to Hartford, Connecticut, Saturday because their autistic 4-year-old son, ███████ can't cover his face. This happened despite the fact ███████ has a doctor's note saying he's exempt

from mask mandates, which was [submitted to Frontier in advance of the flight](#).

"We did submit prior to the trip documentation stating that he cannot wear a mask," Michael Seklecki Sr. of Sanford, Florida, [said during his interview](#) on Fox News Channel. "Frontier Airlines still refused to board him, saying that corporate has oversight and jurisdiction over a licensed pediatrician and they would not let him on the flight, making us miss our entire flight to Boston to receive medical care."

Michael Sr. said the family had to take a Delta flight 13 hours later Saturday. Unlike Frontier, Delta did accommodate ███████ mask exemption.

"We were stranded in the airport most of the day because of this and trying to reaccommodate him, dealing with him having a meltdown for several hours because he did not make the flight and could not understand why we were not on the flight," he told Bream from Boston, where the Seklecki family must fly often for ██████ specialized medical care at Boston Children's Hospital. "It was just a total nightmare. Frontier Airlines had zero regard for the ADA, zero regard for accommodating a disability, trying to force a child – who has no understanding of a mask mandate – to wear a mask. They were very condescending and rude about the whole incident."

A week ago, █████ and Michael Sr. joined a group of 14 flyers from nine other states and the District of Columbia who [filed six lawsuits charging the Transportation Security Administration with exceeding its legal authority](#) by continuing to extend the Federal Transportation Mask Mandate. The Sekleckis are among four Florida petitioners in the case before the [U.S. Court of Appeals for the 11th Circuit](#) in Atlanta.

Saturday's incident – [captured on video and posted to YouTube](#) – began when the family approached the boarding gate for Frontier Flight 1206. Michael Sr. told a female Frontier supervisor that he had a doctor's note exempting ██████ from wearing a mask due to Autism Spectrum Disorder. The supervisor and Frontier's station manager, who identified himself as Ken, refused to grant ██████ a mask exception.

"If you did not go ahead and provide the documents to Frontier Airlines, unfortunately we cannot go ahead and" allow the exemption, the supervisor said. Michael Sr. showed her an e-mail from Frontier acknowledging he did send in the physician's note, but she and Ken refused to budge.

Frontier's mask policy violates the [Air Carrier Access Act](#), a federal law prohibiting airlines from discriminating against passengers with medical conditions. Frontier and six other airlines [are being sued by 13 disabled flyers in the U.S. District Court in Orlando](#) for their unlawful mask rules.

Donate to our legal fund on GoFundMe: [Help End Federal Transportation Mask Mandate](#)

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

Items marked with a * are required.

### Personal Information:

**I am**  [ Passenger ▾ ] *

**Your Name:**

**Title:** [ ▾ ]      **First Name:**  [ Michael ] *

**Last Name:**  [ Seklecki ] *

### Contact Information:

**Address:**  [                    ]

**City:**  [ Sanford ]      **State:** [ Florida ▾ ]

**Zip Code:**  [          ]      **Home Phone:** [          ]

Either Email Address or Daytime Phone is required

**Email Address:**  [ ktmlife22@icloud. ] *      **Verify Email Address:**  [ ktmlife22@icloud. ] *

**Daytime Phone:**  [ 321-666-4353 ] *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

**Complaint/Comment Information:**

**Airline/Company:**

FRONTIER AIRLINES ⌄  * (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**   10/23/21 🗓 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

MCO-BDL   (Cities / Flight Number)

**Description of Problem/Inquiry /Comment**\*

Frontier refused to board my entire family of four because my 4-year-old autistic son can't wear a face mask. Its mask policies violate the Air Carrier Access Act in numerous ways. Please stop Frontier from banning disabled children because they can't don a mask. See attached documents.

(Chars left: 3000)

**Attach a file (Optional):**

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

Browse... No file selected.    Upload File

**Uploaded file/s**

C:\fakepath\Seklecki Frontier Complaint.pdf   Remove file

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

Submit    Reset    Cancel

---

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200*

# Your Itinerary Receipt

| Booking Date: October 13, 2021 | Status: Confirmed | Confirmation Code: GHHQJD |

## Flights



✈ October 26, 2021
Depart: Boston (BOS) 11:22 AM

Flight: NK1220
Arrive: Myrtle Beach (MYR) 1:41 PM

Layover: 5 Hours, 37 Minutes

✈ October 26, 2021
Depart: Myrtle Beach (MYR) 7:18 PM

Flight: NK229
Arrive: Orlando (MCO) 8:53 PM

Watch your emails for any flight time changes that may occur prior to your trip. Schedule change notifications will be sent to █████████████████████ up until the day of your departure. On the day you're traveling, you can reconfirm your flight times by visiting our website or by calling us directly at 1.855.728.3555. It is recommended that you arrive at the airport about 2 hours prior to your departure for domestic flights and 3 hours prior to departure for international flights.

## Passenger



👤 MR. MICHAEL SEKLECKI

**Free Spirit #:**
**Known Traveler # (TSA Pre✓):** ████████
**Additional Info:**

BOS - MCO: --

BOS - MYR: --
MYR - MCO: --

## Contact



MICHAEL SEKLECKI

████████████████████████

+1-321-666-4353

We'll keep you posted about any changes to this trip,
so please double check your email and phone number.

Wall v. TSA                    257                    Appendix

## TOTAL PAID                                    $32.19  ⌃

| | |
|---|---|
| **FLIGHT** | **$32.19** ⌃ |
| **1 BOS - MCO** | **$32.19** |
| FLIGHT | $2.80 |
| TAXES AND CARRIER CHARGES | $29.39 |
| Federal Excise Tax | $0.21 |
| Security Fee | $5.60 |
| Segment Fee | $8.60 |
| Passenger Usage Charge (Non-refundable Carrier Fee) | $5.98 |
| Passenger Facility Fee | $9.00 |

Thank you for choosing Spirit. We look forward to serving you on your upcoming trip!

For modifications to flight only itineraries, please call 1.855-728-3555

For modifications to vacation package itineraries please call 1.954.698.0125

To provide feedback, please email support@spirit.com or write to Spirit Customer Relations, 2800 Executive Way, Miramar, FL 33025.

# Complaint or Compliment?

**To submit a compliment or complaint, send us an email by completing the options below and we'll get back to you as soon as possible. You may also send us a complaint by mail to:**

**Spirit Airlines**
**2800 Executive Way**
**Miramar, FL 33025**

**Please select an option below: ***
- ○ Positive Feedback
- ● Guests with Disabilities
- ○ Group Reservation
- ○ Complaint

**Disabilities Topic ***
| Inquiry/Add Services | ⌄ |
|---|---|

**Disabilities Subtopic ***
| Other Disabilities | ⌄ |
|---|---|

**Email Address ***
ktmlife22@icloud.com

**First Name ***
Michael

**Last Name ***
Secklecki

**Are you submitting ticket on behalf of someone else? ***
● No  ○ Yes

**Subject ***
Mask-Exemption Demand

**Description ***
Please see attached mask-exemption demand

**Confirmation Code**
GHHQJD

**Travel Date**
10/26/2021                                                📅

**Please upload all attachments in one submission. Also ensure your forms are completed in their entirety before submitting. Instructions can be found here: https://customersupport.spirit.com/en-US/category/article/KA-01487**

Browse...  Michael S Spirit MER.pdf

**Para una respuesta en español** ☐

Xg26Jn5

Wall v. TSA                    259                    Appendix

## Mask-Exemption Demand for Michael Seklecki

From:  Lucas Wall ████████████████

To:   support@spirit.com

Cc:   ktmlife22@icloud.com

Date:  Sunday, October 24, 2021, 01:11 AM EDT

Please see the attached mask-exemption demand for Michael Seklecki.

 Michael S Spirit MER.pdf
1.6MB

# SPIRIT® ADA Face Covering Exemption Form

*6  • **This form must be completed in its entirety by your medical professional or medical doctor.**

*4  • **You must present this form at the airport on the day of your flight – please check-in 3 hours prior to departure.**

*3  • **Spirit is not required to honor a form with blank fields.**

*6  • **This form must be dated within 10 calendar days prior to each flight.**

    • **Spirit Airlines reserves the right to contact the medical professional and verify this form.**

    • **All future flight privileges with Spirit Airlines will be lost if this form is found to be forged or fraudulent.**

Patient First Name: _____Michael_____    Patient Last Name: _____Seklecki_____

I, _____*6_____, acknowledge that I am a licensed medical professional or medical doctor,

and _____Michael Seklecki_____ (patient name) is currently under my professional care. I acknowledge and attest

that _____Michael Seklecki_____(patient name), has a disability and cannot wear a mask, or cannot safely

wear a mask, for reasons related to their disability as defined by the American with Disabilities Act.

I, _____*6_____, understand that this exemption is not meant to cover persons for whom

mask-wearing may only be difficult and by my signature on this form, I am certifying that I have carefully considered this fact in

assessing the inability of _____Michael Seklecki_____ (patient name) to wear a mask.

<u>Individuals Who May Be Exempt Include Individuals Who:</u>

• Do not understand how to remove their mask due to cognitive impairment

• Cannot remove a mask on their own due to dexterity/mobility impairments

• Cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders

• Cannot wear a mask because doing so would impede the function of assistive devices/technology

Medical Professional/Medical Doctor's Name: _____THIS FORM IS ILLEGAL_____

An airline is not allowed to require passengers seeking mask
License Type: exemptions to do so in advance. License Issued Date: carrier require a passenger
with a disability to provide advance notice that he or she is
License Number: traveling on a flight? As a member, it... NPI number (if available) must not require a
passenger with a disability to provide advance notice of the fact
Jurisdiction of License: that he or she is traveling on a flight." 14 CFR § 382.25.

Business Name: _____*6_____

Business Phone Number: _____*6_____

Signature: _____*6_____ Date: ___10-24-21___

spirit.com

# Important Travel Notices | Spirit Airlines

38-48 minutes

---

### Spirit Airlines COVID-19 Information Center

For all flights entering the United States: Effective January 26, 2021, every traveler—2 years of age or older—must provide a negative COVID-19 test result that has been taken within three days before their flight's departure to the U.S. For more information, please review the Travel Requirements below. Airlines and airports remain subject to federal law requiring Guest to wear an appropriate face covering at airports and on flights. If there are any changes to the federal law, we will review our policy accordingly.

*1





**Keeping our Guests and Team Members healthy every step of the way**

Rest assured, we proactively follow the guidelines published by the Centers for Disease Control (CDC) and recent research from Harvard University and other institutions show that the Spirit Safe Travels combination of cleaning, face covering requirements and air filtration, make flying safer than other routine activities. We require all Guests to complete a Health Acknowledgement at check-in. Regardless of local or state ordinances, Federal law requires all travelers to wear face coverings in compliance with CDC guidelines on flights and in airports. Additionally, Spirit has implemented enhanced cleaning protocols, updated airport and inflight procedures, and more.

*1





**Face Covering Policy**

\* 1  Airlines and airports remain subject to federal law requiring Guest to wear an appropiate face covering at airports and on flights.

Face coverings must be worn while at the airport, on the jet bridge, and onboard the aircraft. Face coverings may be removed only while eating, drinking, or taking medication — when done eating, drinking, or taking medication, face coverings must be repositioned immediately.

All face coverings must fit snugly cover the nose and mouth and be secure under the chin and have at least two layers of fabric (e.g. disposable non-medical face mask, multi-layered cloth face covering).

The following items are not considered appropriate face coverings: open-chin triangle bandanas, face coverings containing valves or mesh material, and face shields. Face shields may be worn in addition to a face covering but are not approved as a face covering replacement.

Guests who choose not to comply with our face covering requirement will lose future flight privileges with Spirit. Children under the age of 2 years old are exempt. There may be other limited exceptions \* 2 for a Guest with a disability recognized under the Americans with Disabilities Act  (ADA) who meet certain criteria. To see if you're eligible for this exemption, please review the Frequently Asked Question "I have an upcoming flight and cannot wear a face mask due to a disability. Do I have to wear a face covering or mask onboard a Spirit flight?" that can be found toward the bottom of this page.

**Fogging**

Spirit uses two EPA-registered fogging treatments to disinfect our aircraft. The first applies a safe, high-grade disinfectant that's effective against coronaviruses. The second uses an antimicrobial product that forms an invisible barrier on all surfaces that kills bacteria and viruses on contact for 30 days.



Wall v. TSA                  263                  Appendix





**HEPA Filters**

Our all-Airbus fleet is equipped with state-of-the-art, high-efficiency particulate air (HEPA) filters that capture 99.97% of particles and filters the air for contaminants every 2-3 minutes.

**In safe hands**

Spirit crews are trained to report and address infectious diseases and work closely with industry leader MedAire for ground and inflight expert medical assistance.





**Before you travel**

If you haven't already, download the Spirit Mobile App. You can easily book a trip, manage all your trips in one place, check in for your flight, and get your boarding pass.

If you are feeling ill, follow the recommendations of your medical professional.

**Check in**

We encourage you to use our kiosk self bag-tag, and self bag-drop where available. We've also placed social-distancing indicators at all check-in counters.





**At the airport**

We are using EPA-registered disinfectants in all check-in and gate areas and are utilizing electrostatic cleaning devices in our high-traffic airports. Guests can scan their own boarding passes and are welcome to board at the end of the boarding process if they wish.

Wall v. TSA                          266                          Appendix

**Onboard**

Our expanded aircraft cleaning protocols include hospital-grade disinfectants and antibacterial processes that keep all surfaces throughout the cabin free of viruses and bacteria. According to recent research from Harvard University and other institutions, the Spirit Safe Travels combination of cleaning, face covering requirements and air filtration, make flying safer than other routine activities.





Wall v. TSA                    267                    Appendix

complete and submit a COVID-19 test result via the [USVI Travel Screening Portal](#).

- **Additional Information/Resources:** For additional information and requirements, please [click here](#).
- **Testing Locations & Additional Resources:**
- COVID-19 test is not required for travel from U.S. Territories into the continental United States.

### Frequently Asked Questions

According to recent research from Harvard University and other institutions, the Spirit Safe Travels combination of cleaning, face covering requirements and air filtration, make flying safer than other routine activities. [Learn more here.](#)

Yes, to protect your health and safety, Spirit requires all travelers to agree to the below representations prior to check-in:

- You will wear a face covering over your nose and mouth, which will be secured under the chin and have at least two layers of fabric throughout your journey in the airport, on the jet bridge and on the plane. Children under the age of 2 years old are exempt. There may be other limited exemptions for individuals with disabilities recognized under the ADA who meet certain criteria. Refusing to wear a face covering is a violation of ==federal law== and will result in denial of boarding, removal from the aircraft, penalties under ==federal law,== and/or the loss of future flight privileges with Spirit.

  *1

- Neither you nor anyone in your household have exhibited COVID-19 related symptoms as defined by the CDC in the last 14 days that include a temperature (38C/100.4F or higher), coughing, shortness of breath/difficulty breathing, loss of taste or smell, chills, muscle pain and/or sore throat.

- In the past 14 days, neither you nor anyone in your household have tested positive for COVID-19, have had close contact with someone who exhibited symptoms or tested positive for COVID-19.

  *1

- Yes, airlines and airports remain subject to ==federal law== requiring Guest to wear an appropiate face covering at airports and on flights.  Children under the age of 2 years old are exempt. There may be other limited exceptions for a Guest with a disability recognized under the Americans with Disabilities Act (ADA) who meet certain criteria. To see if you're eligible for this exemption, please review the Frequently Asked Question "I have an upcoming flight and cannot wear a face mask due to a disability. Do I have to wear a face covering or mask onboard a Spirit flight?" that can be found in the next FAQ.

  *1

==Federal law== requires all Guests to wear an appropriate face covering throughout the entire duration of your flight, including during boarding and deplaning. Children under 2 years old are exempted, and we allow limited exceptions for Guests who cannot wear or safely wear an appropriate face covering due to a disability recognized by the Americans with Disabilities Act (ADA) who meet certain criteria. The ADA exemption is narrowly interpreted and will be vetted through a strict approval process. We will not allow a Guest onboard who simply does not want to wear a covering because they find mask-wearing difficult. Individuals with disabilities who may be exempt include individuals who:

- Do not understand how to remove their mask due to cognitive impairment.

- Cannot remove a mask on their own due to dexterity/mobility impairments.

- Cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders.

- Cannot wear a mask because doing so would impede the function of assistive devices/technology.

  In order to be approved for the exception, a Guest with a qualifying disability must do the following:

  \* 3  1. Contact us through our Chat feature here or via WhatsApp at 855-728-3555 with the words "ADA face mask exemption" 48 hours prior to scheduled departure to let us know you will be asking for an exemption on the day of your flight.

  \* 4 – 5  2. Arrive at the airport 3 hours prior to your flight's scheduled departure since you may be screened by our medical experts.

  \* 6  3. Have your medical doctor or medical professional complete the Spirit ADA Face Covering Exemption Form or provide a letter from your medical doctor that must meet all of the following requirements:

  - Be on the medical doctor office's official letterhead

  - Dated within 10 calendar days prior to each flight on your itinerary (including return flights)

  - Acknowledge that you have a disability recognized under the ADA/ACAA that inhibits you from wearing a mask or from safely wearing one

  - Acknowledge that the doctor understands that this exemption is not for a person who simply may find mask wearing difficult

  - State that you are under their care and they specialize in the area pertaining to your disabilit

  - Contain the medical professional's NPI number (if available)

  - Contain the medical professional's license number, license type, and date license was issued

  - Have the license jurisdiction

  - Contain the medical doctor's business name

  - Contain the medical doctor's business phone number

  - **Note:** Spirit reserves the right to contact the medical professional and verify the form or letter. Also, if the form or letter is found to be forged or fraudulent, you will be banned from future flights with Spirit Airlines

  \* 7  4. Present a negative COVID-19 PCR or Antigentest result, taken within **24 hours** prior to scheduled departure at the airport.

  - The test result can be in written or electronic form and must include information that identifies the person, a specimen collection date and the type of test.

  - **Guests who have received the COVID-19 vaccine or tested positive for antibodies must still provide a negative viral test result as described above**.

  - If you have recovered from COVID-19 within the last 90 days from your date of travel and have met requirements to end your quarantine, you are NOT required to provide a negative test. However, you must provide documentation of your positive viral test result AND a letter from your healthcare provider or a public health official on official letterhead stating that you have been approved to travel.

  - **International Travel:**

  - If at an international location, you must comply with any local face covering requirements before and

Wall v. TSA                               269                               Appendix

during boarding.

- If you're returning to the U.S. from an international destination, in order to obtain a mask exemption, your COVID-19 test must still be taken within 24 hours. You will only need to present one negative COVID-19 test taken within 24 hours.

**Additional information:**

\*8
- Guests who are unable to meet these requirements will need to wear an appropriate face mask orwill not be allowed to travel on that flight.

\*5
- Spirit agents may contact our third-party medical professionals to determine if you're fit to fly without a mask.

\*9
- We may place you on a flight that has a lower number of Guests.

\*10
- You may be moved to the back of the aircraft.

- If you don't meet the 48-hour advance notice requirement or the 3-hour check-in time, we will attempt to validate your exemption request, but it may not be possible to validate before your flight departs.

Please visit our

[Book with Your Reservation Credit](#)

webpage for steps on how to book using a Reservation Credit. Reservation Credits can be redeemed easily by booking on the [www.spirit.com](#) website or by calling Spirit reservations at 855-728-3555. At this time, our Spirit App does not support Reservation Credit bookings

We are going above and beyond to make your experience as safe and comfortable as possible. Each aircraft is cleaned with hospital-grade disinfectants between every flight. Our all-Airbus fleet is equipped with state-of-the-art, high-efficiency particulate air (HEPA) filters that capture 99.97% of particles and filters the air for contaminants every 2-3 minutes. Additionally, all Guests and Team Members are required to wear appropriate face coverings to reduce the spread of germs. According to recent research from Harvard University and other institutions, the Spirit Safe Travels combination of cleaning, face covering requirements and air filtration, make flying safer than other routine activities. [Learn more here](#).

We will continue to support social distancing measures where possible, but please note that some flights may be more full than others and we cannot guarantee that any seats will be unoccupied. If you have any questions about your specific flight, please feel free to contact us for more information.

Our policy on unaccompanied minors remains the same as no changes have been made to our current policy. Please view our requirements [here](#) and [contact us](#) if you have any additional questions.

We are constantly evolving our procedures to maintain a clean and healthy environment for you and your loved ones. Clorox solutions and electrostatic cleaning devices are used in our high-traffic airports. We are also encouraging social distancing during the boarding process by asking Guests to scan their own boarding passes and welcome you to board at the end of the boarding process if you wish.

Go to **My Trips**, enter your name and confirmation number, then proceed with the steps to cancel your flight.

If your flight has been cancelled, we will proactively send a reservation credit for the full value of your reservation. For other options, including a refund, please contact us.

We will notify you of any changes to a scheduled flight. You have the option to accept the schedule change or decline to request a reservation credit online or contact us for other options, including a refund.

Go to **My Trips**, enter your name and confirmation number, then proceed with the steps to change your flight.

It's important that you do not travel if you have COVID-19 or have been exposed to someone with COVID-19. Please chat with us now to discuss options available to prevent unnecessary risk or if you prefer, please contact us at your earliest covenience.

Go to **My Trips**, enter your name and confirmation number, then proceed with the steps to change your flight.

✱11   <mark>*Should you need a face covering, Spirit will provide one for $3.</mark>

Spirit will donate the proceeds of the purchase price of each face mask sold between May 11, 2020 and December 31, 2021 to the American Red Cross. This purchase is not tax deductible.

By making a financial donation, Spirit is helping the American Red Cross continue to delivery its lifesaving mission nationwide due to this public health emergency. The Red Cross is working hard to ensure they can:

- Maintain a sufficient supply of blood to help patients in need and prevent any shortages.

- Provide critical relief services to people affected by disaters big and small.

The American Red Cross name and emblem are used with its permission, which in no way constitutes an endorsement, express or implied, of any product, service, company, opinion or political position. The American Red Cross logo is a registered trademark owned by The American Red Cross. For more information about the American Red Cross, please visit redcross.org.

**Michael Seklecki**
**Mask Exemption Request to Spirit Airlines**
**Notes on Spirit's Numerous Illegal Policies**
**BOS-MYR-MCO Oct. 26, 2021**

1. It is a fraudulent misrepresentation to state that "federal law" requires airline passengers wear masks. Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. If you believe I am in error, please cite the statute number in the U.S. Code you refer to or the Code of Federal Regulations number.

2. Airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

3. An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4. Federal law does not permit airlines to mandate that disabled passengers check in earlier than non-disabled passengers. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

5. An airline may not require disabled passengers needing a mask exemption to undergo a medical screening with your third-party vendor. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, you may also not require a third-party medical consultation. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

6. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the coronavirus.

Requiring a medical certificate also violates the Convention on International Civil Aviation. You may not require passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

7. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

   Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

8. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

9. Federal law prohibits changing a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

10. You may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

11. Selling Masks that Are Experimental Medical Devices Proven to Harm Human Health & Forcing Passengers to Wear Them in Violation of the Food, Drug, & Cosmetic Act: Spirit is violating the FDCA by selling masks to passengers without providing us our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device. 21 USC § 360bbb-3(e)(1)(A)(ii)(III). You may not offer illegal and/or EUA masks to your passengers without informing us that use of the device is optional and we must give informed consent. This constitutes reckless endangerment.

   You are selling FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

   By selling unauthorized or EUA masks to your customers, Spirit is practicing medicine without a license. You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

   You haven't told your passengers about the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread.

See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. This is a fraudulent misrepresentation of the medical devices you are vending.

12. Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

13. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

   Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

   Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage *has* an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

14. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

15. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

16. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

17. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

18. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

You clearly mislead customers that masks may be forced on them without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

19. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

20. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

21. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.



# ADA Face Covering Exemption Form

**SPIRIT**

- *6   • **This form must be completed in its entirety by your medical professional or medical doctor.**
- *4   • **You must present this form at the airport on the day of your flight – please check-in 3 hours prior to departure.**
- *3   • **Spirit is not required to honor a form with blank fields.**
- *6   • **This form must be dated within 10 calendar days prior to each flight.**
-    • **Spirit Airlines reserves the right to contact the medical professional and verify this form.**
-    • **All future flight privileges with Spirit Airlines will be lost if this form is found to be forged or fraudulent.**

Patient First Name: _____M_____    Patient Last Name: _____S_____

I, _____*6_____, acknowledge that I am a licensed medical professional or medical doctor,

and _____M.S._____ (patient name) is currently under my professional care. I acknowledge and attest

that _____M.S._____ (patient name), has a disability and cannot wear a mask, or cannot safely

wear a mask, for reasons related to their disability as defined by the American with Disabilities Act.

I, _____*6_____, understand that this exemption is not meant to cover persons for whom

mask-wearing may only be difficult and by my signature on this form, I am certifying that I have carefully considered this fact in

assessing the inability of _____M.S._____ (patient name) to wear a mask.

Individuals Who May Be Exempt Include Individuals Who:

- Do not understand how to remove their mask due to cognitive impairment

- Cannot remove a mask on their own due to dexterity/mobility impairments

- Cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders

- Cannot wear a mask because doing so would impede the function of assistive devices/technology

Medical Professional/Medical Doctor's Name: _____THIS FORM IS ILLEGAL_____

An airline is not allowed to require passengers seeking mask
License Type: ____exemptions to do so in advance. "May a carrier require a passenger
License Issued Date:____
with a disability to provide advance notice that he or she is
License Number:____traveling on a flight? As a general matter, you must not require a
NPI number (if available):____
passenger with a disability to provide advance notice of the fact
Jurisdiction of License:____that he or she is traveling on a flight." 14 CFR § 382.25.

Business Name: _____*6_____

Business Phone Number: _____*6_____

Signature: _____*6_____    Date: _____10-25-21_____

**M███ S█████████ age 4, autism**
**Mask Exemption Request to Spirit Airlines**
**Notes on Spirit's Numerous Illegal Policies**
**BOS-MYR-MCO Oct. 26, 2021**

1. It is a fraudulent misrepresentation to state that "federal law" requires airline passengers wear masks. Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. If you believe I am in error, please cite the statute number in the U.S. Code you refer to or the Code of Federal Regulations number.

2. Airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

3. An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4. Federal law does not permit airlines to mandate that disabled passengers check in earlier than non-disabled passengers. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

5. An airline may not require disabled passengers needing a mask exemption to undergo a medical screening with your third-party vendor. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, you may also not require a third-party medical consultation. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

6. An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, i.e. has tested positive for the coronavirus.

Requiring a medical certificate also violates the Convention on International Civil Aviation. You may not require passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

7. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

   Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

8. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

9. Federal law prohibits changing a disabled passenger's travel dates and/or flights. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

10. You may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

11. Selling Masks that Are Experimental Medical Devices Proven to Harm Human Health & Forcing Passengers to Wear Them in Violation of the Food, Drug, & Cosmetic Act: Spirit is violating the FDCA by selling masks to passengers without providing us our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device. 21 USC § 360bbb-3(e)(1)(A)(ii)(III). You may not offer illegal and/or EUA masks to your passengers without informing us that use of the device is optional and we must give informed consent. This constitutes reckless endangerment.

   You are selling FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

   By selling unauthorized or EUA masks to your customers, Spirit is practicing medicine without a license. You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

   You haven't told your passengers about the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread.

See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. This is a fraudulent misrepresentation of the medical devices you are vending.

12. Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

13. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

    Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage *has* an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

14. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

15. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

16. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

17. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

18. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

You clearly mislead customers that masks may be forced on them without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

19. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

20. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

21. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.

# Complaint or Compliment?

**To submit a compliment or complaint, send us an email by completing the options below and we'll get back to you as soon as possible. You may also send us a complaint by mail to:**

**Spirit Airlines**
**2800 Executive Way**
**Miramar, FL 33025**

**Please select an option below: ***

○ Positive Feedback
◉ Guests with Disabilities
○ Group Reservation
○ Complaint

**Disabilities Topic ***

| Inquiry/Add Services | ⌄ |

**Disabilities Subtopic ***

| Other Disabilities | ⌄ |

**Email Address ***

| ktmlife22@icloud.com |

**First Name ***

| M▆▆▆▆ |

**Last Name ***

| S▆▆▆▆▆ |

**Are you submitting ticket on behalf of someone else? ***

◉ No   ○ Yes

**Subject ***

| Mask-Exemption Demand |

**Description ***

| Please see attached mask-exemption demand |

**Confirmation Code**

| UC7E5F |

**Travel Date**

| 10/26/2021 | 📅 |

**Please upload all attachments in one submission. Also ensure your forms are completed in their entirety before submitting. Instructions can be found here: https://customersupport.spirit.com/en-US/category/article/KA-01487**

| Browse... | M.S. Spirit MER.pdf

**Para una respuesta en español** ☐



Wall v. TSA                                    281                                    Appendix



HOME    MAIL    NEWS    FINANCE    SPORTS    ENTERTAINMENT    LIFE    SHOPPING    YAHOO PLUS    MORE...

Find messages, documents, photos or people

Home

← Back    ↩    ⇜    ➡         Archive    Move    Delete    Spam    •••

Fwd: Your ADA Face Covering Exemption Request                                    Yahoo/Inbox

**Samantha Seklecki**    >                                        Tue, Oct 26 at 1:11 AM

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**From:** Spirit Airlines <booking@fly.spirit-airlines.com>
**Sent:** Tuesday, October 26, 2021, 1:00 AM
**To:**
**Subject:** Your ADA Face Covering Exemption Request

# spirit

## Hello Spirit Guest,

We've received your request to be exempt from wearing a face covering on your upcoming flight due to a disability recognized by the Americans with Disabilities Act. Please note that these exceptions are limited and there is a strict approval process. You must meet all of the requirements listed below:

1. Arrive at the airport 3 hours prior to your flight's scheduled departure since you may be screened by our medical experts.
2. Have your doctor complete either a **Spirit ADA Face Covering Exemption Form** or provide a letter meeting the below requirements. Either must be dated within 10 calendar days prior to each flight on your itinerary (including return flights).

   - Be on the medical doctor office's official letterhead
   - Acknowledge that you have a disability recognized under the ADA/ACAA that inhibits you from wearing a mask or from safely wearing one
   - Acknowledge that the doctor understands that this exemption is not for a person who simply may find mask wearing difficult
   - State that you are under their care and they specialize in the area pertaining to your disability
   - Contain the medical professional's NPI number (if available)
   - Contain the medical professional's license number, license type, and date license was issued
   - Have the license jurisdiction
   - Contain the medical doctor's business name
   - Contain the medical doctor's business phone number

   Please note the following: Spirit reserves the right to contact the medical professional and verify the form or letter. If the form or letter is found to be forged or fraudulent, you will be banned from future flights with Spirit Airlines.

3. Present a negative COVID-19 PCR or Antigen test result, taken within **24** hours prior to scheduled departure at the airport.

   - The test result can be in written or electronic form and must include information that identifies the person, a specimen collection date and the type of test.
   - **Guests who have received the COVID-19 vaccine or tested positive for**

Wall v. TSA                            282                            Appendix

**antibodies must still provide a negative viral test result as described above.**

- If you have recovered from COVID-19 within the last 90 days from your date of travel and have met requirements to end your quarantine, you are NOT required to provide a negative test. However, you must provide documentation of your positive viral test result AND a letter from your healthcare provider or a public health official on official letterhead stating that you have been approved to travel.
- If you're returning to the U.S. from an international destination, in order to obtain a mask exemption, your COVID-19 test must still be taken within 24 hours. You will only need to present one negative COVID-19 test taken within 24 hours.

**Additional information:**

- Guests who are unable to meet these requirements will have to wear an appropriate face mask or will not be allowed to travel on that flight.
- Spirit agents may contact our third-party medical professionals to determine if you're fit to fly without a mask.
- We may place you on a flight that has less guests traveling.
- You may be moved to the back of the aircraft.

**International Travel into the U.S.:**

- Guests must comply with any local face covering requirements while at the international location, including during the flight and while boarding/deplaning the aircraft.

This information is also listed on our **COVID-19 Information Center** under the Frequently Asked Question, "I have an upcoming flight and cannot wear a face mask due to a disability. Do I have to wear a face mask?"

In addition to the requirements previously noted, please keep in mind that if you do not check-in for your flight three (3) hours prior to departure at the airport, we will attempt to process your request, but cannot guarantee that you will be able to travel without a mask.

Thank you and we look forward to serving you!

Spirit Airlines

**BOOK   TRIPS   DEALS   PARTNERS**



Wall v. TSA         283         Appendix

## Mask Exemption for Michael Seklecki Jr. -- 4yo w/ Autism -- Today BOS-MYR-MCO

From: ████████████████████

To:     mamorel@littler.com

Cc:     ppetesch@littler.com; ktmlife22@icloud.com

Date:   Tuesday, October 26, 2021, 02:25 AM EDT

Dear Mr. Morel:

I write on behalf of Michael and Samantha Seklecki, who are seeking to join the case Wall v. Southwest Airlines as plaintiffs after Frontier Airlines denied them boarding Saturday because their son, Michael Jr., can't wear a face mask due to his Autism Spectrum Disorder. The Sekleckis are scheduled to depart BOS on your client Spirit Airlines at 11:22 this morning heading home to Orlando via MYR.

The Sekleckis have sent documents to Spirit demanding a mask exception for Michael Jr., but have not received a response (see attachment). They are concerned Spirit will prohibit the family from flying home today when Michael Jr. is unable to wear a face covering at the boarding gate. I write seeking your intervention to make sure this does become another major incident, which would give the Sekleckis standing to join Wall v. Southwest Airlines as a plaintiffs against Spirit in addition to Frontier.

The incident with Frontier has attracted national media attention, and I have no doubt any similar refusal to transport by Spirit will result in similar negative publicity for your client because it continues to violate numerous laws with its mask policy.

I urge you to call Mr. Seklecki this morning to work out this issue before it becomes a problem in the national spotlight. He can be reached at 321-666-4353.

Thanks for your prompt attention to this matter.

████████


M.S. Jr. Mask Spirit.pdf
2.2MB

lucas.travel

# Spirit Airlines Harasses Autistic 4-Year-Old Boy Suing TSA over Mask Mandate – Quest for 243

7-9 minutes

---

***Airline Made Family Obtain Another Doctor's***

***Note, Forced It to Sit in Back of Plane***



Spirit agents at Boston Logan International Airport

Oct. 28, 2021

By LUCAS WALL

BOSTON, Massachusetts – Spirit Airlines harassed and demeaned a 4-year-old autistic boy Tuesday who is part of a lawsuit against the Transportation Security Administration's

Federal Transportation Mask Mandate, demanding his parents provide a second doctor's note that the child is mask-exempt and then illegally forcing the family to sit in the rear of both flights home from Boston to Orlando, Florida, via Myrtle Beach, South Carolina.

When the Seklecki family tried to check in Tuesday morning for their flights home after ████████.'s specialty medical appointment Monday at Boston Children's Hospital, Spirit supervisor Angelie Aponte told his father, Michael Sr., that he didn't send in paperwork to Spirit. However, Michael Sr. did submit Spirit's illegal form and ████████.'s doctor's note the day before the flight along with four pages of notes explaining how's Spirit's mask policy violates the law in at least 21 ways.

Aponte's primary complaint, in a conversation captured on video and posted to YouTube, was that ████████.'s doctor's note didn't have a date on it.

"See if the doctor can send you a new one with a stamped date," Aponte told the Sekleckis at the check-in counter. "Without the proper documentation, I cannot do something."

She also grumbled that ████████ didn't have a COVID-19 test, which is not required to board any domestic flight in the United States (the Centers for Disease Control & Prevention only requires a negative COVID-19 test for passengers boarding international flights to the United States, a policy being challenged in court).

"He is being denied a mask exemption because his licensed provider did not provide a date written on the form he signed?" Michael Sr. asked Aponte. "Spirit Airlines is refusing to allow him to board the flight, or refusing to allow him an accommodation to not have a mask on, knowing that you have been provided physician's documentation but you are saying it doesn't meet Spirit Airlines' criteria to exempt him?"

Aponte offered to book the Seklecki family of four onto a later flight until they could get a new doctor's note signed and dated by ████████s doctor.

"I'm not refusing to transport him," she said. "I can accommodate you in the next available [flight] until you can provide Spirit the information that you're required." (No federal policy requires a mask-exempt child to present an airline with a dated doctor's letter.)

"It will be either we call the doctor again … or it will be a COVID test," Aponte continued.

Spirit is among seven airlines being sued for its illegal policy in the U.S. District Court in Orlando in a class-action lawsuit by disabled Americans who can't wear masks. The Sekleckis, who are part of ***a different case challenging TSA's FTMM in the U.S. Court of Appeals for the 11th Circuit, are now seeking to join the class action after being denied boarding last week by Frontier Airlines and being harassed by Spirit.

Miguel Morel of the Littler law firm in Miami is defending Spirit in the class-action lawsuit.

The Sekleckis e-mailed him early Tuesday to advise him they would be flying and were concerned about ███████ 's mask exemption, but Morel did not respond. Spirit was going to strand the family in Boston if it could not get another doctor's note.

Fortunately the Sekleckis were able to obtain a second mask-exemption note from ███████ .'s doctor just in time to make the flight to Myrtle Beach, during which they were illegally moved to the back of the plane. The same occurred on their connecting flight home to Orlando. U.S. Department of Transportation regulations prohibit moving a disabled passenger to another seat unless necessary to comply with a Federal Aviation Administration safety rule such as not having children in the exit row.

"It's crazy for Spirit Airlines to determine if the form is acceptable or not rather than my son's licensed pediatrician," Michael Sr. said. "Ms. Aponte said the letter needed to be dated within 10 days of our flight. She was going to cancel our flight if he did not put a mask on, which he can't do because of his disability."

Michael Sr. said it's stressful enough having to take his son out of state for specialized medical care. The behavior of Spirit and Frontier airlines have only made things that much more difficult.

"When I called the doctor's office to get another mask-exempt note, the office manager was totally appalled Spirit would deny a 4-year-old autistic child a flight – and so should all Americans," Michael Sr. said. "We almost missed our flight because of this nonsense. They were shutting the door as we got to the gate."

He said Spirit's gate agent told him condescendingly, "Next time follow the rules for the masks and you won't miss your flight." He then admitted Spirit seated the family in the last row because Michael Jr. can't wear a mask.

"That was a horrible feeling to have our 4-year-old child have to sit in the back of the plane because he did not wear a mask for a medical reason," Michael Sr. said. "We had booked seats closer to the front. That shows a total disrespect to him and his parents for us to endure that type of abuse."

Demanding numerous doctor's notes for ███████ .'s conditions, which is illegal under DOT regulations, is an awful invasion of privacy, Michael Sr. said.

"Supervisor Aponte not only made me share these letters from my son's physician, she took photos of them on her phone, so they could go anywhere," he said. "It's absolutely appalling for an airline corporation overruling a doctor. Spirit does not have a license to practice medicine. That is a crime."

Michael Sr. also has a medical condition that precludes him from being able to tolerate covering his face. Spirit denied his mask exemption, but he said he didn't have time to

Wall v. TSA                     287                     Appendix

fight it.

"Wearing a mask is horrible," he said. "It makes me so irritated. My face breaks out."

Shannon Bream of Fox News Channel interviewed Michael Sr. on her show early Tuesday about the family's horrific experience with Frontier. That airline refused to allow the family of four to board a flight from Orlando to Hartford, Connecticut, Oct. 23 because of █████ █'s disability. This happened despite the fact the Sekleckis submitted their son's mask exemption to Frontier in advance, even though DOT regulations prohibit airlines from requiring advance notice.

Saturday's incident with Frontier was also captured on video and posted to YouTube. The family had to take a Delta flight 13 hours later Saturday. Unlike Frontier, Delta did accommodate ████████.'s mask exemption.

Donate to our legal fund on GoFundMe: Help End Federal Transportation Mask Mandate

Join our Facebook group: Americans Against Mask Mandates

View: 223 Studies, Articles, & Videos Describe How Masks Don't Reduce COVID-19 Spread But Harm Human Health

Wall v. TSA                          288                          Appendix

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

# Air Travel Service Complaint or Comment Form (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

Items marked with a * are required.

### Personal Information:

**I am**       Passenger ▾ *

**Your Name:**

**Title:** ▾   **First Name:**   Michael *

**Last Name:**   Seklecki *

### Contact Information:

**Address:**

**City:**   Sanford       **State:**   Florida ▾

**Zip Code:**       **Home Phone:**

Either Email Address or Daytime Phone is required

**Email Address:**   ktmlife22@icloud. *     **Verify Email Address:**   ktmlife22@icloud. *

**Daytime Phone:**   321-666-4353 *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

**Complaint/Comment Information:**

**Airline/Company:**

SPIRIT AIRLINES ⌄  * (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**  10/26/2021 📅 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

BOS-MYR-MCO   (Cities / Flight Number)

**Description of Problem/Inquiry /Comment**\*

Spirit Airlines harassed and demeaned my
4-year-old autistic son who can't wear a face
mask. We almost missed our flight out of Boston
because Spirit forced us to obtain another
medical certificate, but asking for a
certificate violates the Air Carrier Access
Act. We were also forced to sit in the back of

(Chars left: 3000)

**Attach a file (Optional):**

**File Name: (Please click the "Browse" button to select the file and click "Upload File" button.)**

Browse... No file selected.    Upload File

**Uploaded file/s**



C:\fakepath\Seklecki Spirit Complaint.pdf   Remove file

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

Submit    Reset    Cancel

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200*

https://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm        2



Plan Travel    Travel Information    AAdvantage

 (/i18n/travel-info/partner-airlines/oneworld-airline-partners.jsp)

# Your trip is booked

We'll email your confirmation shortly. Thanks for choosing American Airlines.

Your trip to Phoenix, AZ

Your trip to Phoenix, AZ

Record Locator: ▇▇▇▇▇

$534.40

Trip name: **MCO/PHX**

---

**DEPART**

## MCO to PHX

Fri, Nov 12, 2021

**12:48 PM → 8:16 PM**

$534.40

View trip details, request upgrades, change seats and more.

**Manage your trip**

---

Passengers

Lucas Wall
Ticket number: ▇▇▇▇▇
Status: **Ticketed**

Michael Seklecki
Ticket number: ▇▇▇▇▇
Status: **Ticketed**



## Don't leave miles behind

Earn miles from this flight and redeem them for flights, hotels, cars and more.

Join AAdvantage for free 🗗



## Travel with benefits

Get your first checked bag free on domestic itineraries with this credit card offer.

Card offer details 🗗 (https://creditcards.aa.com /citi-platinum-card-american-airlines-bp/?utm_medium=referral&utm_source=aa& utm_campaign=bpfinish)



HOME    MAIL    NEWS    FINANCE    SPORTS    ENTERTAINMENT    LIFE    SHOPPING    YAHOO PLUS    MORE...

Find messages, documents, photos or people          Home

← Back    Archive    Move    Delete    Spam    ...

**American Airlines**
aa.com                                    Visit site    ...

Your trip confirmation (MCO - PHX)                    Yahoo/Inbox

American Airlines <no-reply@notify.email.aa.com>          Thu, Nov 4 at 1:36 AM
To:

## American Airlines

Issued: November 4, 2021

## Your trip confirmation and receipt

### Record Locator: AFGCWJ

We charged $534.40 to your card ending in 8403 for your ticket purchase.

A face covering is required while flying on American, except for children under 2 years old. You are also required to wear a face covering while in the airport before and after your flight. Read more about travel requirements.

You'll need your record locator to find your trip at the kiosk and when you call Reservations.

Manage your trip

### Friday, November 12, 2021

| MCO | | AUS | Seat: | |
|-----|---|-----|-------|---|
| 12:48 PM | → | 2:45 PM | Class: | Economy (V) |
| Orlando | | Austin | Meals: | |
| AA 2260 | | | | |

| AUS | | PHX | Seat: | |
|-----|---|-----|-------|---|
| 6:40 PM | → | 8:16 PM | Class: | Economy (V) |
| Austin | | Phoenix | Meals: | |
| AA 1760 | | | | |

### Your payment

Credit Card ( Visa ending 8403 )                    $534.40

**Total paid**                                      **$534.40**

Wall v. TSA                    292                    Appendix

## Your purchase

**LUCAS WALL**

Join the AAdvantage® Program

| | |
|---|---|
| New ticket<br>Ticket #: 0012310315212<br>[ $226.98 + Taxes and fees $40.22 ] | $267.20 |
| **Total** | **$267.20** |

**MICHAEL SEKLECKI**

| | |
|---|---|
| New ticket<br>Ticket #: 0012310315213<br>[ $226.98 + Taxes and fees $40.22 ] | $267.20 |
| **Total** | **$267.20** |

| | |
|---|---|
| **Total cost** (all passengers) | **$534.40** |

## Bag information

### Checked bags

| Online* | | Airport | |
|---|---|---|---|
| 1st bag | 2nd bag | 1st bag | 2nd bag |
| $30.00 | $40.00 | $30.00 | $40.00 |

Maximum dimensions: 62 inches or 158 centimeters calculated as (length + width + height)
Maximum weight: 50 pounds or 23 kilograms

Bag fees apply at each Check-in location. Additional allowances and/or discounts may apply. Bag and optional fees
If your flight is operated by a partner airline, see the other airline's website for carry-on and checked bag policies.

*Online payment available beginning 24 hours (and up to 4 hours) before departure.

### Carry-on bags

American Airlines 

# Contact American

## How can we help you?

Send us your comment, question or suggestion, or make a request. We'll be in touch as soon as we can.

( • Required)



Topic •

Disability assistan

Subject •

Request disability

## Contact information

Title

Select your title

First name •

Michael

Last name •

Seklecki

Suffix

Select your suffix

Country / region •

United States

Address •

2024 Courtyard Loo

Address 2

City •

Sanford

State •

Florida

Postal code •

32771

AAdvantage® number

Primary phone •        Secondary phone

| +1 | 321-666-4 |   | Sele | Number |

Primary email •        Confirm primary email
•

ktmlife22@icloud.co     ktmlife22@icloud.co

# Type of assistance needed

Assistance type •

(Select all that apply.)

☐ Connection assistance for customers with cognitive disability

☐ Wheelchair

☐ Portable oxygen concentrators (POCs)

☐ Medical devices

☑ Other special assistance needs

Describe other special assistance needs •

Mask exemption

Characters remaining: 1486

# Flight information

Is assistance needed related to your flight?

● Yes  ○ No

Confirmation / Record locator ●

AFGCWJ

Flight number ● | Flight date ● | From ● | To ●

2260 | 11/12/2021 | MCO | PHX

# Your message

Comments

I require a mask exemption due to my medical conditions. I am unable to safely wear a mask.

Characters remaining: 1409

Cancel    Submit

Wall v. TSA                    296                    Appendix

## Mask-Exemption Demand for Michael Seklecki

From:  Lucas Wall ████████████████

To:  sac@aa.com

Cc:  ktmlife22@icloud.com

Date:  Wednesday, November 10, 2021, 01:03 PM EST

Dear American Airlines:

I write on behalf of Michael Seklecki. He is scheduled to fly with me from Florida to Arizona on Nov. 12. He has submitted a mask-exemption demand for our flights from MCO to PHX via AUS. See attachment. Also attached are notes on American's numerous illegal mask policies.

Please be advised I am the lead plaintiff in a class-action lawsuit suing seven airlines for discriminating against the disabled by requiring masks be worn even though we suffer from medical conditions and can't safely wear a mask. Wall v. Southwest Airlines, No. 6:21-cv-1008 (M.D. Fla.) Your exemption procedures violate the Air Carrier Access Act and numerous other laws, regulations, and treaties. Mr. Seklecki has contacted me about joining as a plaintiff should his mask exemption be rejected.

Please send him a letter granting his mask exemption. If you do not, I ask you have your lawyer contact Mr. Seklecki as soon as possible. If his mask-exemption demand is denied, I plan to soon add American as a defendant in the lawsuit.

Thank you for your prompt attention to this matter.

*Lucas Wall


AA Mask Notes Michael S.pdf
886.8kB


Michael S MER1.pdf
204.5kB

Home    **LOG IN**     English ▼    Search AA.com®    🔍



PLAN TRAVEL   TRAVEL INFORMATION   ADVANTAGE   

🏠 Home  ›  Travel updates

# Travel updates



## Health and testing requirements

The U.S. and countries around the world have a range of travel restrictions and testing requirements due to COVID-19. You may not be allowed to travel to certain destinations or may be required to self-quarantine when you arrive.

Travel requirements are updated often, so we recommend checking the latest entry requirements before your trip.

Travel and health restrictions by destination 🔗

When you check-in for your trip you'll be asked to confirm you've been free of COVID-19 symptoms for the past 10 days.

## U.S. entry requirements

Starting November 8, 2021, the U.S. government is changing requirements to enter the U.S. based on citizenship / residence and vaccination status. All travelers 2 and older entering the U.S. must provide a negative COVID-19 test and their contact information within 72 hours of departure. Travelers must also sign an attestation form confirming they meet U.S. entry requirements or will not be allowed to board the plane.

⌄ How U.S. travel requirements apply to you

⌄ Vaccine and testing requirements

⌄ Attestation forms

⌄ Contact tracing

# Face coverings

*1

U.S. federal law requires that you wear a face covering at all times while indoors at the airport and on board your flight, regardless of vaccination status. If you refuse to wear one, you may be denied boarding and future travel on American. You may also face penalties under federal law. *1

These rules do not apply to children under 2, or if you have a disability that prevents you from wearing a face covering and meet the exemption requirements.

Visit the Centers for Disease Control and Prevention (CDC) website for more information about the mask requirement.

Requirement for face masks on planes and in airports ⧉

You should bring your own face covering to use while traveling. While limited quantities of face coverings may be available at the gate, they will not be available for every customer on every flight.

⌄ Acceptable face coverings

- A mask or 2 layered secured cloth that completely covers your nose and mouth and fits snugly to the sides of your face and under your chin
- Face shields worn with a face covering, but not in place of one

## These are not acceptable as face coverings

- Balaclavas
- Bandanas
- Face covers with exhaust valves or vents
- Face covers made of mesh or lace type fabric
- Gaiters
- Scarves
- Ski masks

CDC recommendations for face coverings ⧉

⌃ During your flight

- Your face covering must be worn and visible at all times, including if you plan to sleep.
- You can briefly lower or remove your face covering while actively eating, drinking or taking oral medication, but it must be worn between bites and sips.
- If oxygen masks drop from an overhead compartment, remove your face covering before placing the oxygen mask over your nose and mouth.

## These may not be used on board

For the safety of everyone on board, some types of recreational / personal protection equipment are not allowed for use on our planes or in flight:

- Face or full-body pods / tents
- Portable electronic air fresheners / purifiers
- Ozone generators

Restricted items »

Mobility and medical devices »

## Exemption for customers with disabilities*

If you may be exempt because you have a disability that prevents you from safely wearing a mask as defined by the Americans with Disabilities Act (42 USC 12101 et. seq) you must contact us at least 72 hours before you plan to travel ★ 2 and travel with documentation confirming a negative COVID test or recovery. ★ 3

Please note, making false claims of a disability or a health condition to obtain an exemption from wearing a face covering may result in denial of travel on American for the duration of the U.S. federal mask requirement.

Call Special Assistance: 800-237-7976

*This is a narrow exception that includes a person with a disability who cannot wear a mask for reasons related to the disability. It is not meant to cover persons for whom mask-wearing may only be difficult.

# Travel flexibility

We're making travel easier by giving you even more flexibility and the freedom to make your own choices when you fly with us.

Here's what you can expect:

- No more change fees for all domestic, short-haul international and select long-haul international flying on Premium Cabin, Premium Economy and Main Cabin fares. Basic Economy fares bought on or after April 1, 2021 are non-refundable and non-changeable.
- Fly standby for free on earlier domestic flights, including Puerto Rico and the U.S. Virgin Islands, to the same destination on the same day.
- If you buy Basic Economy fares you may now buy extras like upgrades, seats, priority boarding and same-day flight changes.
- AAdvantage® elite members may apply their travel benefits on all tickets, including on Basic Economy fares.

## Domestic, short-haul international and select long-haul international flights

**Michael Seklecki**
**Mask Exemption Request to American Airlines**
**Notes on American's Numerous Illegal Policies**
**MCO-AUS-PHX Nov. 12, 2021**

1.  You falsely represent that "federal law" requires airline passengers wear face masks. But Congress has never enacted such a law. This is a fraudulent misrepresentation of the law. If you disagree with me, please provide the citation for the U.S. Code as to which statute requires airline passengers don face masks. Or if you believe there is duly promulgated regulation requiring such, please cite the Code of Federal regulations section.

2.  An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

3.  An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease.

    Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). *See also* 49 USC § 41705.

4.  An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, i.e. has tested positive for the coronavirus.

    Requiring a medical certificate also violates the Convention on International Civil Aviation. You may not require passengers with disabilities needing a mask exemption to submit a medical clearance (letter from doctor). The United States has ratified CICA, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5.  An airline may not refuse transportation solely on the basis of a passenger's disability such as inability to wear a mask. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

6.  Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

7. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

    Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1).

    Your mask policy doesn't provide for making an "individualized assessment" of whether someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage **has** an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

8. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

9. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

10. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

11. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

12. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III). You may not provide illegal and/or EUA masks to your passengers without informing them use of the device is optional and they must give informed consent. This constitutes reckless endangerment.

13. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

14. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc.

    You clearly mislead customers that masks may be forced on passengers without their consent in violation of the FDCA. DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

15. Fraudulent Misrepresentation: You provide FDA unauthorized or EUA face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.

    You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. *See* 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the FDCA and your other legal obligations is a fraudulent misrepresentation.

16. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

17. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

18. You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United

States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.

## American Airlines

From: SAC (sac@aa.com)

To: ███████████████████

Cc: ktmlife22@icloud.com

Date: Wednesday, November 10, 2021, 01:53 PM EST

Michael  Seklecki,

American provides limited exemptions from the federal mask mandate for customers with a disability who cannot wear a mask, or cannot safely wear a mask, because of their disability as defined by the Americans with Disabilities Act (ADA). In order to receive consideration for an exemption, you must contact us at least 72 hours before you plan to travel. An official, dated letter from a licensed medical provider must be provided at least 24 hours prior to the scheduled departure of your flight and must contain the following elements:

- Official letterhead from the medical provider with their license number, contact information and date
- Customers name
- Attestation that the customer has a medically diagnosed physical or mental disability that qualifies under the Americans with Disabilities Act (42 USC 12101 et. seq) and because of that disability cannot wear or safely wear a mask for the duration of travel
- Description of why the customer is unable to wear or safely wear a mask for the duration of travel
- Signature of the licensed medical provider

Once completed, letters should be emailed as an attachment to SAC@aa.com with the subject containing the letters NMOK, the record locator of the customer, initial date of travel and customers name.

If your request is approved, it will be conditional upon validation of a negative COVID test (either PCR or Antigen) taken within 72 hours of departure – this must be presented upon check-in at the airport. Additionally, the approval is only valid on requested reservation.

Please keep in mind that these exceptions are very narrow in definition and includes a person with a disability who cannot wear a mask for reasons related to the disability. Your medical provider

Wall v. TSA                                    305                                    Appendix

may be contacted for additional information. Additionally, AA may consult with a third-party
medical provider regarding the letter.

Thank you, Misty

American Airlines Special Assistance Coordinator



 **PLAN TRAVEL** **TRAVEL INFORMATION** **AADVANTAGE**® 

# Your trip

 Your trip was canceled

Record locator: **AFGCWJ**                    Status: **Canceled**

Coronavirus travel updates and rebooking your trip 🗗
Seats terms and conditions 🗗

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

Items marked with a * are required.

**Personal Information:**

I am            [Passenger ▾] *

Your Name:

Title:          [ ▾]     **First Name:**     [Michael] *

Last Name:      [Seklecki] *

**Contact Information:**

Address:        [                    ]

City:           [Sanford]        **State:**
                                 [Florida ▾]

Zip Code:       [        ]        **Home Phone:**     [            ]

Either Email Address or Daytime Phone is required

**Email Address:**              **Verify Email Address:**
[ktmlife22@icloud.] *           [ktmlife22@icloud.] *

**Daytime Phone:**
[321-666-4353] *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

**Complaint/Comment Information:**

**Airline/Company:**

[ AMERICAN AIRLINES          ⌄ ]  *  (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**     [ 11/12/2021 ] 🗓  (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

[ MCO-AUS-PHX                              ]   (Cities / Flight Number)

**Description of Problem/Inquiry /Comment***

American violated numerous sections of the Air
Carrier Access Act by refusing to grant me a
medical exemption from its mask mandate. I had
to cancel my flight as a result. See numerous
attached documents.

American's mask-exemption procedures violate        (Chars left: 2723)

**Attach a file (Optional):**

**File Name: (Please click the "Browse" button to select the file and click "Upload File" button.)**

[ Browse... ]  Seklecki AA Complaint.pdf  [ Upload File ]

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may

 Gmail

**Michael Seklecki <seckleckimichael52@gmail.com>**

---

**Your trip confirmation (MIA - MHT)**
1 message

---

**American Airlines** <no-reply@notify.email.aa.com>                    Sun, Feb 13, 2022 at 10:33 PM
To: SECKLECKIMICHAEL52@gmail.com

                                                    

---

Issued: February 13, 2022

# Your trip confirmation and receipt

## Record Locator: QXONHP

We charged $145.20 to your card ending in 3185 for your ticket purchase.

A face covering is required while flying on American, except for children under 2 years old.
You are also required to wear a face covering while in the airport before and after your
flight. Read more about travel requirements.

You'll need your record locator to find your trip at the kiosk and when you call
Reservations.

<div style="border:1px solid #4285f4; text-align:center; padding:10px;">

Manage your trip

</div>

---

## Tuesday, February 22, 2022

| MIA | | DCA | | Seat: | |
|-----|--|-----|--|-------|--|
| **5:20** PM | → | **7:49** PM | | Class: | Economy (O) |
| Miami | | Washington Reagan | | Meals: | |
| **AA 1526** | | | | | |

| DCA | | MHT | Seat: | 13D, 13F |
|-----|--|-----|-------|----------|
| **10:10** PM | → | **11:42** PM | Class: | Economy (O) |
| Washington Reagan | | Manchester | Meals: | |

**AA 5283**

Operated by Psa Airlines as American Eagle

---

Earn 10,000 bonus miles

Plus $50 back and no annual fee. Terms Apply.

Learn more



## Your payment

Credit Card (Visa ending 3185)                                    $145.20

**Total paid**                                                    **$145.20**

---

## Your purchase

**MICHAEL SEKLECKI**

Join the AAdvantage® Program

New ticket                                                        $72.60
Ticket #: 0012405534489
[$45.58 + Taxes and fees $27.02 ]

**Total**                                                         **$72.60**

███████████████████

New ticket                                                        $72.60
Ticket #: 0012405534488
[$45.58 + Taxes and fees $27.02 ]

Total                                                                $72.60

**Total cost** (all passengers)                                     **$145.20**

---

## Bag information

### Checked bags

MIA - MHT

**Online***

| 1st bag | 2nd bag |
|---------|---------|
| $30.00  | $40.00  |

**Airport**

| 1st bag | 2nd bag |
|---------|---------|
| $30.00  | $40.00  |

Maximum dimensions: 62 inches or 158 centimeters calculated as (length + width + height)
Maximum weight: 50 pounds or 23 kilograms

Bag fees apply at each Check-in location. Additional allowances and/or discounts may apply.
Bag and optional fees
If your flight is operated by a partner airline, see the other airline's website for carry-on and
checked bag policies.

*Online payment available beginning 24 hours (and up to 4 hours) before departure.

---

### Carry-on bags

**1st carry-on:** Includes purse, briefcase, laptop bag, or similar item that must fit under the seat in
front of you.

**2nd carry-on:** Maximum dimensions not to exceed: 22" long x 14" wide x 9" tall (56 x 35 x 23
cm).

---

   

Book a hotel »      Book a car »  Buy trip insurance »      Things to do »

Peter Soares
Managing Director, Legal Affairs



February 16, 2022

BY EMAIL (sekleckimichael52@gmail.com)

Mr. Michael Seklecki, Sr.
2024 Courtyard Loop #106
Sanford, FL 32771

> Re:    February 22, 2022 Flights on American Airlines and American Eagle for Minor
>          Son (4 years old) Mask Exemption (Record Locator QXONHP)

Dear Mr. Seklecki:

This letter will confirm that American Airlines, Inc. has granted a conditional exemption to your four year-old minor son – ▇▇▇▇▇▇ – to fly on February 22, 2022 on American Flight No. 1526 from Miami International Airport (MIA) to Washington Reagan National Airport (DCA), and connecting on to Manchester-Boston Regional Airport (MHT) via American Flight 5283 (operated by PSA Airlines d/b/a American Eagle) – Record Locator QXONHP. The flight is scheduled to depart MIA at 5:20 p.m., Eastern Standard Time, with the second leg scheduled to leave DCA at 10.10 p.m., Eastern Standard Time, and to land at MHT at 11.42 p.m., Eastern Standard Time.

This mask exemption for your son is conditioned on your providing a negative COVID-19 test result– PCR or antigen –on behalf of your son in order for your son to fly on AA Flight Nos. 1526 and 5283 on February 22, 2022. The negative test must have been taken within 72 hours of departure of your initial flight on February 22, 2022, and the test result must be provided to American Airlines at check-in for the MIA-DCA leg of the flight.

This letter must be kept in your possession during travel as proof of your son's exemption and may be requested by TSA, or airport or airline personnel. To increase safety measures while traveling, we do ask that, if it is possible, you and your son pre-board the aircraft and get comfortably situated before other passengers begin to board.

In addition, American Airlines will permit your son to travel on other domestic American Airlines flights within the next 30 days (from February 16, 2022 to March 18, 2022), without wearing a mask, provided that the negative COVID-19 test for your son that was taken within 72 hours of departure is given to American at check-in, as stated above.

MD8B503, PO Box 619616
Dallas, Fort Worth Airport, TX 75261-9616
Email: Peter.Soares@aa.com





In the event that ▮▮▮▮▮ chooses to travel on any future flights after March 18, 2022 with American Airlines, it will be necessary for you to book the flight and request that American Airlines grant a new mask exemption for Michael Jr. **no later than seven days prior to scheduled departure**.

Finally, with regard to your own request for a mask exemption, American has considered your documentation and completed exemption application form. Based on guidance from our third-party medical provider, American must inform you that you do not qualify for an exemption. As such, American cannot transport you if you will not be wearing a mask.

Thank you for flying with American.

Yours truly,

2

# ⓘ Please check the page for errors

( • Required)

We have found more than one passenger with the name you have entered. We are unable to identify your record. For assistance, please contact AA Reservations to add your AAdvantage number to your reservation.

Passenger first name •

Michael

Passenger last name •

Seklecki

🔒 aa.com

lucas.travel

# American Refuses to Board 4-Year-Old Autistic Boy with Mask Exemption Despite Judge's Instructions – Quest for 243

5-6 minutes

---

***Child at Risk of Missing Critical Medical***

***Appointment Tomorrow Morning in Boston***

Feb. 22, 2022

By LUCAS WALL

MIAMI, Florida – American Airlines today refused to board a 4-year-old autistic boy despite his obtaining a mask-exemption letter from the carrier at the instruction of a federal judge. The family is currently stranded at Miami International Airport trying to find another way to get to Boston for the boy's 11 a.m. medical appointment tomorrow at Massachusetts General Hospital.

A federal judge Feb. 16 directed American Airlines and Southwest Airlines to issue ███████████ ██ of Sanford, Florida, who suffers from Autism Spectrum Disorder, a letter exempting him from having to a wear a mask while traveling for the next 30 days until more in-depth court proceedings can be held. American and Southwest complied, but American included an unlawful provision that Michael Jr. has to submit a PCR or antigen COVID-19 test at check in.

Despite objections, the Sekleckis fulfilled that request by testing ████████ using an at-home kit obtained from the federal government. On the government website, it clearly states the "The tests available for order are rapid antigen at-home tests," meeting American's requirement to submit a PCR or antigen test at check in.

"American's continued discrimination against the disabled is horrific and demeaning," Michael Seklecki Sr. said in a phone interview shortly after American Flight 1526 departed Miami at 5:39 p.m. without the family. "We had to book this specialized healthcare appointment for my son almost three months in advance. We went to federal court to ensure American complies with the law, obtained an exemption letter, and it still refused to allow my special-needs son to fly without a mask."

In a Feb. 18 e-mail to American, Seklecki Sr. wrote: "It is illegal to require a disabled person submit a negative COVID-19 test when this requirement does not equally apply to the nondisabled. Please let me know when American is going to change its unlawful policy." The airline did not respond.

Seklecki Sr. said he arrived at MIA more than 2.5 hours before departure time, but American agents refused to check them in because they would not accept ████████ COVID-19 antigen test. Seklecki Sr. showed the mask-exemption letter signed by Paul Soares, American's managing

director legal director of legal affairs, and told the agents it was issued after a hearing in federal court. Customer-service agent Innolene, who refused to give her last name, acted with hostility, Seklecki Sr. said, not printing their boarding passes and saying she wouldn't refund their tickets or arrange for other flights. She even threatened to call the police on Michael Jr., his father, and his mother.

Attempts to reach American's lawyers were unsuccessful, he said.

Motions to hold American Airlines, Soares, and Innolene in contempt of court and to compel American to remove the illegal testing requirement from ████████ mask-exemption letter will be filed in the next day or two, Seklecki Sr. said.

U.S. District Judge Patti Saris scheduled an emergency hearing for Feb. 16 after the two carriers and the Centers for Disease Control & Prevention refused to grant a mask exemption to ████████ who must travel to Boston regularly for specialized medical care at Boston Children's Hospital and Massachusetts General Hospital. During the brief proceeding last week, she directed Roy Goldberg, counsel for American and Southwest, to issue Seklecki's father, Michael Sr., a mask-exemption letter valid for 30 days on both airlines.

The Sekleckis were booked to fly from Florida to New England this evening on American and have a reservation to return tomorrow on Southwest after ████████s appointment at MGH. They must then fly again up to Boston on Feb. 27 because the boy has more appointments Feb. 28 to March 2 followed by surgery March 3 at BCH. Those tickets have yet to be booked.

Michael Sr. filed the lawsuit Jan. 28 and moved for injunctions against the government Feb. 3 and the two airlines Feb. 8. He demands $400,000 in damages from American and Southwest for unlawful discrimination and an end to the Federal Transportation Mask Mandate and airlines' mask policies. He seeks additional compensation from all American and Southwest workers who participated in the conspiracy to deprive disabled passengers of their civil rights.

The case is *Seklecki v. Centers for Disease Control & Prevention*, No. 1:22-cv-10155.

Donate to our legal fund on GoFundMe: Help End Federal Transportation Mask Mandate

Join our Facebook group: Americans Against Mask Mandates

View: 227 Studies, Articles, & Videos Describe How Masks Don't Reduce COVID-19 Spread But Harm Human Health

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form  (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

Items marked with a * are required.

### Personal Information:

**I am**    [Passenger ▾] *

**Your Name:**

**Title:**  [ ▾]    **First Name:**    [Michael]  *

**Last Name:**  [Seklecki]  *

### Contact Information:

**Address:**  [ ]

**City:**  [Sanford]    **State:**  [Florida ▾]

**Zip Code:**  [ ]    **Home Phone:**  [ ]

Either Email Address or Daytime Phone is required

**Email Address:**  [ktmlife22@icloud.]  *    **Verify Email Address:**  [ktmlife22@icloud.]  *

**Daytime Phone:**  [321-666-4353]  *

**Would you like a copy of this submission sent to your email?**
◉ Yes  ○ No

https://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm        1

**Complaint/Comment Information:**

**Airline/Company:**

[ SOUTHWEST AIRLINES ▾ ] *  (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):** [ 10/23/2021 ] 🗓 (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**

[ MCO-BOS ]  (Cities / Flight Number)

**Description of Problem/Inquiry /Comment***

My family and I were scheduled to fly Southwest Airlines from Orlando to Boston for my 4-year-old son's specialized medical care at Boston Children's Hospital. Southwest informed me by telephone that it would refuse us transportation because my autistic son can't wear a face covering. Southwest referred us to

(Chars left: 2298)

**Attach a file (Optional):**

**File Name:** (Please click the "Browse" button to select the file and click "Upload File" button.)

[ Browse... ] No file selected.     [ Upload File ]

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]  [ Reset ]  [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200 New Jersey Avenue, SE, Washington, D.C. 20590.*

If you use the web complaint form above, we would welcome any comments that you may

https://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm    2

Home › Resources › For Individuals › Aviation Consumer Protection › File a consumer complaint

## Air Travel Service Complaint or Comment Form (Not Related to Airline Safety or Security Issues)

Please use this form to file a complaint or comment about service you received or requested from an airline or ticket agent that does not relate to airline safety or security. This may include, but is not limited to, topics such as flight delays and cancellations, overbooking, disability, tarmac delays, baggage, discrimination, refunds, ticketing practices, family seating, frequent flyer programs, charter flights, privacy and air ambulance service.

The information that you provide in your complaint or comment form will be provided to the appropriate airline or ticket agent. More detailed information about DOT's complaint handling process, and other helpful information for air travelers is available here.

Items marked with a * are required.

### Personal Information:

**I am**          Passenger ▼  *

**Your Name:**

**Title:**  ▼   **First Name:**   Michael  *

**Last Name:**  Seklecki  *

### Contact Information:

**Address:**

**City:**  Sanford          **State:**  Florida ▼

**Zip Code:**          **Home Phone:**

> Either Email Address or Daytime Phone is required
>
> **Email Address:**  ktmlife22@icloud.  *   **Verify Email Address:**  ktmlife22@icloud.  *
>
> **Daytime Phone:**  321-666-4353  *

**Would you like a copy of this submission sent to your email?**
● Yes  ○ No

**Complaint/Comment Information:**

**Airline/Company:**
[ SOUTHWEST AIRLINES ▼ ]  *  (If not listed or not applicable select "OTHER")

**Flight Date (if applicable):**
[ 11/13/2021 ] 🗓  (Date Format: mm/dd/yyyy)

**Flight Itinerary (if applicable):**
[ SLC-MCO Flight 2045 ]  (Cities / Flight Number)

**Description of Problem/Inquiry/Comment***

My son and I were scheduled to fly Southwest
Airlines from Salt Lake City to Orlando.
Southwest informed me by telephone that it
would refuse us transportation because my
autistic son can't wear a face covering.
Southwest referred us to its website, where
numerous illegal procedures are listed that

(Chars left: 3000)

**Attach a file (Optional):**

**File Name: (Please click the "Browse" button to select the file and click "Upload File" button.)**

[ Browse... ] No file selected.   [ Upload File ]

**Uploaded file/s**

C:\fakepath\11-04-21 Southwest Booking SLC-MCO.pdf  Remove file

**Incidents of Sexual Misconduct:**

If your complaint relates to or includes allegations of sexual misconduct, a copy of your complaint will be sent to the FBI. Sexual misconduct is a broad term. It encompasses any behavior or attempted behavior of a sexual nature that is committed without consent or with someone incapable of consent, or by force, intimidation, coercion, or manipulation. Sexual misconduct also includes physical or verbal advances or harassment of a sexual nature, or public indecent exposure.

[ Submit ]   [ Reset ]   [ Cancel ]

**Note - Please only hit Submit once as our system sometimes takes a few moments to process your complaint.**

*A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2105-0568. Public reporting for this collection of information is estimated to be approximately 15 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are voluntary, and will be provided confidentiality to the extent allowed by the Freedom of Information Act (FOIA). Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Aviation Consumer Protection Division, Office of the Secretary, W96-473, 1200*

https://airconsumer.dot.gov/escomplaint/ConsumerForm.cfm                2

# F

## PETITIONER MICHAEL FARIS' EXHIBITS



**New York Neurology and Medical Services, P.C.**
Dr. Russell Surasky FAAN, ABPM, Board Certified Neurologist
15 Barstow Road ♦ Great Neck, N.Y. 11021 ♦ 516.487.9414 ♦ *telefax:* 516.487.2302

Date: 05/13/2021

Re: Michael Faris ████████

Michael Faris has been under my medical care since April 24, 2021. The patient has a medically diagnosed mental disability that qualifies as such under the American Disabilities Act and because of the disability, he can not safely wear a mask for the duration of travel. He is diagnosed with Generalized anxiety disorder. The patient is currently being treated for this disability. Wearing a mask has led to severe panic attacks and near syncope. It is my recommendation that he not be mandated to wear a mask as it has proven to be detrimental to his health.

If you require any further information or documentation please do not hesitate to contact my office.

Sincerely,

Dr. Russell Surasky, ABPN, ABAM
Board Certified Neurologist

Dr. Russell Surasky FAAN, ABAM
Board Certified : Neurologist
Board Certified: Addiction Medicine
LIC # ████████
DEA # ████████



Home   👤 Michael    🇺🇸 English ▾    Search AA.com®   🔍

**PLAN TRAVEL  TRAVEL INFORMATION  AADVANTAGE®**



# Your activity

« Back to your account

## MICHAEL JAMES FARIS

Platinum  •  Award miles: 16,233  •  Million Miler℠ balance: 103,073

*Member since Apr 13, 2019*

### Your miles

| What do you want to do?  ▾ |
|---|

### Activity date range

( • Required)

From •                                   To •

| Aug ▾ | 1 ▾ | 202 ▾ |    | Jan ▾ | 11 ▾ | 202 ▾ |   | Search |

AAdvantage program updates »

Earn and redeem miles with American »

See 'flight details' for the first flight to view activity for the entire trip.

| Description | Elite Qualifying | | | Award miles | | |
|---|---|---|---|---|---|---|
| | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| **Oct 6 2021** SDF - DFW Ticket # 0012303034509 ⊙ Flight details | 1,922 | 2 | 329 | 1,645 | 987 | 2,632 |
| **Sep 14 2021** SDF - DFW Ticket # 0012401188726 ⊙ Flight details | 2,078 | 2 | 320 | 1,600 | 960 | 2,560 |

| Description | Elite Qualifying | | | Award miles | | |
| --- | --- | --- | --- | --- | --- | --- |
| | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| Aug 19 2021 — SDF - ORD<br>Ticket # 0012195957384<br>⌄ Flight details | 2,171 | 2 | 319 | 1,595 | 957 | 2,552 |
| Aug 15 2021 — SDF - ORD<br>Ticket # 0012195084783<br>⌄ Flight details | 1,749 | 2 | 437 | 2,185 | 1,311 | 3,496 |
| Aug 8 2021 — FCA - DFW<br>Ticket # 0012193086706<br>⌄ Flight details | 2,123 | 2 | 518 | 2,590 | 1,554 | 4,144 |
| Jul 20 2021 — SDF - DFW<br>Ticket # 0012186576134<br>⌄ Flight details | -- | -- | -- | -- | -- | -- |
| Jul 6 2021 — Buy Miles Base | -- | -- | -- | 23,000 | 2,300 | 25,300 |
| Jul 6 2021 — SDF - RNO   Award<br>JRTBWL<br>⌄ Flight details | -- | -- | -- | -180,000 | -- | -180,000 |
| Jun 21 2021 — ONT - DFW<br>Ticket # 0012182419594<br>⌄ Flight details | 1,922 | 2 | 536 | 2,680 | 1,608 | 4,288 |
| Jun 8 2021 — SDF - DFW<br>Ticket # 0012179524179<br>⌄ Flight details | 1,922 | 2 | 319 | 1,595 | 957 | 2,552 |
| May 27 2021 — ONT - CLT<br>Ticket # 0012177410749<br>⌄ Flight details | 2,579 | 2 | 658 | 3,290 | 1,974 | 5,264 |
| May 16 2021 — SDF - DFW<br>Ticket # 0012174863267<br>⌄ Flight details | 1,922 | 2 | 299 | 1,495 | 1,196 | 2,691 |

| Description | | Elite Qualifying | | | Award miles | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| May 4 2021 | ONT - DFW<br>Ticket # 0012172195660<br>⊙ Flight details | 1,922 | 2 | 366 | 1,830 | 1,464 | 3,294 |
| Apr 17 2021 | SDF - DFW<br>Ticket # 0012168466072<br>⊙ Flight details | 1,922 | 2 | 319 | 1,595 | 1,276 | 2,871 |
| Apr 10 2021 | ONT - DFW<br>Ticket # 0012167310425<br>⊙ Flight details | 1,922 | 2 | 647 | 3,235 | 2,588 | 5,823 |
| Mar 24 2021 | SDF - DFW<br>Ticket # 0012163935031<br>⊙ Flight details | 733 | 1 | 179 | 895 | 716 | 1,611 |
| Mar 24 2021 | DFW - ONT<br>Ticket # 0012164135432<br>⊙ Flight details | 1,189 | 1 | 278 | 1,390 | 1,112 | 2,502 |
| Mar 17 2021 | ONT - DFW<br>Ticket # 0012162492222<br>⊙ Flight details | 1,189 | 1 | 194 | 970 | 776 | 1,746 |
| Mar 17 2021 | DFW - LEX<br>Ticket # 0012162789400<br>⊙ Flight details | 785 | 1 | 157 | 785 | 628 | 1,413 |
| Feb 21 2021 | ONT - DFW<br>Ticket # 0012157996182<br>⊙ Flight details | 1,922 | 2 | 576 | 2,880 | 2,304 | 5,184 |
| Feb 2 2021 | DEN - DFW<br>Ticket # 0017616376823<br>⊙ Flight details | 1,376 | 2 | 239 | 1,195 | 717 | 1,912 |
| Jan 28 2021 | ONT - DFW<br>Ticket # 0012154479980<br>⊙ Flight details | 1,922 | 2 | 310 | 1,550 | 930 | 2,480 |

USCA Case #21-1221    Document #1943359    Filed: 04/15/2022    Page 330 of 410

| Description | Elite Qualifying | | | Award miles | | |
|---|---|---|---|---|---|---|
| | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| **Jan 8 2021** ADJBN | 9,554 | 10 | 1,575 | -- | -- | -- |
| **Dec 16 2020** ONT - DFW Ticket # 0012149375445 ⊙ Flight details | 1,922 | 2 | 289 | 1,445 | 867 | 2,312 |
| **Nov 22 2020** ONT - DFW Ticket # 0012146907257 ⊙ Flight details | 1,922 | 2 | 289 | 1,445 | 867 | 2,312 |
| **Oct 29 2020** FAT - DFW Ticket # 0012144341214 ⊙ Flight details | 2,046 | 2 | 347 | 1,735 | 1,041 | 2,776 |
| **Oct 7 2020** SDF - CLT Ticket # 0012141591998 ⊙ Flight details | 3,664 | 4 | 650 | 3,250 | 1,300 | 4,550 |
| **Aug 5 2020** SDF - DFW Ticket # 0012134510005 ⊙ Flight details | 733 | 1 | 167 | 835 | 334 | 1,169 |

Transactions may take up to 2 weeks to post.                                        Showing 28 of 28

## Help

Contact American

Receipts and refunds

FAQs

Agency reference

Cargo ⧉

Bag and optional fees

## About American

About us

We're hiring! Join our team ⧉

Investor relations ⧉

Newsroom ⧉

Legal, privacy, copyright

## Extras

Business programs

Gift cards ⧉

American Airlines credit card

Trip insurance

Earn 50,000 bonus miles.
Terms apply. ⧉

**BuyMiles**
Save up to 35% through
January 31 ⧉

**AVIS** | **Budget**
Up to 35% savings
plus AAdvantage® miles ⧉



◀ Contact Us

# Share a concern

## Have specific feedback?

JetBlue is dedicated to providing award-winning service, and we want to know if your experience was less than fly.

**Have specific feedback about your JetBlue experience**? Please use the form below. Due to unusually high volume, responses may take up to 10 days.

**Need immediate assistance?** Please <u>contact us</u>.

Have a post-travel accessibility-related concern? Please call us at 1-800-JETBLUE (538-2583) and ask to speak with a CRO. We are unable to address accessibility issues as quickly via email.

## Your contact information

Full name
Michael Faris

Email
Michael.Faris@blueskycopters.com



Topic
Accessibility-related (Pre-travel)

Comments
I'm flying MCO-DCA on Oct. 25 and need a mask exemption because of my medical conditions. I can't find any information on your website about how request an exemption, so I'm sending it here. You really should publish in a prominent spot on your website how to demand an exemption.

1500 character limit.

Confirmation code
IDHCIX

Optional. Speeds assistance with past or recently booked travel.

☐ I'm traveling within 48 hours

**Send email**

## Need help?

Search for answers    🔍

**Get To Know Us**

**Policies**

**JetBlue In Action**

**Stay Connected**

✉ Join our email list

📱 Download the JetBlue mobile app

(f) (ig) (y) (▶)

Submit website feedback ›



Home

**From:** JetBlue Reservations <jetblueairways@email.jetblue.com>
**Date:** October 22, 2021 at 9:20:12 AM EDT
**To:** michael.faris@blueskycopters.com
**Subject: Your itinerary has been cancelled.**
**Reply-To:** JetBlue Reservations <reply@email.jetblue.com>

Thanks again for choosing JetBlue.

jetBlue

# Plans change.
# Our gratitude doesn't.

Thanks again for booking with JetBlue. We look forward
to welcoming you on board when you're ready.

Please note: This is not your boarding pass.

**Your confirmation code is**

**IDHCIX**

## Flights

| **MCO** | ▸ | **DCA** | **Date** | Mon, Oct 25 |
| Orlando, FL | | Washington, DC | **Departs** | 12:57pm |
| Terminal: A | | | **Arrives** | 3:06pm |
| | | | **Flight** | 2224 |

jetBlue

Wall v. TSA         331         Appendix





## Traveler Details

**ANGELA BYRD**

Frequent Flier: N/A

**MCO - DCA:**
Bags: Please check the manage trip section on
jetblue.com for bag info.
Seat: N/A

**ERIC CILA**

Frequent Flier: N/A

**MCO - DCA:**
Bags: Please check the manage trip section on
jetblue.com for bag info.
Seat: N/A

**SHANNON CILA**

Frequent Flier: N/A

**MCO - DCA:**
Bags: Please check the manage trip section on
jetblue.com for bag info.
Seat: N/A

**MICHAEL FARIS**

Frequent Flier: N/A

**MCO - DCA:**
Bags: Please check the manage trip section on
jetblue.com for bag info.
Seat: N/A

**TONY EADES**

Frequent Flier: N/A

**MCO - DCA:**
Bags: Please check the manage trip section on
jetblue.com for bag info.

10/22/2021, 10:33 PM

‹ Contact Us

# Share a concern

## Have specific feedback?

JetBlue is dedicated to providing award-winning service, and we want to know if your experience was less than fly.

**Have specific feedback about your JetBlue experience**? Please use the form below. Due to unusually high volume, responses may take up to 10 days.

**Need immediate assistance?** Please contact us.

Have a post-travel accessibility-related concern? Please call us at 1-800-JETBLUE (538-2583) and ask to speak with a CRO. We are unable to address accessibility issues as quickly via email.

## Your contact information

Full name
Michael Faris

Email
michael.faris@blueskycopters.com



Topic

Something else

Comments

I received an e-mail that I canceled my flight, but I did not cancel it. Reinstate the ticket. You can't cancel my ticket because I requested a mask exemption. This is illegal retaliation under the Air Carrier Access Act.

1500 character limit.

Confirmation code

IDHCIX

Optional. Speeds assistance with past or recently booked travel.

☐ I'm traveling within 48 hours

**Send email**

## Need help?

Search for answers 🔍

**Get To Know Us**

**Policies**

**JetBlue In Action**

**Stay Connected**

✉ Join our email list

📱 Download the JetBlue mobile app

f  📷  🐦  ▶

Submit website feedback ›

Wall v. TSA                    334                    Appendix

Involuntarily Cancellation of IDHCIX Michael Faris

From:   Lucas Wall (lucas.wall@yahoo.com)

To:     specialservicerequest@jetblue.com

Cc:     michael.faris@blueskycopters.com; roy.goldberg@stinson.com; robert@torricellalaw.com; maurice@torricellalaw.com

Date:   Monday, October 25, 2021, 01:46 AM EDT

Dear JetBlue:

I write on behalf of Michael Faris in response to your Oct. 22 e-mail informing him that his ticket was involuntarily canceled. It appears you have been placed Mr. Faris on JetBlue's no-fly list because he requested a mask exemption. However, you provided no explanation for this decision and haven't responded to Mr. Faris' complaint filed Oct. 22. Documentation of his complaint is attached.

1. Your action constitutes illegal retaliation under the Air Carrier Access Act for Mr. Faris demanding a mask exemption. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

2. You are advised that under the federal law prohibiting any corporation and/or its employees from conspiring to interfere with the civil rights of the disabled, JetBlue as a company and any staff members in your corporate security department who participated in this decision to cancel Mr. Faris' ticket without his consent because he asked for a mask exception may be sued and found liable for potentially millions of dollars in damages to Mr. Faris and all other disabled people you have denied mask exemptions to and/or illegally retaliated against for exercising rights under the Air Carrier Access Act. 42 USC § 1985.

3. Please also be aware that any employees participating in the decision to cancel Mr. Faris' ticket may be held personally liable for neglecting to prevent interference with the civil rights of disabled passengers. 42 USC § 1986.

Please respond whether you have placed Mr. Faris on your no-fly list and provide an explanation for this decision.

We expect JetBlue to immediately change its mask policies to come into compliance with federal and international law. We also expect JetBlue will immediately remove Mr. Faris from its no-fly list for asserting his rights under the Air Carrier Access Act. Failure to take prompt action will potentially result in us adding Mr. Faris as a plaintiff in the lawsuit against JetBlue captioned Wall v. Southwest Airlines and filing a motion with the U.S. District Court in Orlando for JetBlue to be sanctioned and/or held in contempt of court for retaliating against Mr. Faris for asking for a mask exemption.

We look forward to your prompt response.

Yours truly,

Lucas Wall

 Michael F Cx.pdf
353.1kB

Response from the JetBlue Executive Offices Case: 88699

---

**From:** Michael Faris <michaelfaris@me.com>
**Date:** November 13, 2021 at 6:41:45 AM EST
**To:** specialservicerequest@jetblue.com
**Subject: Re: Response from the JetBlue Executive Offices Case: 88699**

 It's not a law. This is total misrepresentation of law. Congress has never passed any such "law". All of you are failing the free people of this country. You're not even truly worried about travelers who may actually have Covid. What about your "do not board" procedures.

All you're worried about it making sure people comply, wether it's beneficial or not. Such demonic behavior from companies that accepted tax payer money to stay  afloat. You're the worst kind of scandalous thieves.

*Michael Faris*
*H-60 MX Supervisor*
*Bluesky Helicopters*
*2015 McKinley Ave Ste.F4*
*Laverne, CA 91750*
*270-723-4944*

> On Nov 12, 2021, at 10:47 PM, specialservicerequest@jetblue.com wrote:
>
>
> Dear Mr. Faris,
>
> Thank you for contacting JetBlue. The concern you sent to the Department of Transportation (DOT) has been received by JetBlue's Executive Offices and we appreciate

the opportunity to respond.

We appreciate you taking the time to share with us your concerns on behalf of another customer. For privacy and security purposes, although we cannot discuss another customer and their reservation when security verifiers have not been provided, we will be pleased to pass along the information we can share in order to assist with your concerns.

We sincerely apologize to hear you feel there was any discrimination against yourself or any other customer. We do not tolerate any form of discrimination; in fact, we are a widely diverse company and we are sorry to hear you feel otherwise.

Federal law requires masks to be worn by all travelers 2 years and older at all times throughout the flight including during boarding and deplaning, and in the airport. Any individual who fails to comply with this law may be subject to denied boarding, removal from the aircraft, and/or penalties under federal law. Visit https://www.jetblue.com/travel-alerts and www.jetblue.com/safety for more details.

Because you mention a possible disability, we will be pleased to share the following information as well. Customers with disabilities who cannot safely wear a mask because of a permanent disability as defined by the Americans with Disabilities Act (ADA), may contact us via phone or chat to apply for an exemption from this requirement. Exemptions will be limited on board each flight and will require specific documentation submitted no less than five (5) days in advance of travel.

For those customers who are permitted an exemption, they must provide printed or digital copies of submitted documentation and proof of negative PCR COVID-19 test results. Additionally, they will be required to wear a face shield in place of the mask at all times, including at the airport, during the flight including boarding and deplaning.

We extend our sincere best wishes to you and can assure you your concerns have been shared with the appropriate leadership teams who will use your feedback to make any necessary improvements.

You are a valued customer and we hope to welcome you back soon for your future travel.

Kind regards,

Debbie H
JetBlue | Customer Support
Executive Offices



# Southwest

Log in | Create account    Español

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®

# Thanks for flying with us!

✓ Price    ✓ Payment    ✓ Confirmation

✓ **Your flight is booked!**

We're sending you a confirmation email to the address below. If the email hasn't arrived in 2 minutes, check your junk or spam folder.

## Trip summary

🖨 Print

### ✈ Flight

CONFIRMATION #
**4ANM3D**

OCT 24
**SDF ✈ MCO**

FLIGHT TOTAL
**$626.94**

🚗 Add a car          Add a hotel

The perfect stay is moments away

Book now. Pay later!
From **$51.29**/day in Orlando

*Taxes and fees excl. Terms apply.

**Book now**

DESTINATION/HOTEL NAME:
Orlando

CHECK-IN          CHECK-OUT
10/24/2021        10/26/2021

Search ⎋

---



## Earn 40,000 points.

**Plus, earn 3X points per $1 spent on dining purchases for 12 months.**

$69 annual fee.

**Learn more** ⟩

- 3,000 anniversary points every year
- 2X points on Southwest® purchases
- 1X points on all other purchases
- Your Rapid Rewards® points never expire

---



# 10/24 - Orlando

f  **Who's coming with me?**
   Let your friends and family know you're traveling!

Share on Facebook! ⎋

OCT 24
# Louisville, KY *to* Orlando, FL

**Confirmation # 4ANM3D**

| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| **Eric Cila**<br>Rapid Rewards® number ⟩<br>Add Known Traveler # / Redress # ⟩ | + 2,172 PTS | — | Business Select® |



| PASSENGERS | EST. POINTS | EXTRAS | FARE |
|---|---|---|---|
| Special Assistance ❯ | | | |
| **Shannon Greer Cila** | + 2,172 PTS | — | Business Select® |
| Rapid Rewards® number ❯ | | | |
| Add Known Traveler # / Redress # ❯ | | | |
| Special Assistance ❯ | | | |
| **Michael Faris** | + 2,172 PTS | — | Business Select® |
| Rapid Rewards® number ❯ | | | |
| Add Known Traveler # / Redress # ❯ | | | |
| Special Assistance ❯ | | | |

**Transparency®: Defined**
Low fares. Nothing to hide. ↗

**Change fees don't fly with us**
Flexibility for your travel plans.

**Pack with care**
Guidelines for carryon luggage.

## Departing   10/24/21 Sunday

Business Select® $543.00
*(Passenger x3)*

✈ **DEPARTS**  **6:40** AM   **SDF**
Louisville, KY - SDF

**FLIGHT**
**4320** 📶 💿 ▶

**SCHEDULED AIRCRAFT**
Boeing 737-800
*Subject to change*

*Nonstop*

✈ **ARRIVES**  **8:45** AM   **MCO**
Orlando, FL - MCO

**TRAVEL TIME**
**2**hr **5**min

**SUBTOTAL**
**$543.00**

**Taxes & fees**                    $83.94

**Flight total**          **$626.94**

**Icon legend**

📶 WiFi available    💿 Live TV available

**Helpful Information:**
- Please read the fare rules associated with this purchase.
- When booking with Rapid Rewards® points, your points balance may not immediately update in your account..

**Book your hotel with us and save up to 10% on your stay.**



The perfect stay is moments away

DESTINATION/HOTEL NAME:

**Orlando**

CHECK-IN

**10/24/2021**

CHECK-OUT

**10/26/2021**

| ROOMS | ADULTS | CHILDREN |
|-------|--------|----------|
| 1 | 1 | 0 |

Search ↗

# Rapid Rewards®

Seek adventure, get rewarded.

✔ **Unlimited reward seats**
✔ **No blackout dates**
✔ **Your points don't expire**

Enroll now, it's free!

Points don't expire as long as you have flight-earning or partner-earning activity every 24 months. All Rapid Rewards rules and regulations apply.

# Payment summary

| PAYMENT INFORMATION | | | AMOUNT PAID |
|---|---|---|---|
| **Visa 8403** XXXXXXXXXXXX8403 Expiration: 9/22 | ▇▇▇ | ▇▇▇▇▇ | **$626.94** |

## Total charged



**You're all set for your upcoming trip.**

Get ready to enjoy two bags for the price of none*, no fees to change your flight**, and some Southwest® love.

*First and second checked bags. Weight and size limits apply. **Fare difference may apply.

| SUBTOTAL | **$543.00** |
|---|---|
| TAXES & FEES | **$83.94** |
| **TOTAL DOLLARS** | **$626.94** |

Show price breakdown

# Save up to 30% off

Earn up to 2400 Rapid Rewards® points.

Book now ›

**Before you travel, don't forget:**

✓

Wear personal face coverings

Download mobile boarding passes

Agree to health declaration


**(https://www.southwest.com
/?clk=GNAVHOMELOGO)**

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Comment/Question

Disability - Future Travel Assistance

Do you have a disability-related question about your upcoming travel plans? Please share the details below, and we'll get back with you as soon as possible.

If this is regarding a past travel experience, please select one of the other applicable "Disability" sub categories so that your question or comment is directed to the appropriate personnel.

**\* (REQUIRED) ADD A DESCRIPTION**

> I require a mask exemption

2474 character(s) remaining.

☐ I do not need a response

🔗 Southwest Mask Request Michael.pdf ✕

**ADD ATTACHMENT (OPTIONAL)**

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

⌄ **Flight Information**

**(JavaScript:Void(0);)**

**\* (REQUIRED) FLIGHT / EVENT DATE**

Oct 18, 2021 📅

**\* (REQUIRED) AIRPORT**

MCO

Wall v. TSA                    341                    Appendix

Orlando, FL - **MCO**

\* (REQUIRED) FLIGHT NUMBER

1910

\* (REQUIRED) CONFIRMATION NUMBER

4DPPAQ

\* (REQUIRED) ORIGIN CITY

MCO

Orlando, FL - **MCO**

\* (REQUIRED) DESTINATION CITY

DCA

Washington (Reagan National), DC - **DCA**

## Contact Information

\* (REQUIRED) FIRST NAME

Michael

\* (REQUIRED) LAST NAME

Faris

\* (REQUIRED) EMAIL

Michael.Faris@blueskycopters.com

PHONE NUMBER

RAPID REWARDS ACCOUNT NUMBER

> **Your Address** (Optional)

(JavaScript:Void(0);)

| Go Back | | Submit |

Privacy · Terms

Wall v. TSA                    342                    Appendix

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

XX •   I am completing this form for myself.

     •   I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name:    Michael

Passenger Middle Initial: _____

Passenger Last Name:    Faris

Contact Email address:    Michael.Faris@blueskycopters.com

Contact Phone number: _____

Reason for Mask Exception Request:

I am unable to wear a mask due to my medical conditions.

_____

_____

Is flight already booked?  Yes __XX__ No_____

If flight is already booked, please include the following information:

Date(s) of Travel:    10-18-21

City Pair:    MCO-DCA

Confirmation Number (if flight already booked): _____4DPPAQ_____

Does Passenger possess a WN Employee ID? _____No_____

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____N/A_____

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, and sharing of information.

_____/s/ Michael Faris_____
Passenger Signature or Signature of Passenger Parent or Guardian

_____Michael Faris_____
Printed Name of Passenger or Parent or Guardian

Date: ____10-16-21_____



**FLIGHT | HOTEL | CAR | VACATIONS     SPECIAL OF**

# Customers with Disabilities

Notice of Disability

Assistance in the Airport     *1

Security Screening

Wheelchairs & Other Devices     *2

Allergies     *3

Cognitive Disabilities

Deaf or Hard of Hearing     *4

Blind Or Low Vision

Medication     *5

Trained Service Animals

    *6   *7

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

Mask Exemptions

Your Rights

## Exemption to Federal Mask Requirement on Southwest Airlines

Federal law requires each person, 2 years of age and older, to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.

Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement.

**Please comply with the following pre-travel steps:**

At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit the following via **Southwest.com>Contact Us>Send a Message.>Email Us: Comment/Question>Disability>Future Travel Assistance:**

1. A fully completed copy of this form executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child; and

2. A signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability.

Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).

If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third party medical provider's affirmation for travel, if required, Southwest will contact you at the phone number or email address provided below to discuss any need to change your travel dates and/or flights and remind you of the need to obtain a qualifying COVID negative viral test.

No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as:

A physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

**Note:** Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

    \*\*\* = These 7 items are illegal and/or fraudulent misrepresentation of the law -- see attachment

Wall v. TSA                              345                              Appendix

**Michael Faris**
**Mask Exemption Request to Southwest Airlines**
**Notes on Southwest's Numerous Illegal Policies**
**MCO-DCA Oct. 18, 2021**

1.  It is a fraudulent misrepresentation to state that "federal law" requires airline passengers wear masks. Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. If you believe I am in error, please cite the statue number in the U.S. Code you refer to or the Code of Federal Regulations number.

    You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the Food, Drug, & Cosmetic Act and your other legal obligations is a fraudulent misrepresentation.

2.  Airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

3.  An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4.  An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she **has** a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger **has** a communicable disease, i.e. has tested positive for the coronavirus.

    Demanding a medical certificate also violates intentional law. The United States has ratified the Convention on International Civil Aviation, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5.  An airline may not require disabled passengers needing a mask exemption to undergo a medical screening with your third-party vendor. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, you may also not require a third-party medical consultation. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been

a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

6. An airline may not change a disabled passenger's travel dates and/or flights. Federal law prohibits banning mask-exempt passengers from flying if a plane is more than a certain percentage full. Your policy that you may change the travel dates of a passenger with a disability if a flight is more than 75% booked is illegal discrimination as this policy does not apply to any nondisabled travelers. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

You also may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

7. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

8. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

9. Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

10. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1). Your mask policy doesn't provide for making an "individualized assessment" of whether

someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: ... Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

11. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

12. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

13. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

14. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

15. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of an Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

    You provide FDA unauthorized or Emergency Use Authorization face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.This constitutes reckless endangerment.

16. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

17. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc. You clearly mislead customers that masks may be forced on passengers without their consent in violation of the Food, Drug, & Cosmetic Act.

DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

18. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

19. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

20. Violation of International Covenant on Civil & Political Rights: You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law... 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy ... 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.


(https://www.southwest.com
/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®    🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Comment/Question

Disability - Future Travel Assistance

Do you have a disability-related question about your upcoming travel plans? Please share the details below, and we'll get back with you as soon as possible.

If this is regarding a past travel experience, please select one of the other applicable "Disability" sub categories so that your question or comment is directed to the appropriate personnel.

\* (REQUIRED) ADD A DESCRIPTION

> I require a mask exemption

2474 character(s) remaining.

☐ I do not need a response

🔗 Southwest Mask Request Michael.pdf ✕

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

🔽 **Flight Information**

(JavaScript:Void(0);)

\* (REQUIRED) FLIGHT / EVENT DATE

| Oct 24, 2021 | 📅 |

\* (REQUIRED) AIRPORT

| SDF |

Wall v. TSA                    350                    Appendix

Louisville, KY - **SDF**

* (REQUIRED) FLIGHT NUMBER

4320

* (REQUIRED) CONFIRMATION NUMBER

4ANM3D

* (REQUIRED) ORIGIN CITY

SDF

Louisville, KY - **SDF**

* (REQUIRED) DESTINATION CITY

MCO

Orlando, FL - **MCO**

## Contact Information

* (REQUIRED) FIRST NAME

Michael

* (REQUIRED) LAST NAME

Faris

* (REQUIRED) EMAIL

Michael.Faris@blueskycopters.com

PHONE NUMBER

RAPID REWARDS ACCOUNT NUMBER

> **Your Address** (Optional)

(JavaScript:Void(0);)

| Go Back |   | Submit |
|---------|---|--------|

Privacy - Terms

# Passenger Application for Exemption to Federal Mask Requirement on Southwest Airlines

Please complete the information below and submit to Southwest Airlines for review of a mask exception application.  You are submitting the information below and as outlined in this Application for Exemption in order for Southwest to evaluate and process your request for an exemption from the federal mask mandate while flying with Southwest Airlines. Southwest Airlines may share this information with a third-party medical provider, the CDC and other government authorities, and our agents, vendors, and service providers for purposes of managing and fulfilling your travel reservations and assisting Southwest Airlines with the evaluation and processing of your application for an exemption.

Please check the box below that applies:

XX • I am completing this form for myself.

• I am completing this form for the minor named herein.  I am either the parent or guardian of the minor child and have the authority to and, by completing this form, hereby attest to the information provided below.

Passenger First Name: ___Michael_____

Passenger Middle Initial: _____

Passenger Last Name: ___Faris_____

Contact Email address: ___Michael.Faris@blueskycopters.com___

Contact Phone number: _____

Reason for Mask Exception Request:
_I am unable to wear a mask due to my medical conditions._

_____

_____

Is flight already booked?  Yes__XX__ No____

If flight is already booked, please include the following information:

Date(s) of Travel: ___10-24-21_____

City Pair: ___SDF-MCO_____

Confirmation Number (if flight already booked): _____4ANM3D_____

Does Passenger possess a WN Employee ID? ____No_____

If Passenger possesses a WN Employee ID, please include the following information:

WN Employee ID of Traveling Passenger: _____N/A_____

By submitting this request and signing below, I [name of passenger or authorized representative] [on behalf of _____] have read and understand the disclosures and requirements included above pertaining to my application to receive an exemption from the federal requirement to wear a mask while flying on Southwest Airlines, including, without limitation, Southwest's collection, use, and sharing of information.

/s/ Michael Faris
_____
Passenger Signature or Signature of Passenger Parent or Guardian

Michael Faris
_____
Printed Name of Passenger or Parent or Guardian

Date: ___10-16-21_____



**FLIGHT | HOTEL | CAR | VACATIONS     SPECIAL OF**

# Customers with Disabilities

Notice of Disability

Assistance in the Airport                    *1

Security Screening

Wheelchairs & Other Devices                  *2

Allergies                                    *3

Cognitive Disabilities

Deaf or Hard of Hearing                      *4

Blind Or Low Vision

Medication                                   *5

Trained Service Animals           *6    *7

Medical Oxygen

Portable Oxygen Concentrators

Non-Passenger Escort

Mask Exemptions

Your Rights

### Exemption to Federal Mask Requirement on Southwest Airlines

Federal law requires each person, 2 years of age and older, to wear a mask at all times throughout the flight, including during boarding and deplaning. Refusing to wear a mask is a violation of federal law and may result in denial of boarding, removal from the aircraft, and/or penalties under federal law.

Southwest Airlines will consider applications for exemptions from this mask requirement from Passengers with a disability who cannot wear a mask, or who cannot safely wear a mask because of the disability.

Per guidance from the U.S. Department of Transportation, airlines are permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement.

**Please comply with the following pre-travel steps:**

At least seven (7) days prior to the Passenger's planned date of travel, a Passenger requesting a mask exemption for travel on Southwest Airlines must complete and submit the following via **Southwest.com>Contact Us>Send a Message.>Email Us: Comment/Question>Disability>Future Travel Assistance:**

1. A fully completed copy of this form executed by the Passenger making the request, or if the Passenger requesting a mask exemption is a minor child, the parent or guardian of such minor child; and

2. A signed letter from the requesting Passenger's Medical Physician on the Physician's letterhead stating that the Passenger with a disability has a recognized medical condition precluding the wearing or safe wearing of a mask because of their disability.

Once Southwest Airlines receives a mask exemption application in line with the above criteria, at Southwest's request to Passenger, Passenger may undergo a private medical screening (over the phone) with a third-party medical provider (Southwest Airlines' vendor StatMD).

If Southwest preliminarily approves a mask exemption after reviewing the Passenger's PDF document and the Medical Physician's letter and after receiving the third party medical provider's affirmation for travel, if required, Southwest will contact you at the phone number or email address provided below to discuss any need to change your travel dates and/or flights and remind you of the need to obtain a qualifying COVID negative viral test.

No later than 24 hours prior to the Passenger's scheduled departure(s), Passenger must provide evidence of Passenger's qualifying COVID negative viral test result. A qualifying COVID negative viral test result is defined as:

A physical or electronic documentation of a qualifying COVID negative viral test taken within three (3) calendar days preceding the Passenger's scheduled date of travel. A viral test means a viral detection test for current infection, which is a nucleic acid amplification test with observation approved or authorized by the relevant national authority for the detection of SARS-CoV-2.

**Note:** Roundtrip travel will require an additional qualifying COVID negative viral test result taken within three (3) calendar days preceding the Passenger's scheduled date of return travel and submitted no later than 24 hours prior to the Passenger's scheduled departure, unless the Passenger's return flight is within three (3) calendar days of the date of the initial negative COVID-19 departure test.

*** = These 7 items are illegal and/or fraudulent misrepresentation of the law -- see attachment

**Michael Faris**
**Mask Exemption Request to Southwest Airlines**
**Notes on Southwest's Numerous Illegal Policies**
**SDF-MCO Oct. 24, 2021**

1.  It is a fraudulent misrepresentation to state that "federal law" requires airline passengers wear masks. Congress has never enacted any such law, nor has the Department of Transportation, Transportation Security Administration, Federal Aviation Administration, nor any other federal agency promulgated such a regulation into the Code of Federal Regulations. If you believe I am in error, please cite the statue number in the U.S. Code you refer to or the Code of Federal Regulations number.

    You also haven't told your passengers of the dozens of health risks of covering our sources of oxygen or that the scientific consensus is that masks are totally worthless in reducing COVID-19 spread. See 223 scientific studies, medical articles, and videos at https://bit.ly/masksarebad. Failing to disclose this information pursuant to the Food, Drug, & Cosmetic Act and your other legal obligations is a fraudulent misrepresentation.

2.  Airlines by federal law are NOT permitted to impose certain requirements or conditions on a person requesting an exemption from the mask requirement. "In providing air transportation, an air carrier … may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment." 49 USC § 41705(a).

3.  An airline is not allowed to require passengers seeking mask exemptions to do so in advance. "May a carrier require a passenger with a disability to provide advance notice that he or she is traveling on a flight? As a carrier, you must not require a passenger with a disability to provide advance notice of the fact that he or she is traveling on a flight." 14 CFR § 382.25.

4.  An airline may not require a medical certificate from disabled passengers who ask for a mask exemption. "Except as provided in this section, you must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation." 14 CFR § 382.23(a). "You may … require a medical certificate for a passenger if he or she *has* a communicable disease or condition that could pose a direct threat to the health or safety of others on the flight." 14 CFR § 382.23(c)(1) (emphasis added). This requirement does not include speculation that a person might have a communicable disease such as COVID-19; evidence is required that the passenger *has* a communicable disease, i.e. has tested positive for the coronavirus.

    Demanding a medical certificate also violates intentional law. The United States has ratified the Convention on International Civil Aviation, which makes it binding treaty law upon all persons and corporations in our country. "[P]ersons with disabilities should be permitted to travel without the requirement for a medical clearance." CICA Annex 9 § 8.39.

5.  An airline may not require disabled passengers needing a mask exemption to undergo a medical screening with your third-party vendor. Since airlines may not require a medical certificate for a passenger unless he/she has a communicable disease, you may also not require a third-party medical consultation. "As a carrier, you may require that a passenger with a medical certificate undergo additional medical review by you if there is a legitimate medical reason for believing that there has been

a significant adverse change in the passenger's condition since the issuance of the medical certificate …" 14 CFR § 382.23(d).

6. An airline may not change a disabled passenger's travel dates and/or flights. Federal law prohibits banning mask-exempt passengers from flying if a plane is more than a certain percentage full. Your policy that you may change the travel dates of a passenger with a disability if a flight is more than 75% booked is illegal discrimination as this policy does not apply to any nondisabled travelers. "As a carrier, you must not limit the number of passengers with a disability who travel on a flight." 14 CFR § 382.17. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See 49 USC § 41705.

You also may not change the seat assignment of a mask-exempt passenger without his/her consent. You may not instruct gate agents and/or flight attendants to move a mask-exempt passenger to the back of the aircraft. "As a carrier, you must not exclude any passenger with a disability from any seat or require that a passenger with a disability sit in any particular seat, on the basis of disability, except to comply with FAA or applicable foreign government safety requirements." 14 CFR § 382.87(a).

7. An airline may not require disabled passengers who seek a mask exemption to submit a negative COVID-19 test for each flight when nondisabled customers aren't subject to this same requirement. No provision of the Air Carrier Access Act or its accompanying regulations promulgated by DOT (nor any other law enacted by Congress) permits airlines to require passengers submit a negative test for any communicable disease. Mandating disabled flyers submit an expensive COVID-19 test before checking in but not requiring the same of nondisabled travelers is illegal discrimination. "You must not discriminate against any qualified individual with a disability, by reason of such disability, in the provision of air transportation…" 14 CFR § 382.11(a)(1). See also 49 USC § 41705.

8. An airline may not refuse transportation solely on the basis of a passenger's disability. "As a carrier, you must not refuse to provide transportation to a passenger with a disability on the basis of his or her disability, except as specifically permitted by this part." 14 CFR § 382.19(a).

9. Recipients of federal funds including airlines are prohibited from discriminating against the disabled. "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 USC § 794(a).

10. Requiring Passengers Not Known to Have a Communicable Disease to Wear a Face Covering: Federal law bans airlines from requiring passengers who do not have a communicable disease to don a face mask. The ACAA, 49 USC § 41705, and its accompanying regulations, 14 CFR Part 382, spell out specific procedures for dealing with airline passengers who are known to have a communicable disease. Your mask policy violates these regulations by assuming that every passenger has a communicable disease such as COVID-19.

Airlines are prohibited from requiring that a passenger wear a face covering or refuse him/her transportation unless they determine that the passenger "has" a communicable disease and poses a "direct threat" to other passengers and the flight crew. 14 CFR § 382.23(c)(1). Your rules illegally assume every single traveler is infected with COVID-19. This violates the regulation that "In determining whether an individual poses a direct threat, you must make an individualized assessment." 14 CFR § 382.19(c)(1). Your mask policy doesn't provide for making an "individualized assessment" of whether

someone is known to have COVID-19 or another communicable disease. According to DOT, "If a person who seeks passage has an infection or disease that would be transmittable during the normal course of a flight, and that has been deemed so by a federal public health authority knowledgeable about the disease or infection, then the carrier may: … Impose on the person a condition or requirement not imposed on other passengers (e.g., wearing a mask)." This is the only scenario airlines are permitted to force any passenger to don a face covering.

11. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11(a)(4).

12. You are prohibited by federal regulations from forcing a disabled passenger to disclose his/her medical conditions. "May I ask an individual what his or her disability is? Only to determine if a passenger is entitled to a particular seating accommodation pursuant to section 382.38. Generally, you may not make inquiries about an individual's disability or the nature or severity of the disability," according to DOT. Your mask policy constitutes invasion of privacy, which is illegal.

13. Refusing Transportation to Disabled Passengers Who Are Healthy & Don't Pose a Direct Threat to Anyone: Airlines may not refuse to transport a disabled person who can't wear a face mask when there's no evidence that person is positive for COVID-19 or any other communicable disease."[Y]ou must not refuse transportation to the passenger if you can protect the health and safety of others by means short of a refusal." 14 CFR § 382.19(c)(2).

14. Breach of Contract: I did not agree to wear a face mask when I bought my ticket. Any mask provisions in your Contract of Carriage are invalid as they violate federal law and international treaties.

15. Forcing Passengers to Wear Masks in Violation of the Food, Drug, & Cosmetic Act that Are Experimental Medical Devices Proven to Harm Human Health: You are violating the FDCA by not giving passengers our legal option to refuse administration of an Food & Drug Administration unauthorized or Emergency Use Authorization medical device (a face mask). 21 USC § 360bbb-3(e)(1)(A)(ii)(III).

   You provide FDA unauthorized or Emergency Use Authorization face masks without disclosing that: 1) the masks (if authorized at all) are only designated for emergency use; 2) that there are "significant known and potential benefits and risks of such use" (or "the extent to which such benefits and risks are unknown"); or 3) flyers have the "option to accept or refuse administration of the product." 21 USC § 360bbb-3.This constitutes reckless endangerment.

16. Practicing Medicine without a License: You are prescribing all passengers to wear FDA unauthorized or EUA medical devices, but you do not have a license to practice medicine. Practicing medicine without a license is illegal in every state.

17. Deceptive & Misleading Trade Practices: You are deceiving your customers regarding mask rules, efficacy, and harms, and attempt to mislead us into believing face coverings are good for our health when the reality is they cause dozens of harm and create havoc in the sky due to oxygen deprivation. "Intent is not an element of either unfairness or deception," according to DOT. 85 Fed. Reg. 78,707 (Dec. 7, 2020). However, it's clear you have an intent to deceive passengers that face masks are effective in reducing COVID-19 spread, are authorized by FDA, etc. You clearly mislead customers that masks may be forced on passengers without their consent in violation of the Food, Drug, & Cosmetic Act.

DOT defines an unfair trade practice by airlines as "demonstrating that the harm to consumers is (1) substantial; (2) not reasonably avoidable; and (3) not outweighed by offsetting benefits to consumers or competition." DOT defines a practice as ''deceptive'' by showing that: "(1) The practice actually misleads or is likely to mislead consumers; (2) who are acting reasonably under the circumstances; (3) with respect to a material matter." 14 CFR § 399.79. Airlines have a statutory duty not to deceive and mislead their customers. 49 USC § 41712.

18. Nuisance: You deprive passengers who can't or won't wear masks of our statutory right to use the public airspace. "A citizen of the United States has a public right of transit through the navigable airspace. To further that right, the Secretary of Transportation shall consult with the Architectural and Transportation Barriers Compliance Board established under section 502 of the Rehabilitation Act of 1973 (29 U.S.C. 792) before prescribing a regulation or issuing an order or procedure that will have a significant impact on the accessibility of commercial airports or commercial air transportation for handicapped individuals." 49 USC § 40103(a)(2). A public nuisance is when a person or corporation unreasonably interferes with a right that the general public shares in common.

19. Infringement on the Constitutional Right to Travel: You deprive disabled Americans and those who refuse to wear masks for health reasons of the ability to fly. In many cases, such as traveling from noncontinental states and territories to other states and territories, as well as going overseas, commercial airplanes are the only means of transportation. The Constitution protects against Americans' infringement on our freedom of movement by government actors and common carriers.

20. Violation of International Covenant on Civil & Political Rights: You require passengers to wear masks without giving our free consent, deprive us of our freedom to travel for not wanting to obstruct our breathing, curtail the liberty of movement, prevent us from entering or exiting our country of citizenship, and unlawfully interfere with our privacy. The United States has ratified the International Covenant on Civil & Political Rights, which makes it binding treaty law upon all persons and corporations in our country.

"[N]o one shall be subjected without his free consent to medical or scientific experimentation." ICCPR Art. 7. "No one shall be deprived of his liberty except on such grounds and in accordance with such procedure as are established by law." ICCPR Art. 9. "1. Everyone lawfully within the territory of a State shall, within that territory, have the right to liberty of movement ... 2. Everyone shall be free to leave any country, including his own. 3. The above-mentioned rights shall not be subject to any restrictions except those which are provided by law… 4. No one shall be arbitrarily deprived of the right to enter his own country." ICCPR Art. 12. "1. No one shall be subjected to arbitrary or unlawful interference with his privacy … 2. Everyone has the right to the protection of the law against such interference or attacks." ICCPR Art. 17.



Southwest Airlines
www.southwest.com

Michael Faris's 10/18 Wash. D.C. (Reagan) trip (4DPPAQ): This reservation has been canceled.

Yahoo/Inbox

Southwest Airlines <southwestairlines@ifly.southwest.com>    Sat, Oct 16 at 2:01 PM
To

Keep this confirmation number to apply funds toward a future reservation.
View our mobile site | View in browser

## Southwest

Manage Flight | Flight Status | My Account

### You have canceled your reservation.

Depending on the fare type and the form of payment you used to purchase your ticket, you'll either receive reusable travel funds or a refund. We appreciate you, and we look forward to welcoming you back onboard soon.

**OCTOBER 18**
# MCO ✈ DCA

Orlando to Wash. D.C. (Reagan)

Confirmation # **4DPPAQ**                          Confirmation date: 10/12/2021

| PASSENGER | **Michael Faris** |
|---|---|
| RAPID REWARDS # | Join or Log in |
| TICKET # | 5261441528417 |
| EXPIRATION[1] | October 12, 2022 |

## Your itinerary

**Flight:** Monday, 10/18/2021    Est. Travel Time: **2h 15m**    Business Select®

| FLIGHT # 1910 | **DEPARTS** **MCO 07:40**PM Orlando | ✈ | **ARRIVES** **DCA 09:55**PM Wash. D.C. (Reagan) |
|---|---|---|---|

## Payment information

### Total cost

| Air - **4DPPAQ** | | |
|---|---|---|
| Base Fare | $ | 157.75 |
| U.S. Transportation Tax | $ | 11.83 |
| U.S. 9/11 Security Fee | $ | 5.60 |
| U.S. Flight Segment Tax | $ | 4.30 |
| U.S. Passenger Facility Chg | $ | 4.50 |
| Total | $ | 183.98 |

### Payment

**Visa ending in 8403**
Date: October 12, 2021

**Payment Amount: $183.98**

**Refund to: Visa ending in 8403**
Date: October 16, 2021
**Refund Amount: $183.98**

Fare Rules: If you decide to make a change to your current itinerary it may result in a fare increase. In the case you're left with travel funds from this confirmation number, you're in luck! We're happy to let you use them towards a future flight for the individual named on the ticket, as long as the new travel is completed by the expiration date.

Your ticket number: 5261441528417

5261441528417: NONTRANSFERABLE -BG WN ORL WN WAS157.75USD157.75END ZP MCO4.30 XF MCO4.5

BLN3R8A

| Need help? | Connect with us | Mobile app |
|---|---|---|
| **Contact us** | | |
| Customer service | FAQs | | Get the mobile app |

*Point Purchase Offer Terms and Conditions



[redacted]

**Southwest Airlines**
www.southwest.com

Visit site

Michael Faris's 10/24 Orlando trip (4ANM3D): This reservation has been canceled.

Yahoo/Inbox

**Southwest Airlines** <southwestairlines@ifly.southwest.com>
**To:** [redacted]

Tue, Oct 19 at 8:26 AM

Keep this confirmation number to apply funds toward a future reservation.
View our mobile site | View in browser

**Southwest**

**Manage Flight | Flight Status | My Account**

## You have canceled your reservation.

Depending on the fare type and the form of payment you used to purchase your ticket, you'll either receive reusable travel funds or a refund. We appreciate you, and we look forward to welcoming you back onboard soon.

**OCTOBER 24**
# SDF ✈ MCO
Louisville to Orlando

Confirmation # **4ANM3D**

Confirmation date: 10/11/2021

| | |
|---|---|
| **PASSENGER** | **Michael Faris** |
| RAPID REWARDS # | Join or Log in |
| TICKET # | 5261441503191 |
| EXPIRATION[1] | October 12, 2022 |

## Your itinerary

**Flight:** Sunday, 10/24/2021 Est. Travel Time: **2h 5m** Business Select®

| FLIGHT | DEPARTS | | ARRIVES |
|---|---|---|---|
| **# 4320** | **SDF 06:40AM** Louisville | ✈ | **MCO 08:45AM** Orlando |

## Payment information

**Total cost**

**Air - 4ANM3D**

| | | |
|---|---|---|
| Base Fare | $ | 181.00 |
| U.S. Transportation Tax | $ | 13.58 |
| U.S. 9/11 Security Fee | $ | 5.60 |
| U.S. Flight Segment Tax | $ | 4.30 |
| U.S. Passenger Facility Chg | $ | 4.50 |
| **Total** | **$** | **208.98** |

**Payment**

**Visa ending in 8403**
Date: October 11, 2021

**Payment Amount: $208.98**

**Refund to: Travel Funds**
Date: October 19, 2021
**Refund Amount: $208.98**

Your travel funds will be held under this flight's confirmation number. See fare rules below for more information.

Fare Rules: If you decide to make a change to your current itinerary it may result in a fare increase. In the case you're left with travel funds from this confirmation number, you're in luck! We're happy to let you use them towards a future flight for the individual named on the ticket, as long as the new travel is completed by the expiration date.

Your ticket number: 5261441503191

5261441503191: NONTRANSFERABLE -BG WN SDF WN ORL181.00USD181.00END ZP SDF4.30 XF SDF4.5

BLN7C8Z

**Need help?**
**Contact us**
Customer service | FAQs

**Connect with us**

**Mobile app**

Southwest Airlines Response to your Inquiry (Case #32943823)

**From:** Southwest Airlines <no-reply@southwest-communications.com>
**Date:** October 19, 2021 at 7:49:25 AM PDT
**To:** michael.faris@blueskycopters.com
**Subject: Southwest Airlines Response to your Inquiry (Case #32943823)**



Dear Michael,

Southwest has received your application for an exemption to the federal mask mandate. We appreciate this opportunity to respond.

We reviewed your physician's statement and completed exemption application form. Based on guidance from our third-party medical provider, we regret to inform you that you do not qualify for an exemption. As such, we cannot transport you at this time if you are unable to wear a mask. We regret any disappointment this may cause.

As much as anyone else, we are eager for things to get back to "normal," and we ask for your patience as we all work together to get there. Your business is important to us, and we will always consider it a privilege to welcome you onboard each time you grant us that opportunity.

Sincerely,

Ken Mikels
Southwest Airlines

southwest.com  |  Flight  |  Hotel  |  Car  |  Rapid Rewards  |  Travel Tools

This is a post-only mailing from Southwest Airlines. Please do not attempt to respond to this message.

Southwest Airlines
2702 Love Field Drive
Dallas, TX 75235

Copyright 2020 Southwest Airlines Co. All Rights Reserved.

***** Confidentiality Statement/Disclaimer ***** This message and any attachments are intended for the sole use of the intended recipient. It may contain confidential information. Any unauthorized use, dissemination, or modification is strictly prohibited. If you are not the intended recipient please notify the sender immediately, and delete this email from all your systems; do not copy, use, or print. Internet communications are not secure, and it is the responsibility of the recipient to make sure that they are virus exempt. The company/sender cannot be responsible for any unauthorized alterations or modifications made to the contents. If you require any form of confirmation of the contents, please contact the company/sender. The company/sender is not liable for any errors or omissions in the content of this message.

ref:_00Df43k1z._5005Gr8dAu:ref



👤 Log in | **Create account**   Español 🌐



FLIGHT | HOTEL | CAR | VACATIONS      SPECIAL OFFERS      RAPID REWARDS®   🔍

 **Sorry, we found some errors...**
We are unable to locate your reservation in our system, potentially because it has been cancelled. If you continue to have difficulties, please contact a Southwest Airlines Customer Representative for assistance at 1-800-I-FLY-SWA (1-800-435-9792).

Error details ⌄

**Error detail 1:** iiYtaEE-Q_GJ3ANOEespHA : 43d9e80d-f65f-4afd-b399-7e2dd108a6b9 : 400520321                    10/24/2021 - 10:14:04

# Cancel Flight Reservation

\* Required

**CONFIRMATION # \***

4ANM3D

**FIRST NAME \***

Michael

**LAST NAME \***

Faris

[ Continue ]

A recent modeling study suggested the universal use of surgical masks in the setting of ventilation rates of aircraft might reduce infection risk from respiratory particles to

## less than 1%. \*

*Source: A 2020 modeling study from Dai and Zhao.*

*\*Southwest requires Passengers age 2 and older to wear a face covering on board, though surgical masks (like the ones used in the study) are not required.*


(https://www.southwest.com/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS     SPECIAL OFFERS     RAPID REWARDS®     🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Complaint

Disability - Policy and Procedures

We're sorry if you had a disappointing experience as a Customer with a disability while traveling with us. Please share your experience below, and our Customer Relations Department will research and respond as soon as possible.

If you are not contacting us as or on behalf of a Customer with a disability, please select ""Airport Experience"" rather than ""Disability"" so we can ensure that your concerns reach the right personnel.

\* (REQUIRED) ADD A DESCRIPTION

> Dear Ken Mikels:
>
> I write regarding Case #32943823. You sent me a form letter that "Southwest has received your applications for an exemption to the federal mask mandate. ... We reviewed your physician's statements and completed exemption application forms. Based on guidance from our third-party medical provider, we regret to inform you that your requests do not qualify for an exemption. As such, we cannot transport them at this time if they are unable to wear a mask."
>
> Please provide the report from your third-party medical provider who evaluated my medical condition without speaking to me. Please report what date and time this medical vendor contacted my doctor. I object to your denial and expect you to follow the Air Carrier Access Act and approve my mask exemption. Your denial violates 20 laws, regulations, and treaties. I note you did not respond to any of these legal provisions I cited.

1580 character(s) remaining.

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

❯ **Flight Information** (Optional)

(JavaScript:Void(0);)

## Contact Information

Wall v. TSA                          364                          Appendix

\* (REQUIRED) FIRST NAME

Michael

\* (REQUIRED) LAST NAME

Faris

\* (REQUIRED) EMAIL

michael.faris@blueskycopters.com

PHONE NUMBER

RAPID REWARDS ACCOUNT NUMBER

Go Back                                      Submit

❯ **Your Address** (Optional)

(JavaScript:Void(0);)

Privacy · Terms

**Need help?**

**Contact Us (https://www.southwest.com /html/contact us/)**

(Customer Service (https://www.southwest.com /html/customer-service/faq?clk=GFOOTER-CUSTOMER-SERVICE)

(Twitter (https://twitter.com/southwestair?clk=GFOOTER-TWITTER)    /2clk=GFOOTER-FACEBOOK)    /southwest?clk=GFOOTER-INSTAGRAM)

☑ Indicates external site which    /2clk=GFOOTER-BLOG)    may or may not meet accessibility

**Subscribe**

**Wanna receive email from us? (https://www.southwest.com /email-signup/?clk=GFOOTER-EMAIL-SIGNUP)**

Get the latest deals.

(https://www.southwest.com /html/air/products /mobile.html?clk=GFOOTER-APPS)

/2clk=GFOOTER-LINKEDIN)

/2clk=GFOOTER-PINTEREST)    /html/air/products /mobile.html?clk=GFOOTER-APPS)

/southwest?clk=GFOOTER-YOUTUBE)    guidelines.

© 2021 Southwest Airlines Co. All Rights Reserved. Use of the Southwest websites and our Company Information constitutes acceptance of our Terms and Conditions (https://www.southwest.com/html/about-southwest/terms-and-conditions /index.html?clk=GFOOTER-BOTTOM-TC). Privacy Policy (https://www.southwest.com/html/about-southwest/terms-and-conditions/privacy-policy-pol.html?clk=GFOOTER-BOTTOM-PRIVACY) Do Not Sell My Personal Information (https://t.iluv.southwest.com/webApp/swaAPP_DataPrivacy_OptOut?clk=4028122&cbid=4028122)

Wall v. TSA                              365                              Appendix


**Southwest**
(https://www.southwest.com
/?clk=GNAVHOMELOGO)

FLIGHT | HOTEL | CAR | VACATIONS    SPECIAL OFFERS    RAPID REWARDS®   🔍

Contact Us (https://www.southwest.com/contact-us/contact-us.html?src=c360) > Email Us

# Complaint

Disability - Policy and Procedures

We're sorry if you had a disappointing experience as a Customer with a disability while traveling with us. Please share your experience below, and our Customer Relations Department will research and respond as soon as possible.

If you are not contacting us as or on behalf of a Customer with a disability, please select ""Airport Experience"" rather than ""Disability"" so we can ensure that your concerns reach the right personnel.

\* (REQUIRED) ADD A DESCRIPTION

> I write regarding my reservation 4ANM3D. I received an e-mail that you canceled my booking. Please explain why you canceled my reservation without my permission.
>
> It is illegal under the Air Carrier Access Act to retaliate against a person who submits a mask-exemption demand. "You must not take any adverse action against an individual (e.g., refusing to provide transportation) because the individual asserts, on his or her own behalf or through or on behalf of others, rights protected by this part or the Air Carrier Access Act." 14 CFR § 382.11 (a)(4).
>
> *Michael Faris

1926 character(s) remaining.

ADD ATTACHMENT (OPTIONAL)

⬆ Upload Files

Maximum file size of the each attachment is 100MB

For your security, please do not enter personal information such as a credit card number or your date of birth unless date of birth is specifically requested on the form. You will receive an email acknowledging Southwest's receipt of the information you submitted and a case number for your reference. We accept common file types like jpg, jpeg, png, gif, doc, docx, xls, pdf, xlsx, and txt (max. per file: 100 MB / max. total: 500 MB and 5 files).

❯ **Flight Information** (Optional)

(JavaScript:Void(0);)

**Contact Information**

\* (REQUIRED) FIRST NAME

Michael

\* (REQUIRED) LAST NAME

Faris

\* (REQUIRED) EMAIL

Michael.Faris@blueskycopters.com

PHONE NUMBER

RAPID REWARDS ACCOUNT NUMBER

Go Back                                                         Submit

❯ **Your Address** (Optional)

(JavaScript:Void(0);)

Privacy · Terms

**Need help?**

**Contact Us**
**(https://www.southwest.com**
**/html/contact**
**/index.html?clk=GFOOTER-**
**CUSTOMER-CONTACT-US)**

**Subscribe**

**Wanna receive email from us?**
**(https://www.southwest.com**
**/email-signup?clk=GFOOTER-EMAIL-**
**SIGNUP)**

Get our latest deals.

(Customer Service (https://www.southwest.com
/html/customer-service/faq?clk=GFOOTER-
FAQ))

☑ Indicates external site which may or may not meet accessibility guidelines.

(Diversity (https://www.southwest.com
/html/about-southwest/diversity
/index.html?clk=GFOOTER-
DIVERSITY))

(https://www.southwest.com
/html/air/products
/mobile.html?clk=GFOOTER-
APPS)

(TWITTER)    /?clk=GFOOTER-
TWITTER)

/2clk=GFOOTER-
FACEBOOK)

/southwest?clk=GFOOTER-
INSTAGRAM)

southwest?clk=GFOOTER-
PINTEREST)

/southwest-airlines
(https://www.southwest.com
/html/air/products
/mobile.html?clk=GFOOTER-
APPS)

(Blog (https://www.southwest.com
/html/about-southwest/blog)?clk=GFOOTER-
BLOG)

/2clk=GFOOTER-
LINKEDIN)

© 2021 Southwest Airlines Co. All Rights Reserved. Use of the Southwest websites and our Company Information constitutes
acceptance of our Terms and Conditions (https://www.southwest.com/html/about-southwest/terms-and-conditions
/index.html?clk=GFOOTER-BOTTOM-TC). Privacy Policy (https://www.southwest.com/html/about-southwest/terms-and-
conditions/privacy-policy-pol.html?clk=GFOOTER-BOTTOM-PRIVACY) Do Not Sell My Personal Information
(https://t.iluv.southwest.com/webApp/swaAPP_DataPrivacy_OptOut?clk=4028122&cbid=4028122)

Wall v. TSA                              367                              Appendix

Southwest Airlines Response to your Inquiry (Case #32943485)

---

---

**From:** Southwest Airlines <no-reply@southwest-communications.com>
**Date:** December 20, 2021 at 5:20:32 PM EST
**To:** michael.faris@blueskycopters.com
**Subject: Southwest Airlines Response to your Inquiry (Case #32943485)**



Dear Michael,

Southwest has received your application for an exemption to the federal mask mandate. I recognize that it has taken us some time to respond to your concerns due to the high Customer inquiry volumes we are experiencing, but I appreciate the opportunity to respond.

We reviewed your exemption application and, based on guidance from our third-party medical provider, we regret to inform you that you do not qualify for an exemption. As such, we cannot transport you at this time if you are unable to wear a mask. We regret any disappointment this may cause.

The Centers for Disease Control (CDC) has made clear that appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19. Per Department of Transportation (DOT) regulation (14 CFR §382.21), a Passenger with a communicable disease or infection, such as COVID-19, may pose a direct threat to the health and safety of others onboard an aircraft.

With this in mind, to ensure that only qualified persons are granted exemptions to travel without a mask, the CDC Order allows airlines to impose certain requirements or conditions on a person seeking an exemption from the mask requirement. The TSA Security Directive made clear that "this is a narrow

---

Wall v. TSA                           368                           Appendix

exception" and this exemption "is not meant to cover persons for whom mask-wearing may only be difficult." As stated above, per DOT regulation (14 CFR §382.21), a passenger with a communicable disease or infection, such as COVID-19, may pose a direct threat to the health and safety of others onboard an aircraft. For this reason, Southwest is careful to approve mask exemptions only for those who meet the strict criteria set forth in the CDC Order.

Southwest is fully aware of all laws and regulations protecting passengers with disabilities. We are active in the airline industry in sharing best practices about how best to accommodate passengers with disabilities. We are not failing to comply with any of the disability-related regulations you note in your exemption request in your situation.

As much as anyone else, we are eager for things to get back to "normal," and we ask for your patience as we all work together to get there.

Sincerely,

Jen McCleskey
Senior Specialist, Customer Advocacy

This email is being sent from a "no-reply" email address. You may follow-up with us on our website. Additionally, by law, I'm required to inform you that should you wish to pursue this matter further, you may contact the U.S. Department of Transportation.

southwest.com  |  Flight  |  Hotel  |  Car  |  Rapid Rewards  |  Travel Tools

This is a post-only mailing from Southwest Airlines. Please do not attempt to respond to this message.

Southwest Airlines
2702 Love Field Drive
Dallas, TX 75235

Copyright 2020 Southwest Airlines Co. All Rights Reserved.

***** Confidentiality Statement/Disclaimer ***** This message and any attachments are intended for the sole use of the intended recipient. It may contain confidential information. Any unauthorized use, dissemination, or modification is strictly prohibited. If you are not the intended recipient please notify the sender immediately, and delete this email from all your systems; do not copy, use, or print. Internet communications are not secure, and it is the responsibility of the recipient to make sure that they are virus exempt. The company/sender cannot be responsible for any unauthorized alterations or modifications made to the contents. If you require any form of confirmation of the contents, please contact the company/sender. The company/sender is not liable for any errors or omissions in the content of this message.

ref:_00Df43k1z._5005Gr8cvq:ref

Southwest Airlines Response to your Inquiry (Case #33416833)

---

---

**From:** Southwest Airlines <no-reply@southwest-communications.com>
**Date:** December 21, 2021 at 4:03:16 PM EST
**To:** michael.faris@blueskycopters.com
**Subject: Southwest Airlines Response to your Inquiry (Case #33416833)**



Dear Michael,

We received your follow-up email regarding the denial of your request for an exemption to our mask policy, and we appreciate the additional opportunity to respond.

As Ken mentioned in his previous email, your request for a mask exemption was denied due to guidance from our third-party medical provider. While we are unable to provide you with specific details regarding our evaluation of your exemption request, I regret any disappointment in this regard.

We understand you are also frustrated with our previous response with respect to your cited regulations. Allow me to explain, the Centers for Disease Control (CDC) has made clear that appropriately worn masks reduce the spread of COVID-19—particularly given the evidence of pre-symptomatic and asymptomatic transmission of COVID-19. Per Department of Transportation (DOT) regulation (14 CFR §382.21), a Passenger with a communicable disease or infection, such as COVID-19, may pose a direct threat to the health and safety of others onboard an aircraft.

With this in mind, to ensure that only qualified persons are granted exemptions to travel without a mask, the CDC Order allows airlines to impose certain requirements or conditions on a person seeking an exemption from the mask

requirement. The TSA Security Directive made clear that "this is a narrow exception" and this exemption "is not meant to cover persons for whom mask-wearing may only be difficult." As stated above, per DOT regulation (14 CFR §382.21), a passenger with a communicable disease or infection, such as COVID-19, may pose a direct threat to the health and safety of others onboard an aircraft. For this reason, Southwest is careful to approve mask exemptions only for those who meet the strict criteria set forth in the CDC Order, and we are not failing to comply with any disability-related federal regulations by doing so.

As much as anyone else, we are eager for things to get back to "normal," and we ask for your patience as we all work together to get there.

Sincerely,

Jen McCleskey
Senior Specialist, Customer Advocacy
Southwest Airlines

This email is being sent from a "no-reply" email address. If needed, you may follow-up with us on our website. Additionally, by law, I'm required to inform you that should you wish to pursue this matter further, you may contact the U.S. Department of Transportation.

southwest.com  |  Flight  |  Hotel  |  Car  |  Rapid Rewards  |  Travel Tools

This is a post-only mailing from Southwest Airlines. Please do not attempt to respond to this message.

Southwest Airlines
2702 Love Field Drive
Dallas, TX 75235

Copyright 2020 Southwest Airlines Co. All Rights Reserved.

***** Confidentiality Statement/Disclaimer ***** This message and any attachments are intended for the sole use of the intended recipient. It may contain confidential information. Any unauthorized use, dissemination, or modification is strictly prohibited. If you are not the intended recipient please notify the sender immediately, and delete this email from all your systems; do not copy, use, or print. Internet communications are not secure, and it is the responsibility of the recipient to make sure that they are virus exempt. The company/sender cannot be responsible for any unauthorized alterations or modifications made to the contents. If you require any form of confirmation of the contents, please contact the company/sender. The company/sender is not liable for any errors or omissions in the content of this message.



ref:_00Df43k1z._5005Grjfvj:ref

**spirit**®

BOOK     MY TRIPS     CHECK-IN

FLIGHT STATUS

👤 MICHAEL ▾   HELP   CONTACT US

Deals │ Free Spirit® │ Spirit Saver$ Club │
Spirit 101 │ Español

Free Spirit # ███████ │ **Edit Profile**

# Michael          2,043 Points
Free Spirit Member

Michael

## 2,043 Points

Free Spirit # ███████

Dashboard          **Activity**          Status          Offers

---

## Upcoming Trips

| Date ▾ | Route | Points ℹ️ | Confirmation |
|--------|-------|-----------|--------------|

No reservations found

**+ Add an Upcoming Trip**

---

## Statement

| Period | Category | Display |
|--------|----------|---------|
| 📅 Sep 1, 2021 - Jan 11, 2022 ▾ | isactions | 10 ▾ |

| Date ▾ | Description | Category | Transaction Id | Points ℹ️ | SQP ℹ️ |
|--------|-------------|----------|----------------|-----------|--------|
| Oct 21, 2021 | Los Angeles(LAX) - Louisville, KY(SDF) | Spirit Booking | PYNGML | 2043 pts | 255 |

| Oct 21, 2021 | Spirit Points | Spirit Booking | 1011124945 | 0 pts | 0 |

**+ Add a Previous trip**

# Join the Spirit Saver$ Club Today!

Get Access to Exclusive Low Fares and Save on Bags, Seats a    **LEARN MORE**



# Free Spirit® Mastercard®

40,000 Bonus Points + $100 Companion Flight Voucher Online Offer. Offers vary elsewhere.

**APPLY NOW**

## Get To Know Us

Free Spirit®
Spirit Saver$ Club
Media Center
Investor Relations

## Talk to us

Help Center
Contact Us
Legal
Privacy Policy

## Fly with us

Book
Travel Agent
Group Travel
Where We Fly

## Connect With Us

    

## Download Our Mobile App

**Michael Faris**
**United Airlines Flight Log**

| TRIP | DATE | FLIGHT |
|------|------|--------|
| 1 | 8/18/2020 | UA Express 5234 BOI - ORD |
| 1 | 8/18/2020 | UA Express 5525 ORD - SDF |
| 2 | 8/29/2020 | UA Express 5547 SDF - ORD |
| 2 | 8/29/2020 | United 0283 ORD - LAX |
| 3 | 9/10/2020 | United 0497 LAX - ORD |
| 3 | 9/11/2020 | UA Express 3810 ORD - SDF |
| 4 | 9/22/2020 | UA Express 5534 DEN - RDM |
| 4 | 9/22/2020 | UA Express 5722 SDF - DEN |
| 5 | 10/5/2020 | UA Express 5403 DEN - SDF |
| 5 | 10/5/2020 | UA Express 5771 RDM - DEN |
| 6 | 10/16/2020 | UA Express 5531 SDF - DEN |
| 6 | 10/16/2020 | UA Express 5637 DEN - MFR |
| 7 | 11/11/2020 | UA Express 5560 SDF - DEN |
| 7 | 11/11/2020 | United 1616 DEN - LAX |
| 8 | 12/3/2020 | UA Express 5560 SDF - DEN |
| 8 | 12/3/2020 | United 1616 DEN - LAX |
| 9 | 1/15/2021 | UA Express 6094 SDF - IAH |
| 9 | 1/15/2021 | UA Express 6168 IAH - ONT |
| 10 | 2/1/2021 | UA Express 5506 SDF - DEN |
| 11 | 2/8/2021 | UA Express 6094 SDF - IAH |
| 11 | 2/8/2021 | UA Express 6312 IAH - ONT |
| 12 | 3/4/2021 | UA Express 5506 SDF - DEN |
| 12 | 3/4/2021 | United 0455 DEN - ONT |
| 13 | 7/3/2021 | UA Express 5506 SDF - DEN |
| 13 | 7/3/2021 | United 0649 DEN - ONT |
| 14 | 7/19/2021 | UA Express 5240 DEN - SDF |
| 14 | 7/19/2021 | United 2459 SMF - DEN |
| 15 | 7/26/2021 | UA Express 5506 SDF - DEN |
| 15 | 7/26/2021 | United 0649 DEN - ONT |
| 16 | 8/16/2021 | UA Express 3491 ORD - SDF |
| 16 | 8/16/2021 | UA Express 5425 SLC - ORD |
| 17 | 9/6/2021 | United 2497 SEA - ORD |
| 17 | 9/7/2021 | UA Express 3954 ORD - SDF |
| 18 | 10/1/2021 | UA Express 3960 ORD - SDF |
| 18 | 10/1/2021 | United 2277 LAX - ORD |
| 19 | 10/30/2021 | UA Express 5335 SDF - DEN |
| 19 | 10/30/2021 | United 1689 DEN - ONT |
| 20 | 11/11/2021 | UA Express 6210 ONT - IAH |
| 20 | 11/12/2021 | UA Express 6111 IAH - SDF |
| 21 | 11/27/2021 | UA Express 5636 SDF - DEN |
| 21 | 11/27/2021 | United 1689 DEN - ONT |
| 22 | 12/6/2021 | UA Express 4719 DEN - SDF |
| 22 | 12/6/2021 | United 1888 ONT - DEN |
| 23 | 1/2/2022 | UA Express 6185 SDF - IAH |
| 23 | 1/2/2022 | United 1552 IAH - ONT |

**From:** SAC <SAC@aa.com>
**Date:** May 14, 2021 at 5:26:43 PM EDT
**To:** MICHAEL.FARIS@me.com
**Cc:** michael.faris@blueskycopters.com
**Subject: American Airlines ARCXLA**

**From:** SAC
**Sent:** Friday, May 14, 2021 4:22 PM

Hello,

Thank you for choosing American Airlines.

The documentation submitted doesn't meet one or more of our qualifications and won't be approved at this time. As a reminder, a qualified individual is a person with a disability who

cannot wear a mask, or cannot safety wear a mask, because of their disability as defined by the ADA. These letters may also be reviewed by a third party medical advisor.

If you have any questions, please contact the American Airlines Special Assistance Coordinator Desk at 1-800-237-7976. Our office hours are daily from 7:30 a.m. to 8:30 p.m. CST.

Thank you,

American Airlines Special Assistance Coordinator



**From:** AmericanAirlinesCustomerRelations@aa.com
**Date:** June 21, 2021 at 1:48:13 PM EDT
**To:** michaelfaris@me.com
**Subject: Your Response From American Airlines**

 

June 21, 2021

Dear Mr. Faris:

Thank you for your reply, after reading your comments I understand that you're still unhappy with us. As previously mentioned, one of our primary responsibilities in Customer Relations is to help you as our customer who has an unfavorable impression and I make your comments available to the appropriate management teams for internal review. While this process may be of little solace, we are truly sorry that we weren't able to resolve the issue to your satisfaction.

Also, COVID-19 continues to be very fluid and change is unforeseeable. As we move forward during these tenuous times, mask directives will continue to be part of our ongoing assessment.

Mr. Faris, as a Platinum AAdvantage® member we welcome the opportunity to listen, learn and most importantly, improve. Your business is very important to us and it is always a privilege to welcome you on-board.

Sincerely,
Dulce Lagos
Customer Relations
American Airlines

AA Ref#1-29826909537

**Your opinion matters to us! We invite you to share your overall experience in this quick one minute survey. Click here for the survey. We appreciate your time and valuable feedback.**

The information in this email is confidential and is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. If you are not the intended recipient, please delete this email from your email system.

If your comments are related to American Airlines service to, from, or in the United Kingdom and we have reached an impasse in terms of resolving your complaint, please know that we are obligated by the Civil Aviation Authority (CAA) to inform you that you may contact a CAA-approved Alternative Dispute Resolution (ADR) provider competent to deal with airline service complaints. American Airlines, however, does not participate with an ADR in resolving disputes.
RESPCONID: 1-DPDPRKZ:
RESPID:1-DPDPRKX:
TID:1-DPA66OX:
PROCESS:Response:
CONTACTID:1-D2LLA6Y:

**From:** AmericanAirlinesCustomerRelations@aa.com
**Date:** June 29, 2021 at 6:24:29 PM EDT
**To:** michaelfaris@me.com
**Subject: Your Response From American Airlines**





Wall v. TSA                    379                    Appendix

June 29, 2021

Dear Mr. Faris:

The Department of Transportation Aviation Consumer Protection Division (DOT) forwarded your correspondence under DOT case number AT2021060032 regarding your request for an exemption to the face mask directive. On behalf of American Airlines, I appreciate the opportunity to reply to your concerns.

After reading your comments, I apologize for the experience you had with our Special Assistance Coordinators (SAC). We, too, are disappointed that your request for an exemption to the mask mandate has not gone as smoothly as we both would have preferred. These are challenging and unprecedented times for our industry, our company and our team — and we know the same is true for our customers and the rest of the world. We're working tirelessly to provide the same great service to you as we weather this crisis.

As I mentioned in my previous response, customers with disabilities who are unable to wear a mask should notify SAC at least 72 hours prior to departure to request an exemption from the mask requirement. Exemptions will require documentation from a licensed health care provider, as well as proof of a negative COVID-19 test taken within three calendar days of departure or proof of recovery from COVID-19.

I have investigated your concerns and appreciate the opportunity to share with you the results of my investigation. My records show one ticket, 0012177253487, was purchased on May 26th, 2021. Originally you scheduled your trip to depart from fight 1821, operated by American Airlines, from Ontario arriving at Dallas on May 28th. Connecting on flight 5759, operated by Mesa Airlines, from Dallas, arriving at Louisville on May 28th. On May 27th a phone conversation with SAC took place regarding not giving at least a 72-hour notice prior to departure regarding your request to be exempted of the mask mandate. In addition, the letter you submitted from your doctor was the same one used from your previous trip, however, as you stated in your complaint, you opted to redact some of the information for your own privacy.

Mr. Faris, from your comments you state that you were misinformed regarding having been denied boarding. For this, I am sorry, and for the misunderstanding the agent caused. We strive to train our employees to be courteous and knowledgeable, but our efforts are of little value if we fail to

provide accurate and professional service. I have taken your comments and I have recorded it in our system and your comments are available for the appropriate management teams to review. The intent is to use your feedback to help us improve our service and provide more efficient assistance to our passengers in the future. While I realize this may also be of little solace to you, please know that we are doing our best to prevent such aggravating situations. Lastly, you made a voluntary change to your flights to travel a day earlier.

While, from a regulatory perspective it appears we are not in violation as the letter you submitted does not qualify for an exemption. I have taken your comments and I have recorded it in our system and your comments are available for the appropriate management teams to review. The intent is to use your feedback to help us improve our service and provide more efficient assistance to our passengers in the future. While I realize this may also be of little solace to you, please know that we are doing our best to prevent such aggravating situations.

Mr. Faris, we are committed to using customer feedback such as yours to help us improve. As a Platinum AAdvantage® member we thank you for your loyalty and given the opportunity we look forward to welcoming you onboard an American Airlines flight.

Sincerely,
Dulce Lagos
Customer Relations
American Airlines

AA Ref#1-29808316564

**Your opinion matters to us! We invite you to share your overall experience in this quick one minute survey. Click here for the survey. We appreciate your time and valuable feedback.**

The information in this email is confidential and is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. If

**From:** AmericanAirlinesCustomerRelations@aa.com
**Date:** July 28, 2021 at 9:44:55 AM EDT
**To:** michaelfaris@me.com
**Subject: Your Response From American Airlines**

 

July 28, 2021

Dear Mr. Faris:

The Department of Transportation Aviation Consumer Protection Division has forwarded your correspondences for DOT cases AT2021060045 and AT2021060050 regarding your requests for a mask exemption due to your disability. I appreciate the opportunity to respond to your concerns.

On behalf of American Airlines and Mesa Airlines, I apologize for the disappointing experiences you have encountered with us concerning the current mask mandate. It is certainly not our intent to create difficulties for our valued customers, and I regret if we have failed to provide the level of service you expect.

As you may know, carriers must not refuse to provide transportation to a

passenger on the basis of their disability except as specifically permitted by
the Air Carrier Access Act. However, carriers may refuse to provide

Wall v. TSA                                    383                                    Appendix

previously advised, the exemption to this mandate is narrowly defined and is limited to a person with a qualified disability who cannot wear a mask for reasons related to their disability.

Since you did not receive approval for a disability-related exemption before travel, a face covering would have been required for travel under confirmation codes HIUYHS and BXKTVE. As you know, any passenger who does not comply with our face-covering policy at the airport and has not been provided a mask exemption may be denied boarding from their current flight and possible future travel on American.

Again, we truly regret any difficulty the temporary mask mandate may cause you, Mr. Faris. Although we believe there was no regulatory violation as the 72-hour notification requirement was not met, the documentation submitted did not meet the conditions for a mask exemption, and you were able to travel as planned, we regret any inconvenience this may have caused you.

I am also sorry for the problems you faced while speaking with our SAC desk and if the representatives did not fully explain why you were being referred to Customer Relations. Since the documentation you had supplied did not meet the parameters needed for approval, the representatives directed you to Customer Relations to follow up regarding your concerns. Again, I regret if these details may not have been properly conveyed to you during your interactions with our SAC desk. Although Customer Relations does not provide pre-approval for a mask exemption due to a physical or mental disability, our job is to listen to passengers' issues and concerns, give each a code for reporting purposes, and apply our policies accordingly. Please know that your concerns have been thoroughly documented, and your comments have been made available for leadership to review internally. Please know all of us here at American Airlines are committed to ensuring all our customers with special needs enjoy pleasant and comfortable flights each time they travel with us.

Moreover, I am sorry for any delay in our responses to your Department of Transportation correspondences. I show we have responded to case AT2021050011 on May 13, case AT2021050045 on June 17, and case AT2021060032 on June 29, 2021. You should have received a copy of these responses via email.

As a member of our AAdvantage® program since 2019 and a current Platinum member, we truly appreciate your loyalty. It is always our pleasure to serve you and a privilege to have you as our customer. We hope to see you on-board again soon.

Re: Your Response From American Airlines

From: Michael Faris (michaelfaris@me.com)

To:    americanairlinescustomerrelations@aa.com

Date: Wednesday, December 8, 2021, 10:10 AM EST

It will be my pleasure to sue you and your employees personally, for discriminating against passengers with disabilities. You're in clear violation of law. As an air carrier, you know quite well that your position in this is illegal.

All of your employees who have reviewed and investigated any complaint in relation to this issue, will be personally held accountable when I file this lawsuit. None of you will get away with this blatant act of violence against your patrons.

You can take that to the same bank you used to cash taxpayer money to bail out your mismanaged airline. Hope you aren't buying your own stock anymore.

You will pay for your actions in a court of law. Talk soon.

*Michael Faris*
*H-60 MX Supervisor*
*Bluesky Helicopters*
*2015 McKinley Ave Ste.F4*
*Laverne, CA 91750*
*270-723-4944*

> On Dec 8, 2021, at 9:56 AM, AmericanAirlinesCustomerRelations@aa.com wrote:
>
>
>                                                                 
>
> December 8, 2021
>
> Dear Mr. Faris:
>
> The Department of Transportation Aviation Consumer Protection Division has forwarded your recent correspondence under DOT case number AT2021110023 regarding your request for a mask exemption while traveling on American Airlines flights. I've also had an opportunity to review the previous correspondences you sent directly to our Customer Relations office, and on behalf of American Airlines, I appreciate the opportunity to further reply to your concerns.
>
> I checked your reservation record, TUJXQS, and noted you booked travel via aa.com the morning of October 21, 2021, for travel on American flights 1820 and 5842 from Ontario to Louisville via Dallas/Fort Worth that same morning. We do understand from your comments that you were not wearing a mask when you entered the Ontario airport terminal and approached our ticket counter for check-in.
>
> As you may know, on January 29, 2021, the Centers for Disease Control issued an Order that required face masks to be worn by all people while on public transportation (which included all passengers and all personnel operating conveyances) traveling into, within, or out of the United States and U.S. territories. The Order also required all people to wear masks while at transportation hubs (e.g., airports, bus or ferry terminals, train and subway stations, seaports, U.S. ports of entry, and other locations where people board public transportation in the United States and U.S. territories), including both indoor and outdoor areas (amended June 10th). In support of the mask mandate, we require customers to wear a mask that covers their nose and mouth from

the time they enter their departure airport until they exit their arrival airport.

As you are aware, there are now limited and narrow exemptions to this mandate, and carriers must not refuse to provide transportation to a passenger on the basis of his or her disability except as specifically permitted by the Air Carrier Access Act. However, carriers may refuse to provide transportation to any passenger on the basis of safety, or to any passenger whose carriage would violate FAA or TSA requirements or applicable requirements of a foreign government.

The narrow mask exemptions includes a person with a disability who cannot wear a mask for reasons related to their disability such as those who do not understand how to remove their mask due to cognitive impairment, cannot remove a mask on their own due to dexterity/mobility impairments, or cannot communicate promptly to ask someone else to remove their mask due to speech impairments or language disorders, or cannot wear a mask because doing so would impede the function of assistive devices/technology. It is not meant to cover persons for whom mask-wearing may only be difficult.

As you are also aware, to request an exemption, passengers must contact us at least 72 hours before they plan to travel and have a valid, ticketed reservation. Requests can be made through our Special Assistance desk at 800-237-7976. Exemptions will require documentation from a licensed health care provider, as well as proof of a negative COVID-19 test, taken within three calendar days of departure, or proof of recovery from COVID-19.

We understand your continued disappointment that your previous mask exemption requests for travel on our flights did not meet the narrow exceptions allowed. While our records indicate you requested our Ontario ticket counter personnel approve a mask exemption for flights 1820 and 5842 that morning, from a regulatory perspective it appears we are not in violation as our procedure for evaluating a no mask exemption was not followed and your previous submissions did not meet the exceptions allowed.

While you purchased a non-refundable ticket, as a courtesy, your ticket, 0012306866278, was refunded in the amount of $474.19 to the MasterCard ending in 7717. To check the status of your refund online, please visit prefunds.aa.com.

Our job in Customer Relations is to listen to passenger's issues, concerns, and give each a code for reporting purposes. Your concerns have been thoroughly documented and your comments are available for the appropriate management teams to review. The intent is to use your feedback to help us improve and make proactive changes with the goal of improving our service and providing more efficient assistance to our passengers in the future.

Mr. Faris, it was my pleasure to assist our loyal AAdvantage® member and from all of us at American Airlines, we thank you for choosing American Airlines for your past travel.


Sincerely,
W. Chris Alan
Customer Relations
American Airlines


AA Ref#1-30685522386


**Your opinion matters to us! We invite you to share your overall experience in this quick one minute survey. Click here for the survey. We appreciate your time and valuable feedback.**

The information in this email is confidential and is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. If you are not the intended recipient, please delete this email from your email system.

If your comments are related to American Airlines service to, from, or in the United Kingdom and we have reached an impasse in terms of resolving your complaint, please know that we are obligated by the Civil Aviation Authority (CAA) to inform you that you may contact a CAA-approved Alternative Dispute Resolution (ADR) provider competent to deal with airline service complaints. American Airlines, however, does not participate with an ADR in resolving disputes.

RESPCONID: 1-E3HJLE7:

RESPID:1-E3HJLE5:

TID:1-E3HD8LU:

PROCESS:Response:

CONTACTID:1-D2LLA6Y:

**From:** customercare@united.com
**Date:** August 30, 2021 at 4:29:23 PM EDT
**To:** michaelfaris@me.com
**Subject:** Re: CL2021070330 - (MICHAEL FARIS) MZ2300  (KMM73252198V55338L0KM)

Hello Mr. Faris,

This letter is written in response to your correspondence with the U.S. Department of Transportation (DOT) concerning your travel on July 26, 2021

I am sorry to hear that you fainted on the flight from Louisville to Denver on July 26, 2021.

It is unfortunate that you have a condition that makes it difficult for you to wear a face mask or other permitted face covering. United has determined that the possibility of asymptomatic transmission of COVID-19 in the confined space of an airplane is a direct threat to the health and safety of our passengers and crew that can only be mitigated by all onboard wearing a facemask. United has made this determination based on a review of current medical knowledge and CDC guidance.
We are adhering to the CDC guidelines for the health of everyone. In this COVID-19 environment, governmental direction has been given to wear masks in public settings.  We view the asymptomatic transmission of COVID-19 a direct threat to our passengers that can only be mitigated by the wearing of a face mask.  While I certainly understand your point of view, I didn't find United violated federal disability regulations.

We're committed to ensuring all of customers have access to the same services. Each airport has trained agents (Complaint Resolution Officials, CRO) who are available upon request to resolve service issues for customers with disabilities. In the future, feel free to ask for a CRO

if you need assistance.

·     Prior to travel, you can view information on united.com > Travel information > Special travel needs.

·     You can also contact a CRO 24/7 at (800) 228-2744.


Regards,

Wendy Marzullo
Complaint Resolution Official (CRO)
DOT/Disability Specialist – Corporate Customer Care
Case ID: 162765667595312

**From:** customer.care@united.com
**Date:** September 10, 2021 at 1:53:51 PM EDT
**To:** michaelfaris@me.com
**Subject:** New AUGUST Disability Complaint: AT2021090012 - (MICHAEL FARIS) MZ2300

Hello Mr. Faris,

This letter is written in response to your correspondence with the U.S. Department of Transportation (DOT) concerning your request for a mask exception.

I see that you traveled on United on August 16, 2020 from Salt Lake City to Chicago and Chicago to Louisville.  I do not see that you have submitted any additional information to be considered for a mask exception.  We have previously asked for additional information about your condition but nothing has been provided.

It is unfortunate that you have a condition that makes it difficult for you to wear a face mask or other permitted face covering. United has determined that the possibility of asymptomatic transmission of COVID-19 in the confined space of an airplane is a direct threat to the health and safety of our passengers and crew that can only be mitigated by all onboard wearing a facemask. United has made this determination based on a review of current medical knowledge and CDC guidance.

We are adhering to the CDC guidelines for the health of everyone. In this COVID-19 environment, governmental direction has been given to wear masks in public settings.  We view the asymptomatic transmission of COVID-19 a direct threat to our passengers that can only be mitigated by the wearing of a face mask.  While I certainly understand your point of view, I didn't find United violated federal disability regulations.  Currently, we do have a process for making exceptions based on CDC guidelines.

Wall v. TSA                                      390                                      Appendix

**What if I have a disability or medical condition that may prevent me from wearing a face mask?**

United has implemented a multi-step approach for customers who have a disability or medical condition that prevents them from being able to wear a face covering/mask. Please review the below steps to be considered for an exemption. Documents should be submitted to MaskExceptions@united.com

- Travel must be confirmed prior to requesting an exemption.

- Every customer seeking an exemption must submit a mask ⛑ exemption request form ⛑, a portion of which must be completed by their treating medical provider regarding their disability or medical condition, a minimum of **7 days** prior to scheduled departure. If the ticket was purchased less than 7 days before travel, then the form must be submitted as soon as possible. There is no guarantee that a customer's exemption will be granted in time.

- United will review the documentation, and only after we determine that it meets our requirements and that an exemption would be in accordance with CDC/DOT/TSA standards, will the customer be notified that they need to provide proof of a **negative COVID-19 PCR test** result. The test must be taken within **72 hours** of scheduled departure. Separate tests will be required for both the outbound and return flights if the scheduled return travel is beyond 72 hours from when the test was taken.

- United may require customers seeking an exemption or their travelling party to move to alternate seats in the cabin and/or change their itinerary to less-full flights to allow for greater social distancing from other customers on board, if possible. United will advise regarding the alternatives, and changes to flights under these circumstances will be made at no additional cost.

- United will issue a letter of approval that will contain customer name, flights, date(s) of travel and reservation number. This will need to be printed and carried on your person at all times while traveling and will need to be shown to TSA at the security checkpoint prior to being screened.

- This exemption process is applicable only to flights in a single reservation, and any exemption for future travel or travel in separate reservations will need to be applied for anew under this process.

We're committed to ensuring all of customers have access to the same services. Each airport has trained agents (Complaint Resolution Officials, CRO) who are available upon request to resolve service issues for customers with disabilities. In the future, feel free to ask for a CRO if you need assistance.

- Prior to travel, you can view information on united.com > Travel information > Special travel needs.
- You can also contact a CRO 24/7 at (800) 228-2744.

Regards,

Wendy Marzullo
Complaint Resolution Official (CRO)
DOT/Disability Specialist - Corporate Customer Care
Case ID: 163102399186044

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: Apr 29, 2021 at 7:21:37 PM
To: michaelfaris@me.com

---

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel.  As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger – Mr MICHAEL FARIS MICHAELFARIS@ME.COM

CONTACT INFO:
160 CHARLOTTE CIR ELIZABETHTOWN,KY 42701

Home Phone: 270-723-4944
Daytime Phone: 270-723-4944

COMPLAINT INFO:
Airline Code: AA

Flight Date: 04/29/2021
Flight Itinerary: SDF, DFW, ONT, LAX.

Description of Problem/Inquiry/Comment:
I HAVE REACHED OUT TO AMERICAN AIRLINE AND SENT
THEM A  COPY OF A MASK EXEMPTION LETTER FROM
MY   DOCTOR ON  04/26/2021 AT 1516 PCT. I HAD ASKED
THAT IT BE  ADDED TO MY AADVANTAGE ACCOUNT. AS
OF   TODAY,  WHICH IS 72 HOURS LATER (IN
ACCORDANCE   WITH THE  AIRLINES POLICY) I HAD YET
TO RECEIVE A   RESPONSE.  I HAVE REACHED BACK OUT

TO THE AIRLINE TODAY AND KEVIN INFORMED ME THAT
WITHOUT NOTICE, THEY HAD DENIED MY REQUEST TO
USE THEIR SERVICES WITH MY DISABILITY. IN SPEAKING
WITH KEVIN, THE AGENT AT AMERICAN AIRLINES
SERVICE REQUEST DIVISION, HE SAID THAT I MUST
ALWAYS SUBMIT THIS LETTER EACH TIME THAT I FLY AS
WELL AS PROVIDE A NEGATIVE COVID TEST OR PROOF
THAT I HAVE RECOVERED FROM THE VIRUS EACH TIME I
FLY. ACCORDING TO HIPAA LAW, IT IS MY INDIVIDUAL
RIGHT TO DENY ANY COMPANY ACCESS TO
INFORMATION IN REGARDS TO MY PERSONAL HEALTH. I
FEEL THAT PROVIDING THE MASK EXEMPTION IS
ENOUGH. TO BE MORE CLEAR, MY DISABILITY DOES NOT
REQUIRE THE AIRLINES ASSISTANCE IN ANY WAY. I
SIMPLY ASKED THAT THE AIRLINES WRITE SOME FORM
OF LETTER OR ATTACH TO MY FILE, INFORMATION IN
REGARDS TO MY DISABILITY SO THAT THIER STAFF
WOULD NOT GET CONFRONTATIONAL WITH ME IN THE
FUTURE. THERE IS NO NEED FOR THE AIRLINE TO BE
NOTIFIED EVERY SINGLE TIME I FLY AS I USE THEIR
AIRLINE EVERY 12 DAYS. ADDITIONALLY, IT IS AN
ABSOLUTE WASTE OF TAX PAYER DOLLARS FOR ME TO
GO AND TAKE A COMPLETELY GOVERNMENT FUNDED
TEST WHICH HAS BEEN PROVEN TO BE DRASTICALLY

INEFFECTIVE IN ITS   RESULTS (LETS EXCLUDE THE FACT THAT ITS ILLEGAL   AND I AM NOT REQUIRED TO GIVE MY MEDICAL HISTORY  TO AN AIRLINE.) LASTLY, ACCORDING TO THE AIR  CARRIER ACCESS ACT, IT IS UNLAWFUL FOR THE   AIRLINE TO REFUSE ME SERVICE DUE TO A DISABIILTY.  I WOULD GREATLY APPRECIATE YOUR ASSISTANCE WITH  THIS MANNER AS I TRAVEL QUITE FREQUENTLY AND IT  IS DETREMENTAL TO MY HEALTH TO BE FORCED TO WEAR  A MASK. IN THE NATURE OF BUSINESS THAT I AM  INVOLVED, WHICH IS ARIEL WILDLAND FIRE FIGHTING,  THERE ARE TIMES THAT I MUST BOOK MY RESERVATIONS  ON THE DAY OF TRAVEL. I ALWAYS KNOW THE DATE OF  TRAVEL BUT NOT ALWAYS THE LOCATION. IT WOULD BE A  WASTE OF THE AIRLINES TIME TO BOOK A FLIGHT 3  DAYS IN ADVANCE ONLY TO CHANGE THAT FLIGHT ON THE  DAY OF TRAVEL. ONCE AGAIN, I APPRECIATE ANY  ATTENTION YOU COULD GIVE THIS MATTER ON MY  BEHALF. THE MASK EXEMPTION LETTER FROM MY DOCTOR  WILL BE ATTACHED. HAVE A WONDERFUL DAY.

This is System generated message, and a response to this

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: Jun 1, 2021 at 2:33:40 PM
To: michaelfaris@me.com

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mr Michael Faris michaelfaris@me.com

CONTACT INFO:

160 Charlotte Circle Elizabethtown,KY 42701

Home Phone: <u>2707234944</u>
Daytime Phone: <u>2707234944</u>

COMPLAINT INFO:
Airline Code: AA

Flight Date: 05/27/2021
Flight Itinerary: VXMQMB

Description of Problem/Inquiry/Comment:
Hello, this is my third DOT complaint in relation to this airline and it's procedures    that are directly violating 14 CFR 382 and the ACAA. I went on the 26th of May to    a clinic in Laverne California and took another covid test for this airline. The test    was once again negative, showing that I have never and do not currently have a    communicable disease. I submitted the negative covid test to American along    with my mask exemption. This time, I redacted my diagnosis and any symptoms    from the medical exemption letter for my own privacy. Not that is surprises me,    but they have rejected me services in connection with my disability for the third    time. Their excuses for rejection his time was related to two things.

The first   representative told me that it was rejected because
the info wasn't submitted   prior to 72 hours before boarding.
This is another bogus reason as their policy   states that I must
submit a negative covid test with the mask exemption within 72
  hours for the test to be valid. One might ask the question how
I'm supposed to   submit a negative test results before I can
take the test? So, it's either within 72   hours or 72 hours prior.
You cannot have both. For the airline to even ask for this   much
advance notice is absurd. 14 cfr 382.27 is very specific about
what the   airline can require advance notice on in connection
to a medical condition. 72   hours before an international flight
and 48 hours before a domestic flight and   mentions
specifically what must be required for them to be able to ask for
  advance notice. Flying without a mask due to a medical
condition is not one of   them. To be more specific, it is one of
these following things: incubator, respirator,   stretcher, electric
wheelchair or hazardous material in relation to assistive
  devices. I do not have any of the above or require any
assistance in relation to   any of it. The second representative
had told me that it was rejected because she   had seen in her
notes that I had been denied boarding on the 15th of May in
  connection with this disability. This is completely illegal. These
airlines are not   following the laws in which have been put in
place to do business as an airline in   this country. The DOT has
an obligation to investigate this and fine this airline for   their
grotesque treatment of passengers with disabilities. At this

point, one can conclude that American has a biased approach in allowing me to fly with this disability. I have followed their policy, which is completely illegal, and they still deny me access to travel in a means in which I should be allowed to safely travel. They are completely disregarding my individual right as a person. They have no care or concern for the actual medical condition that I have and would instead choose to treat me as if I have a communicable disease when I have proven to them, on more than one occasion, that I do not. American has not tried to make a reasonable accommodation for me as a passenger with a disability. It's illegal and must stop.

This is System generated message, and a response to this email will not be delivered. 06/01/2021 14:27:33

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: Jun 6, 2021 at 10:36:05 AM
To: michaelfaris@me.com

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger - Mr Michael Faris michaelfaris@me.com

CONTACT INFO:

160 Charlotte Circle Elizabethtown,KY 42701

Home Phone: 2707234944
Daytime Phone: 2707234944

COMPLAINT INFO:
Airline Code: AA

Flight Date: 06/08/2021
Flight Itinerary: HIUYHS

Description of Problem/Inquiry/Comment:

Hello, this will be my fourth DOT complaint against American Airlines. I have still    not heard a response from the first complaint I filed in relation to this issue on   4/29/2021. I have once again, sent this airline a copy of a mask exemption letter   from my physician as well as proof of a negative covid test. In speaking with the    special assistance department, they will not approve or deny me. They have    simply stated that I must contact their customer relations department. The Cust.    Rel. department does not handle passenger disability requests or assistance.    Their job is to help customers file a complaint. I am done filing complaints with    this airline and receiving no feedback or help in relation to traveling with my    disability.

They have refused me time and time again with no valid reason. Of all   the complaints I have filed, I've only received one letter in writing that they   actually denied me services in connection with my disability. In accordance with   14 cfr 382.19 (d), the airline is required to inform me in writing that my disability   meets the provisions of paragraph (c). In order to do that, they have to prove that   I pose a direct threat and that reasonable policy changes won't mitigate the risk. I   pose zero risks to any passenger on any flight by not wearing a mask. I have   never had covid and I have tested negative each time before boarding aircraft for   this airline. There is absolutely no reason they cannot make a policy deferral in   relation to my travel and allow me to travel without a mask. I do not need their   assistance, I am not a safety concern and I am not boarding with anything that   would impede with the safety or regular seating arrangements of other   passengers. This is the absolute worst experience I've ever had as an airline   passenger. There is no reason for it and it is against the law. As a fellow aviation   worker, I had hoped for a higher standard with this process all the way around.   Every single turn is one disappointment after another. The airline is making up or   changing the rules as they go. It is unfair to the traveler who MUST comply or be   immediately targeted, possibly rejected from a flight and then banned to have   access to air travel. My job requires that I travel every 12 days. I have tried at   every turn to please them and follow their rules. How can this be

possible when they don't follow their own policy or the law as it is written? Please understand that I will not let up until this airline is held accountable for their actions.

**This is System generated message, and a response to this email will not be delivered. 06/06/2021 10:30:00**

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: Jun 19, 2021 at 11:37:09 PM
To: michaelfaris@me.com

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger – Mr Michael Faris michaelfaris@me.com

CONTACT INFO:

160 Charlotte Circle Elizabethtown,KY 42701

Home Phone: 2707234944
Daytime Phone: 2707234944

COMPLAINT INFO:
Airline Code: AA

Flight Date: 06/21/2021
Flight Itinerary: BXKTVE

Description of Problem/Inquiry/Comment:
Hello, this is my 5th complaint against American Airlines and their continued    refusal to provide me air travel in connection with a disability. I have reached out    to the airline and provided them a mask exemption, negative covid test and    within the time frame their policy requests. They have responded and informed    me that once again, I do not qualify to be exempt. When I asked what the basis    of disqualification was, they simply referred me to the same phone number they    have given me I'm the past to their customer relations. Their customer relations    never has any answers and then direct me to another department without fail. No    one here has the authority, knowledge or ability to make any decisions or follow

the law. Per 14 cfr 382, if they deny me service in connection with a disability,     they must prove that I am a safety concern and that a minor adjustment of their     policies won't mitigate the problem. There is zero chance I am of a safety     concern to anyone on any flight as I have continually proven to the airlines that's     I've never had the virus and do not currently have the virus. Per cdc order, I am     exempt from wearing a face covering as I have a severe sensory and mental     disability that could cause harm to myself or others while wearing a mask. The     airline is disregarding my rights as protected under the law. No DOT directive or     CDC guideline gives the airline the authority to disregard my rights as a human     being and they continually do so. This must be stopped.


This is System generated message, and a response to this email will not be delivered. 06/19/2021 23:30:43

From: airconsumer@dot.gov
Subject: Airconsumer Acknowledgement
Date: Oct 23, 2021 at 5:37:17 PM
To: michaelfaris@me.com

Thank you for contacting us concerning your air travel service issue. The U.S. Department of Transportation (DOT) seeks to ensure that airline passengers are treated fairly. Complaints and comments from consumers are helpful for determining whether airlines or ticket agents are complying with Federal aviation consumer protection and civil rights statutes and DOT regulations, and to track trends or spot areas of concern that warrant further action. Your complaint or inquiry will be assigned to an analyst for review and you will receive a more detailed acknowledgment.

The Department is receiving a high volume of complaints given the unprecedented impact of the 2019 Novel Coronavirus (COVID-19) public health emergency on air travel. As a result, the time to process complaints is taking longer than normal. We are working hard to provide the best support we can, but it may take several weeks to process your complaint. We apologize for the delay.

Thank you again for taking the time to contact us.

Office of Aviation Consumer Protection
U.S. Department of Transportation

PERSONAL INFO:
Passenger – Mr Michael Faris michaelfaris@me.com

CONTACT INFO:

160 Charlotte Cir Elizabethtown,KY 42701

Home Phone: 270-723-4944
Daytime Phone: 270-723-4944

COMPLAINT INFO:
Airline Code: AA

Flight Date: 10/21/2021
Flight Itinerary: TUJXQS

Description of Problem/Inquiry/Comment:

Hi, Mike Faris again... what is it, thirteenth   time now? I'm sure
by now this entire department   knows my first and last name. I
must be in the   running for submitting a record number of DOT
  complaints by any individual since this programs   creation.
Anyway, for the facts that pertain to   this incident, see below.
Hello, I am writing   today to inform you that American Airlines
has   flat out refused me service at Ontario   International in
connection with a disability. I   have a medical exemption from
my physician   explaining that I should not wear a mask, as it
  is detrimental to my health. I have fainted and   been injured
twice on United Airlines watch and   now refused service by
American because of this   disability. On this particular day, I